## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380<br><br>Civil Action No.: 4:12-md-02380-YK |
| THIS DOCUMENT RELATES TO:<br><br>ALL CASES | (Chief Judge Kane) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**DILWORTH PAXSON LLP**
Joseph U. Metz
112 Market Street, Suite 800
Harrisburg, Pennsylvania 17101-2015
Tel:  717-236-4812
Fax: 717-236-7811
Email: jmetz@dilworthlaw.com

***Interim Liaison Counsel***

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................1

II.   STATEMENT OF FACTS ......................................................................3

III.  ARGUMENT...........................................................................................5

    A.    Standards Applicable To This Motion ...................................................5

        1.    The General Standards On A Motion To Dismiss......................5

        2.    The Applicability And Standards Of Rule 9(b)..........................6

        3.    A Choice Of Law Analysis Is Premature....................................7

    B.    Whether A Reasonable Consumer Might Be Misled Is A
        Question Of Fact ..................................................................................10

    C.    The CAC States Claims Under The Consumer Protection Laws .......14

        1.    Defendants' Representations Regarding Peak Horsepower
            Could Deceive A Reasonable Consumer...................................14

        2.    Shop-Vac's Peak Horsepower Disclaimer Is Ineffective .........16

        3.    Defendants' Representations Regarding Tank Capacity Could
            Deceive A Reasonable Consumer.............................................19

        4.    Defendants' "Everyone Does It" Defense Fails .......................20

    D.    Plaintiffs' Consumer Claims Are Stated With Sufficient
        Particularity .........................................................................................22

    E.    The CAC Alleges Injury In Fact ........................................................23

    F.    Plaintiffs Have Stated Claims For Breach Of Express Warranty .......26

    G.    Mcmichael And Harbut Are Not Required To Provide Notice To
        Maintain Their Warranty Claims ........................................................35

    H.    Plaintiffs Have Stated Claims For Breach Of Implied Warranty .......38

    I.    Plaintiffs Have Stated Claims Under Magnuson-Moss
        Warranty Act .......................................................................................40

|   |   |   |   |
|---|---|---|---|
| | 1. | Plaintiffs' Notice Was Adequate | 40 |
| | 2. | Plaintiffs Have Stated Warranty Claims Under State Law | 41 |
| | 3. | Plaintiffs Have Pleaded That Lowe's Made Independent Representations And Adopted Those Of Shop-Vac. | 43 |
| IV. | CONCLUSION | | 44 |

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Allen v. Hylands, Inc.*,
   No. CV 12-01150, 2012 U.S. Dist. LEXIS 61606
   (C.D. Cal. May 2, 2012) ....................................................................................28

*Arlandson v. Hartz Mt. Corp*.,
   792 F. Supp. 2d 691 (D.N.J. 2011) ..............................................................39, 40

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005)...................................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................6

*Bollino v. Hitzig*,
   No. 22913/99, 2001 N.Y. Misc. LEXIS 1106 (Sup. Ct. Dec. 7, 2001)..............10

*Borchardt v. Mako Marine Int'l., Inc.*,
   No. 08-61199-CIV-MARRA, 2011 U.S. Dist. LEXIS 55150
   (S.D. Fla. May 23, 2011) ...................................................................................42

*Bowen v. Young*,
   507 S.W.2d 600 (Tex. Civ. App. 1974)..............................................................33

*Boyd v. Homes of Legend, Inc.*,
   981 F. Supp. 1423 (M.D. Ala. 1997) ..................................................................42

*Boyes v. Greenwich Boat Works, Inc.*,
   27 F. Supp. 2d 543 (D.N.J. 1998)..................................................................37, 38

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011)........................................................................15

*Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*,
   823 F. Supp. 2d 786 (W.D. Tenn. 2011) ............................................................11

*Cipollone v. Liggett Group, Inc.*,
   893 F.2d 541 (3d Cir. 1990) .........................................................................27, 35

*Cipollone v. Liggett Grp., Inc.*,
   683 F. Supp. 1487 (D.N.J. 1988).................................................................35, 37

*City of Pittsburgh v. W. Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998) .............................................................................6

*Computer Strategies, Inc. v. Commodore Bus. Machs., Inc.*,
   105 A.D.2d 167 (N.Y. Sup. Ct. 2d Dep't 1984)..................................................36

*Connick v. Suzuki Motor Co., Ltd.*,
   625 N.E.2d 584 (Ill. 1996)..............................................................................36

*Consolidated Data Terminals v. Applied Digital Data Sys., Inc.*,
   708 F.2d 385 (9th Cir. 1983) ...........................................................................32

*Deen v. New Sch. Univ.*,
   No. 05 Civ. 7174, 2007 U.S. Dist. LEXIS 25295
   (S.D.N.Y. Mar. 27, 2007) ...............................................................................11

*Delahunt v. Cytodyne Techs.*,
   241 F. Supp. 2d 827 (S.D. Ohio 2003) .............................................................10

*Duran v. Leslie Oldsmobile*, *Inc.*,
   594 N.E.2d 1355 (Ill. App. Ct. 1992) ..............................................................17

*Gladden v. Cadillac Motor Car Div., Gen. Motors Corp.*,
   416 A.2d 394 (N.J. 1980) ...............................................................................31

*Hairston v. N.C. Agric. & Technical State Univ.*,
   No. 1:04CV1203, 2005 U.S. Dist. LEXIS 20442
   (M.D.N.C. Aug. 5, 2005)................................................................................29

*Harper v. LG Elecs. USA, Inc.*,
   595 F. Supp. 2d 486 (D.N.J. 2009)....................................................................9

*Henningsen v. Bloomfield Motors, Inc.*,
   161 A.2d 69 (N.J. 1960) .................................................................................34

*Herron v. Best Buy Co.*,
    No. 2:12-cv-02103-GEB-JFM, 2013 U.S. Dist. LEXIS 20440
    (E.D. Cal. Feb. 14, 2013) ....................................................................17, 21, 44

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ..........................................................................13

*Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*,
    653 F.3d 225 (3d Cir. 2011) ..............................................................................22

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices
    Litig.*,
    701 F. Supp. 2d 356 (E.D.N.Y. 2010) .................................................................9

*In re Empire Pac. Indus., Inc.*,
    71 B.R. 500 (Bankr. D. Or. 1987) .....................................................................36

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
    No. 03-4558, 2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. 3, 2008)............26, 27

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
    801 F. Supp. 2d 993 (S.D. Cal. 2011)................................................................24

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) ......................................................................9

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010) ..............................................................21

*In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*,
    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ..............................................................7

*In re McDonald's French Fries Litig.*,
    503 F. Supp. 2d 953 (N.D. Ill. 2007)...........................................................35, 36

*In re MTBE Prods. Liab. Litig.*,
    175 F. Supp. 2d 593 (S.D.N.Y. 2001) .................................................................8

*In re Processed Egg Prods. Antitrust Litig.*,
    851 F. Supp. 2d 867 (E.D. Pa. 2012)...................................................................8

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
    230 F. Supp. 2d 392 (S.D.N.Y. 2002) .................................................................7

*James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*,
  796 F. Supp. 2d 1341 (M.D. Fla. 2011) ............................................................... 11

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
  299 F.3d 1242 (11th Cir. 2002) ........................................................................... 8

*Kanter v. Barella*,
  489 F.3d 170 (3d Cir. 2007) ............................................................................... 23

*King v. Dogan*,
  31 F.3d. 344 (5th Cir. 1994) ............................................................................... 29

*Knipe v. Smithkline Beecham*,
  583 F. Supp. 2d 602 (E.D. Pa. 2008) .................................................................. 34

*Kwikset Corp. v. Superior Court of Orange Cnty.*,
  246 P.3d 877 (Cal. 2011) .............................................................................. 25, 26

*L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*,
  9 F.3d 561 (7th Cir. 1993) ............................................................................ 30, 35

*Long v. Wilson*,
  393 F.3d 390 (3d Cir. 2004) ............................................................................... 23

*Marine Midland Bank v. Carroll*,
  98 A.D.2d 516 (N.Y. App. Div. 1984) ................................................................. 35

*McDonnell Douglas Corp. v. Thiokol Corp.*,
  124 F.3d 1173 (9th Cir. 1997) ........................................................................... 26

*McKinniss v. Kellogg, USA*,
  No. CV 07-2611, 2007 U.S. Dist. LEXIS 96106
  (C.D. Cal. Sept. 19, 2007)................................................................................... 13

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
  331 F.3d 406 (3d Cir. 2003) ............................................................................... 22

*Murphy v. Mallard Coach Co.*,
  179 A.D.2d 187 (N.Y. App. Div. 1992) ............................................................... 35

*Murray v. Holiday Rambler, Inc.*,
  265 N.W.2d 513 (Wis. 1978)............................................................................... 33

*Naylor Med. Sales & Rentals, Inc. v. Invacare Continuing Care, Inc.*,
Nos. 11-5820, 11-5844, 11-6044, 11-6050, 2013 U.S. App. LEXIS 5684
(6th Cir. Mar. 18, 2013) ...................................................................................11

