**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | : : : | MDL No. 2380 |
| _____ | : | Civil Action No. 4:12-md-2380 |
| THIS DOCUMENT RELATES TO: | : : | (Chief Judge Kane) |
| ALL CASES | : : | |

**MEMORANDUM
RE: MOTION TO DISMISS**

Before the Court is Defendants' motion to dismiss Plaintiffs' consolidated amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Doc. No. 68.) The motion has been fully briefed, and for the reasons that follow, the Court will grant the motion and dismiss Plaintiffs' consolidated amended complaint without prejudice.

**I. BACKGROUND**

The above-captioned multidistrict litigation (MDL) consists of nine coordinated cases in which numerous Plaintiffs bring warranty and consumer fraud claims based on Defendants Shop-Vac and Lowe's alleged misrepresentations regarding the horsepower and tank capacity of Shop-Vac's wet/dry vacuums.[1]

---

[1] In reviewing the motion to dismiss, the Court will accept Plaintiffs' factual allegations as true and will "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

The Court notes that Defendants filed a request for judicial notice in support of their motion to dismiss. (Doc. No. 70.) Plaintiffs did not oppose the request; however, the Court finds that the materials provided by Defendants are not material to resolution of their motion to dismiss. The Court takes judicial notice of the article provided by Defendants, the Shop-Vac website, and the matters of public record provided by Defendants.

On February 19, 2013, Plaintiffs filed a consolidated amended complaint (CAC), in which they allege that Defendant Shop-Vac manufactures and sells a series of wet/dry vacuums, and that Defendants Lowe's Home Centers, Inc., and Lowe's HIW, Inc. sell these products at their home improvement stores. (Doc. No. 62 ¶ 1.) Plaintiffs allege that Defendants made false and misleading representations about the horsepower and tank capacity of the vacuums. (Id. ¶¶ 4-7.)

Plaintiffs allege that Shop-Vac represents that its vacuums are capable of reaching a peak horsepower that is impossible to attain with a standard electrical outlet. (Id. ¶¶ 19-20.) Peak horsepower, according to Plaintiffs, refers to the maximum output that can be developed in actual use, and they contend that a reasonable consumer would not understand that Shop-Vac's definition of peak horsepower does not relate to the actual power of the vacuum.[2] (Id. ¶¶ 30-35.) Further, Plaintiffs assert that Shop-Vac's horsepower claims, if true, would violate industry standards for safety, thereby rendering the vacuums unfit for their intended purpose and unable to pass into the stream of commerce without objection. (Id. ¶¶ 44-51.)

Plaintiffs further claim that Defendants' representations about the capacity of the vacuums' tanks are misleading because, in actual operation, the vacuums stop working when their tanks reach between 47% and 83% of the stated capacity. (Id. ¶ 52.) Thus, Plaintiffs allege that a reasonable consumer would be misled by these claims of tank capacity, "which have nothing to do with how much the tanks can hold while operating the vacuums." (Id. ¶ 55.)

---

[2] Plaintiffs performed testing in 2011, which allegedly revealed that Shop-Vac vacuums were incapable of operating at their represented peak horsepower, and produced a range of 17% to 51% of the advertised peak horsepower when measured at the motor, and a range between a negligible percentage and 10.3% when measuring the air suction power of the vacuums. (Id. ¶¶ 36-43.)

Plaintiffs allege that Lowe's exclusively sells a line of Shop-Vac vacuums featuring the company's blue trade dress, which Lowe's markets in its stores, periodicals, and online. (Id. ¶¶ 56-58.) Plaintiffs assert that the Lowe's Shop-Vac vacuums contain the same misrepresentations on the box about horsepower and tank capacity as regular Shop-Vac vacuums, and that Lowe's actively made the same representations in its advertisements and buyer's guides. (Id. ¶¶ 59-62.)

