# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: SHOP-VAC MARKETING | : | MDL No. 2380 |
| AND SALES PRACTICES | : | |
| LITIGATION | : | Civil Action No.: 4:12-md-2380-YK |
| | : | |
| THIS DOCUMENT RELATES TO: | : | (Chief Judge Kane) |
| | : | |
| ALL CASES | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT

LOEB & LOEB LLP
Michael L. Mallow, Esq. (*pro hac vice*)
Michael B. Shortnacy, Esq. (*pro hac vice*)
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Tel: (310) 282-2000
Fax: (310) 282-2200

BUCHANAN INGERSOLL & ROONEY PC
Thomas G. Collins, Esq.
409 N. Second Street
Harrisburg, PA  17101
Tel: (717) 237-4843
Fax: (717) 233-0852

*Attorneys for Defendants Shop-Vac Corporation, Lowe's Home Centers, Inc., and Lowe's HIW, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

PROCEDURAL HISTORY ...............................................................................3

STATEMENT OF FACTS ................................................................................4

STATEMENT OF QUESTIONS INVOLVED ........................................................7

LEGAL STANDARDS ...................................................................................8

    A.    Standard of Review on Motion to Dismiss.........................................8

    B.    Choice of Law Analysis...................................................................9

ARGUMENT ...............................................................................................10

I.    PLAINTIFFS FAIL TO ALLEGE ACTUAL INJURY, AND
THEREFORE LACK STANDING, BECAUSE THEY
RECEIVED THE BENEFIT OF THEIR BARGAIN.................................10

II.    PLAINTIFFS' CLAIMS FOR BREACH OF EXPRESS
WARRANTY FAIL AS A MATTER OF LAW ........................................14

    A.    To Create a Claim, Plaintiffs Must Rewrite Shop-Vac's
Representations and Therefore Their Claims for Breach of
Express Warranty Fail as a Matter of Law ........................................14

        1.    The SCAC Does Not Challenge Shop-Vac's Actual
Peak Horsepower Representations, and Plaintiffs Must
Rewrite Those Representations to Support Their
Claims ..................................................................................15

        2.    The SCAC Likewise Does Not Challenge Shop-Vac's
Actual Tank Size Representations...........................................18

    B.    Plaintiffs Did Not Provide the Notice Required for Breach of
Express Warranty Claims..................................................................20

**TABLE OF CONTENTS (CONTINUED)**

**Page**

III. PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY FAIL AS A MATTER
OF LAW ...................................................................................22

    A. Plaintiffs Do Not Allege that Shop-Vac Vacuums Are Unfit
for Their Ordinary Purpose—To Vacuum .........................................23

    B. Plaintiffs Fail to Adequately Allege that Shop-Vac Vacuums
Do Not Pass Without Objection Into Trade or Are
Insufficiently Packaged or Labeled ...................................................25

    C. Plaintiffs Did Not Provide the Notice Required for Breach of
Implied Warranty Claims ...................................................................27

IV. PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT
CLAIMS FAIL AS A MATTER OF LAW ...................................................27

    A. Plaintiffs Do Not State an Independent Express Warranty
Claim Under the Magnuson-Moss Warranty Act ("MMWA") ..........27

    B. Plaintiffs' State Law Claims for Breach of Warranty Must Be
Dismissed, and Therefore Plaintiffs' MMWA Claims Fail to
State a Claim for Relief .......................................................................30

V. PLAINTIFFS' CONSUMER FRAUD CLAIMS FAIL AS A
MATTER OF LAW BECAUSE DEFENDANTS' CONDUCT
WAS NEITHER DECEPTIVE NOR UNFAIR ...........................................30

    A. Defendants' Conduct was Not Deceptive Because Plaintiffs'
Expectations Were Impossible, and Therefore Unreasonable
as a Matter of Law ..............................................................................30

    B. Plaintiffs Do Not Allege Actual Injury ..............................................32

    C. Plaintiffs Do Not Allege that Defendants' Conduct Was
Unfair ..................................................................................................34

CONCLUSION ..................................................................................36

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AFSCME v. Ortho-Mcneil-Janssen Pharms., Inc.*,
  2010 U.S. Dist. LEXIS 23181 (E.D. Pa. Mar. 11, 2010) .................................21

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011)...........................................................................21

*Am. Corporate Soc'y v. Valley Forge Ins. Co.*,
  424 F. App'x 86 (3d Cir. 2011).........................................................................8

*Am. Suzuki Motor Corp. v. Super. Ct.*,
  44 Cal. Rptr. 2d 526 (Ct. App. 1995) .............................................................24

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  2012 U.S. Dist. LEXIS 101371 (N.D. Cal. Jul. 20, 2012) ...............................29

*Berry v Budget Rent a Car Sys.*,
  497 F. Supp. 2d 1361 (S.D. Fla. 2007).............................................................35

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009)......................................................................23, 24

*Bowman v. RAM Med., Inc.*,
  2012 U.S. Dist. LEXIS 75218 (D.N.J. May 31, 2012) .....................................12

*Burns v. Winnebago Indus.*,
  2012 U.S. Dist. LEXIS 6472 (M.D. Fla. Jan. 20, 2012) ..................................30

*Cel-Tech Comm'ns., Inc. v. L.A. Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) ................................................................................35

*Ciszewski v. Denny's Corp.*,
  2010 U.S. Dist. LEXIS 55903 (N.D. Ill. Jun. 2, 2010) ....................................34

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008)..........................................................................30

*Cooper v. Samsung Elecs. Am., Inc.*,
  374 F. App'x 250 (3d. Cir. 2010)......................................................................30

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*De Keczer v. Tetley USA, Inc.*,
   2013 U.S. Dist. LEXIS 116595 (N.D. Cal. Aug. 16, 2013) .............................29

*Dempsey v. Rosenthal*,
   121 Misc. 2d 612 (Civ. Ct. N.Y. 1983) ...........................................................25

*Diaz v. Holder*,
   2013 U.S. Dist. LEXIS 28176 (M.D. Pa. Jan. 16, 2013) ....................................9

*Dumpson v. SmithKline Beecham Corp.*,
   2013 U.S. Dist. LEXIS 96776 (E.D. Pa. Jul. 10, 2013) ....................................33

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)........................................................................9, 34

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011)..........................................................11, 12

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
   966 F. Supp. 1525 (E.D. Mo. 1997) .................................................................24

*Gertz v. Toyota Motor Corp.*,
   No. 2:10-cv-01089 (C.D. Cal. Sept. 10, 2010) ....................................18, 19, 35

*Haas v. Buick Motor Div. of Gen. Motors Corp.*,
   156 N.E.2d 263 (Ill. App. Ct. 1959).................................................................15

*Keaton v. A.B.C. Drug Co.*,
   467 S.E.2d 558 (Ga. 1996)...............................................................................26

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941).........................................................................................10

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010).....................................................................11

*Larsen v. Trader Joe's Co.*,
   2012 U.S. Dist. LEXIS 162402 (N.D. Cal. Jun. 14, 2012) ..............................28

*Lyon v. Caterpillar, Inc.*,
   194 F.R.D. 206 (E.D. Pa. 2000) ......................................................................10

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Martin v. Joseph Harris Co.*,
   767 F.2d 296 (6th Cir. 1985) ........................................................................25

*McKinniss v. Gen. Mills, Inc.*,
   2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007) ...............................14

*Microsoft Corp. v. Logical Choice Computers, Inc.*,
   2000 U.S. Dist. LEXIS 10972 (N.D. Ill. Jul. 21, 2000) ...................................21

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) ............................................................................9

*Mydlach v. DaimlerChrysler Corp.*,
   875 N.E.2d 1047 (Ill. 2007) ...........................................................................28

*O'Neil v. Simplicity, Inc.*,
   553 F. Supp. 2d 1110 (D. Minn. 2008) ...........................................................32

*Owen v. GMC*,
   2006 U.S. Dist. LEXIS 70466 (W.D. Mo. Sept. 28, 2006) ..............................30