*New Hope Pipe Liners, LLC v. Composites One, LLC*,
No. 09-3222, 2009 U.S. Dist. LEXIS 111217 (D.N.J. Nov. 30, 2009) .............28

*O'Shea v. Epsom Am., Inc.*,
No. CV 09-8063, 2011 U.S. Dist. LEXIS 85273
(C.D. Cal. July 29, 2011) ................................................................................12

*Oregon Lumber Co. v. Dwyer Overseas Timber Prods. Co.*,
571 P.2d 884 (Or. 1977) ..................................................................................36

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
653 F.3d 241 (3d Cir. 2011) ............................................................................12

*Perona v. Volkswagen of Am., Inc.*,
684 N.E.2d 859 (Ill. App. Ct. 1997) ................................................................36

*Petroleo Brasileiro, S.A., Petrobras v. Nalco Chem. Co.*,
784 F. Supp. 160 (D.N.J. 1992) .......................................................................32

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ...........................................................................5, 6

*Plubell v. Merck & Co.*,
289 S.W.3d 707 (Mo. Ct. App. 2009) .............................................................24

*Promisel v. First Am. Artificial Flowers, Inc.*,
943 F.2d 251 (2d Cir. 1991) .............................................................................7

*Putensen v. Clay Adams, Inc.*,
12 Cal. App. 3d 1062 (1970) ...........................................................................27

*Realmuto v. Straub Motors, Inc.*,
322 A.2d 440 (N.J. 1974) .................................................................................32

*Roberts v. Fleet Bank*,
342 F.3d 260 (3d Cir. 2003) .............................................................................11

*Rollins, Inc. v. Butland*,
951 So. 2d 860 (Fla. Dist. Ct. App. 2006) .......................................................24

*Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*,
   890 F.2d 108 (9th Cir. 1989) ...............................................................................31

*Smith v. Wm. Wrigley Jr. Co.*,
   663 F. Supp. 2d 1336 (S.D. Fla. 2009) ................................................................35

*Somerville v. Stryker Orthopaedics*,
   No. C 08-02443, 2009 U.S. Dist. LEXIS 80753 (N.D. Cal. Sept. 4, 2009)........7

*Thacker v. Menard, Inc.*,
   105 F.3d 382 (7th Cir. 1997) ...............................................................................17

*Thompson Med. Co., Inc. v. Ciba-Geigy Corp.*,
   643 F. Supp. 1190 (S.D.N.Y. 1986) ....................................................................15

*Union Ink Co., Inc. v. AT&T Corp.*,
   801 A.2d 361 (N.J. App. Div. 2002) ............................................................10, 25

*USM Corp. v. Arthur D. Little Sys., Inc.*,
   546 N.E.2d 888 (Mass. App. Ct. 1989) ...............................................................32

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
   643 F. Supp. 2d 1256 (W.D. Wash. 2009) .............................................................7

*Viking Yacht Co. v. Composites One LLC*,
   496 F. Supp. 2d 462 (D.N.J. 2007).......................................................................34

*Walters v. Hughes Commc'ns, Inc.*,
   682 F. Supp. 2d 1031 (N.D. Cal. 2010)................................................................15

*Warriner v. Stanton*,
   475 F.3d 497 (3d Cir. 2007) ...................................................................................9

*Werbel v. Pepsico, Inc.*,
   No. C 09-04456, 2010 US Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) ..........12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...........................................................10, 18, 19, 20

## STATUTES

810 ILCS 5/2-313.................................................................................................9, 27

815 ILCS 505/2 .........................................................................................................8

15 U.S.C. § 45(a) ....................................................................................................16

15 U.S.C. § 2301(6) ..........................................................................................42, 43

15 U.S.C. § 2301(6)(A) .........................................................................................43

15 U.S.C. § 2301(7) ...............................................................................................42

Ariz. Rev. Stat. § 44-1522 ......................................................................................8

Ariz. Rev. Stat. § 47-2313 ...............................................................................9, 28

Cal. Com. Code § 2313 ....................................................................................9, 27

Cal. Com. Code § 2316 ..........................................................................................31

Fla. Stat. Ann. § 501.204 ........................................................................................8

Fla. Stat. § 672.313 ...........................................................................................8, 27

Mo. Rev. Stat. § 400.2-313 ..............................................................................9, 27

Mo. Rev. Stat. § 407.010. .......................................................................................8

Mo. Rev. Stat. § 407.020 ........................................................................................8

N.J.S.A. § 2-316(1) ...............................................................................................32

N.J.S.A. § 12A:2-313 ............................................................................................30

N.Y. Gen. Bus. Law § 349 ......................................................................................8

Ohio Rev. Code sections 1345.02 and 1345.03 ....................................................10

U.C.C. § 2-313 .............................................................................................8, 27, 28

U.C.C. § 2-314(2)(a)-(f) ........................................................................................39

U.C.C. § 2-607 cmt. 4 ............................................................................................37

Fed. R. Civ. P. 8 .......................................................................................................7

Fed. R. Civ. P. 9(b) .....................................................................................1, 6, 7, 22

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 5, 6

Fed. R. Civ. P. 23 ................................................................................................15, 35

**OTHER AUTHORITIES**

5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure:
  Civil 3d § 1357 (3d ed. 2007) ...........................................................................6

Manoj Hastak & Dennis Murphy, *Effects of a Bristol Windows
  Advertisement with an "Up To" Savings Claim on Consumer Take-Away
  and Beliefs*, Report Submitted to Federal Trade Commission (2012) ...........3, 16

Plaintiffs Alan McMichael ("McMichael"), Andrew Harbut ("Harbut"), Kris Reid ("Reid"), David Smallwood ("Smallwood"), and Clay Scott, ("Scott") (collectively, "Plaintiffs"), by and through Interim Class Counsel, submit this memorandum of law in opposition to the motion of Shop-Vac Corporation ("Shop-Vac"), Lowe's Home Centers, Inc., and Lowe's HIW, Inc. (together, "Lowe's") (collectively, "Defendants") to dismiss Plaintiffs' Consolidated Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure:

## I.    INTRODUCTION

Whether Shop-Vac's peak horsepower and tank capacity representations have the capacity to mislead consumers is a question of fact, not suitable for resolution on a motion to dismiss. The Court need go no further to deny Defendants' motion.

Indeed, it is only in extreme cases where a court will find that consumers could not be misled as a matter of law and dismiss claims at this early stage. Here, Defendants' representations concerning peak horsepower could mislead a reasonable consumer. Defendants' arguments ignore that their peak horsepower representations are alleged to be simply false, and that the wet/dry vacuums forming the subject matter of this action plainly do not and cannot operate – *for any period of time* – at their stated peak horsepower ratings. A reasonable

consumer might be misled by the Defendants' use of this term into believing that the wet/dry vacuum they purchased had greater capabilities than it actually had, and was worth more money than it actually was.   Contrary to Defendants' counterfactual arguments, there is no reason to believe that consumers universally understand that "peak horsepower" refers to the results of an obscure test in a lab, which is unrelated and irrelevant to the operational capabilities of the vacuums – especially when Defendants' marketing tries to convince them that the opposite is true.

Similarly, a reasonable consumer might not understand that the represented tank capacity of the vacuums in gallons refers not to the operational capacity of these devices, but rather misleadingly refers to the capacity of the tank when the vacuum is disassembled.   Again, Defendants' capacity representations have the clear and obvious ability to mislead consumers as to the actual capabilities and value of their vacuums.

Defendants also argue that their disclaimers demonstrate that no reasonable consumer could be deceived.   However, the horsepower disclaimer is misleading in and of itself, and the capacity disclaimer does nothing to correct the misrepresentations, and is ineffective to cure Defendants' transgressions.

As a Federal Trade Commission study recently found, when consumers are faced with "up to" representations, such as "holds up to ten pounds," the consumer

believes that the "up to" number has at least some relation to reality, and is at least *capable* of being reached.[1]  Here, however, the fact is the vacuum motor will ***never*** reach the stated peak horsepower in operation, and the tank will ***never*** hold the stated number of gallons during operation.

For purposes of this motion, however, the Court need not resolve the issue of whether a reasonable consumer ***might*** be misled by the Defendants' misrepresentations.  It is enough to deny Defendants' argument that no reasonable consumer could possibly be misled as a matter of law.

## II.   STATEMENT OF FACTS

The facts applicable to this motion are simple.  Shop-Vac manufactures and markets wet/dry vacuums.  ¶ 15.[2]  Shop-Vac also manufactures and packages a wet/dry vacuum to Lowe's specifications with a special blue trade dress that is sold only at Lowe's.  ¶¶ 16-17, 56-57.  Shop-Vac prominently labels the box for each of its wet/dry vacuums, both its own and the Lowe's branded wet/dry vacuums, with representations concerning the peak horsepower and tank capacity of each wet/dry vacuum.  ¶¶ 2, 59.

---

[1]   Manoj Hastak & Dennis Murphy, *Effects of a Bristol Windows Advertisement with an "Up To" Savings Claim on Consumer Take-Away and Beliefs*, Report Submitted to Federal Trade Commission (2012) ("FTC Report").