The named Plaintiffs are Alan McMichael, a Florida resident who purchased his Shop-Vac at a Lowe's store in Florida; Andrew Harbut, a Missouri resident who purchased his Shop-Vac at a Lowe's store in Missouri; Kris Reid, a California resident who purchased his Shop-Vac in California; David Smallwood, a California resident who purchased his Shop-Vac in Arizona; and Clay Scott, an Illinois resident who purchased his Shop-Vac at a Lowe's store in Illinois. (Id. ¶ 10-14.) Each of the named Plaintiffs alleges that they relied upon the representations "on the box" concerning peak horsepower and tank capacity in deciding to purchase their vacuum. (Id.) Plaintiffs seek to represent a class of consumers in the United States – other than New Jersey[3] – who purchased any Shop-Vac vacuum within the relevant statute of limitations period. (Id. ¶ 63.) Plaintiffs McMichael, Harbut, and Scott seek to represent a subclass of all consumers who purchased their Shop-Vac at Lowe's home improvement stores. (Id. ¶ 64.)

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In reviewing a motion to

---

[3] The interests of New Jersey consumers are at issue in Palomino v. Shop-Vac Corp., BER-L-1399-12, a similar case pending in the Superior Court of New Jersey in Bergen County, NJ.

dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum, 361 F.3d at 221 n.3. The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted).

A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). While the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'" Phillips, 515 F.3d at 231-32 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

**B. Fed. R. Civ. P. 9(b)**

Rule 9(b) of the Federal Rules of Civil Procedure sets forth a more stringent standard of pleading for claims of fraud or mistake: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

4

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) is limited by its terms to claims of mistake and fraud, but it applies to all cases where the gravamen of the claim is fraud or misrepresentation. Toner v. Allstate Ins. Co., 821 F. Supp. 276, 283 (D. Del. 1993). To the extent that consumer fraud claims involve allegations of fraudulent conduct, such claims are subject to Rule 9(b). Greenberger v. GEICO Gen. Ins. Co., 631 F.3d 392, 399 (7th Cir. 2011); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) ("[I]n a case where fraud is not an essential element of a claim, only allegations . . . of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)."). The heightened requirements of Rule 9(b) are meant to protect defendants from frivolous suits that could potentially damage a defendant's reputation and goodwill. See Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984). The particularity requirement accomplishes this goal by giving notice of the specific misconduct at issue so the defendant can prepare a defense to the claim. Toner, 821 F. Supp. at 284. The requirement of specificity also prevents fraud claims meant as a fishing expedition to obtain material facts by way of the discovery process. Id. As such, the heightened requirements of Rule 9(b) apply to claims of intentional misrepresentation. See id.

**III.   DISCUSSION**

Plaintiffs' CAC consists of five claims: a claim brought pursuant to the Magnuson-Moss Warranty Act (Count I); a claim for breach of express warranty (Count II); a claim for breach of implied warranty (Count III); a claim for injunctive and declaratory relief (Count IV); and a claim brought pursuant to the consumer fraud laws of each state, except for New Jersey (Count

V). (Doc. No. 62.) Defendants move to dismiss each of the five counts in Plaintiffs' CAC. (Doc. No. 68.) The Court will discuss each count in turn.[4]

### A. Magnuson-Moss Warranty Act Claim (Count I)

In Count I of their CAC, Plaintiffs assert a claim under the Magnuson-Moss Warranty Act (MMWA). Under 15 U.S.C. § 2310(d)(1), "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." Defendants move to dismiss Plaintiffs' MMWA claim, arguing that Plaintiffs have failed to state a claim under the MMWA for breach of either an implied or express warranty, and that Plaintiffs have failed to provide the required notice to Defendants. (Doc. No. 69 at 52-54; Doc. No. 83 at 33-36.)

The MMWA provides relief for consumers damaged by breaches of both implied and express warranties. The MMWA defines an implied warranty as "an implied warranty arising under State law. . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Thus, to the extent that Plaintiffs seek to pursue an implied warranty claim under the MMWA, "this court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008); see also Cooper v. Samsung Elecs. Am., Inc., 374 Fed. App'x 250, 254 (3d Cir. 2010) (affirming dismissal of MMWA claim because the plaintiff failed to state a viable state

---

[4] Defendants urge the Court to engage in a detailed choice-of-law analysis in ruling on their motion to dismiss. The Court, however, declines to do so at this stage, because resolution of the instant motion to dismiss does not require such analysis. Instead, the Court will focus on the pleading requirements set forth in Rule 8 and 9 of the Federal Rules of Civil Procedure, which apply irrespective of the choice-of-law analysis.

law claim for breach of warranty). The Court's discussion of Plaintiff's state law implied warranty claims, therefore, applies with equal force to Plaintiff's MMWA claim for breach of implied warranty. See Part III.C.