*Payne v. Fujifilm U.S.A. Inc.*,
   2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010) .....................................10

*Prohias v. Pfizer, Inc.*,
   485 F. Supp. 2d 1329 (S.D. Fla. 2007) ...........................................................13

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002) .....................................................................10, 12

*Schrank v. SmithKline Beecham Corp.*,
   2013 U.S. Dist. LEXIS 96768 (E.D. Pa. Jul. 10, 2013) ...................................33

*Shaffer v. Vict. Station*,
   588 P.2d 233 (Wash. 1978) ...........................................................................26

*Skelton v. Gen. Motors. Corp.*,
   660 F.2d 311 (7th Cir. 1981) .....................................................................27, 29

*Stefl v. Medtronic*,
   916 S.W.2d 879 (Mo. Ct. App. 1996) .............................................................15

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>Page(s)</u>

*Sugawara v. Pepsico, Inc.*,
  2009 U.S. Dist. LEXIS 43127 (E.D. Cal. May 20, 2009) ................................31

*In re Toyota Motor Corp. Hybrid Brake Mktg.*,
  915 F. Supp. 2d 1151 (C.D. Cal. 2013) ...........................................................32

*Veal v. Citrus World, Inc.*,
  2013 U.S. Dist. LEXIS 2620 (N.D. Ala. Jan. 8, 2013) ....................................12

*Viggiano v. Hansen Natural Corp.*,
  2013 U.S. Dist. LEXIS 70003 (C.D. Cal. May 13, 2013)................................26

*Warma Witter Kreisler, Inc. v. Samsung Elecs. Am. Inc.*,
  2010 U.S. Dist. LEXIS 34584 (D.N.J. Apr. 8, 2010) ......................................11

*Warren Gen. Hosp. v. Amgen Inc.*,
  643 F.3d 77 (3d Cir. 2011) ...............................................................................9

*Werbel v. Pepsico, Inc.*,
  2010 U.S. Dist. LEXIS 76289 (N.D. Cal. Jul. 1, 2010) ...................................14

*Williamson v. Reinalt-Thomas Corp.*,
  2012 U.S. Dist. LEXIS 58639 (N.D. Cal. Apr. 25, 2012)....................34, 35, 36

*Young v. Johnson & Johnson*,
  2012 U.S. Dist. LEXIS 55192 (D.N.J. Apr. 19, 2012).....................................12

**Statutes**

U.C.C. § 2-314(2) ......................................................................................23, 27

U.C.C. § 2-314(2)(a).........................................................................................26

U.C.C. § 2-314(2)(c).........................................................................................23

U.C.C. § 2-314(2)(e).........................................................................................26

U.C.C. § 2-314(2)(f) .........................................................................................26

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................................8

Shop-Vac Corporation ("Shop-Vac"), Lowe's Home Centers, Inc., and Lowe's HIW, Inc. (together, "Lowe's") (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' Second Consolidated Amended Complaint. (Doc. No. 97, the "SCAC").

## PRELIMINARY STATEMENT

A pioneer in its field, Shop-Vac has been producing wet/dry shop vacuums for over forty years, has sold millions of units, and has millions of satisfied customers, many of them repeat customers. In this case, Plaintiffs, despite having over eighteen months and three complaints to state any claim for relief, still fail to allege adequately claims for breach of warranty or consumer fraud.

Like most, if not all other manufacturers and sellers of wet/dry vacuums, Shop-Vac's vacuums are, and for over a decade have been, sold with representations of "peak horsepower" (not "horsepower," "operational horsepower," or "maximum operational horsepower") and "tank size" (not "tank capacity"), both of which are static measurements taken in a laboratory setting.

Plaintiffs allege that they subjectively misunderstood Shop-Vac's representations as describing their vacuums' <u>operating</u> horsepower and holding capacity during <u>operational</u> use.

Critically, Plaintiffs do not challenge the accuracy of Shop-Vac's "peak horsepower" or "tank size" representations.  Rather, Plaintiffs are challenging what they believe other consumers believe these terms of art, which are used throughout the wet/dry vacuum industry, mean.  But a purported failure to meet the subjective expectations of a few consumers cannot support a claim for breach of an express or implied warranty, especially on a class-wide basis.

Moreover, Plaintiffs admit that their subjective expectations regarding horsepower output were impossible to meet, and acknowledge that products conforming to their expectations do not exist.  Thus, their alleged expectation that they were purchasing the impossible is unreasonable as a matter of law, and cannot support a consumer fraud claim.  Plaintiffs' inability to obtain a non-existent product also belies any claim of actual injury, which is a fundamental requirement for all of Plaintiffs' claims.

Plaintiffs also fail to allege adequately that their Shop-Vac products were defective, failed to function as intended, or were improperly packaged or improperly labeled.

Plaintiffs do not adequately allege that their products were subject to a written warranty as defined by the Magnuson-Moss Warranty Act.  Despite having a near-identical claim already dismissed by the Court, Plaintiffs simply re-plead the same deficient claim.

Each of Plaintiffs' warranty claims also require **_pre-litigation_** notice, and Plaintiffs fail to allege adequately that they provided such notice to Defendants, despite being instructed to do so by this Court.

For all of these reasons Plaintiffs' claims should be dismissed in their entirety, and this being their third attempt to plead viable claims, the dismissal should be with prejudice.

## PROCEDURAL HISTORY

The first complaint in this multidistrict litigation was filed by Plaintiff McMichael in the District of New Jersey on or about February 9, 2012.  Since that time, eleven additional cases were commenced, in six district courts.  On August 16, 2012, the Judicial Panel on Multidistrict Litigation transferred the still-pending cases to this Court for coordinated or consolidated pretrial proceedings. (Doc. No. 1.)  The Court appointed interim class counsel on January 17, 2013, (Doc. No. 56), and Plaintiffs filed their Consolidated Amended Complaint on or about February 19, 2013.  (Doc. No. 62, the "CAC").

On August 9, 2013, this Court granted Defendants' motion to dismiss the CAC with leave to amend.  (Doc. No. 94, the "Order").  In the Order, the Court took judicial notice of "the article provided by Defendants, the Shop-Vac website, and the matters of public record provided by Defendants."  Order at 1 n.1 (referring to the Declaration of Michael B. Shortnacy, dated March 21, 2013

("Shortnacy CAC Decl.") (Doc. No. 70-3)).   Plaintiffs filed their Second
Consolidated Amended Complaint on or about September 12, 2013.  (Doc. No. 97,
the "SCAC").

## STATEMENT OF FACTS

Plaintiffs seek to represent a putative class of all individuals in the United
States, except New Jersey, who purchased a Shop-Vac wet/dry vacuum (the
"Vacuum") within the applicable limitations periods (the "Class").   Plaintiffs
McMichael and Harbut seek to represent a subclass of consumers who purchased
their Vacuums at a Lowe's retail store (the "Lowe's Subclass").

The named Plaintiffs—Harbut, McMichael, and Reid—allege that they each
purchased a Vacuum in late 2011 or 2012 having relied on peak horsepower and
tank size representations on their Vacuums' packaging.  Notably, Plaintiffs failed
to attach to the SCAC copies or pictures of the actual product packaging, despite
requests by defense counsel to do so, relying instead on paraphrases of language
allegedly contained on the packaging.[1]

Plaintiff Harbut alleges he purchased a 5.75 peak horsepower, 16-gallon
Vacuum in Missouri.  (SCAC ¶ 7.)  He claims that "the suction of the vacuum was

---

[1] Defendants have attached to their Request for Judicial Notice, filed
concurrently herewith, the packaging for the Vacuums Plaintiffs allegedly
purchased.  *See* Declaration of Susan H. Wolf, dated October 25, 2013 ("Wolf
Decl."), Exhs. A through E.

insufficient to pick up screws, metal droppings, or drywall dust, and was not able to entirely remove saw dust from a plywood surface." *Id.* Harbut does not allege that he sent notice of his claims to Defendants. *Id.* He also fails to allege that he informed any Defendant of the specific purpose for which he purchased his Vacuum and does not allege he saw any ads or representations that the Vacuum could perform the tasks he claims his unit was unable to perform.