[2]   All references to "¶ _" are to the Plaintiffs' Consolidated Amended Complaint ("CAC").

Plaintiffs' independent laboratory testing has demonstrated that consumers could ***never*** achieve anywhere near the peak horsepower represented on the labels in operation of the device.   ¶¶ 19-43.   In addition, testing has shown that consumers only achieve a negligible percentage -- as low as 2.7% -- of the labeled horsepower with no load and 1% to 10.3% at 90% operational load.  ¶ 42.   As such, Defendants' peak horsepower representations are alleged to have misled consumers as to the actual capabilities of the vacuums.

Similarly, Plaintiffs' testing has demonstrated that a consumer can ***never*** achieve the tank capacity or size represented on the box in actual operation.   Not only does the motor protrude into the tank, but an automatic shutoff feature causes the vacuum to stop working when the tanks reach between 47% and 83% of stated capacity (an average of 64%).  ¶¶ 52-53.   Even when the capacity of the tanks is measured when the vacuums are not in use and the automatic shutoff mechanism is disabled, only one of the test vacuums was able to reach its advertised capacity.  ¶ 54.

Plaintiff McMichael is a resident of Florida (¶ 10), Plaintiff Harbut is a resident of Missouri (¶ 11), Plaintiffs Reid and Smallwood are residents of California (¶¶ 12-13), and Plaintiff Scott is a resident of Illinois.  ¶ 14.[3]   Each of

---

[3]  Defendants "assume" that certain plaintiffs "are no longer pursuing their claims against Defendants."   Mem. of Law in Supp. of Defs.' Mot. To Dismiss the Consolidated Amended Complaint ("MTD") at 5 n.1.   Defendants' assumption is

the Plaintiffs purchased a Shop-Vac wet/dry vacuum in their state of residency, except Smallwood, who purchased his Shop-Vac in Arizona.  ¶¶ 10-14.  Plaintiffs McMichael, Harbut and Scott purchased their Shop-Vac vacuum from Lowe's.  ¶¶ 10-11, 14.   Each of the Plaintiffs read and relied upon the representations concerning peak horsepower and tank capacity in deciding to purchase their Shop-Vac vacuum.  ¶¶ 10-14.

## III.   ARGUMENT

### A.   Standards Applicable To This Motion

#### 1.   The General Standards On A Motion To Dismiss

On a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations and citations omitted).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

---

incorrect.  Those plaintiffs are class members whose claims are tolled by operation of law, and have not given up anything.  Like any other class member, they will be represented by interim class counsel until such time as a class is defined which excludes them or they elect to opt out and pursue their individual claims.

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (2007) (internal quotations and citations omitted). "The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: stating … a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal quotations citations omitted).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).

### 2.    The Applicability And Standards Of Rule 9(b)

Defendants argue that Plaintiffs' claims based upon the various state law consumer protection statutes are subject to the particularity requirements of Rule

9(b).  In fact, however, at least Ninth Circuit courts have recognized that Rule 9(b) does not apply to claims under where Plaintiffs "merely allege that the representations were likely to deceive and that Plaintiffs were damaged by the deception; they make no effort to allege common law fraud elements such as intent to deceive or any overarching fraudulent scheme to defraud the individual Plaintiffs or the public."  *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008); *see also Somerville v. Stryker Orthopaedics*, No. C 08-02443, 2009 U.S. Dist. LEXIS 80753, at *6 (N.D. Cal. Sept. 4, 2009); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009).  In the present case, Plaintiffs have not alleged either fraud or an "overall fraudulent scheme," therefore the notice pleading standards of Rule 8 apply to Plaintiffs' claims under the consumer protection statutes, as well as their breach of warranty and Magnusson-Moss Warranty Act claims.  However, even if they did apply, Plaintiffs have met the standards of Rule 9(b).

### 3.   A Choice Of Law Analysis Is Premature

A choice of law analysis is both unnecessary and premature at this stage of the litigation.[4]  First, as admitted by Defendants, the states in which each of the

---

[4]   When deciding a matter involving diversity jurisdiction, federal courts must apply the "forum state's" substantive law to a plaintiff's state law claims. *Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir. 1991).  The forum state in an MDL proceeding is the district court where the action was originally filed, and that state's choice of law rules must therefore be applied. *See In re Ski*

Plaintiffs reside and/or purchased their Shop-Vac have adopted substantially similar consumer protection statutes.  MTD, p.14, citing Cal. Bus. & Prof. Code § 17200; Fla. Stat. Ann. § 501.204; Ariz. Rev. Stat. § 44-1522; 815 ILCS 505/2; Mo. Rev. Stat. § 407.020.[5]  Defendants further admit that a "reasonable consumer" standard should be applied to determine whether a consumer is likely to be misled under each of the respective consumer protection statutes.  MTD, p. 16, citing *Haskell v. Time Warner, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).[6] Moreover, with respect to the breach of warranty claims, each of the Plaintiffs' states of residence or purchase have adopted the Uniform Commercial Code provisions with respect to warranty claims.  *Compare* U.C.C. § 2-313, *with*  Fla.

---

*Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002); *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 606 n.20 (S.D.N.Y. 2001) ("When considering questions of state law the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.") (citations omitted).  The claims of each of the plaintiffs were originally filed in the District of New Jersey, and New Jersey choice of law rules therefore apply.

[5]  As Defendants point out (MTD at 14 fn. 9) a typographical error inadvertently omitted Missouri's consumer protection statute from Plaintiffs' list of state statutes.  Plaintiffs intend to rely on Missouri's Merchandising Practices Act, Mo. Rev. Stat. sec. 407.010 et seq.

[6]  Under the Illinois Consumer Fraud Act, courts have applied a "reasonable" consumer, or in the case of insurance companies, a "reasonable policyholder" standard. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 842 (Ill. 2005) (citations omitted); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002) (applying "reasonable consumer" under several state laws including Florida) (citation omitted).  *See also In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 907 (E.D. Pa. 2012) (reasonable consumer standard applies under N.Y. Gen. Bus. Law § 349)

Stat. § 672.313; Mo. Rev. Stat. § 400.2-313; Cal. Com. Code § 2313; 810 ILCS 5/2-313; Ariz. Rev. Stat. § 47-2313.

As the Third Circuit has noted, choice of law analysis is "fact-intensive: 'Each choice-of-law case presents its own unique combination of facts -- the parties' residence, the place and type of occurrence and the specific set of governmental interest -- that influence the resolution of the choice-of-law issue presented.'" *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007) (citation omitted). Consequently, it has been recognized by district courts in this Circuit that a choice of law analysis is unnecessary at this pleading stage and is more properly addressed at class certification. *See e.g., Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486 (D.N.J. 2009) (relying upon the 3rd Circuit's holding in *Warriner* in deferring choice of law); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004) (deferring choice of law analysis to class certification stage). As explained by one court, "Plaintiffs have drawn the connection between the statutes and defendant's offending conduct. This is sufficient for defendant and the Court to draw inferences that the elements [of each state's statute] exist." *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, 701 F. Supp. 2d 356, 378-79 (E.D.N.Y. 2010) (denying motion to dismiss a nearly identical 50-state claim, stating: "Plaintiffs have outlined only the broad contours of the state law causes of action for states other than those in which they reside.

That, however, is sufficient at this preliminary stage …."); *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 836 (S.D. Ohio 2003) (denying motion to dismiss a nearly identical 50-state claim, stating: "the statutes alleged to have been violated generally prohibit unfair, deceptive, and fraudulent business practices in a manner similar to Ohio Rev. Code sections 1345.02 and 1345.03").

**B.     Whether A Reasonable Consumer Might Be Misled Is A Question Of Fact**

Whether a given representation has the capacity to mislead a reasonable consumer is a question of fact, not suited for decision on a motion to dismiss. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) ("[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides'" and therefore usually cannot be resolved through a motion to dismiss) (citations omitted); *see also Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. App. Div. 2002) (reversing dismissal at the pleading stage and concluding that "[w]hether the advertisements contained material misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact."); *Bollino v. Hitzig*, No. 22913/99, 2001 N.Y. Misc. LEXIS 1106, at *7 (Sup. Ct. Dec. 7, 2001) (denying dismissal and holding "[w]hether defendants'

representations would have mislead a reasonable consumer acting reasonably under the circumstances is a question of fact.") (citations omitted). [7]

Indeed, a determination of whether specific representations have the capacity to mislead a reasonable consumer is rarely even susceptible to summary judgment. *See Roberts v. Fleet Bank*, 342 F.3d 260, 262 (3d Cir. 2003) (reversing summary judgment due to "a material question of fact" as to whether "solicitation materials could cause a reasonable consumer to be confused about the temporal quality of the offer."); *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 796 F. Supp. 2d 1341, 1353 (M.D. Fla. 2011) (summary judgment not proper because "a material issue of fact remains as to whether BellSouth's  bills were likely to mislead a reasonable consumer" under Florida law); *Deen v. New Sch. Univ.*, No. 05 Civ. 7174, 2007 U.S. Dist. LEXIS 25295, at *19-20 (S.D.N.Y. Mar. 27, 2007) (summary judgment not appropriate because "whether the catalogue would be likely to mislead a reasonable consumer or, alternatively, whether it fully disclosed New School's right to change the program's identity" is a "question of fact."); *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786, 826 (W.D. Tenn. 2011)

---

[7]  *See also Naylor Med. Sales & Rentals, Inc. v. Invacare Continuing Care, Inc.*, Nos. 11-5820, 11-5844, 11-6044, 11-6050, 2013 U.S. App. LEXIS 5684, at *30 (6th Cir. Mar. 18, 2013) ("[w]hether a particular act is unfair or deceptive is a question of fact") (internal quotations and citations omitted).