Plaintiffs assert, however, that their MMWA claims based on express written warranties are not dependent on state law. (Doc. No. 77 at 52-53.) To the extent Plaintiffs seek to state an independent MMWA express written warranty claim, Plaintiffs have failed to properly plead such a claim. The MMWA defines a written warranty as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is **defect free** or will **meet a specified level of performance over a specified period of time**.

15 U.S.C.A. § 2301(6)(A) (emphasis added). In alleging that the vacuums that they purchased do not comport with Defendants' representations regarding horsepower and tank capacity, Plaintiffs have not alleged that Defendants made a written affirmation of fact or promise that the vacuums are "defect free" or "will meet a specified level of performance over a specified period of time." Thus, Plaintiffs have not properly pleaded an MMWA breach of express warranty claim, and the Court will dismiss Plaintiffs' MMWA claim without prejudice.

Defendants argue, additionally, that Plaintiffs' MMWA claims must fail because Plaintiffs failed to properly allege notice and an opportunity to cure as required by the MMWA. While the Court will dismiss Plaintiff's MMWA claims without prejudice for failure to state a claim, the Court is not persuaded by Defendants' argument regarding notice. The MMWA provides:

> No action (other than a class action . . . ) **may be brought** . . . for

> failure to comply with any obligation under any written or implied warranty or service contract, **and a class of consumers may not proceed** in a class action under such subsection with respect to such a failure **except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs**, unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply.  In the case of such a class action . . . for breach of any written or implied warranty or service contract, such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class.  In the case of such a class action which is brought in a district court of the United States, the representative capacity of the named plaintiffs shall be established in the application of rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 2310(e) (emphasis added).

The statute imposes different requirements on classes of consumers than it does on individuals.  While Section 2310(e) requires that sellers be afforded an opportunity to cure before an individual consumer may **bring** an action under the MMWA, classes of consumers are prohibited only from **proceeding** in a class action unless the seller is afforded a reasonable opportunity to cure the defect.  Thus, a named plaintiff in a class action may bring an action prior to affording the defendant an opportunity to cure, for the purpose of establishing his or her representative capacity.  The statute goes on to specify that "the representative capacity of the named plaintiffs shall be established in the application of rule 23 of the Federal Rules of Civil Procedure."  See Walsh v. Ford Motor Co., 807 F.2d 1000, 1004 (D.C. Cir. 1986) ("[A] plaintiff may file a class action [under the MMWA], but may not proceed with that action, until she has afforded the defendant a reasonable opportunity to cure its alleged breach.  While the class action is held in abeyance pending possible cure, the district court may rule on the representative capacity of the named plaintiffs, its determination to be made 'in the application of rule 23 of the

Federal Rules of Civil Procedure.'"); In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d 801, 825 (S.D. Ohio 2012). Therefore, while the Court will dismiss Plaintiffs' MMWA claims for failure to state a claim, the Court declines to dismiss the claims on the grounds that Plaintiffs have failed to allege notice as required by Section 2301(e).

### B. Express Warranty Claim (Count II)

In Count II of their CAC, Plaintiffs seek to advance a breach of express warranty claim against Defendants. Defendants argue that Plaintiffs' breach of express warranty claim must be dismissed because their vacuums conform with their representations on tank capacity and tank size. (Doc. No. 69 at 40-46.) To state a claim for breach of express warranty, a plaintiff must allege: (1) that the defendant made an affirmation of fact or description of its goods; (2) that the statement formed part of the basis of the bargain between the parties; and (3) that the product failed to conform with the affirmation or description. U.C.C. § 2-313. "[O]nce the buyer has become aware of the affirmation of fact or promise, the statements are presumed to be part of the 'basis of the bargain' unless the defendant, by 'clear affirmative proof,' shows that the buyer knew that the affirmation of fact or promise was untrue." Cipollone v. Liggett Grp., Inc., 893 F.2d 541, 568 (3d Cir. 1990) rev'd in part on other grounds, 505 U.S. 504 (1992).