Plaintiff McMichael alleges he purchased a 5.5 peak horsepower Vacuum in Florida, but does not allege the tank size. (SCAC ¶ 8.) He claims that his Vacuum "failed to pick up most of the [cabinetry work] materials," at his home, "failed to pick up most of the debris" on his porch, and "struggled to pick up or clean up debris or liquid as expected" in his car and home. *Id.* McMichael alleges to have sent notice of his claims on August 13, 2013, four days <u>after</u> this Court's Order dismissing the CAC. *Id.* He too fails to allege that he informed any Defendant of the specific purpose for which he purchased his Vacuum, or that he saw any ads or representations that the Vacuum could perform the tasks he claims his unit was unable to perform.

Finally, Plaintiff Reid alleges he purchased a 6.5 peak horsepower, 16-gallon Vacuum and claims that it could not "remove cat hair from sofas and furniture." (SCAC ¶ 9.) Reid alleges he purchased his "Ultra Pro" Vacuum at a "Stock Building Supply" store in California, and then sent "pre-suit notice" of his claims

to Shop-Vac on April 23, 2012.  *Id.*  He also fails to allege that he informed any Defendant of the specific purpose for which he purchased his Vacuum and does not allege he saw any ads or representations that the Vacuum could perform the tasks he claims his unit was unable to perform.

The SCAC alleges that a "reasonable consumer" would have read Shop-Vac's peak horsepower representations "to mean the maximum horsepower reachable during the vacuum's operation."  (SCAC ¶ 17.)  But two paragraphs later, the SCAC states that "Shop-Vac's horsepower claims are impossible" in actual operation due to limitations in household electrical outlets.  (SCAC ¶ 19.)  Further, "a wet/dry vacuum, ***no matter what it says on the packaging***, would not be able to exceed 1.01 HP to 1.587 HP in normal operation."  (SCAC ¶ 23) (emphasis added).  Finally, "if a consumer attempted to use a true 4 HP motor in their home, it would trip the circuit breaker and exceed the house's maximum current."  (SCAC ¶ 45.)

Thus, the SCAC's assertion that Plaintiffs did not receive vacuums that met their horsepower output expectations cannot, as a matter of law, be reasonable because a vacuum having Plaintiffs' subjectively expected horsepower does not exist, and cannot exist by Plaintiffs' own admission.

Notwithstanding their implied admission that peak horsepower cannot equal operational horsepower, Plaintiffs nonetheless allege to have tested certain

Vacuums "in actual use" "at the typical household voltage" and calculated their own measurement called "air horsepower."   (SCAC ¶¶ 30, 31, 34.)   This alleged testing reached the unremarkable conclusion that the Vacuums' horsepower "in actual use" did not equal the <u>peak</u> horsepower representations on their packaging. (SCAC ¶¶ 35-36.)

Furthermore, because peak horsepower—measured in a laboratory and not "in actual use"—is used throughout the wet/dry vacuum industry, *see* Shortnacy CAC Decl., Exh. A, there was no possibility that Plaintiffs' tests would have replicated peak horsepower representations from any other wet/dry vacuum manufacturer.

## STATEMENT OF QUESTIONS INVOLVED

1.   Must consumer fraud and breach of warranty claims be dismissed where the complaint fails to allege an actual injury because the consumer was merely dissatisfied with the product?

2.   Must breach of warranty claims be dismissed where the complaint alleges only that the products failed to conform to the plaintiffs' subjective misunderstandings of the seller's representations, but does not challenge the **actual** representations made by the seller?

3.   Must breach of implied warranty claims be dismissed where the complaint does not allege that the products were unfit for their ordinary purposes?

4.      Must breach of implied warranty claims be dismissed where the complaint fails to allege adequately that the products do not pass without objection in the trade due to improper packaging, containers or labeling?

5.      Must breach of warranty claims be dismissed where the complaint fails to allege adequately pre-litigation notice such that the seller had no opportunity to cure or settle the claims prior to litigation?

6.      Must independent Magnuson-Moss Warranty Act claims be dismissed where the complaint fails to allege adequately the existence of a "written warranty" per the Act?

7.      Must consumer fraud claims be dismissed where the complaint admits that the plaintiffs' expectations of product performance were impossible to achieve?

## LEGAL STANDARDS

### A.      Standard of Review on Motion to Dismiss

To survive dismissal under FED. R. CIV. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Am. Corporate Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 88 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

While all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to Plaintiffs, this Court need not credit

bald assertions or legal conclusions draped in the guise of factual allegations. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *Diaz v. Holder*, 2013 U.S. Dist. LEXIS 28176, at *6-7 (M.D. Pa. Jan. 16, 2013).

Instead, a court must "take not[e] of the elements a plaintiff must plead to state a claim," "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth,'" and then "determine whether [the well-pleaded factual allegations] plausibly give rise to an entitlement for relief."  *Id*. (quoting *Iqbal*, 556 U.S. at 679).  As set forth more fully herein, the conclusory allegations in the SCAC still fall far short of the pleading requirements noted above and should be dismissed as a matter of law, with prejudice.

### B.    Choice of Law Analysis

The Court did not engage in a choice-of-law analysis in the Order when it dismissed the CAC under Rules 8 and 9 of the Federal Rules of Civil Procedure. (Order at 6 n.4.)  Should the Court find a choice-of-law analysis necessary to decide the instant motion, the SCAC now alleges where each Plaintiff lives, where he reviewed the product packaging, and where he purchased his Vacuum.

These facts are sufficient to decide that the law of each Plaintiff's state of purchase should govern each Plaintiff's claims.  *See, e.g., Payne v. Fujifilm U.S.A. Inc.*, 2010 U.S. Dist. LEXIS 52808, at *29-30 (D.N.J. May 28, 2010) (under New Jersey choice-of-law principles (McMichael and Harbut's transferor forum), the law of each state where a plaintiff viewed advertisements and made a purchase shall apply); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 218 (E.D. Pa. 2000) (under Pennsylvania choice-of-law principles (Reid's forum court[2]), the law of each state where a plaintiff resides, made his purchase, received the representations, and used the products shall apply).

## ARGUMENT

## I.   PLAINTIFFS FAIL TO ALLEGE ACTUAL INJURY, AND THEREFORE LACK STANDING, BECAUSE THEY RECEIVED THE BENEFIT OF THEIR BARGAIN

In order to have standing to assert *any* claim, a plaintiff must allege an actual, concrete and particularized injury.  *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319-20 (5th Cir. 2002) ("we must decide standing first, because it determines the court's fundamental power even to hear the suit").  Plaintiffs must therefore allege adequately that they did not receive the benefit of the bargain, and

---

[2] Reid's original complaint was voluntarily dismissed and never transferred to this Court.  *See* Case Mgmt. Order No. 1 (Doc. No. 19).  Therefore, having no "transferor court," Reid brings his claims in diversity, and the choice-of-law rules of the forum should apply.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).

"[i]f the customer received what was promised," then the claim must be dismissed. *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am. Inc.*, 2010 U.S. Dist. LEXIS 34584, at *15 (D.N.J. Apr. 8, 2010) (dismissing Illinois consumer fraud claim).

Moreover, it is insufficient for a plaintiff to allege that he paid more than he would have merely because he was dissatisfied with the product. This kind of generalized and hypothetical economic injury does not confer standing to bring suit. *See In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 513 (D. Mass. 2011) ("Plaintiffs' allegations only support the contention that . . . Defendants' products were unsatisfactory to them. This allegation is simply insufficient to support a claim for injury in fact.") (dismissing consumer protection and breach of warranty claims).