(summary judgment denied because question of whether a "practice or omission [is] likely to mislead a reasonable consumer," or "whether a particular act is unfair or deceptive is a question of fact.") (internal quotations and citations omitted).

Contrary to Defendants' arguments, it is only in rare and extreme cases where courts have held at the pleading stage that a reasonable consumer could not be misled by the representations as a matter of law.  In essence, a court must find that Plaintiffs' allegations rest on a "strained and unjustified interpretation" of defendants' advertising to warrant dismissal at this stage.  *O'Shea v. Epsom Am., Inc.*, No. CV 09-8063, 2011 U.S. Dist. LEXIS 85273, at *31 (C.D. Cal. July 29, 2011) (internal quotations and citations omitted) (denying summary judgment).  In these cases, consumers would have to infer unlikely facts from the alleged representations, not, as here, only take the misrepresentations at their explicit face value.

For example, in *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 252 (3d Cir. 2011), the Third Circuit held as a matter of law that no reasonable consumer could be misled to believe that Havana Club Rum came from Cuba where "[t]he label clearly states on the front that the liquor is 'Puerto Rican Rum' and, on the back, that it is 'distilled and crafted in Puerto Rico.'"  In *Werbel v. Pepsico, Inc.*, No. C 09-04456, 2010 US Dist. LEXIS 76289, at *10 (N.D. Cal. July 2, 2010), the Court held as a matter of law that Cap'n Crunch Crunchberries

cereal would not mislead reasonable consumers into thinking they derive nutritional value from fruit since "[t]hese cereal balls do not even remotely resemble any naturally occurring fruit of any kind."  Similarly, in *McKinniss v. Kellogg, USA*, No. CV 07-2611, 2007 U.S. Dist. LEXIS 96106, at *12 (C.D. Cal. Sept. 19, 2007), the Court dismissed similar claims regarding "Froot Loops" holding that as a matter of law t no reasonable consumer would be misled to believe this "Froot" cereal contained real fruit since they "are brightly colored rings, which in no way resemble any currently known fruit."  *See also Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1303-04 (2011) (no reasonable consumer could be misled by a single green drop on a bottle of Fiji water to conclude that the product was environmentally superior to other waters and endorsed by an environmental organization.)

Thus, in order to grant this motion, the Court would have to hold that no reasonable consumer would believe that "peak horsepower" might mean that the vacuum could actually operate at that horsepower, for any period of time, or that a five gallon tank might actually hold something close to five gallons while the vacuum is in use.  Common sense – as well as applicable case law – instructs us otherwise.

Since Shop-Vac's quantitative and measurable misrepresentations are not in the same category as "Froot Loops" or Fiji Water's green drop, Defendants' motion must be denied.

**C.    The CAC States Claims Under The Consumer Protection Laws**

**1.    Defendants' Representations Regarding Peak Horsepower Could Deceive A Reasonable Consumer**

The CAC alleges – in detail – that Shop-Vac vacuums, in actual use, produced a range of a negligible percentage to 2.7% of the advertised peak horsepower with no load and 1% to 10.3% at 90% load.  ¶ 42.  The CAC alleges that the vacuums never operate at their represented peak horsepower, for any period of time. §38.  Since Defendants take issue with the independent laboratory testing and results concerning "air horsepower,"[8] the results in the complaint further demonstrate that in terms of traditional "horsepower," Shop-Vac vacuums, in actual use, produced a range of 17% to 40% of the advertised peak horsepower under full load and 26% to 51% when under no load.  ¶ 39.  Nevertheless, and without explanation, Defendants argue that "a reasonable consumer could not mistake a vacuum's horsepower (peak or otherwise) as directly representing the vacuum's 'ability to do work.'"   MTD at 18 (citations omitted).   Actually,

---

[8]   The description of air horsepower serves to demonstrate just how egregious Shop-Vac's misrepresentations are.

horsepower (peak or otherwise) is ***exactly*** a measurement of a motor's ability to do work.

Indeed, courts have recognized that quantitative representations, including claims of operation "up to" a certain level, are likely to mislead consumers where the stated level cannot be achieved. *See Walters v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1034 (N.D. Cal. 2010) (plaintiffs unable to obtain promised "download speeds of up to 1.2 Mbps, with typical speeds about 700 Kbps to 800 Kbps during peak times") (internal quotations and citations omitted); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (certifying Rule 23 class action where "the central predominating question is whether Defendants' marketing statements about 'up to 6X BETTER ABSORPTION' or 'effectiveness' [are] materially misleading"); *Thompson Med. Co., Inc. v. Ciba-Geigy Corp.*, 643 F. Supp. 1190, 1200 (S.D.N.Y. 1986) (enjoining defendant from representing that "thousands of consumers have reported to us that they lost up to 5 lbs. the first week" since, although this "may be literally true," it leads "consumers [to] believe they will lose 5 lbs. or more" making the claim "unquestionably false and misleading").

In addition, recently the FTC warned marketers to avoid the use of misleading "up to" claims, akin to Defendants "peak" claims here. In an FTC-commissioned study it was determined that when marketers use the phrase "up to"

in claims about their products, many consumers are likely to believe that they will achieve the maximum "up to" results.[9]   The FTC has also determined that such false claims are violative of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).   *See e.g.*, *In Re Long Fence and Home, LLLP*, 77 Fed. Reg. 12588 (Mar. 1, 2012).   Such a misrepresentation to consumers in violation of the FTC Act necessarily violates state consumer protection laws.

Here, Defendants' "peak" claims are statements that could fairly be understood to constitute an affirmation or representation that the Shop-Vac vacuums possess the ability to reach and/or operate at the "peak horsepower" as well as the maximum capacity stated by Defendants on the packaging and advertising.   Accordingly, they would be misleading to a reasonable consumer.

## 2.   Shop-Vac's Peak Horsepower Disclaimer Is Ineffective

Defendants point to a disclaimer – obscurely contained only on their website, but not on the box, the product, or other materials presented to consumers containing the false horsepower representations – that states "[p]eak horsepower is the maximum output horsepower of a motor determined from a laboratory dynamometer test."   MTD at 19 (citations omitted).   First, for a disclaimer to be effective, it must be at least as prominent as the representation for which it seeks to provide a caveat – and the subsequent reference on a page on Shop-Vac's website

_____

[9]  FTC Report at 17-18.

does not suffice to dispel the consumer-facing misrepresentations on the product, its packaging, and other consumer-facing marketing materials. *Thacker v. Menard, Inc.*, 105 F.3d 382, 383 (7th Cir. 1997); *Duran v. Leslie Oldsmobile, Inc.*, 594 N.E.2d 1355 (Ill. App. Ct. 1992) (inconspicuous disclaimers cannot defeat consumer claims).  Second, a reasonable consumer would not necessarily – or even likely – understand that "peak horsepower" refers to the results of an obscure test in a lab, as opposed to, perhaps, the maximum horsepower at which the vacuum could function for some material length of time.  Indeed, a reasonable consumer is not likely to even know what a dynamometer test is.

Under remarkably similar facts, Toshiba and Best Buy represented that a computer had a battery life "up to 3.32 hours" even though this battery life "could never be achieved when the [Laptop] was used in normal, practical, and realistic circumstances."  *Herron v. Best Buy Co.*, No. 2:12-cv-02103-GEB-JFM, 2013 U.S. Dist. LEXIS 20440, at *2 (E.D. Cal. Feb. 14, 2013) (internal quotations and citations omitted).  Toshiba moved to dismiss claiming that it used the industry standard "MobileMark 2007" benchmark test and accurately reported the results. *Id.* at *3.  Nevertheless, the Court held that, at a minimum, a question of fact regarding plaintiff's belief that he would obtain 3.32 hours of battery life prevented the Court from dismissing the complaint.  The fact that Shop-Vac performed a dynamometer test and perhaps accurately reported the results is no more

determinative of a reasonable Shop-Vac purchaser's expectations than the Toshiba test was for the purchaser of a computer.

Third, when it suits Defendants' purposes, Defendants claim Plaintiffs never saw Shop-Vac's website (MTD, pp. 2, 44) and therefore could not have seen the disclaimer in any event.

Fourth, even the disclaimer itself is misleading; the term "output" sounds like a measurement of power, or work, or some capability of the motor.  But Shop-Vac's "peak" measurement has nothing to do with the actual output of the vacuum's motor.