The gravamen of Plaintiffs' express warranty claims is that Defendants' vacuums failed to comport with the "representations on the box concerning the vacuum's horsepower and tank capacity." (Doc. No. 62 ¶¶ 10-14.) Specifically, Plaintiffs allege that "Defendants expressly warranted in their marketing, advertising and promotion of the Shop-Vac wet/dry vacuums that the Shop-Vac wet/dry vacuums had certain 'peak horsepowers' and had a capacity of a certain number of gallons" and that those statements are untrue. (Id. ¶ 81.) However, Plaintiffs do not

allege the content of such representations in their CAC. Instead, Plaintiffs have provided the Court with captured images from Defendants' respective websites, which contain representations about vacuums' peak horsepower and tank size. Nowhere in Plaintiffs' CAC do they allege to have seen these websites. Moreover, Plaintiffs do not allege the type of vacuum that they purchased, or when they purchased it.[5] Rather, Plaintiffs have pleaded generally that all Shop-Vac vacuums contain misrepresentations about their peak horsepower and tank capacity, without specifying the content of such representations.

Plaintiffs' allegations lack the necessary factual support to "raise a right to relief above the speculative level." See Twombly, 550 U.S. at 555. For example, Plaintiffs' failure to allege the dates, or even the years, on which they purchased their vacuums makes it impossible for the Court to determine whether they purchased the vacuums within the applicable statute of limitations period. The named Plaintiffs assert that they seek to represent a class of individuals who purchased any Shop-Vac wet/dry vacuum "within the relevant statute of limitations periods;" however, this conclusory allegation is the type of bald assertion or legal conclusion that the Court need not credit in deciding a motion to dismiss. See Morse, 132 F.3d at 906, 908. Although a complaint need not contain "detailed factual allegations," Rule 8(a)(2) requires a "'showing,' rather than a blanket assertion of entitlement to relief." Phillips, 515 F.3d at 231-32 (quoting Twombly, 550 U.S. at 555). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must

---

[5] Plaintiffs allege that the putative class consists of individuals who purchased "any Shop-Vac wet/dry vacuum" "within the relevant statute of limitations periods." (Doc. No. 62 ¶ 63.) While specification of the type of vacuum each member of the putative class purchased, and dates of those purchases, may not be reasonable at this stage, the same cannot be said for the named Plaintiffs.

give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Id. at 234 (quoting Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)). At a minimum, Plaintiffs must allege which vacuums they purchased, when they purchased them, and the content of the representations on the vacuum packaging. See Fishman v. Gen. Elec. Co., No. 2:12-cv-00585, 2013 WL 1845615, at *5 (D.N.J. Apr. 30, 2013) (dismissing the plaintiffs' breach of express warranty claims where the plaintiffs failed to allege which washing machines they purchased and the language of the express warranty); Pappalardo v. Combat Sports, Inc., No. 11-cv-1320, 2011 WL 6756949, at *7 (D.N.J. Dec. 23, 2011) (quoting Iqbal, 556 U.S. at 678) ("[B]y not indicating in the Amended Complaint which bats were purchased, when they were purchased, what warranty representations were made, and what warranty promises were breached, Plaintiffs' allegations constitute the type of 'unadorned, the-defendant-unlawfully-harmed-me' accusation that will not pass muster under the applicable pleading standard.").

  Plaintiffs' breach of express warranty claims need not be pleaded with particularity under Rule 9(b); however, Rule 8(a)(2) requires that Plaintiffs provide additional factual details to remove the vagueness and ambiguity from their CAC. While some generalizations are to be expected in class action allegations, the named Plaintiffs in this putative class action must set forth factual support for their allegations. Because Plaintiffs have failed to allege sufficient facts to support their breach of express warranty claims, the Court will dismiss the claims without prejudice.