But that is exactly what the SCAC alleges here. Plaintiffs allege that they were injured because they paid a "price premium for the Shop-Vac wet/dry vacuums." (SCAC ¶¶ 120, 138, 143.) Yet, Plaintiffs admit that they received the benefit of the bargain—they paid for a wet/dry vacuum and received a wet/dry vacuum, which they used without suffering any harm. (SCAC ¶¶ 7-9.) *See Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) ("Absent any allegation that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect, Koronthaly has not demonstrated a concrete injury-in-fact.") (affirming dismissal);

*In re Fruit Juice*, 831 F. Supp. 2d at 512 ("[Plaintiffs'] allegation of 'economic' injury lacks substance.  The fact is that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm.").[3]

Plaintiffs make no allegation that the wet/dry vacuums they purchased do not work.  This is also not a case where Plaintiffs allege to have seen Shop-Vac showing in its advertising the units vacuuming up substances such as mud or heavy nails that the units cannot, in real operation, in fact pick up.  Plaintiffs thus received the benefit of their bargain: a fully functioning vacuum.  In fact, Plaintiffs admit that their vacuums functioned as vacuums.  *See* SCAC ¶ 7 (Harbut's Vacuum "was not able to **entirely remove** saw dust"); ¶ 8 (McMichael's Vacuum "failed to pick up **most of** the materials," "**most of** the debris," and "struggled to

---

[3] *See also Rivera*, 283 F.3d at 320 ("Rivera paid for an effective pain killer, and she received just that -- the benefit of her bargain.") (dismissing claims); *Veal v. Citrus World, Inc.*, 2013 U.S. Dist. LEXIS 2620, at *14 (N.D. Ala. Jan. 8, 2013) ("Many courts have held that 'benefit of the bargain' theories of injury like plaintiff's, where a plaintiff claims to have paid more for a product than the plaintiff would have paid had the plaintiff been fully informed (or that the plaintiff would not have purchased the product at all), do not confer standing."); *Bowman v. RAM Med., Inc.*, 2012 U.S. Dist. LEXIS 75218, at *9-10 (D.N.J. May 31, 2012) (dismissing for lack of standing where the plaintiff alleged "that the injury in fact is the cost of buying a product that they would not have bought, had facts that arose later been apparent at the time when they could have made a choice"); *Young v. Johnson & Johnson*, 2012 U.S. Dist. LEXIS 55192, at *11-12 (D.N.J. Apr. 19, 2012) ("beyond relying on his own subjective belief as to the unhealthy nature of even small amounts of trans fats, he does not set forth allegations as to how he paid a premium for Benecol or received a product that did not deliver the advertised benefits") (granting motion to dismiss).

pick up or clean up debris or liquid **as expected**"); ¶ 9 (Reid's Vacuum "was not **as powerful as he expected**") (emphasis added to each).

Additionally, there is no actual injury here because competitors in the wet/dry vacuum industry also sell their products using peak horsepower ratings, as Plaintiffs have admitted and as this Court has taken judicial notice.  *See* Order at 1 n.1; Shortnacy CAC Decl., Exh. A.  Therefore, pricing across wet/dry vacuum brands is based, in part, on peak horsepower ratings.

As such, Plaintiffs could not possibly have "paid a price premium" for their Vacuums because all wet/dry vacuums are priced using the same specifications. Indeed, Plaintiffs do not, and cannot, allege what they "should have paid" for their Vacuums because no such comparison exists.   As such, a claim for "price inflation" damages is too speculative to constitute an injury in fact.  *See, e.g., Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007) ("[T]o show any damages under the 'price inflation' theory . . . would require evidence of the *hypothetical* price at which Lipitor would sell if not for the allegedly misleading advertisements.  Determination of such hypothetical price, even with expert proof, is too speculative to be the premise of an 'actual injury' under Article III.") (dismissing Florida consumer fraud claim).

Most significantly Plaintiffs fail to allege that they would have or could have purchased a competitor's model at the operational horsepower they expected, even though at least one Plaintiff purchased a "replacement" vacuum.  (SCAC ¶ 7.)

## II.   PLAINTIFFS' CLAIMS FOR BREACH OF EXPRESS WARRANTY FAIL AS A MATTER OF LAW

### A.   To Create a Claim, Plaintiffs Must Rewrite Shop-Vac's Representations and Therefore Their Claims for Breach of Express Warranty Fail as a Matter of Law

To state a claim for breach of express warranty, a plaintiff must allege (1) that the defendant made an affirmation of fact or description of its goods; (2) that the statement formed part of the basis of the bargain between the parties; and (3) that the product failed to conform with **the affirmation or description**. Order at 9 (citing U.C.C. § 2-313) (emphasis added).

A product's failure to conform to a consumer's rewriting or misunderstanding of advertised terms cannot state a claim for breach of express warranty.  A plaintiff cannot seek recovery for affirmations the defendant never made, which exist only in the plaintiff's mind. *McKinniss v. Gen. Mills, Inc.*, 2007 U.S. Dist. LEXIS 96107, at *19 (C.D. Cal. Sept. 18, 2007) (dismissing express warranty claim where plaintiffs "cannot[] allege that Defendant made any 'affirmations of fact or promises' that its products contained real fruit or fruit juice" and "Plaintiffs' selective reading or alleged misunderstanding cannot give rise to an express warranty claim"); *Werbel v. Pepsico, Inc.*, 2010 U.S. Dist.

LEXIS 76289, at *14-15 (N.D. Cal. Jul. 1, 2010) (dismissing warranty claims as "frivolous" because "[n]o such claim [that Cap'n Crunch 'contains berries'] is made expressly or impliedly anywhere on the . . . packaging or marketing material cited by Plaintiff.").[4]  Such is the case here.

### 1.    The SCAC Does Not Challenge Shop-Vac's Actual Peak Horsepower Representations, and Plaintiffs Must Rewrite Those Representations to Support Their Claims

The SCAC admits that Plaintiffs purchased their Vacuums based on "peak horsepower" representations on Shop-Vac's packaging, (SCAC ¶¶ 7-9), which this Court has already recognized does not represent performance during consumer use. *See* Shortnacy CAC Decl., Exhs. A, C.  Nonetheless, the SCAC asserts that "a reasonable consumer would understand the term peak horsepower to mean the maximum horsepower reachable during the vacuum's operation."  (SCAC ¶ 17.)

Plaintiffs disingenuously attempt to buttress this interpretation by claiming that "'Peak' horsepower, as used in the industry, generally refers to the actual *operating* horsepower which a motor can attain for [sic] short time."  (SCAC ¶ 25.)

---

[4] The terms of an express warranty are strictly construed, and a breach of warranty claim requires that the warranty's exact terms were breached. *See, e.g., Stefl v. Medtronic*, 916 S.W.2d 879, 883 (Mo. Ct. App. 1996) (holding that "the results with this product have been excellent" expressly warrants only that the product had performed well in the past, and even complete mechanical failure could not support a warranty claim because "Respondent's words cannot be distorted to this degree"); *Haas v. Buick Motor Div. of Gen. Motors Corp.*, 156 N.E.2d 263 (Ill. App. Ct. 1959) (burden is on plaintiff to show that exact terms of the express warranty were breached).

Yet in the CAC, Plaintiffs cited Shop-Vac's website and excerpted an article stating the exact opposite—that peak horsepower is used "throughout the industry" and is "measured in labs with very sensitive instruments, and only exists for a tiny fraction of a second"—facts which the Court took judicial notice of in dismissing the CAC.  *See* Shortnacy CAC Decl., Exhs. A, C.

Indeed, the use of peak horsepower as a laboratory measurement (*i.e.,* not during consumer operation) is so widespread that counsel for Plaintiffs sued Shop-Vac's primary competitor, Emerson Electric Company, for the very same representations.  *See* Declaration of Michael B. Shortnacy, dated October 25, 2013 ("Shortnacy SCAC Decl."), Exh. 1 (*In re Emerson* complaint).

One need only look to Plaintiffs' SCAC to see that Plaintiffs need to change the actual representations made by Shop-Vac in order to sustain this case.  For example, Plaintiffs attack Shop-Vac's "peak horsepower" representations by claiming that they tested their Vacuums' "air horsepower" or "the actual suction power of the vacuum" because "air horsepower corresponds directly with the vacuum's ability to do the work that a consumer expects."  (SCAC ¶ 34.)  But Shop-Vac made no representations about "air horsepower" or "actual suction power."