Fifth, it is black letter law that a company cannot make a false or misleading representation in one place and then cure it by placing an explanation or the truth somewhere else. *Williams*, 552 F.3d at 939.  In *Williams*, plaintiffs alleged that the labeling of Gerber's "Fruit Juice Snacks" was misleading because it marketed the juice as nutritious and featured pictures of fruit on the label.  The district court dismissed the case, finding that reasonable consumers could not be misled because the ingredient list clearly showed that the juice contained none of the pictured fruits and that the two largest ingredients were sugar and corn syrup. The Ninth Circuit reversed holding that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth

from the ingredient list in small print on the side of the box." *Id.*  The Ninth Circuit

went on to explain:

> We do not think that the FDA requires an ingredient list so that
> manufacturers can mislead consumers and then rely on the ingredient
> list to correct those misinterpretations and provide a shield for liability
> for the deception. Instead, reasonable consumers expect that the
> ingredient list contains more detailed information about the product
> that confirms other representations on the packaging.

*Id.* at 939-40.

Accordingly, to hold otherwise would give manufacturers a license to lie so

long as the truth was hidden elsewhere.

### 3. Defendants' Representations Regarding Tank Capacity Could Deceive A Reasonable Consumer

Defendants' tank capacity representations on the Shop-Vac and Lowe's

Shop-Vac boxes also have the capability to mislead a reasonable consumer.  A

reasonable consumer might likely – and quite naturally -- understand that

representation to relate to the operation of the vacuum, and would not likely

understand that, for example, "3.0 GALL." refers to the tank size when the vacuum

is disassembled and the tank is just sitting there by itself and in an inoperable state.

Defendants attempt to argue a distinction between "tank size" and "tank

capacity" and claims that it makes no representations regarding "tank capacity" on

its box.  This is a distinction without any practical difference.  The CAC uses the

terms interchangeably, and in fact the term "tank size" is not used on the box

either.   Whether termed capacity or size, the CAC alleges that independent laboratory testing has found the "gallon" representation to be false.   ¶¶ 52-54.

Just as with the disclaimer concerning the dynamometer testing, Defendants' general statement that "capacity would vary with use" does not absolve Shop-Vac of its tank size misrepresentations.   As explained above, manufacturers cannot mislead consumers and then rely on disclaimers or fine print, whether on their website or the packaging itself "to correct those misinterpretations and provide a shield for liability for the deception."   *Williams*, 552 F.3d at 939.   In this instance, no amount of further information can change the fact that Shop-Vacs and Lowe's Shop-Vacs can never be used to the represented gallon capacity, but at most between 47% and 83% of stated capacity (an average of 64%).   ¶ 52.   While a reasonable consumer might recognize that the capacity would vary based upon use, they would have no reason to believe that the vacuum could never reach the capacity stated on the box.

### 4.      Defendants' "Everyone Does It" Defense Fails

Defendants argue that the representations concerning peak horsepower could not be misleading because the misrepresentations are an industry standard practice. This argument ignores the plain allegations of the CAC as well as governing law. Contrary to Defendants' claim, Plaintiffs do not concede that this is an accepted industry standard.   To the contrary, the CAC alleges that this practice is criticized

20

even by other members of the industry.  ¶ 33.  Moreover, Courts have rejected this "everybody does it" argument.  *See Best Buy Co.*, 2013 U.S. Dist. LEXIS 20440, at *3 (court denied motion to dismiss where computer manufacturer Toshiba claimed that it used industry standard benchmark test for battery life representations and accurately reported the results).  Similarly, the fact that Shop-Vac and some of its competitors use the same tests and make similar misrepresentations does not permit dismissal.  An effort to make concerted misrepresentations to consumers does not change the falsity of the statements, but merely represents a conspiracy to mislead. *See e.g., In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997 (E.D. Wis. 2010) (settlement of action alleging conspiracy to misrepresent horsepower by reference to incorrect industry standards).

Even if the practice were industry-wide however, consumers cannot even compare vacuums accurately with these misrepresentations. Not only is the horsepower misleading as an absolute measure, but is also misleading as a relative measure between the different models.   For example, a reasonable consumer would expect that a 5.5 "peak horsepower" vacuum would have greater power and ability to perform its job than a 3.5 "peak horsepower" vacuum.  In fact, Plaintiffs' tests have demonstrated that the 5.5 "peak horsepower" model has ***less power*** operating at full load than a 3.5 "peak horsepower" model. ¶ 42.  Such misleading

horsepower claims on the boxes lead consumers to purchase higher horsepower, and correspondingly higher priced, wet/dry vacuum models without knowing they may actually have lower horsepower in actual operation.

Accordingly, the argument that even if the horsepower numbers are wildly exaggerated, consumers could still use the numbers to differentiate among models must fail as well.

### D. Plaintiffs' Consumer Claims Are Stated With Sufficient Particularity

Even if Rule 9(b) were applied in this action, the CAC satisfies the applicable standards. Rule 9(b) provides that "in all averments of fraud or mistake, [the] circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b), interpretive note III (A)(10). The Third Circuit has recognized "[t]he purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414, n.2 (3d Cir. 2003) (citation omitted). Thus, "Rule 9(b) exists to insure adequate notice so that defendants can intelligently respond." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 233 (3d Cir. 2011) (citing *Morganroth*, 331 F.3d at 414 n.2). As a result, even if Rule 9(b) were applied, the Third Circuit has recognized that Plaintiffs satisfy this standard by pleading the "'who, what, when, where, and how' of the events at issue." *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007) (citation

omitted).  The CAC pleads each of these requirements with sufficient detail to put Defendants on notice of the claims.

The allegations are not complicated.   The CAC alleges "the who," Defendants Shop-Vac and Lowe's (¶¶ 1, 4-7, 15-17, 59); "the what," the precise representations at issue: the horsepower and tank capacity of Shop-Vac and Lowe's Shop-Vac wet/dry vacuums (¶¶ 2, 4-7, 59); "the when," at the time of Plaintiffs' purchases (¶¶ 2, 10-14, 59); "the where," on boxes for Shop-Vac and Lowe's Shop-Vac wet/dry vacuums (¶¶ 2, 59); and "the how" or "the why," the representations have been demonstrated as false by independent laboratory testing and a summary of the results thereof are set forth in the CAC.  (¶¶ 5-7, 36-43, 52-54).

Should the Court, however, determine that further detail or particularity is required, Plaintiffs hereby respectfully request leave to amend.  *See Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (leave to "amend pleadings should be liberally granted.").

### E.    The CAC Alleges Injury In Fact

As a result of Defendants' misleading labeling regarding the horsepower and tank capacity of the Shop-Vac and Lowe's Shop-Vac wet/dry vacuums, Plaintiffs were induced to purchase wet/dry vacuums that could never perform as represented.  ¶¶ 10-14.  Moreover, if Plaintiffs and members of the class had been

aware of these facts, they would not have purchased the vacuums.   ¶ 146.

Moreover, they have received less than they bargained for, having received less

powerful and lower capacity vacuums than they were promised. ¶ 6-7.  That is a

cognizable injury sufficient to state a claim.[10]

Defendants' own authorities recognize that "a plaintiff is injured and has

suffered a cognizable and ascertainable loss when he receives less than what he

was promised." *In re Hydroxycut Mktg. & Sales Practices Litig.,* 801 F. Supp. 2d

993, 1003 (S.D. Cal. 2011) (finding sufficient injury in fact to assert claims for

violation of Arizona, California, and Florida consumer protection laws) (citing

*Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 501 (D.N.J. 2009)).[11]  *See also*

*Union Ink*, 801 A.2d at 379 ("An ascertainable loss occurs when a consumer

receives less than what was promised.") (citations omitted).  As best explained by

---

[10]   Most of the rest of Defendants' arguments (mainly concerning damages and warranty claims) are somewhat repetitive in that they depend upon the Court holding that as a matter of law a reasonable consumer could not be deceived by Defendants' misrepresentations.

[11] Under Florida's Deceptive and Unfair Trade Practices Act, recoverable "actual damages" are defined as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)). Under Missouri's Merchandising Practices Act, a plaintiff can allege injury in fact by alleging the product "was worth less than the product as represented, [which states] an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule." *Plubell v. Merck & Co.*, 289 S.W.3d 707, 715 (Mo. Ct. App. 2009).

the California Supreme Court, "[t]here are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset Corp. v. Superior Court of Orange Cnty.*, 246 P.3d 877, 885-86 (Cal. 2011).

Specifically, in *Kwikset* the complaint alleged "1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise." *Id.* at 327-28. The California Supreme Court held that these allegations established injury in fact. The Court explained: "Simply stated: labels matter. The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source." *Id.* at 328 (citation omitted). Consequently, "[f]or each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the

consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Id.* at 329.