  Should Plaintiffs endeavor to amend the CAC, in order to state a claim for breach of express warranty, they should also allege that they provided Defendants notice and an

opportunity to cure. Section 2-607 of the U.C.C. provides that, "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." U.C.C. § 2-607(3)(a). While Plaintiffs allege that "Plaintiffs Scott and Reid have sent appropriate notice to Defendants . . . and have not received the relief they requested," the Court agrees with Defendants that the CAC is devoid of any allegation that Plaintiffs Harbut and McMichael provided notice. It is not enough for Plaintiffs to allege that Defendants were aware of an alleged defect in their vacuums generally; rather, "it is essential that the seller be notified that this particular transaction is 'troublesome and must be watched.'" Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 590 (Ill. 1996). The notice requirements of Section 2-607(3)(a), therefore, require notice of an alleged defect with respect to a plaintiff's actual transaction. The comments to Section 2-607 provide that the notice "need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." U.C.C. § 2-607 cmt. 4. Therefore, knowledge of an alleged defect with respect to a plaintiff's actual transaction is necessary to allow the seller an opportunity to either cure the defect or settle the dispute prior to the initiation of a lawsuit.

Moreover, Plaintiffs' argument that the filing of a complaint can serve as notice is not persuasive; while there is an exception to the notice requirement in personal injury cases, such is not the case here. See Connick, 675 N.E.2d at 590 ("Only a consumer plaintiff who suffers a personal injury may satisfy the section 2-607 notice requirement by filing a complaint stating a breach of warranty action against the seller."). Permitting the filing of a complaint to serve as notice of an alleged defect "would obviate the need for the notice requirement." Cohen v.

Implant Innovations, Inc., 259 F.R.D. 617, 642 (S.D. Fla. 2008). Finally, the Court is not persuaded by Plaintiffs' argument that any failure to allege notice is excused in the absence of prejudice to Defendants. "[A]lthough prejudice is relevant to whether a delay was reasonable, no showing of prejudice is required to make section 2-607(3) applicable." Aqualon Co. v. Mac Equip., Inc., 149 F.3d 262, 270 (4th Cir. 1998); cf. Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292, 298 (3d Cir. 1961) ("One of the factors to be considered is, whether the delay in giving notice or its form prejudiced the seller[.]"). Therefore, in amending the CAC, Plaintiffs should allege that they provided notice and an opportunity to cure as required by Section 2-607 of the Uniform Commercial Code.

### C.     Implied Warranty Claim (Count III)

In Count III of their CAC, Plaintiffs seek to advance a claim for breach of implied warranty. Defendants move to dismiss the breach of implied warranty claim for failure to state a claim. (Doc. No. 69 at 46-51.) In response, Plaintiffs argue that Defendants' vacuums are not merchantable and violate the implied warranty of merchantability. (Doc. No. 77 at 49-51.) Under Section 2-314 of the Uniform Commercial Code, there is an implied warranty "that the goods shall be merchantable . . . if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314(1). Under the U.C.C., goods are merchantable if they:

> (a) pass without objection in the trade under the contract description; and
>
> (b) in the case of fungible goods, are of fair average quality within the description; and
>
> (c) are fit for the ordinary purposes for which such goods are used; and
>
> (d) run, within the variations permitted by the agreement, of even

> kind, quality and quantity within each unit and among all units involved; and
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.

U.C.C. § 2-314(2).

Plaintiffs assert that the vacuums that they purchased are not merchantable under paragraph (a), (c), and (f). Yet, the CAC is devoid of factual allegations supporting a finding that Shop-Vac wet/dry vacuums are not fit for their ordinary purpose of vacuuming, nor is it alleged that the vacuums do not pass without objection in the trade under the contract description. Plaintiffs' allegation that the vacuums are not merchantable under paragraph (f) must likewise fail because, as noted previously, Plaintiffs' failure to allege precisely which vacuums they purchased, when they purchased them, and what representations Defendants made "on the box," leave their claim without the necessary factual support. Without allegations of what affirmations were made on the allegedly offending labels, Plaintiffs have not pleaded a valid paragraph (f) claim. As pleaded, the CAC fails to state a claim for breach of implied warranty. Thus, the Court will dismiss Plaintiffs' breach of implied warranty claims without prejudice.[12]