Plaintiffs also admit that "[t]here is not enough energy . . . coming from a standard household electrical outlet, to generate the amount of output horsepower

claimed by Shop-Vac." (SCAC ¶ 19.) Thus, their interpretation of "peak horsepower" as equating to "operating horsepower" is admittedly impossible and unreasonable. Plaintiffs' alleged tests of the Vacuums "at the typical household voltage"—which measured their performance "in actual use"—has no bearing on the tests conducted or representations made by Shop-Vac or any other manufacturer or seller. (SCAC ¶¶ 30, 35.) This is because Plaintiffs' testing methods, which were knowingly different from Shop-Vac's dynamometer tests and yielded wildly different results, did not duplicate Shop-Vac's peak horsepower testing methods.

Finally, Plaintiffs hypothesize that *if* the Vacuums operated at peak horsepower—which Shop-Vac never claimed—the Vacuums would violate safety standards. (SCAC ¶¶ 38-45.) Thus, Plaintiffs again acknowledge that their subjective expectations for operational horsepower were literally impossible and therefore, not reasonable.

The net result of the SCAC is that **Plaintiffs never challenge Shop-Vac's actual representations of fact as untrue**. In fact, counsel for Plaintiffs admitted in earlier iterations of the complaint that the Vacuums, when tested using methodology employed by Shop-Vac, reach their peak horsepower (even if only briefly) and therefore admitted that the peak horsepower representations are literally true. *See, e.g.,* Shortnacy CAC Decl., Exh. H, ¶ 15 (McMichael

complaint) ("the motor can operate at 'Peak' for only a small fraction of a second"); Exh. J, ¶ 18 (Reid complaint) ("Shop-Vac reaches the stated 'peak horsepower.'").   As such, the breach of express warranty claims should be dismissed.

> **2.     The SCAC Likewise Does Not Challenge Shop-Vac's Actual Tank Size Representations**

Shop-Vac's packaging also states that each Vacuum is equipped with a canister of a certain size, not as Plaintiffs assert, a certain holding capacity.  Wolf Decl., Exhs. A through E.   Shop-Vac does not represent that this figure is indicative of its operational capabilities, and in fact the packaging and Shop-Vac's website clearly state that the tanks' "[w]orking capacity may vary by use." *Id.*; Shortnacy CAC Decl., Exh. B (cited at CAC ¶ 2).   Indeed, this explanatory language is the **only** time Shop-Vac uses the word "capacity" in its representations. But "capacity," which is never stated except as to note that it is variable, is the other central focus of Plaintiffs' claim.

The district court in *Gertz v. Toyota Motor Corp.*, No. 2:10-cv-01089 (C.D. Cal. Sept. 10, 2010) (Doc. No. 68) dismissed nearly identical breach of express warranty claims for insufficient pleading.   In *Gertz*, the plaintiffs alleged that although their Owner's Manuals represented that plaintiffs' cars came with 11.9 gallon fuel tanks, plaintiffs were unable to put 11.9 gallons of fuel into their cars because the tanks would contract in cold weather. *Id.* at 16.   In rejecting their

claims, the court pointed out that the Owner's Manual also disclosed to the plaintiffs that the fuel tanks' capacity would be variable depending on the weather. *Id.* at 17.   Accordingly, plaintiffs "fail[ed] to allege the requisite element of breach" of express warranty. *Id.* at 17.

Such is the case with the SCAC.  Plaintiffs allege that their Vacuums are incapable of reaching their represented tank size, but omit that the same packaging upon which they relied also informed them that "[w]orking capacity may vary by use."  Wolf Decl., Exhs. A through E.  Therefore, like the *Gertz* plaintiffs and their variable fuel tanks, Plaintiffs here were informed that the capacity of their Vacuums would vary (notwithstanding the difference between "size" and "capacity").  Therefore, like the *Gertz* plaintiffs, Plaintiffs here also fail to allege the requisite element of breach of express warranty.

Moreover, as with peak horsepower, Plaintiffs do not challenge the "size of the containers" as stated, only that "in actual operation" they cannot hold as much as the represented size, again altering the representations actually used by Shop-Vac.  (SCAC ¶ 46.)  Plaintiffs apparently did not test whether Shop-Vac's actual representations are true, and instead tested "the capacity of the vacuum tanks . . . in actual operation" including "an automatic shut off feature."[5]  (SCAC ¶¶ 46-48.)[6]

---

[5] To the extent Plaintiffs complain they were unaware of their Vacuums' "automatic shut off feature" which allegedly reduces the Vacuums' capacities,

Therefore, as with the peak horsepower claims, because Plaintiffs must rewrite Shop-Vac's tank size representations to support their allegations, the breach of express warranty claims should be dismissed, with prejudice.

### B.   Plaintiffs Did Not Provide the Notice Required for Breach of Express Warranty Claims

The Order directed the SCAC to allege, as required by the U.C.C., that Plaintiffs provided notice to Defendants of their breach of warranty claims.  *See* Order at 12 (citing U.C.C. § 2-607(3)(a) ("the buyer must . . . notify the seller of breach or be barred from any remedy")).  Such notice must inform the seller that the particular transaction is "troublesome and must be watched."  *See* Order at 12 (quoting *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 590 (Ill. 1996)).

Furthermore, and critically here, such notice must be provided ***prior*** to the initiation of a lawsuit, as the seller must have an opportunity to cure the alleged defect or otherwise avoid the burdens of litigation.  *See* Order at 12 (citing U.C.C.

---

(SCAC ¶ 46), the Vacuums' user manual, found on Shop-Vac's website and included in the Vacuums' packaging, describes in detail the operation and purpose of the automatic suction shut-off safety feature.  Shortnacy CAC Decl., Exh. D, at 8.

[6] The SCAC states that "[e]ven when the capacity of the tanks is measured when the vacuums are not in use and the automatic shut off mechanism is disabled, only one of the test vacuums was able to reach its advertised capacity."  (SCAC ¶ 48.)  Plaintiffs do not reveal which Vacuum this statement applies to, and it would negate a tank capacity claim with respect to that model notwithstanding any of the other pleading deficiencies described herein.  Such vague and conclusory pleading cannot support a claim for breach of express warranty and should be disregarded.

§ 2-607 cmt. 4 ("[K]nowledge of an alleged defect . . . is necessary to allow the seller an opportunity to either cure the defect **or settle the dispute** prior to the initiation of a lawsuit. . . . Plaintiffs' argument that the filing of a complaint can serve as notice is not persuasive . . .") (emphasis added)).[7] Here, neither Harbut nor McMichael provided timely notice, and Reid's notice was arguably timely in a literal sense, but not made in good faith.

McMichael allegedly sent notice to Defendants on August 13, 2013—not only over one year after his alleged purchase and after filing his *second* complaint (the CAC), but after it was dismissed by this Court. (SCAC ¶ 8.) Nor can McMichael rely on Reid's alleged notice (the Court has already rejected this argument), as the SCAC does not allege that Reid's notice identified McMichael's transaction. *See* Order at 12 ("[the U.C.C.] require[s] notice of an alleged defect with respect to a plaintiff's **actual** transaction.") (citing *Connick*, 675 N.E.2d at 590 and U.C.C. § 2-607(3)(a) (emphasis added)).

---

[7] *See also Alvarez v. Chevron Corp.*, 656 F.3d 925, 932-33 (9th Cir. 2011) ("Plaintiffs failed to plead that they provided reasonable notice under § 2607(3)(A) because their notice letter was sent to Defendants simultaneously with service of the complaint."); *Microsoft Corp. v. Logical Choice Computers, Inc.*, 2000 U.S. Dist. LEXIS 10972, at *12 (N.D. Ill. Jul. 21, 2000) ("Through its submission of the complaint-notice argument, LCC effectively concedes that it did not provide direct notice of the breach to Acecom before filing the complaint."); *AFSCME v. Ortho-Mcneil-Janssen Pharms., Inc.*, 2010 U.S. Dist. LEXIS 23181, at *22 (E.D. Pa. Mar. 11, 2010) ("Plaintiffs needed to allege, at a minimum, that they notified Defendants in some manner 'or be barred from any remedy.'").