The labels here are every bit as important as the labeling of the locks – even more so. The misrepresentations on the box for Shop-Vacs and Lowe's Shop-Vacs relate directly to actual performance, and value of the product, attributes which are more likely to influence a consumer's purchase than a product's country of origin. Accordingly, Plaintiffs' allegations that (a) they would not have purchased the Shop-Vac wet/dry vacuums on the same terms if the true facts concerning their horsepower and tank capacity had been known; (b) they paid an unfair price premium due to the misrepresentations concerning horsepower and tank capacity; and (c) the vacuums did not perform as promised (¶ 146) properly allege injury in fact.

### F.    Plaintiffs Have Stated Claims For Breach Of Express Warranty

Whether a given statement constitutes an express warranty is, once again, a question of fact. *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2008 U.S. Dist. LEXIS 73690, at *13-14 (D.N.J. Sept. 3, 2008) (citing cases); *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) ("[W]hether seller affirmed a fact amounting to an express warranty is a question of fact.") (citing *Royal Bus. Machs. Inc. v. Lorraine Corp.*, 633 F.2d 34,

43 (7th Cir.1980)); *see also Putensen v. Clay Adams, Inc.*, 12 Cal. App. 3d 1062, 1080 (1970) ("The issue normally is one of fact.") (quoting cmt. 3 to section 2313 of the U.C.C.).

The Third Circuit has recognized a strong presumption that alleged misrepresentations of fact form part of the benefit of the bargain, sufficient to satisfy an express warranty claim. *See Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 568 (3d Cir. 1990), *rev'd in part on other grounds*, 505 U.S. 504 (1992). In doing so, the Third Circuit recognized that, "once the buyer has become aware of the affirmation of fact or promise, the statements are presumed to be part of the 'basis of the bargain' unless the defendant, by 'clear affirmative proof,'" shows that the buyer "knew that the affirmation of fact or promise was untrue." *Id.* Thus, this issue cannot be resolved on Defendants' Motion to Dismiss. *See In Re Ford Motor Co.*, 2008 U.S. Dist. LEXIS 73690, at *14-15.

Nonetheless, Plaintiffs have stated a claim for breach of express warranty. Each of Plaintiff's purchases was made in a state that has adopted the Uniform Commercial Code provisions for warranty claims. *Compare* U.C.C. § 2-313, *with* Fla. Stat. § 672.313; Mo. Rev. Stat. § 400.2-313; Cal. Com. Code § 2313; 810 ILCS 5/2-313; Ariz. Rev. Stat. § 47-2313. These laws impose the same three elements for a breach of express warranty.

"To prevail on a claim for breach of express warranty, a plaintiff must show that '(1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached.'" *Allen v. Hylands, Inc.*, No. CV 12-01150, 2012 U.S. Dist. LEXIS 61606, at *7-8 (C.D. Cal. May 2, 2012) (quoting *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)); *see also* N.Y. U.C.C. § 2-313. "Courts liberally construe sellers' affirmations of quality in favor of injured consumers." *Allen*, 2012 U.S. Dist. LEXIS 61606, at *8 (citation omitted). *See also New Hope Pipe Liners, LLC v. Composites One, LLC*, No. 09-3222, 2009 U.S. Dist. LEXIS 111217, at *14-15 (D.N.J. Nov. 30, 2009) (indicating that in order to plead a claim for breach of express warranty, a plaintiff must set forth facts sufficient to support a plausible inference that: (1) "Defendant(s) made an affirmation, promise, or description;" (2) "that became part of the basis of the bargain;" and (3) "the goods ultimately did not conform to the affirmation, promise, or description."); *see also* MTD at 29-30.

As to the first element of a successful warranty, Defendants' position seems to be that Plaintiffs either do not allege any affirmation of fact or promise made by Defendants to buyers of the Shop-Vac wet/dry vacuums, and/or that the

affirmations of fact and promises they made are true[12] (contrary to Plaintiffs'
allegations), and that the purchasers of the vacuums misunderstood those
affirmations and promises.  MTD at 29-31.

In the CAC, Plaintiffs make clear factual allegations about Defendants'
affirmations of facts and promises, and the falsity thereof.  *See e.g.,* ¶ 34
("Plaintiffs' tests demonstrate that Shop-Vac Vacuums are incapable of operating
at their represented 'peak horsepower' for any amount of time."); ¶ 52 ("Shop-
Vac's representations about the capacity of the vacuum tanks are misleading
because in actual operation the vacuums stop working, due to an automatic shut off
feature, when the tanks reach between 47% and 83% of stated capacity (an average

---

[12]  In support of Defendants' argument that its affirmations of fact and promises
regarding "peak horsepower" are truthfully stated, contrary to the specific factual
allegations in the operative CAC, Defendants make reference to prior and
inoperative pleadings.  Defendants Br. at 31-32 ("Indeed, counsel for Plaintiffs
conceded in earlier iterations of the complaint that Shop-Vac's vacuums actually
do reach their peak horsepower, even if only briefly.").  This is improper.
Defendants' motion is to dismiss the operative amended complaint.  An amended
complaint supersedes the original complaint and renders of no legal effect. *King v.
Dogan*, 31 F.3d. 344, 346 (5th Cir. 1994); *see also, Hairston v. N.C. Agric. &
Technical State Univ.*, No. 1:04CV1203, 2005 U.S. Dist. LEXIS 20442, at *3
(M.D.N.C. Aug. 5, 2005) ("it is black letter law that when the parties amend the
pleadings, the amended pleadings supersede the original pleadings.") (citing
*Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998) ("properly filed amended
complaint superseded original and was therefore the only effective complaint in the
case.")).  However, even if these pleadings were operative, Defendants would still
be incorrect.  A reasonable consumer might, and indeed ***would***, be deceived into
thinking that the vacuum might reach the stated peak horsepower in actual
operation, not only for a split second in a lab test.

of 64%).”);  ¶ 53 (“Plaintiffs’ expert tests have confirmed that Shop-Vac vacuums are incapable of reaching the advertised tank capacities.”); ¶ 87 (“Plaintiffs’ expert analysis has determined that the vacuums are incapable of operating at their stated ‘peak horsepower’ or ‘horsepower’ for any period of time.”).

Defendants further suggest that Plaintiffs misunderstood Defendants’ affirmations or promises regarding the peak horsepower and capacity of the Shop-Vac vacuums.  An express warranty can be created by “[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain,” or “[a]ny description of the goods which is made part of the basis of the bargain.”  N.J.S.A. § 12A:2-313.  It is not necessary to “use formal words such as ‘warrant’ or ‘guarantee’” to create an express warranty.  N.J.S.A. § 12A:2-313.  In practice, this means “[a] statement can amount to a warranty ... if it could fairly be understood ... to constitute an affirmation or representation that the [product] possesses a certain quality or capacity relating to future performance.”  *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993) (internal quotations and citations omitted) (applying New Jersey law).

Like they do with Plaintiffs’ consumer law claims, Defendants seeks to define consumers’ fair understanding of Defendants’ “peak horsepower” and capacity claims vis-à-vis inoperable disclaimers made elsewhere.  Defendants

contend that a statement on its website "explains that peak horsepower is determined from a laboratory dynamometer test," implying this somehow negates the falsity of Defendants' peak horsepower claims made in advertisements, marketing materials and advertisements (notably Defendants do not claim to make any statements about dynamometer tests in product packaging or labeling).  MTD at 31.  This is wrong.  "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this division on parol or extrinsic evidence (Section 2202) *negation or limitation is inoperative to the extent that such construction is unreasonable*." Cal. Com. Code § 2316 (emphasis added).

Indeed, a warranty disclaimer inconsistent with an express warranty is inoperative.  *Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*, 890 F.2d 108, 110, 113 (9th Cir. 1989) (finding that a disclaimer of warranties in a "printed form contract[ was] ineffective to avoid [prior] express warrant[ies]" where seller was alleged to have warranted that a computer would "put your inventory, receivables, and invoicing under complete control") (citations omitted); *see also Gladden v. Cadillac Motor Car Div., Gen. Motors Corp.*, 416 A.2d 394, 399 (N.J. 1980) ("The complete exclusion of express warranties is strongly disfavored in the UCC."). Here, the disclaimer in the on the website is neither "reasonable" nor "consistent."