---

[12] Defendants also argue that Plaintiff Harbut did not provide notice to Defendants as required by Missouri law. As discussed above, Section 2-607 of the Uniform Commercial Code requires notice of a breach within a reasonable time. See Ragland Mills, Inc. v. Gen. Motors Corp., 763 S.W.2d 357, 361 (Mo. Ct. App. 1989) ("The plaintiff cannot escape the notice requirement even though it chose to sue only the manufacturer. One of the important purposes of the notice requirement is to afford the seller an opportunity to arm himself for negotiation and litigation."). Therefore, should Plaintiffs amend the CAC, they must allege notice as required by Section 2-607.

### D.     Claim for Injunctive and Declaratory Relief (Count IV)

In Count IV of their CAC, Plaintiffs allege that Defendants' "practices described herein are unlawful and against public policy, and therefore, Defendants should be prohibited and enjoined from engaging in these practices . . . ." (Doc. No. 62 ¶ 92.)  Defendants argue that these claims for injunctive and declaratory relief must be dismissed because they are remedies and not viable causes of action.  (Doc. No. 69 at 57-58.)  Defendants are correct that injunctive relief is a remedy, not an independent cause of action.  Plaintiffs did not respond to Defendants' argument regarding their claim for injunctive and declaratory relief.  Accordingly, the Court will grant this portion of Defendants' motion as unopposed, and dismiss Count IV of Plaintiffs' CAC.  The Court notes, however, that Plaintiffs may seek injunctive relief as a remedy, though not as an independent cause of action.

### E.     Consumer Fraud Claims (Count V)

In Count V of their CAC, Plaintiffs seek to advance causes of action under the consumer fraud laws of all states nationwide, with the exception of New Jersey. (Doc. No. 62 ¶¶ 94-146.) Defendants argue that Plaintiffs' consumer fraud claims should be dismissed because: (1) they are not pleaded with sufficient particularity; (2) no reasonable consumer could be misled or deceived by the alleged representations; (3) Defendants' business practices are not unfair; and (4) Plaintiffs have not pleaded actual injury.  The Court will dismiss Plaintiffs' consumer fraud claims because Plaintiffs have failed to allege their claims with sufficient particularity under Rule 9(b).

In support of their consumer fraud claims, Plaintiffs allege that Defendants mislabeled vacuums and "intentionally misrepresented" the horsepower and tank capacity of their vacuums.

(Id. ¶¶ 91, 95, 96.)  As discussed above, Rule 9(b) applies to claims sounding in fraud, including claims of intentional misrepresentation, and requires Plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Plaintiffs' consumer fraud claims, including allegations that Defendants intentionally misrepresented aspects of their products, sound in fraud and are subject to the heightened pleading requirements of Rule 9(b).  See, e.g., Greenberger v. GEICO Gen. Ins. Co., 631 F.3d 392, 399 (7th Cir. 2011) ("Claims for violation of the [Illinois] Consumer Fraud Act are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure."); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of [California's consumer fraud laws].").  Rule 9(b) imposes a heightened standard of pleading compared to Rule 8(a)(2).  Plaintiffs claims are insufficiently pleaded under Rule 8; thus, the fraud claims also fall short of the heightened standards of Rule 9.

In the CAC, Plaintiffs allege that they each purchased a Shop-Vac wet/dry vacuum in "reliance on the representations on the box concerning the vacuum's horsepower and tank capacity."  (Doc. No. 62 ¶¶ 10-14.)  However, Plaintiffs have omitted several key aspects of their claims.  Plaintiffs have not alleged what the representations on the box consisted of, which models they purchased, when they purchased their vacuums, or any other details sufficient to "place the defendants on notice of the precise misconduct with which they are charged."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984); see also Fishman, 2013 WL 1845615, at *4 (dismissing the plaintiffs' consumer fraud claims in a nationwide class action pursuant to Rule 9(b) for failure to allege sufficient information about

the complained-of representations). In other words, Plaintiffs have failed to "inject any precision or measure of substantiation into [their] fraud allegations." Kee v. Zimmer, Inc., 871 F. Supp. 2d 405, 412 (E.D. Pa. 2012). Although Plaintiffs' class action allegations are subject to a less exacting standard at this stage, the named Plaintiffs must provide the Court with more details about their transactions and about the representations upon which they allegedly relied. Thus, the Court will dismiss Plaintiffs' consumer fraud claims without prejudice under Rule 9(b).[13]