Meanwhile, Harbut does not allege to have sent notice to Defendants at all. (SCAC ¶ 7.)   To the extent Harbut "notified Lowe's personnel of his dissatisfaction" when he returned to the store, the SCAC does not allege that he identified himself, indicated that the "transaction must be watched," or opened the door to any discussion of settlement.   Moreover, the SCAC suggests that Harbut returned his unit to Lowe's for a refund, barring any claim for damages.[8]

Finally, Reid alleges to have provided notice to Defendants on April 23, 2012, but he filed his complaint just ten days later, on May 3, 2012.   Shortnacy CAC Decl., Exh. J (Reid complaint).   Even if technically sent "pre-litigation," Reid's alleged notice cannot be seen as a good faith effort to provide Defendants an opportunity to cure or settle a warranty claim prior to litigation.   The Court should not permit Reid's sham notice to obviate the entire purpose of the U.C.C.'s notice requirement.

## III.   PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY FAIL AS A MATTER OF LAW

Goods are merchantable, and therefore do not breach the implied warranty of merchantability, if they:

(a) pass without objection in the trade under the contract description;
(b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods

---

[8] The only plausible explanation for Harbut keeping his Vacuum after being dissatisfied with it and returning to Lowe's shortly thereafter would be to position himself as a plaintiff.

are used; (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

U.C.C. § 2-314(2) (cited at Order at 13-14).  Plaintiffs echo some of these phrases, but in substance merely restate their express warranty claims, and therefore the claims should be rejected.  (SCAC ¶¶ 40, 141-42.)

### A.    Plaintiffs Do Not Allege that Shop-Vac Vacuums Are Unfit for Their Ordinary Purpose—To Vacuum

The SCAC's only allegation of the Vacuums being "unfit for their intended purposes" (U.C.C. § 2-314(2)(c)) is premised on the Vacuums operating at peak horsepower.  (SCAC ¶¶ 29, 40.)   Such an allegation cannot support Plaintiffs' claim because: (1) it involves an admittedly impossible hypothetical scenario; and (2) Shop-Vac never made any such representation.  *Id.*

Plaintiffs allege that a Vacuum operating at peak horsepower in a consumer's home *could* possibly be dangerous, but then assert that such operation is impossible due to limitations in home electrical systems.  (SCAC ¶¶ 29, 40, 43, 45.)   Nonetheless, a theoretical safety concern—and in this case an entirely unfounded one—cannot support a claim for breach of implied warranty, and the claim must be dismissed.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("The plaintiffs do not allege the iPods failed to do anything they were

designed to do nor do they allege that they, or any others, have suffered or are substantially certain to suffer inevitable hearing loss or other injury . . .").

Furthermore, to the extent Plaintiffs based their claim on purported dissatisfaction with their Vacuums, "[f]itness for the ordinary purposes for which such goods are used" does not require that the products "precisely fulfill the expectation of the buyer," but only that they meet a "minimum level of quality." *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997) (dismissing implied warranty claims) (quoting *Skelton v. Gen. Motors Corp.*, 500 F. Supp. 1181, 1191 (N.D. Ill. 1980)); *Am. Suzuki Motor Corp. v. Super. Ct.*, 44 Cal. Rptr. 2d 526, 529 (Ct. App. 1995) (same).

Therefore, the implied warranty of merchantability is breached only "if the product lacks even the most basic degree or fitness for ordinary use." *Birdsong*, 590 F.3d at 958 (affirming dismissal).

But Plaintiffs, far from alleging a lack of "the most basic degree of fitness for ordinary use," actually admit that their Vacuums functioned as vacuums in actual use. *See* SCAC ¶ 7 (Harbut's Vacuum "was not able to **entirely remove** saw dust"); ¶ 8 (McMichael's Vacuum "failed to pick up **most of** the materials," "**most of** the debris," and "struggled to pick up or clean up debris or liquid **as expected**"); ¶ 9 (Reid's Vacuum "was not **as powerful as he expected** . . . and was unable to remove cat hair") (emphasis added to each). Plaintiffs' disappointment

that the Vacuums did not remove <u>all</u> the sawdust, or pick up <u>all</u> debris or cat hair cannot support their implied warranty claims.

**B.      Plaintiffs Fail to Adequately Allege that Shop-Vac Vacuums Do Not Pass Without Objection Into Trade or Are Insufficiently Packaged or Labeled**

In Count IV of the SCAC, Plaintiffs allege that their Vacuums do not pass into the trade "without objection" because the Vacuums "do not conform to their represented specifications," are "improperly packaged," and "fail to conform to . . . container or product labels," citing U.C.C. §§ 2-314(2)(a), (e) and(f).  (SCAC ¶¶ 140-42.)[9]

But Plaintiffs misunderstand the law.  The U.C.C.'s requirement that goods "pass without objection in the trade" is merely another way to state that goods must be fit for ordinary purposes.  For example, in *Martin v. Joseph Harris Co.*, 767 F.2d 296, 303 (6th Cir. 1985) the court affirmed judgment notwithstanding the verdict because diseased cabbage seeds that produced an unsalable crop would not pass without objection in the trade, and thus were not merchantable.  *See also Dempsey v. Rosenthal*, 121 Misc. 2d 612, 616 (Civ. Ct. N.Y. 1983) (holding that a dog sold with a congenital defect that prevented it from breeding would not pass without objection in the trade and was thus, not merchantable).  Therefore, because

---

[9] Defendants have concluded that Plaintiffs do not allege violations of subsections (b) and (d).  Defendants reserve the right to refute any such allegations should they be clarified in Plaintiffs' opposition to this motion.

the Vacuums are fit for their ordinary purposes, *see* Section III.A, *supra*, Plaintiffs fail to state a claim under U.C.C. § 2-314(2)(a).

Similarly inapplicable is U.C.C. § 2-314(2)(e), which does not ask whether packaging "contain[s] inaccurate information," (SCAC ¶ 142), which would merely restate an express warranty claim, but inquires only whether packaging is adequate <u>as packaging</u>.  For example, in *Shaffer v. Vict. Station*, 588 P.2d 233, 235 (Wash. 1978), a glass of wine was not adequately "contained, packaged, and labeled" because the glass broke in the customer's hand.  And in *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 560 (Ga. 1996), "bleach which spills via a loose cap is not adequately contained or packaged."  Therefore Plaintiffs do not allege properly an implied warranty claim under U.C.C. § 2-314(2)(e).

Finally, Plaintiffs' U.C.C. § 2-314(2)(f) allegations are "more suited to a breach of express warranty claim, as they [pertain to] specific representations made by the product manufacturer rather than characteristics that affect the product's merchantability."  *Viggiano v. Hansen Natural Corp.*, 2013 U.S. Dist. LEXIS 70003, at *50 (C.D. Cal. May 13, 2013) (dismissing implied warranty claims).  But to the extent they are considered separately, they should be dismissed because Shop-Vac never made representations regarding <u>operational</u> horsepower or <u>operational</u> tank capacity—on the packaging, labels, boxes, casings, or anywhere else.  Therefore Plaintiffs' implied warranty claims under any of the subsections to

U.C.C. § 2-314(2) based on those non-existent representations fail as a matter of law. *See also* Section II.A, *supra*.

### C.   Plaintiffs Did Not Provide the Notice Required for Breach of Implied Warranty Claims

For the same reasons Plaintiffs' express warranty claims should be dismissed for insufficient notice, Plaintiffs' implied warranty claims should be dismissed as well. *See* Order at 14 n.12, Section II.B, *supra*.

## IV.   PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS FAIL AS A MATTER OF LAW

### A.   Plaintiffs Do Not State an Independent Express Warranty Claim Under the Magnuson-Moss Warranty Act ("MMWA")

Despite the clarity of the law and the Order, the SCAC merely repeats the allegations that this Court already has held inadequate to state a claim under the MMWA. (SCAC ¶¶ 125-130.) The MMWA defines a written warranty as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is **defect free** or will **meet a specified level of performance over a specified period of time**.