Moreover, Plaintiffs cannot be expected to visit Shop-Vac's website to read such disclaimers while contemporaneously being exposed to Defendants misrepresentations on the product marketing materials while physically in a Lowe's retail location.   *See also supra* at § III. C. 2.   Moreover, and consistent with the basic U.C.C. principle that the substance of the parties' actual agreement is more meaningful than the form of the written contract, section 2-316(1) provides that a seller cannot make a statement of fact or promise in the negotiation, in advertising, or in writing, and then attempt to avoid the legal consequences by virtue of a contract disclaimer. See N.J.S.A. 2-316(1); *see generally Realmuto v. Straub Motors, Inc.*, 322 A.2d 440 (N.J. 1974).   Therefore, even clauses that **explicitly** purport to disclaim an express warranty are ineffective. *Petroleo Brasileiro, S.A., Petrobras v. Nalco Chem. Co.*, 784 F. Supp. 160, 164 (D.N.J. 1992) ("[a]n exclusion of express warranties is inoperative to the extent its terms are unreasonably inconsistent with the express warranties that are given") (citing *Gladden*, 416 A.2d at 399); *Realmuto*, 322 A.2d 440 (language in contract that buyer expressly agreed that seller and manufacturer made no express warranties was inoperative to disclaim express warranty that car had 30 day warranty and guaranteed to pass state inspection); *see also Consolidated Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F.2d 385 (9th Cir. 1983) (New York law); *USM Corp. v. Arthur D. Little  Sys., Inc.*, 546 N.E.2d 888 (Mass. App. Ct. 1989)

(express warranty in written agreement should be given effect even if its content overlaps with the content of an implied warranty disclaimed in the same written agreement); *Bowen v. Young*, 507 S.W.2d 600 (Tex. Civ. App. 1974) (disclaimer on sales contract ineffective to overcome seller's express warranties that mobile home would conform to model); *Murray v. Holiday Rambler, Inc.*, 265 N.W.2d 513 (Wis. 1978) (disclaimer of all express warranties ineffective when same document gave express warranty against defects).

Defendants also contend that while the packaging and marketing materials of each vacuum indicates that it is equipped with a tank of a certain size, the packaging and marketing materials also clearly state the vacuums' "[w]orking capacity may vary by use." MTD at 32-33. That argument fails for the same reason. *See also supra* at § III. C. 3.

Defendants do not address the second element of a breach of express warranty claim, which requires the plaintiff to allege the warranty became part of the basis of the bargain. Here, each Plaintiff alleges they relied on the Defendants' labels and advertising, and that the labels were part of the "basis of the bargain" because he would not have purchased the refrigerator if he had known the vacuums could not meet the peak horsepower of maximum capacity advertised. *See e.g.,* ¶ 82. Such allegations sufficiently allege an express warranty because they constitute an inducement to the Plaintiffs to use the Defendants' products. *See*

*Knipe v. Smithkline Beecham*, 583 F. Supp. 2d 602, 625 (E.D. Pa. 2008); *Viking Yacht Co. v. Composites One LLC,* 496 F. Supp. 2d 462, 469-70 (D.N.J. 2007) (express warranty sufficiently pleaded where plaintiffs alleged that defendant's language in product bulletin induced them to use product);   *Henningsen v. Bloomfield Motors, Inc.,* 161 A.2d 69, 76 (N.J. 1960) ("Under the broad terms of the Uniform Sale of Goods Law any affirmation of fact relating to the goods is an express warranty if the natural tendency of the statement is to induce the buyer to make the purchase.") (citation omitted).

With respect to the third express warranty element, that the goods ultimately did not conform to the affirmation, promise, or description, the Complaint certainly makes that allegation.  *See e.g.*, ¶ 6 ("Under Plaintiffs' tests, Shop Vac wet/dry vacuums were only able to generate a small fraction [of] the represented horsepower."); ¶ 7 ("In addition, under Plaintiffs' tests, the vacuums' tank capacity was only an average of 64% as large as advertised."); ¶ 83 ("Defendants breached their express warranties by selling the Shop-Vac wet/dry vacuums with a motor that, even under ideal conditions, cannot operate anywhere near the stated peak horsepower and with a tank that has a capacity which is significantly less than represented.").  These allegations, which must be taken as true and construed in

Plaintiffs' favor, are sufficient to state a claim that the label is an express warranty.[13]

### G.   McMichael And Harbut Are Not Required To Provide Notice To Maintain Their Warranty Claims

Defendants claim that the warranty claims of McMichael and Harbut are subject to dismissal for failure to individually provide Defendants with notice of their breach.   Defendants are incorrect on two distinct grounds.   First, it is undisputed that such notice had previously been provided by other class representatives on behalf of all consumers similarly situated, and the representative nature of class action litigation under Rule 23 allows a class representatives' notice to suffice on behalf of all other class members.   Second, and no less importantly,

---

[13]   *See also L.S. Heath & Son, Inc.*, 9 F.3d at 570 (finding AT&T created an express warranty when it represented that its "complete[ly] intregated [sic] data processing and voice/data communications network [will] satisfy all your aforementioned objectives" and refusing to enforce a subsequent disclaimer similar to Whirlpool's Limited Warranty) (citation omitted); *Cipollone v. Liggett Grp., Inc.*, 683 F. Supp. 1487, 1490-91, 1497 (D.N.J. 1988) (holding advertisements concerning the health effects of cigarettes created an express warranty); *rev'd on other grounds*, 893 F.2d 541, 574 (3d Cir. 1990) ("The seller may be liable if its representation regarding the goods takes the form of newspaper, magazine, radio or television advertisements."); *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 958 (N.D. Ill. 2007) (holding representations made on a corporate website regarding the nutritional content of McDonald's potato products were written warranties); *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1341-43 (S.D. Fla. 2009) (holding representations on packaging concerning chewing gum's ability to kill germs was a written warranty); *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187, 193-94 (N.Y. App. Div. 1992) (holding an "inspection checklist" issued by a motor home retailer was a written warranty); *Marine Midland Bank v. Carroll*, 98 A.D.2d 516, 520 (N.Y. App. Div. 1984) (finding that an "inspection form" of a motor home was a written warranty under the Magnuson-Moss Act).

the notice requirement in the consumer context has been eliminated absent a showing of prejudice to the seller, and since no prejudice can exist, this issue serves as no bar to the maintenance of these claims.

There is an applicable exception to the notice requirement where the defendant already is aware of the alleged defect and/or has learned of it through other sources of information, and the complaint may serve as notice in certain cases. *See, e.g., Connick v. Suzuki Motor Co., Ltd.*, 625 N.E.2d 584 (Ill. 1996); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859 (Ill. App. Ct. 1997). Direct pre-suit notice of a breach of warranty claim is not required when the seller has actual notice of the defect in a particular product. *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953 (N.D. Ill. 2007).

Similarly, it is well established that notice need not take any specific form and oral notice is sufficient. *See, e.g., In re Empire Pac. Indus., Inc.*, 71 B.R. 500 (Bankr. D. Or. 1987) (door buyer's oral notification of defects in doors to seller's representative was sufficient under the U.C.C. provision enacted in Oregon); *Oregon Lumber Co. v. Dwyer Overseas Timber Prods. Co.*, 571 P.2d 884 (Or. 1977) (phone call was sufficient notice); *Computer Strategies, Inc. v. Commodore Bus. Machs., Inc.*, 105 A.D.2d 167 (N.Y. Sup. Ct. 2d Dep't 1984). A number of plaintiffs herein have expressly and sufficiently pleaded notice. Defendants, however, fail to mention any of these plaintiffs and the corresponding notice given

36

to them.  And, importantly, the filing of the complaint can serve as notice.  *See Cipollone v. Liggett Group, Inc.*, 683 F. Supp. 1487, 1498 (D.N.J. 1988) (denying Defendant's motion to dismiss where Plaintiff's only notice was the filing of a complaint), *rev'd on other grounds*, 893 F.2d 541 (3d Cir. 1990), *rev'd in part on other grounds and aff'd in part on other grounds*, 505 U.S. 504 (1992).

Defendants rely upon inapposite commercial cases, in foreign jurisdictions, involving commercial transactions to support their arguments regarding notice. The standard to be applied in this consumer case however, is far different.  It has been recognized within the U.C.C. commentary itself, as well as the courts, that, "'a reasonable time' for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." U.C.C. § 2-607 cmt. 4.  In other words, this provision is designed not as a loophole for a manufacturer to escape liability for wrongful acts against less sophisticated consumers, but rather to give a good faith seller an opportunity to cure and mitigate a defect of which it was not aware.

Based upon this understanding of the purpose of the statute, "[c]ourts have interpreted this section as implying a requirement that the defendant be prejudiced by the lack of notice." *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 552 (D.N.J. 1998) (citing *Cipollone*, 683 F. Supp. at 1498 n. 14 ("the court notes

that whether defendant was prejudiced by the lack of notice is also a relevant consideration"); *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 298 (3d Cir. 1961) (one of the factors to be considered is whether the delay in giving notice or its form prejudiced the seller)).  Therefore, in a consumer context such as this one, a Court should look at whether defendants' claims to be prejudiced are the result of any such delay or lack of notice.  *Boyes*, 27 F. Supp. 2d at 552 ("even if the plaintiffs failed to complain within a 'reasonable time,' the defendants have not alleged any prejudice from such delay. For this reason the claim that [defendant] is not liable is denied.").  The Defendants have not alleged the existence of any such prejudice, as it has suffered none.  The only surprise that it can legitimately claim is over how long they were able to get away with their unfair and deceptive practices before being sued herein.

### H.   Plaintiffs Have Stated Claims For Breach Of Implied Warranty

Defendants mischaracterize Plaintiffs' allegations as a "selective reading" of its warranties.   However, it is Defendants who are selectively reading the allegations in the CAC.   Defendants ignore the well-pleaded allegations in Plaintiffs' Complaint.  MTD at 34-36.