Because the Court will dismiss Plaintiffs' consumer fraud claims under Rule 9(b), the Court declines to address Defendants' alternate argument that no reasonable consumer could be misled or deceived by their representations of peak horsepower and tank size at this stage. However, the Court notes that only in the clearest of cases is it proper for a court to make a determination that a reasonable consumer is not likely to be misled at the motion to dismiss stage. See Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 252 (3d Cir. 2011) (holding that no reasonable consumer could be misled as to the origin of Bacardi's "Havana Club" rum, where the bottle prominently features the phrase "Puerto Rican Rum"); cf. F.T.C. v. Cantkier, 767 F. Supp. 2d 147, 159 (D.D.C. 2011) ("Whether or not Lady's ads and websites, taken in their full context, were 'likely to mislead consumers acting reasonably under the circumstances' is ultimately a factual question that cannot be resolved at the motion to dismiss stage.").

---

[13] To the extent that Plaintiffs attempt to advance claims that Defendants violated consumer protection laws protecting against unfair business practices, those claims "need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc., 536 F.3d 663, 670 (7th Cir. 2008). However, Plaintiffs have also failed to meet the more liberal requirements of Rule 8(a), as discussed in Part III.B above.

### F. Claims Against Lowe's

Defendants also argue that Plaintiffs' claims against Lowe's should be dismissed, as Plaintiffs have not sufficiently alleged independent representations by Lowe's. (Doc. No. 69 at 54-57.) However, Plaintiffs allege that Lowe's sells a special line of Shop-Vac vacuums, that Lowe's advertises its vacuums, and that Lowe's has actively made the same misrepresentations about horsepower and tank capacity as Shop-Vac. Plaintiffs allege that Lowe's emphasizes horsepower and tank capacity in its shelf tags, and provided an example of a Lowe's hang tag describing a vacuum as being a "14-Gallon, 4.5-HP (Peak) Wet/Dry Vac." (Doc. No. 62 ¶ 58.) Whether Lowe's is actually responsible for the alleged representations regarding horsepower and tank size is more properly assessed at a later stage. At this stage, the Court must accept Plaintiffs' allegation that Lowe's actively made representations regarding horsepower and tank capacity. Thus, while the Court will dismiss Plaintiffs' claims for other reasons, the Court declines to dismiss Plaintiffs' claims against Lowe's on the basis that Lowe's has not made any independent representations.

### IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion to dismiss the CAC. Plaintiffs have failed to plead sufficient factual support for their warranty claims under Rule 8 and Iqbal. Plaintiffs have failed to allege which vacuums they purchased, when they purchased them, what the representations on the box consisted of, or that they provided notice as required for breach of warranty claims. Additionally, Plaintiffs' claim for injunctive relief must fail, as injunctive relief is a remedy and not an independent cause of action. Finally, Plaintiffs have failed to plead their consumer fraud claims with sufficient particularity as required under

Rule 9.  Thus, the Court will dismiss Plaintiffs' CAC without prejudice.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: SHOP-VAC MARKETING AND** | : | **MDL No. 2380** |
| **SALES PRACTICES LITIGATION** | : | |
| _____ | : | **Civil Action No. 4:12-md-2380** |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | **(Chief Judge Kane)** |
| | : | |
| **ALL CASES** | : | |

**ORDER**
**RE: MOTION TO DISMISS**

**ACCORDINGLY**, on this 9th day of August 2013, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss (Doc. No.68) is **GRANTED** and the Consolidated Amended Complaint (Doc. No. 62) is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs are granted leave to file an amended complaint within 21 days of the date of this order.

S/ Yvette Kane
Chief Judge Yvette Kane
United States District Court
Middle District of Pennsylvania