Order at 7 (citing 15 U.S.C.A. § 2301(6)(A)).

Yet, Plaintiffs still do not allege that Shop-Vac promised a defect-free product. Nor do Plaintiffs allege that Shop-Vac promised performance "over a specified period of time." Thus, Plaintiffs fail to allege a MMWA written warranty, and the claim should be dismissed with prejudice. *See Skelton v. Gen.*

*Motors. Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) ("[A] written affirmation of fact or a written promise of a specified level of performance must relate to a specified period of time in order to be considered a 'written warranty.' A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty."). *See, e.g., Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1051-55 (Ill. 2007) (warranty to replace defective parts for 36 months or 36,000 miles "constitutes a 'written warranty' for purposes of the [MMWA]").[10]

Plaintiffs allege that their Vacuums could not operate at peak horsepower "for any period of time," or "meet the promised specifications with regard to capacity . . . for the same length of time [as another machine]," but these allegations simply do not satisfy the MMWA's requirement that a **warranty** be for "a **specified period** of time." (SCAC ¶¶ 128-29.) If anything, these improper

---

[10] Even if Plaintiffs could allege the existence of a written warranty per the MMWA, the claim would still fail as a matter of law because a plaintiff's dissatisfaction with an otherwise properly manufactured product is not a "defect." *See Larsen v. Trader Joe's Co.*, 2012 U.S. Dist. LEXIS 162402, at *8-9 (N.D. Cal. Jun. 14, 2012) ("The synthetic ingredients at issue were presumably knowingly and purposely added or used in the process of making these food products. As a defect primarily indicates an omission or an aberration, the deliberate use of these ingredients does not comport with the plain meaning of the word 'defect.'"). In other words, Plaintiffs do not allege that there was anything "wrong" with their Vacuums; they merely allege that they were disappointed.

allegations belie Plaintiffs' fundamental misunderstanding of claims properly brought under the MMWA.

Moreover, Plaintiffs may not assert an independent MMWA express warranty claim based on their Vacuums' packaging.  As noted above, an express written warranty under the MMWA has specific requirements, including a promise of performance <u>over a specified period of time</u>, which Plaintiffs cannot satisfy by simply pointing to the products' "packaging, displays, and hang tags in stores." (SCAC ¶ 126.)  *See Skelton*, 660 F.2d at 322 ("there is nothing in the scheme of the statute to suggest that the Act was intended to apply to any promises, affirmations or undertakings other than those defined as written warranties in § 101(6)") (citation omitted); *De Keczer v. Tetley USA, Inc.*, 2013 U.S. Dist. LEXIS 116595, at *8 (N.D. Cal. Aug. 16, 2013) (rejecting the argument "that the labeling on the products at issue constitutes an express warranty" and dismissing the plaintiff's MMWA claims); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 U.S. Dist. LEXIS 101371, at *9-10 (N.D. Cal. Jul. 20, 2012) ("Numerous courts have also held that product descriptions do not constitute warranties against a product defect.").

### B. Plaintiffs' State Law Claims for Breach of Warranty Must Be Dismissed, and Therefore Plaintiffs' MMWA Claims Fail to State a Claim for Relief

Claims brought under the MMWA are determined by the disposition of their underlying state law warranty claims. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1021 (9th Cir. 2008) ("[Plaintiff's] claims under the Magnuson-Moss Act stand or fall with his express and implied warranty claims under state law. Therefore, this court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.") (affirming dismissal of all warranty claims).[11]

Since Plaintiffs' state law warranty claims fail as a matter of law for the reasons described above, their MMWA claims must also be dismissed.

## V. PLAINTIFFS' CONSUMER FRAUD CLAIMS FAIL AS A MATTER OF LAW BECAUSE DEFENDANTS' CONDUCT WAS NEITHER DECEPTIVE NOR UNFAIR

### A. Defendants' Conduct was Not Deceptive Because Plaintiffs' Expectations Were Impossible, and Therefore Unreasonable as a Matter of Law

As noted by the Court, motions to dismiss consumer fraud claims are granted "only in the clearest of cases." (Order at 17.) But a consumer fraud claim should be dismissed where no reasonable consumer would be deceived by a

---

[11]  *See also Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d. Cir. 2010); *Burns v. Winnebago Indus.,* 2012 U.S. Dist. LEXIS 6472, at *12-13 (M.D. Fla. Jan. 20, 2012); *Owen v. GMC*, 2006 U.S. Dist. LEXIS 70466, at *18-19 (W.D. Mo. Sept. 28, 2006).

product's packaging. *Id.  See also Sugawara v. Pepsico, Inc.*, 2009 U.S. Dist. LEXIS 43127, at *6-7 (E.D. Cal. May 20, 2009).

In *Sugawara*, the plaintiff claimed that the packaging for "Cap'n Crunch with Crunchberries" cereal was deceptive because he allegedly believed the cereal contained real fruit based on representations on the packaging.  In dismissing the consumer fraud claims, the court stated that "[t]his Court is not aware of, nor has Plaintiff alleged the existence of, any actual fruit referred to as a 'crunchberry.'" *Id.* at *8.  Thus "a reasonable consumer would not be deceived into believing that the Product in the instant case contained a fruit that does not exist."  *Id.*

Similarly here, Plaintiffs admit—indeed they insist—that their alleged expectations of operating horsepower were not only unreasonable, but ***impossible, "no matter what it says on the packaging*.**"  (SCAC ¶¶ 19, 23) (emphasis added). Furthermore, Plaintiffs claim to have purchased 5.75, 5.5 and 6.5 peak horsepower Vacuums, but assert that no vacuum could exceed 1.587 HP in normal operation, and that even a vacuum with 4 HP would "exceed the house's maximum current." (SCAC ¶¶ 23, 45.)   Therefore, as in *Sugawara*, the SCAC's self-defeating consumer fraud claims should be dismissed because, like crunchberries, reasonable consumers could not reasonably be deceived into believing that "peak horsepower"

means they were purchasing a vacuum that produces "operational horsepower" at levels that cannot exist.[12]

### B.     Plaintiffs Do Not Allege Actual Injury

Consumer fraud allegations also require a showing of actual injury as an element of the plaintiff's claims.  *In re Toyota Motor Corp. Hybrid Brake Mktg.*, 915 F. Supp. 2d 1151, 1155-56 (C.D. Cal. 2013) ("In product liability cases like this one, federal courts are particularly vigilant in requiring a showing of actual injury.").  And as with the injury-in-fact requirement for standing to bring suit, a plaintiff cannot merely allege that "he received less than what he paid for."  *Id.* at 1159 ("Mr. Choi received precisely what he bargained for with Toyota. Consequently, he has no claim against the company.").

Here, Plaintiffs claim only that they paid a "price premium" for their Vacuums while admitting that they received what they paid for—functioning Vacuums.  *See* Section I, *supra*.  In other words, their only alleged injury is that they received less than what they paid for; but such allegations are insufficient to support a claim for relief.  *In re Toyota*, 915 F. Supp. 2d at 1159; *O'Neil v.*

---

[12] Furthermore, Plaintiffs assert that "air horsepower" is the "true measure" of a vacuum's "actual suction power" or "ability to do the work that a consumer expects."  (SCAC ¶ 34.)  Thus, Plaintiffs admit that "peak horsepower" (and even "horsepower" alone) is meaningless to a vacuum shopper because it does not describe the vacuum's performance.  Yet, the SCAC alleges that Plaintiffs bought their Vacuums based on peak horsepower representations on their respective Vacuums' packaging, and seek recompense for relying on information that Plaintiffs assert is not useful and does not relate to operational performance.

*Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1118 (D. Minn. 2008) ("[T]he O'Neils bargained for a crib with a functioning drop side, and that is precisely what they received. . . . [H]aving failed to allege any cognizable damages, their claims falter.") (dismissing claims).