As Defendants acknowledge in their brief, in order for goods to be merchantable they must:

(a) pass without objection in the trade under the contract description;
(b) in the case of fungible goods, are of fair average quality within the

description; (c) are fit for the ordinary purposes for which such goods are used; (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (e) are adequately contained, packaged, and labeled as the agreement may require; *and* (f) conform to the promises or affirmations of fact made on the container or label if any.

MTD at 36 (emphasis added) (citations omitted).

While further acknowledging the CAC alleges violations of subsections (a), (c), and (f), Defendants seem to imply that vacuums only need to meet some and not all the criteria for merchantability.  The implied warranty of merchantability actually requires goods to meet *all* applicable criteria under the statute, including: "pass without objection in the trade under the contract description;" "in the case of fungible goods, … [be] of fair average quality within the description;" "[be] adequately contained, packaged, and labeled as the agreement may require;" *and* "conform to the promises or affirmations of fact made on the container or label if any."  *See* U.C.C. § 2-314(2)(a)-(f).  A product is unmerchantable if it fails to meet *any* of those criteria.  *See id; see also Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011) (citing N.J. Stat. Ann. § 12A:2-314; U.C.C. § 2-314).

Plaintiffs allege that Defendants breached the warranty implied in the contract for the sale of its vacuums.  Plaintiffs further allege that the Shop-Vac wet/dry vacuums do not conform to promises made on their containers or labels, as required under subsection (f) of the statute, because contrary to the statements on its packaging, the vacuums cannot operate anywhere near the stated peak

horsepower and have tanks that have capacities which are significantly less than represented. *See e.g.*, ¶ 83. Moreover, the vacuums are not adequately packaged and labeled, as required by subsection (e), because the labels are false. *See e.g., id.*

In addition, the products do not pass without objection in the trade *under the contract description*, as required in subsection (a), because if Shop-Vac's peak horsepower representations were correct, "then they would not comply with applicable standards for such devices and the vacuums would not pass freely and without objection into the stream of commerce, and would violate the implied warranty of merchantability." ¶ 88. The allegations are thus sufficient to state claims for breach of the implied warranty of merchantability.

## I.    Plaintiffs Have Stated Claims Under Magnuson-Moss Warranty Act

### 1.    Plaintiffs' Notice Was Adequate

Defendants claim that they did not receive the required notice under the Magnuson-Moss Warranty Act. This argument is incorrect on both the facts and the law.

This argument is factually incorrect. Defendants acknowledge that the CAC states that Plaintiffs sent Defendants notice complying with California's Consumers Legal Remedy Act ("CLRA") notice requirements, but fails to recognize that these notice requirements fulfill any duties under Magnusson-Moss. Defendants now ask the court to find that the notice requirements of the CLRA,

and notice letters that comply with the CLRA, fail to (1) notify the defendant of the alleged breach of warranty; (2) provide a "reasonable opportunity" to cure the alleged breach; and (3) notify the defendant that they are acting on behalf of a putative class.  This argument must fail as being plainly incorrect. Defendants have provided no reasons why the notices provided by these plaintiffs were insufficient to put them on notice of the Class's claims relating to peak horsepower and tank capacity and allow them to take remedial action if they so desired.[14]

### 2.   Plaintiffs Have Stated Warranty Claims Under State Law

Defendants argue Plaintiff's Magnuson-Moss Warranty Act ("MMWA") claim (Count I), should be dismissed for failure to state a claim, because, as Defendants argue, Plaintiffs' MMWA claim must be dismissed because they failed to state claims for breach of an express or implied warranty under state law.  MTD at 41-42.

Defendants' cursory treatment of the MMWA claim is fundamentally wrong because it overlooks an important distinction between the MMWA's standards for express written warranty claims, on the one hand, and implied warranty claims, on the other.  MMWA claims concerning implied warranties are dependent on state law, but MMWA claims based on an express written warranty, such as the claims

---

[14]  Even if Defendants were correct that additional notice was required, as set forth in greater detail in Section G, dismissal for lack of notice in a consumer warranty matter would not be warranted absent a showing of prejudice.

in this case, are not dependent on state law.  *Compare* 15 U.S.C. § 2301(7) (defining an "implied warranty" as "an implied warranty arising under State law") *with* 15 U.S.C. § 2301(6) (defining the terms of a "written warranty," with no mention of state law).   Where an MMWA claim concerns an express written warranty, it is independent of state law, and the protections of the MMWA are often broader than state law protections.  *See, e.g., Borchardt v. Mako Marine Int'l., Inc.*, No. 08-61199-CIV-MARRA, 2011 U.S. Dist. LEXIS 55150, at *15 (S.D. Fla. May 23, 2011) (denying motion to dismiss MMWA claim based on an express written warranty, stating "the plaintiffs' MMWA claim does not fail simply because their state law express warranty claims fail"); *see also Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1439-40 (M.D. Ala. 1997) ("Congress's overall purpose in creating the Act was to protect consumers by prescribing new, detailed standards for written warranties that supplemented existing state law ... By contrast, Congress's intentions regarding non-written [express] and implied warranties were far less ambitious.   Rather than significantly revamp or supplement the treatment of implied warranties under existing state law, Congress opted to maintain the status quo.").

The Complaint alleges every element of an express written warranty claim under the MMWA.  ¶¶ 74-79.  The statute defines a "written warranty" as "any written affirmation of fact or written promise made in connection with the sale of a

consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time ... which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6)(A). Plaintiffs allege Defendants created a written warranty as defined in 15 U.S.C. § 2301(6). ¶ 78 ("Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that Shop-Vac wet/dry vacuums had certain 'peak horsepowers' and had a certain capacity in gallons.'"). Every statutory element is pleaded, ¶¶ 74-78, including damages and causation, ¶ 79. These allegations are a textbook example of how to properly plead a claim for breach of an express written warranty under the MMWA. As such, Defendants' attempt to dismiss Plaintiffs' MMWA claim must fail.

### 3.    Plaintiffs Have Pleaded That Lowe's Made Independent Representations And Adopted Those Of Shop-Vac

The CAC alleges that Shop-Vac produces a special line of wet/dry vacuums to Lowe's specifications which are only sold by Lowe's. ¶ 56. The CAC further alleges that the boxes for Lowe's contain the same misrepresentations on the box about horsepower and tank capacity as regular Shop-Vac vacuums. ¶ 59. Where a retailer affirmatively adopts manufacturers' misrepresentations, the retailer may be

held liable.   Under very similar circumstances, in *Best Buy Co.*, 2013 U.S. Dist. LEXIS 20440, at *2-3, manufacturer Toshiba provided information regarding the battery life of its computers to retailer Best Buy.   Best Buy then displayed this information on shelf tags throughout its store.   As a result of the misleading nature of the representations that certain computers could experience "up to 3.2 hours" of battery life, Best Buy was held liable for the misleading representations.   *Id.*   In the present case, Lowe's displayed and sold the Lowe's Shop-Vacs in boxes which made the misrepresentations relied upon by Plaintiffs.   ¶ 59.   Therefore, just as in *Best Buy*, independent of any theories against Shop-Vac, Lowe's is responsible and liable for the representations on the vacuums produced and boxed to their specifications.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion should be denied.

Dated:  April 22, 2013                    Respectfully submitted,

**DILWORTH PAXSON LLP**

By:   _/s/ Joseph U. Metz_____
Joseph U. Metz (PA ID No. 32958)
112 Market Street, Suite 800
Harrisburg, Pennsylvania 17101-2015
Tel:  717-236-4812
Fax: 717-236-7811
Email: jmetz@dilworthlaw.com

*Interim Liaison Counsel*

**MILBERG LLP**
Sanford P. Dumain
Andrei Rado
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Tel:  212-594-5300
Fax: 212-868-1229
Email: sdumain@milberg.com
Email: arado@milberg.com

**LAX LLP**
Robert I. Lax
380 Lexington Avenue, 31st Floor
New York, New York 10168
Tel:  212-818-9150
Fax: 212-818-1266
Email: rlax@lax-law.com

**FARUQI & FARUQI LLP**
Adam Gonnelli
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel:  212-983-9330
Fax: 212-983-9331
Email: agonnelli@faruqilaw.com

*Interim Class Counsel*

**LITE DePALMA GREENBERG LLC**
Bruce D. Greenberg
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel:  (973) 623-3000
Email: bgreenberg@litedepalma.com

**REESE RICHMAN LLP**
Michael R. Reese
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Tel:  (212) 643-0500

Fax: (212) 253-4272
Email: mreese@reeserichman.com

**BARON & HERSKOWITZ**
Jon Herskowitz
9100 South Dadeland Boulevard
One Datran Center, Suite 1704
Miami, Florida 33156
Tel: (305) 670-0101
Email: jon@bhfloridalaw.com

**PINILIS HALPERN LLP**
William J. Pinilis
160 Morris Street
Morristown, New Jersey 07962
Tel: (973) 401-1111
Fax: (973) 401-1114
Email: wpinilis@consumerfraudlawyer.com

*Interim Executive Committee Members*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on April 22, 2013, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: April 22, 2013

_/s/ Joseph U. Metz_____
Joseph U. Metz