And again, even if Plaintiffs *could* support their claims by alleging that they did not receive the benefit of their bargain, their damage claims would still be too speculative because competitors in the wet/dry vacuum industry also sell their products with peak horsepower representations.   Thus, Plaintiffs do not (and cannot) allege that they could have purchased a wet/dry vacuum having different representations, or that they would have paid a <u>particular</u> price for a vacuum with different representations.  *See Dumpson v. SmithKline Beecham Corp.*, 2013 U.S. Dist. LEXIS 96776, at *7 (E.D. Pa. Jul. 10, 2013) (dismissing consumer fraud claims because "Plaintiff has not alleged any harm . . . he [does not] identify what he would have paid for some other drug had he not taken Avandia, or anything beyond that his physician 'might have considered prescribing' some 'alternative medication.'"); *Schrank v. SmithKline Beecham Corp.*, 2013 U.S. Dist. LEXIS 96768, at *6-7, *6 n.14 (E.D. Pa. Jul. 10, 2013) (dismissing consumer fraud claims for insufficient pleading of injury where the plaintiff failed to allege that an alternative product was available at a lower price).  *See also* Section I, *supra*.

### C.     Plaintiffs Do Not Allege that Defendants' Conduct Was Unfair

To the extent the SCAC alleges consumer fraud law violations for "unfair" business practices, the claims must also be dismissed as a matter of law.  Plaintiffs do not allege that any of the elements for unfairness have been met, and instead merely include the word "unfair" in their claims for relief.  (SCAC ¶¶ 70-119.) Such a "threadbare recital" of a claim cannot survive a motion to dismiss.  *Fowler*, 578 F.3d at 210; *see also* Legal Standards Section, *supra*.

Moreover, even if unfairness were adequately pleaded—which it was not— the SCAC's allegations cannot amount to unfair business conduct and must be dismissed as a matter of law.  Conduct is "unfair" if it "offends public policy; is immoral, unethical, oppressive or unscrupulous; or causes substantial injury." *Ciszewski v. Denny's Corp.*, 2010 U.S. Dist. LEXIS 55903, at *5 (N.D. Ill. Jun. 2, 2010).  *See also Williamson v. Reinalt-Thomas Corp.*, 2012 U.S. Dist. LEXIS 58639, at *32 (N.D. Cal. Apr. 25, 2012) (same).

But Plaintiffs cannot allege adequately that Shop-Vac's business conduct was unfair because they do not even allege that Shop-Vac's peak horsepower and tank size representations are untrue.  *See* Section II, *supra*.  And far from alleging

"substantial injury," Plaintiffs have not even alleged an actual injury. *See* Sections I, V.B, *supra*.[13]

Thus, in *Berry v Budget Rent a Car Sys.*, 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007), the District Court held that a car rental fee was "not unfair or deceptive because it was clearly disclosed at the time of the rental," just as peak horsepower and tank size were clearly disclosed to Plaintiffs here. Likewise, where "Plaintiff received exactly what he paid for, at a price he was willing to pay . . . Plaintiff has failed to state a claim under the unfair prong of the UCL." *Williamson*, 2012 U.S. Dist. LEXIS 58639 at *36.

Similarly in *Gertz*, the plaintiff's claims were dismissed because merely alleging that a product is sometimes unsatisfactory cannot support an unfair competition claim. *Gertz*, No. 2:10-cv-01089 (Doc. No. 68 at 11) ("Plaintiffs have benefitted from (or at the very least, have not been injured by) their Toyota Priuses some, if not most, of the time. Accordingly, it is difficult to see how Toyota's allegedly unfair misrepresentations were substantially injurious . . .").[14]

---

[13] Nor do Plaintiffs allege a violation of unfair competition law based on anti-competitive conduct. *See Cel-Tech Comm'ns., Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999) ("we must require that any finding of unfairness to competitors . . . be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition").

[14] The CAC does not allege unfair competition based on the "unlawful" prong of the UCL, but such a claim would also fail as a matter of law because Plaintiffs have not successfully alleged a violation of any law. *See, e.g.*,

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiffs' claims in the Second Consolidated Amended Complaint must be dismissed, as a matter of law, with prejudice.

LOEB & LOEB LLP

Dated:  October 25, 2013             By: /s/ Michael B. Shortnacy

Michael L. Mallow (*pro hac vice*)
Michael B. Shortnacy (*pro hac vice*)
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
P: (310) 282-2000
F: (310) 282-2200

Thomas G. Collins
Buchanan Ingersoll & Rooney PC
409 N. Second Street
Harrisburg, PA  17101
P: (717) 237-4843
F: (717) 233-0852

*Attorneys for Defendants Shop-Vac Corporation, Lowe's Home Centers, Inc., and Lowe's HIW, Inc.*

---

*Williamson*, 2012 U.S. Dist. LEXIS 58639 at *31-32 ("Plaintiff's UCL claim lacks 'borrowed' law as the basis for the unlawful prong of his UCL claim.") (dismissing FAL, UCL and CLRA claims).

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)**

Pursuant to Local Rule 7.8(b)(2) and Case Management Order No. 13 (Doc No. 101), it is hereby certified that Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Consolidated Amended Complaint contains 8,542 words (exclusive of the tables of contents and citations, the certificate of service, and this certificate), according to the Microsoft® Word 2010 word processing system used to prepare it, and that the Memorandum of Law, therefore, complies with the Court's Case Manager Order No. 13.


By:   /s/ Michael B. Shortnacy
         Michael B. Shortnacy

## CERTIFICATE OF SERVICE

I, Michael B. Shortnacy, hereby state that I have this day caused the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Consolidated Amended Complaint to be transmitted to the Court via the Middle District of Pennsylvania's electronically case filing ("ECF") system for electronic service upon the following attorneys:

| | |
|---|---|
| Sanford P. Dumain<br>Andrei Rado<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10018<br>PH: 212-594-5300<br>sdumain@milberg.com<br>arado@milberg.com | Interim Class Counsel for Plaintiffs |
| Robert I. Lax<br>Lax LLP<br>380 Lexington Avenue<br>31st Floor<br>New York, NY 10168<br>PH: 212-818-9150<br>rlax@lax-law.com | Interim Class Counsel for Plaintiffs |
| Adam R. Gonnelli<br>Faruqi and Faruqi LLP<br>369 Lexington Avenue, 10th Floor<br>New York, NY 10017<br>agonnelli@faruqilaw.com | Interim Class Counsel for Plaintiffs |
| Joseph U. Metz (PA ID No. 32959)<br>Dilworth Paxson LLP<br>112 Market Street, Suite 800<br>Harrisburg, Pennsylvania 17101-2015<br>Tel: 717-236-4812<br>Fax: 717-236-7811<br>jmetz@dilworthlaw.com | Interim Liaison Counsel for Plaintiffs |

| | |
|---|---|
| Bruce Daniel Greenberg<br>Marissa Lenore Quigley<br>Lite DePalma Greenberg LLC<br>Two Gateway Center<br>12th Floor<br>Newark, NJ  07102<br>PH:  973-623-3000<br>mquigley@litedepalma.com<br>bgreenberg@litedepalma.com | Interim Executive Committee Members for Plaintiffs |
| Jon Herskowitz<br>Baron & Herskowitz<br>9100 South Dadeland Boulevard<br>PH-1, Suite 1704<br>Miami, FL  33156<br>PH:  305-670-0101<br>jon@bhfloridalaw.com | Interim Executive Committee Members for Plaintiffs |
| Michael R. Reese<br>Reese Richman LLP<br>875 Avenue of the Americas<br>18th Floor<br>New York, NY  10001<br>PH:  212-643-0500<br>mreese@reeserichman.com | Interim Executive Committee Members for Plaintiffs |
| William J. Pinilis<br>PinilisHalpern LLP<br>160 Morris Street<br>Morristown, NJ  07962<br>PH:  973-401-1111<br>wpinilis@consumerfraudlawyer.com | Interim Executive Committee Members for Plaintiffs |

LOEB & LOEB LLP

Date:  October 25, 2013          By:   /s/ Michael B. Shortnacy
                                          Michael B. Shortnacy