## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380 |
| | Civil Action No. 4:12-md-02380 |
| THIS DOCUMENT RELATES TO: | (Chief Judge Kane) |
| ALL CASES | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE SECOND CONSOLIDATED AMENDED COMPLAINT**

**DILWORTH PAXSON LLP**
Joseph U. Metz (PA ID No. 32958)
112 Market Street, Suite 800
Harrisburg, Pennsylvania 17101-2015
Tel:  717-236-4812
Fax: 717-236-7811
Email: jmetz@dilworthlaw.com

*Interim Liaison Counsel*

## <u>TABLE OF CONTENTS</u>

Page

Table of Authorities ..................................................................................... iii

I.      INTRODUCTION ............................................................................. 1

      A.     Plaintiffs' Purchases And The Representations They Relied Upon ...................... 1

      B.     Notice Of Warranty Claim ................................................................ 3

      C.     Written Warranty Statements ............................................................ 3

      D.     Fitness For Ordinary Purpose ........................................................... 4

II.     PROCEDURAL HISTORY AND STATEMENT OF FACTS ....................... 5

III.    ARGUMENT .................................................................................. 7

      A.     Standards Applicable To This Motion ................................................. 7

      B.     The Applicability And Standards Of Rule 9(b) And 12(b)(1) .................... 8

      C.     Objections To Defendants' Exhibits And Improper Use Of Judicial
            Notice .......................................................................................... 9

      D.     A Choice Of Law Analysis Is Premature ........................................... 11

      E.     Plaintiffs Have Adequately Stated A Claim Regarding The
            Misrepresentations Of Defendants ................................................... 13

            1.     UDAP Statutes ................................................................. 14

            2.     Defendant's Sales And Promotion Practices Were Both Deceptive And
                 Unfair, And Caused Plaintiffs A Loss .................................... 15

                 a.     Establishing Deception ........................................... 17

                      (1)    Consumer protection laws should be broadly
                            interpreted in favor of protecting consumers. ................... 17

                      (2)    The *net* or *overall impression* of the advertisement or
                            practice is what matters. .................................... 17

                      (3)    The *tendency or capacity* to deceive a consumer is the
                            important inquiry. .......................................... 18

(4)    The ad or practice should be viewed from the perspective of either the "least sophisticated, or the "reasonable consumer." ..................................................18

F.    The SCAC Sufficiently States Claims For Breach Of Express Warranty Under Both The Magnuson-Moss Act And The Uniform Commercial Code ....................................................................20

    1.    Breach Of Express Warranty Under The Magnuson-Moss Warranty Act ..........................................................................22

    2.    Plaintiffs' Magnuson-Moss Notice Was Adequate ...................................23

    3.    Breach Of Express Warranty Under The Uniform Commercial Code ................................................................24

        a.    First Element Of UCC Express Warranty Claim...........................26

        b.    Second Element Of UCC Express Warranty Claim .......................29

        c.    Third Element Of UCC Express Warranty Claim .........................30

G.    The SCAC Includes Expanded Allegations Regarding UCC Warranty Notice, Which Are Sufficient For The Plaintiffs And The Class To Pursue Warranty Claims................................................................30

    1.    Mr. Harbut's Notice Alleged In The SCAC Is Clearly Valid Under Missouri Law ...........................................................31

    2.    Mr. McMichael's Notice Allegations Are Sufficient ................................32

H.    Plaintiffs Have Stated Claims For Breach Of Implied Warranty .........................35

I.    Plaintiffs Have Pleaded That Lowes Made Independent Representations And Adopted Those Of Shop-Vac...........................................................................36

IV.    CONCLUSION....................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Hylands, Inc.,*
   2012 U.S. Dist. LEXIS 61606 (C.D. Cal. May 2, 2012) .........................................25

*Arlandson v. Hartz Mt. Corp.,*
   792 F. Supp. 2d 691 (D.N.J. 2011).........................................36

*Aron v. U-Haul Co. of Cal.,*
   49 Cal. Rptr. 3d 555 (Ct. App. 2006) .........................................18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................7

*Avery v. State Farm Mut. Auto. Ins. Co.,*
   835 N.E.2d 801 (Ill. 2005).........................................12

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.,*
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) .........................................13

*Bednarski v. Hideout Homes & Realty, Inc.,*
   709 F. Supp. 90 (M.D. Pa. 1988).........................................32, 33

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).........................................7

*Bisson v. Ward,*
   628 A.2d 1256 (Vt. 1993).........................................18

*Bollino v. Hitzig,*
   No. 22913/99, 2001 N.Y. Misc. LEXIS 1106 (Sup. Ct. Dec. 7, 2001) .........................................14

*Borchardt v. Mako Marine Int'l., Inc.,*
   No. 08-CV-61199, 2011 U.S. Dist. LEXIS 55150 (S.D. Fla. May 23, 2011).........................................22

*Bowen v. Young,*
   507 S.W.2d 600 (Tex. Civ. App. 1974).........................................28, 29

*Boyd v. Homes of Legend, Inc.,*
   981 F. Supp. 1423 (M.D. Ala. 1997).........................................22

*Boyes v. Greenwich Boat Works, Inc.,*
   27 F. Supp. 2d 543 (D.N.J. 1998).........................................34

*Bruno v. Quten Research Inst., LLC,*
    280 F.R.D. 524 (C.D. Cal. 2011) .......................................................................19

*Church of the Nativity of Our Lord v. WatPro, Inc.,*
    491 N.W.2d 1 (Minn. 1992) ..............................................................................33

*Cipolle v. Liggett Group, Inc.,*
    683 F. Supp. 1487 (D.N.J. 1988) .....................................................................30

*Cipollone v. Liggett Group, Inc.,*
    893 F.2d 541. (3d Cir. 1990), *rev'd in part on other grounds,* 505 U.S. 504 (1992)........24, 34

*City of Pittsburgh v. W. Penn Power Co.,*
    147 F.3d 256 (3d Cir. 1998) ...............................................................................9

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ...............................................................................9

*Connick v. Suzuki Motor Co., Ltd.,*
    174 Ill. 2d 482, 625 N.E.2d 584 (1996) ..........................................................33

*Consolidated Data Terminals v. Applied Digital Data Sys., Inc.,*
    708 F.2d 385 (9th Cir. 1983) ...........................................................................28

*Delahunt v. Cytodyne Techs.,*
    241 F. Supp. 2d 827 (S.D. Ohio 2003) ...........................................................13

*Doe v. Boys Clubs of Greater Dallas, Inc.,*
    907 S.W.2d 472 (Tex. 1995) ...........................................................................18

*Elder v. Fischer,*
    717 N.E.2d 730 (Ohio Ct. App. 1998)............................................................17

*Fayne v. Vincent,*
    301 S. W.3d 162 (Tenn. 2009) .........................................................................18

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.,*
    No. 03-CV-4558, 2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. 3, 2008) ...........24, 25

*Gff Corp. v. Associated Wholesale Grocers, Inc.,*
    130 F.3d 1381 (10th Cir. 1997) .........................................................................9

*Gladden v. Cadillac Motor Car Div., General Motors Corp.,*
    83 N.J. 320 (1980) ...........................................................................................28

*Goldstein v. G.D. Searle & Co.,*
    62 Ill. App. 3d 344 (1978) ...............................................................................31

*Harper v. LG Elecs. USA, Inc.*,
   595 F. Supp. 2d 486 (D.N.J. 2009)......................................................................12

*Heller Fin., Inc. v. Midwhey Powder Co.*,
   883 F2d 1286 (7th Cir. 1989) ..........................................................................8, 9

*Henningsen v. Bloomfield Motors, Inc.*,
   32 N.J. 358 (1960) ...........................................................................................29

*Ivie v. Kraft Foods Global, Inc.*,
   2013 U.S. Dist. LEXIS 93940 (N.D. Cal. June 28, 2013)....................................16

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
   299 F.3d 1242 (11th Cir. 2002) .........................................................................12

*In re K-Dur Antitrust Litig.*,
   338 F. Supp. 2d 517 (D.N.J. 2004) .....................................................................12

*Kansas City, Mun. Corp., v. Keene Corp.*,
   855 S.W.2d 360 (Mo. Supreme Court 1993)....................................................31, 32

*King v. Dogan*,
   31 F.3d. 344 (5th Cir. 1994)...............................................................................26

*Kirk v. Source One Mortgage Servs. Corp.*,
   54 Cal. Rptr. 2d 358 (Cal. Ct. App. 1996)..........................................................17

*Knipe v. Smithkline Beecham*,
   583 F. Supp. 2d 602 (E.D. Pa. 2008)..................................................................29

*L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*,
   9 F.3d 561 (7th Cir. 1993) ............................................................................27, 30

*LaSalle Nat'l Bank v. First Conn. Holding Group, L.L.C.*,
   287 F.3d 279 (3d Cir. 2002) ..............................................................................10

*Lemelledo v. Beneficial Mgmt. Corp.*,
   696 A.2d 546 (N.J. 1997) ..................................................................................17

*In Re Long Fence and Home, LLLP*,
   77 Fed. Reg. 12588 (Mar. 1, 2012).....................................................................19

*Ly. v. Nystrom*,
   615 N.W.2d 302 (Minn. 2000) ...........................................................................17

*Marine Midland Bank v. Carroll*,
   98 A.D.2d 516 (N.Y. App. Div. 1984) ................................................................30

*In re McDonald's French Fries Litig.,*
    503 F. Supp. 2d 953 (N.D. Ill. 2007) ................................................................................ 30, 33

*McDonnell Douglas Corp. v. Thiokol Corp.,*
    124 F.3d 1173 (9th Cir. 1997) ........................................................................................... 24

*Michael v. Mosquera-Lacy,*
    200 P.2d 694 (Wash. 2009) ............................................................................................... 17

*Michigan S. R.R. v. Branch & St. Joseph Cty. Rail Users Ass'n,*
    287 F.3d 568 (6th Cir. 2002) ............................................................................................... 8

*In re MTBE Prods. Liab. Litig.,*
    175 F. Supp. 2d 593 (S.D.N.Y. 2001) .............................................................................. 11

*Murphy v. Mallard Coach Co.,*
    179 A.D.2d 187 (N.Y. App. Div. 1992) ............................................................................ 30

*Murray v. Archambo,*
    132 F.3d 609 (10th Cir. 1998) ........................................................................................... 26

*Murray v. Holiday Rambler, Inc.,*
    83 Wis. 2d 406, 265 N.W.2d 513 (1978) .......................................................................... 29

*New Hope Pipe Liners, LLC v. Composites One, LLC,*
    No. 09-CV-3222, 2009 U.S. Dist. LEXIS 111217 (D.N.J. Nov. 25, 2009) ...................... 25

*Palmer v. A.H. Robbins, Co., Inc.,*
    684 P.2d 187 (Colo. 1984) ................................................................................................ 31

*Perona v. Volkswagen of America, Inc.,*
    292 Ill. App.3d 59, 684 N.E.2d 859 (1997) ...................................................................... 33

*Petroleo Brasileiro, S.A., Petrobras v. Nalco Chemical Co.,*
    784 F. Supp. 160 (D.N.J. 1992) ........................................................................................ 28

*Phillips v. Cnty. of Allegheny,*
    515 F.3d 224 (3d Cir. 2008) ............................................................................................... 7

*Pritchard v. Liggett & Myers Tobacco Co.,*
    295 F.2d 292 (3d Cir. 1961) ............................................................................................. 34

*In re Processed Egg Prods. Antitrust Litig.,*
    851 F. Supp. 2d 867 (E.D. Pa. 2012) ............................................................................... 12

*Promisel v. First Am. Artificial Flowers, Inc.,*
    943 F.2d 251 (2d Cir. 1991) ............................................................................................. 11

*Putensen v. Clay Adams, Inc.*,
 12 Cal. App. 3d 1062 (Cal. Ct. App. 1970) ........................................................24

*Quigley v. Esquire Deposition Servs.*,
 LLC 975 A.2d 1042 (N.J. Super. Ct. App. Div. 2009)........................................18

*Ragland v. General Motors Corp.*,
 763 S.W.2d 357 (Mo. App. 1989) .......................................................................31

*Randels v. Best Real Estate, Inc.*,
 612 N.E.2d 984 (Ill. App. Ct. 1993) ...................................................................17

*Realmuto v. Straub Motors, Inc.*,
 65 N.J. 336 (1974) ..............................................................................................28

*Scanlan v. Texas A&M Univ.*
 343 F3d 533 ..........................................................................................................9

*Schaller Tel. Co. v. Golden Sky Sys.*,
 298 F.3d 736 (8th Cir. 2002) ................................................................................8

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
 600 F.3d 1334 (11th Cir. 2010) ............................................................................9

*Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*,
 890 F.2d 108 (9th Cir. 1989) ..............................................................................27

*In re Ski Train Fire in Kaprun, Austria*,
 230 F. Supp. 2d 392 (S.D.N.Y. 2002) .................................................................11

*Smith v. Wrigley Jr. Co.*,
 663 F. Supp. 2d 1336 (S.D. Fla. 2009) ...............................................................30

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
 365 F.3d 353 (5th Cir. 2004) ................................................................................8

*State by Humphrey v. Philip Morris Inc.*,
 551 N.W.2d 490 (Minn. 1996) ...........................................................................17

*Thompson Med. Co., Inc. v. Ciba-Geigy Corp.*,
 643 F. Supp. 1190 (S.D.N.Y. 1986) ...................................................................19

*U.S. v. Melrose-Wakefield Hosp.*,
 360 F.3d 220 (1st Cir. 2004)..................................................................................8

*Union Ink Co., Inc. v. AT&T Corp.*,
 801 A.2d 361 (N.J. App. Div. 2002) ...................................................................14

*United States v. Boyd,*
    289 F.3d 1254 (10th Cir. 2002) ................................................................. 10, 11

*USM Corp. v. Arthur D. Little Sys., Inc.,*
    28 Mass. App. Ct. 108, 546 N.E.2d 888 (1989) ................................................ 28

*Victaulic Co. v. Tieman,*
    499 F.3d 227 (3d Cir. 2007) ..................................................................... 11

*Viking Yacht Co. v. Composites One LLC,*
    496 F. Supp.2d 462 (D.N.J. 2007) ............................................................. 29

*Walters v. Hughes Commc'ns, Inc.,*
    682 F. Supp. 2d 1031 (N.D. Cal. 2010) ....................................................... 18

*Warriner v. Stanton,*
    475 F.3d 497 (3d Cir. 2007) ..................................................................... 12

*Yates v. Clifford Motors, Inc.,*
    283 Pa. Super. 293, 423 A.2d 1262 (Pa. Super. Ct. 1980) ................................. 33

## STATUTES

810 ILCS 5/2-313 ..................................................................................... 12, 25

15 U.S.C. § ............................................................................................... 22

15 U.S.C. § 2301(6) ................................................................................. 22, 23

15 U.S.C. § 2301(6)(A) ................................................................................ 23

15 U.S.C. § 2301(7) .................................................................................... 22

Ariz. Rev. Stat. § 47-2313 ......................................................................... 12, 25

Cal. Com. Code § 2313 ............................................................................. 12, 25

Cal. Com. Code § 2316 ................................................................................ 28

*Consumer Protection And The Law* § 2:10 (2009) ........................................... 16

*Consumer Protection And the Law* §2:10(2009) ............................................. 15

Fla. Stat. § 672.313 .................................................................................. 12, 25

Mo. Rev. Stat. § 400.2-313 ....................................................................... 12, 25

N.J.S.A. 2-316(1) ....................................................................................... 28

N.J.S.A. § 12A:1-204 cmt. 4 ...................................................................................... 34

N.J.S.A. § 12A:2-313 .................................................................................................. 27

N.Y. Gen. Bus. Law § 349 .......................................................................................... 12

Ohio Rev. Code sections 1345.02 and 1345.03 .................................................... 13, 14

Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a) ...................... 19

U.C.C. .................................................................................................................... 22, 31

U.C.C. commentary .................................................................................................... 34

U.C.C. principle ......................................................................................................... 28

U.C.C. § 2-313 ..................................................................................................... 12, 25

U.C.C. § 2-314(2)(a)-(f) .............................................................................................. 36

UCC ....................................................................................................... 26, 28, 29, 30

UCC 2-607 ............................................................................................................ 30, 33

Uniform Commercial Code ................................................................................. passim

Section 2-607 of the uniform Commercial Code ..................................................... 3, 31

Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-2 ................................ 17

**OTHER AUTHORITIES**

1971. Albert N. Shelden, *State Consumer Protection Laws and Unfair Competition* ........... 15, 16

16 CFR §700.3(a) ....................................................................................................... 22

5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d §
1357 (3d ed. 2007) ................................................................................................... 9

Doc. 102 p. 1 and ........................................................................................................ 8

Fed. R. Evid. 201(b) .................................................................................................. 10

Fed. R. Evid. 201(b)(1) .............................................................................................. 11

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ........................... 1

FRCP 8(b)(1)(A) .......................................................................................................... 8

http://web.archive.org/web/20121105043544/http://shopvac.com/pdf/parts-lists/965-12-00.pdf. ..................................................................................................................11

Mary D. Pridgen, *Consumer Protection and the Law* §2:10 (2009) ...........................14

Rule 8 ...........................................................................................................................2

Rule 9(b) ....................................................................................................................2, 8

Rule 9(b) and 12(b)(1) ....................................................................................................8

rules 12(b)(1) and 12(b)(6) .............................................................................................8

Rule 12(b)(6) ...............................................................................................................7, 9

Rule 23 .....................................................................................................................19, 32

Shop-Vac "Ultra Pro" ....................................................................................................2

U.LA.231 (1985) .......................................................................................................15, 16

www.law.upenn.edu/bll/archives/ulc/fnact99/1920_69/rudtpa66.pdf..................15, 16

Plaintiffs Alan McMichael ("McMichael"), Andrew Harbut ("Harbut"), Kris Reid ("Reid") (collectively "Plaintiffs"), by and through Interim Class Counsel, submit this memorandum of law in opposition to the motion of Shop-Vac Corporation ("Shop-Vac"), Lowe's Home Centers, Inc., and Lowe's HIW, Inc. (together, "Lowe's") (collectively, "Defendants") to dismiss Plaintiffs' Second Consolidated Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and object to Defendants' exhibits and improper use of judicial notice.

## I.    INTRODUCTION

On August 9, 2013 this Court issued its Order and Memorandum ("Dismissal Order") dismissing Plaintiffs' Consolidated Amended Complaint ("CAC") without prejudice, instructing Plaintiffs to add allegations concerning the details of Plaintiffs' purchases, the representations made by Shop-Vac, and elements of Plaintiffs' warranty claims.  Plaintiffs have now provided the Court with allegations which respond to the deficiencies noted in the Dismissal Order, which are now contained in Plaintiffs' Second Consolidated Amended Complaint ("SCAC") dated September 12, 2013.  As detailed in this Memorandum of Law, these additional allegations fully and properly state claims for which relief can be granted by this Court, and the SCAC should be sustained.  These new and supplemented allegations are detailed below.

### A.    Plaintiffs' Purchases And The Representations They Relied Upon

The Dismissal Order noted that the CAC failed to fully allege details related to the Plaintiffs' purchases of their Shop-Vac Vacuums, including the representations that they relied upon in doing so.  The Court stated that:

> At a minimum, Plaintiffs must allege which vacuums they purchased, when they purchased them, and the contents of the representations on the vacuum packaging.

Dismissal Order at 11.

*****

> ...Plaintiffs' failure to allege precisely which vacuums they
> purchased, when the purchased them, and what representations
> Defendants made "on the box" leave their claim without the
> necessary factual support.

Dismissal Order at 14. *See also* Dismissal Order at 10 (stating Plaintiffs must provide details of purchases and representations); Dismissal Order at 16 (dismissing claims without prejudice under Rule 9(b) on same grounds) and 18 (concluding plaintiffs had not provided sufficient factual support under *Iqbal* and Rule 8). In response, Plaintiffs have provided the required allegations in the SCAC, which provide the information previously found lacking.

Plaintiff Andrew Harbut purchased a 5.75 Peak Horsepower, 16-gallon Lowe's Shop-Vac vacuum identified as Lowe's item # 19273 Model # 5851511 on or about December 19, 2011. He relied on the "5.75 peak horsepower" and "16-gallon capacity" representations on the placard at the Lowe's store, the Lowe's Shop Vac box itself, and later observed the same representations on a sticker on the machine. SCAC ¶ 7.

Plaintiff Alan McMichael purchased a 5.5 peak horsepower Lowe's Shop-Vac vacuum identified as Model # 165LT550A in late 2011 or early 2012. He relied on the "5.5 horsepower" and tank capacity representations on the placard at the Lowe's store and the Lowe's Shop Vac box itself. SCAC ¶ 8.

Plaintiff Kris Reid purchased a 6.5 peak horsepower, 16-gallon Shop-Vac "Ultra Pro" vacuum in late 2011 or early 2012. He relied on the "6.5 peak horsepower" and "16-gallon capacity" representations on the box. SCAC ¶ 9.

Thus, the Plaintiffs have provided sufficient detail concerning their purchases to state a claim.

2

### B.   Notice Of Warranty Claim

The Court also stated that "Plaintiffs should allege that they provided notice and an opportunity to cure as required by Section 2-607 of the uniform Commercial Code." Dismissal Order at 13. In response, Plaintiffs have provided the required allegations:

Plaintiff Kris Reid sent pre-suit notice to Shop-Vac on April 23, 2012, on behalf of himself and the Class he seeks to represent -- including his fellow class representatives. SCAC ¶ 9. Missouri law requires only that a purchaser inform the instant seller of problems with the purchase, and Plaintiff Andrew Harbut alleges in the SCAC that he "returned to the Lowe's store and personally notified Lowe's personnel or his dissatisfaction with the performance of the vacuum." SCAC ¶ 7. Plaintiffs Alan McMichael provided notice through the filing of his Complaint, which is sufficient under the laws of Pennsylvania. As discussed below, these allegations satisfy any prerequisites for the class representatives, and those they seek to represent, to maintain and pursue their warranty claims before this Court.

### C.   Written Warranty Statements

In the Dismissal Order, the Court stated that:

> Plaintiffs have not alleged that Defendants made a written affirmation of fact or promise that the vacuums are "defect free" or "will meet a specified level of performance over a specified period of time."

Dismissal Order at 7.

In response, Plaintiffs have responded with the required allegations. The Defendants' written warranties consist of the representations concerning horsepower and tank capacity that Plaintiffs relied upon:

> In connection with the sale of Shop-Vac wet/dry vacuums had certain specifications relating to their power and capacity. These statements are untrue, as detailed above, and the machines actually delivered by Defendants to Plaintiffs and the class did not

in fact comply with their stated specifications, and were unable to
perform at those stated specifications.

Defendants have additionally made written affirmations of
fact or promises that the vacuums would meet a specified level of
performance over a specified period of time with regards to
horsepower and capacity through their packaging, displays, and
hang tags in stores.  For example, Defendant Shop-Vac's self-
imposed definition of peak horsepower requires that the vacuum be
capable of producing a maximum output horsepower.

SCAC ¶¶ 125-126.  *See also* SCAC ¶¶ 7-9 (describing the written performance specifications

seen by Plaintiffs); ¶ 133 (describing similar Lowe's warranties).

Accordingly, Plaintiffs have set forth the required detail concerning the Defendants'

respective breaches of both their "written warranty" pursuant to the Magnuson-Moss Act, as well

as other warranties under the Uniform Commercial Code.

### D.    Fitness For Ordinary Purpose

The Court stated in the Dismissal Order that "…[T]he CAC is devoid of factual

allegations supporting a finding that Shop-Vac wet/dry vacuums are not fit for their ordinary

purpose of vacuuming." Dismissal Order at 14.Plaintiffs do not allege that the vacuums are

totally incapable of functioning as vacuums.  Rather, Plaintiffs have now specifically alleged in

the SCAC that the vacuums are totally incapable of performing or functioning  in a manner

which a vacuum with Shop-Vac's stated specifications would be capable of.  According to the

SCAC:

…As a result of the failure to operate at represented power
specifications, the vacuums are incapable of lifting heavier, more
adhesive, and tackier materials, which machines meeting such
specifications would be capable of.

…As a result of the vacuums failure to meet the promised
specifications with regard to capacity, the vacuums are incapable
of operating for the same length of time, or to pick up as much
material, as a machine meeting such specifications.

SCAC ¶¶ 128-29.  *See also* SCAC ¶¶ 135-36 (same, in context of express warranty claims); ¶¶ 7-9 (describing the struggles of the Plaintiffs using vacuums which were weaker and smaller than expected); ¶ 68 (describing what Plaintiffs were promised compared to what they received).

Plaintiffs have now remedied the CAC pleading deficiencies set forth in the Dismissal Order.

## II.    PROCEDURAL HISTORY AND STATEMENT OF FACTS[1]

Following a transfer and consolidation of many actions with many different counsel on August 16, 2012, Plaintiffs filed their first Consolidated Amended Complaint on February 19th, 2013.  Thereafter, Defendants filed a motion to dismiss and after briefings by each side the Court dismissed Plaintiffs' complaint without prejudice on August 9, 2013.  The Court primarily dismissed the matter for failure to provide sufficient facts to the Court.  In their Second Consolidated Amended Complaint[2] Plaintiffs have addressed each of the Court's concerns as set forth in the following summary chart:

| Facts Requested by Court | Citation to Courts Order | Citation to SCAC |
|---|---|---|
| Which vacuums plaintiff purchased | Pgs. 10, 11, 14, 15, 18 | ¶¶ 7-9 |
| When Plaintiffs Purchased Vacuums | Pgs. 10, 11, 14, 15, 18 | ¶¶ 7-9 |
| What the representations on the box (or by Defendants) consisted of | Pgs. 10, 11, 14, 15, 17 18 | ¶¶ 7-9, 52 |
| That Plaintiffs provided notice of warranty claims and opportunity to cure | Pgs. 11-12, 13, 18 | ¶¶ 7-9 |
| Allegations as to Defendants written affirmation of fact or promise that vacuums are defect free or will meet a specified level of performance over a specified period of time | Pgs. 7, 11 | ¶¶ 7-9, 119, 125-127, 133 |

---

[1]  A complete and detailed accounting of Plaintiffs' Statement of Facts can be found in Plainitffs' Opposition to Defendants' Motion to Dismiss filed on April 22, 2013 (ECF doc. 77).
[2] All references to "¶ _" are to the Plaintiffs' Second Consolidated Amended Complaint ("SCAC").

| That Shop-Vac wet/dry vacuums are not fit for their ordinary purpose | Pgs. 14 | ¶¶ 7-9, 68, 128-129, 135-136 |
|---|---|---|

The Defendants' motion primarily repeats arguments made in their initial motion to dismiss. For example, despite Defendants' claims to the contrary (*see* Doc. 103 p. 2), Plaintiffs directly challenge the accuracy of Defendants' claims regarding the "peak horsepower," of the Vacuums -- even using their own definitions of that misleading term -- as well as the accuracy of their direct and implied representations regarding the power of the Vacuums generally, and their horsepower more specifically. For example, contradicting Defendants' assertions, peak horsepower is directly disputed in ¶¶ 18, 25-26, 37, 126-128. Plaintiffs' independent laboratory testing has demonstrated it would be impossible for consumers to experience a "peak horsepower" as represented on the labels and packaging during the operation of the device, and that they do not in fact have such capabilities. ¶¶ 29-37. Plaintiffs' tests showed that no matter when the measurements were taken, if the vacuum was actually performing work, that horsepower would be only a fraction of the peak claimed by Defendants. ¶¶ 35-36. As such, Defendants' peak horsepower representations are alleged to have misled consumers as to the actual capabilities of the vacuums.

Similarly, Plaintiffs' testing has demonstrated that a consumer can *never* achieve the tank capacity or size represented on the box in actual operation. Not only does the motor protrude into the tank, but an automatic shutoff feature causes the vacuum to stop working when the tanks reach between 47% and 83% of stated capacity (an average of 64%). ¶¶ 46-49. Even when the capacity of the tanks is measured when the vacuums are not in use and the automatic shutoff mechanism is disabled, only one of the test vacuums was able to reach its advertised capacity. ¶ 48.

As such, the SCAC successfully alleges that the Vacuums do not perform as represented with regard to either power or capacity.  Accordingly, in addition to remedying the pleading deficiencies, Plaintiffs' factual claims readily survive this motion.

## III.    ARGUMENT

### A.    Standards Applicable To This Motion

On a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations and citations omitted).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations and citations omitted).  "The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: stating … a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal quotations citations omitted).  The key question now is not whether it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim, but whether a claim made is plausible on its face. *Id.*; *see also Winslow v.*

*W. L. Gore & Assocs.*, No. 10-00116 2011 U.S. Dist. LEXIS 25547 (W.D. La. Mar. 11, 2011).
Plaintiffs have presented more than merely "plausible" claims and therefore they should not be
dismissed.

### B.   The Applicability And Standards Of Rule 9(b) And 12(b)(1)

As the Court previously determined that Rule 9(b) was applicable to the instant matter,
Plaintiffs, in their SCAC, have met the standards of Rule 9(b).  As noted above, Plaintiffs have
specified the fraudulent statements, who the statements were disseminated by, when and where
those statements were made to each plaintiff, and have described in detail why those statements
were fraudulent.  *See Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th
Cir. 2004), *U.S. v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004), *Schaller Tel. Co.
v. Golden Sky Sys.*, 298 F.3d 736, 746 (8th Cir. 2002).  Additionally, Defendants recognize that
Plaintiffs have met the Rule 9(b) pleading standards as they have only moved for Dismissal
under rules 12(b)(1) and 12(b)(6).  *See* Doc. 102 p. 1 and Doc. 103 p. 1.

However, even though Defendants purport to move for dismissal under 12(b)(1), they fail
to raise the issue of any lack of subject-matter jurisdiction.  Raising lack of subject-matter
jurisdiction is an affirmative defense that shifts the burden to Plaintiff to prove that jurisdiction
exists and will "survive the motion to dismiss by showing 'any arguable basis in law' for the
claims set forth in the complaint."  *Michigan S. R.R. v. Branch & St. Joseph Cty. Rail Users
Ass'n*, 287 F.3d 568, 573 (6th Cir. 2002).  However a Defendant cannot simply sneak in the
words "12(b)(1)" and then proclaim "gotcha" if Plaintiff does not address it.  A search of the
Defendants motion to dismiss will show that the word "jurisdiction" is not even mentioned.
Affirmative defenses are pleadings and must set forth a short and plain statement of the defense.
FRCP 8(b)(1)(A); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F2d 1286, 1294 (7th Cir. 1989).
Where, as here, a Defendant has insufficiently pled an affirmative defense on its face it may be

stricken by the court. *Id.* Thus, the Court should strike Defendants 12(b)(1) allegations. This is especially true in the instant matter where Defendants have not challenged that jurisdiction is appropriate under CAFA, and Plaintiffs complaint demonstrates a substantial legal basis for its claims.

### C.     Objections To Defendants' Exhibits And Improper Use Of Judicial Notice

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).

However, Defendants ask that the Court take judicial notice of certain documents. Such attachments to a motion to dismiss are permitted only if (1) referred to in the Plaintiff's complaint *and* (2) central to Plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000). If a document is central to the claim advanced or is incorporated by reference into the complaint then it is not considered "outside the pleading" and can be considered by the court. *Scanlan v. Texas A&M Univ.* 343 F3d 533, 536 (5th Cir. 2003; *Gff Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384-85 (10th Cir. 1997); 5B Wright & Miller §1357 & n. 1; *see SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (documents central to claim and accepted as authentic can be considered). In the instant matter Defendants have proffered new evidence though declarant Susan H. Wolf. Plaintiffs object to both the declaration and the documents she has provided as exhibits. While it may indeed turn out, through discovery, that the proffered artwork is indeed accurate, Plaintiffs cannot at this time verify its accuracy and therefore must object to its authenticity, and contest

the truth of the matter asserted until after Plaintiffs' have had an opportunity to develop the factual record through discovery and cross examination of these witnesses.[3]

While the Court has the authority to take judicial notice of adjudicative facts, Defendants have attempted to twist conventional application of judicial notice to their improper advantage. For example, a court can take judicial notice of facts that are not subject to reasonable dispute if the facts are either (1) generally known within the court's territorial jurisdiction or (2) capable of accurate and ready determination by resorting to sources whose accuracy cannot reasonably be questioned; however, this is not a case in which the court should do so. Fed. R. Evid. 201(b); *United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002); *LaSalle Nat'l Bank v. First Conn. Holding Group, L.L.C.*, 287 F.3d 279, 290 (3d Cir. 2002). Defendants request the Court take judicial notice of five sets of documents they proffer.[4] Generally speaking these documents are a consolidated complaint for a similar matter regarding Emerson Electric, and documents Defendants purport are copies of packaging for Vacuums that the Plaintiffs purchased. Defendants improperly place the Emerson complaint before the court and untruthfully allege or imply that Plaintiffs filed the document in the Declaration of Michael B. Shortnacy.[5]

With regards to the alleged information on the product packaging provided by Ms. Wolf, it is axiomatic that a box has six sides, yet only 3 to 4 sides of each box have been provided. Thus Defendants concern that Plaintiffs are "'extracting an isolated statement from a document and placing it in the complaint' without providing the contents of a document referred to" is misplaced at best when they themselves only provide part of the information. *See* Doc 104 p. 3.

[3] While Plaintiffs must challenge the admissibility of the proffered documents in conjunction with Defendants' motion to dismiss, Plaintiffs reserve the right to use the proffered documents as admissions by a party opponent in future filings or discovery.

[4] One document for which Defendants request Judicial Notice is the SCAC in this matter. As that document is properly before the Court, Plaintiffs take no issue with the Court judicially noticing the complaint filed by counsel in this matter.

[5] While counsel for Plaintiffs were initially involved in the Emerson litigation, that is no longer the case, and not one firm in this litigation can be found at the bottom of the referenced complaint.

As Defendants have wholly failed to put all of the information forward, the facts contained on

the box are not things that are indisputable or generally known within the court's territorial

jurisdiction, and should be excluded. *See* Fed. R. Evid. 201(b)(1); *Victaulic Co. v. Tieman*, 499

F.3d 227, 236 (3d Cir. 2007); *Boyd*, 289 F.3d at 1258.   Other documents Defendants seek to have

judicially noticed or previously sought judicial notice for are suspect, and should not be the basis

for determination on this motion to dismiss and if previously admitted should be subject to

challenges as discovery advances.   For example, Defendant previously sought to have Doc. 70-8

admitted (which the Court granted), however it appears that Defendant either chose this "parts

list" though it did not apply to any Plaintiff or modified the document after litigation had begun.

If one is to compare the document the Defendant wishes the Court to take judicial notice of

(accurate as of March 11, 2013) and compare it with what viewable on Shop Vac's website on

November 5, 2012[6] the documents are drastically different:   The Defendants ask that the Court

take notice of a parts list that is missing the Three-Year Home Use Warranty which alleges that

the product will be defect free and which Defendants removed.   While it may just be a matter of

coincidence, Defendant goes to great lengths to disclaim the existence of a written warranty.

### D.  A Choice Of Law Analysis Is Premature

A choice of law analysis is both unnecessary and premature at this stage of the litigation.[7]

First, as admitted by Defendants, the states in which each of the Plaintiffs reside and/or

---

[6] This document can be accessed at http://web.archive.org/web/20121105043544/http://shopvac.com/pdf/parts-lists/965-12-00.pdf.

[7] When deciding a matter involving diversity jurisdiction, federal courts must apply the "forum state's" substantive law to a plaintiff's state law claims. *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991). The forum state in an MDL proceeding is the district court where the action was originally filed, and that state's choice of law rules must therefore be applied. *See In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002); *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 606 n.20 (S.D.N.Y. 2001) ("When considering questions of state law the transferee
court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.") (citations omitted). The claims of each of the plaintiffs were originally filed in the District of New Jersey, and New Jersey choice of law rules therefore apply.

purchased their Shop-Vac have adopted substantially similar consumer protection statutes.

MTD, p.14 (citing Cal. Bus. & Prof. Code § 17200; Fla. Stat. Ann. § 501.204; Ariz. Rev. Stat. §

44-1522; 815 ILCS 505/2; Mo. Rev. Stat. § 407.020).  Defendants further admit that a

"reasonable consumer" standard should be applied to determine whether a consumer is likely to

be misled under each of the respective consumer protection statutes.  MTD, p. 16 (citing *Haskell*

*v. Time Warner, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)).[8]  Moreover, with respect to the

breach of warranty claims, each of the Plaintiff's states of residence or place of purchase have

adopted the Uniform Commercial Code provisions with respect to warranty claims.  *Compare*

U.C.C. § 2-313, *with* Fla. Stat. § 672.313; Mo. Rev. Stat. § 400.2-313; Cal. Com. Code § 2313;

810 ILCS 5/2-313; Ariz. Rev. Stat. § 47-2313.

As the Third Circuit has noted, choice of law analysis is "fact-intensive: 'Each choice-of-

law case presents its own unique combination of facts -- the parties' residence, the place and type

of occurrence and the specific set of governmental interest -- that influence the resolution of the

choice-of-law issue presented.'"  *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007) (citation

omitted).  Consequently, it has been recognized by district courts in this Circuit that a choice of

law analysis is unnecessary at this pleading stage and is more properly addressed at class

certification.  *See e.g., Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486 (D.N.J. 2009)

(relying upon the 3rd Circuit's holding in *Warriner* in deferring choice of law); *In re K-Dur*

*Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004) (deferring choice of law analysis to class

certification stage).  As explained by one court, "Plaintiffs have drawn the connection between

---

[8] Under the Illinois Consumer Fraud Act, courts have applied a "reasonable" consumer, or in the case of insurance companies, a "reasonable policyholder" standard. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 842 (Ill. 2005) (citations omitted); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002) (applying "reasonable consumer" under several state laws including Florida) (citation omitted). *See also In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 907 (E.D. Pa. 2012) (reasonable consumer standard applies under N.Y. Gen. Bus. Law § 349)

the statutes and defendant's offending conduct.  This is sufficient for defendant and the Court to

draw inferences that the elements [of each state's statute] exist." *In re Bayer Corp. Combination*

*Aspirin Prods. Mktg. and Sales Practices Litig.,* 701 F. Supp. 2d 356, 378-79 (E.D.N.Y. 2010)

(denying motion to dismiss a nearly identical 50-state claim, stating: "Plaintiffs have outlined

only the broad contours of the state law causes of action for states other than those in which they

reside.  That, however, is sufficient at this preliminary stage ...."); *Delahunt v. Cytodyne Techs.*,

241 F. Supp. 2d 827, 836 (S.D. Ohio 2003) (denying motion to dismiss a nearly identical 50-

state claim, stating: "the statutes alleged to have been violated generally prohibit unfair,

deceptive, and fraudulent business practices in a manner similar to Ohio Rev. Code sections

1345.02 and 1345.03").

### E.  Plaintiffs Have Adequately Stated A Claim Regarding The Misrepresentations Of Defendants

In an effort to sell "Shop-Vac" wet-dry vacuums to the Plaintiffs and the consuming

public, Defendant advertised and represented that its vacuums are more powerful, and larger than

they are.  As a result of Defendant's misrepresentations, Plaintiffs purchased and received

vacuums with considerably less powerful motors, and smaller storage drums, than promised by

Defendant.  Because Plaintiffs were deceived by Defendant's misrepresentations, did not receive

what they bargained for, and were thereby damaged, Plaintiffs filed this lawsuit asserting claims

under the applicable consumer protection statutes of forty-nine states.

As Plaintiffs' Second Consolidated Amended Complaint makes clear, the vacuums are

"heavy duty version[s] of the standard household vacuum," which are "designed to collect solid

and liquid materials [that are] ...heavier than a conventional household vacuum can collect."

SCAC ¶ 18.  Because the vacuums are used for such "heavy duty" work, it is important that the

vacuums have a powerful motor and a large waste storage compartment.

As the Complaint also points out, the Shop-Vac "charges a premium for what it maintains are the higher horsepower models purchased by Plaintiffs." *Id.* Notwithstanding that Defendant charged, and Plaintiffs paid, such a premium for the higher horsepower models, the Plaintiffs did not receive vacuums with engines capable of producing the power that Defendants promised.

Defendants maintain that Plaintiffs were not damaged by its misrepresentations. Defendants' essential argument in this regard is that while it may be true that Plaintiffs received less powerful vacuums with less storage capacity than promised, Plaintiffs have nothing to complain about because "they received what they paid for - functioning Vacuums." (MTD, at p. 32). The argument is no different than maintaining that the purchaser of a Corvette, who learns after he gets home with his new car that the seller replaced the high performance, eight cylinder 500 horsepower engine with a smaller engine from an economy car, suffered no injury because he received a functioning car. The argument is preposterous.

Nevertheless, upon the contention that Plaintiffs have no damages because "they received what they paid for -- functioning Vacuums," and without even mentioning the elements of any of the statutes pursuant to which Plaintiffs sue, Defendants argue that Plaintiffs cannot set forth a claim upon which relief can be granted. Defendants' arguments have no merit.[9]

### 1.   UDAP Statutes

Every state has a consumer protection law prohibiting deceptive practices. *See* Mary D. Pridgen, *Consumer Protection and the Law* §2:10 (2009). These laws are often referred to as "Unfair and Deceptive Acts and Practices Acts" or "UDAP" statutes. Many UDAP statutes are

---

[9] Even so, as the court pointed out, it is very rare to make a determination that a reasonable consumer could not be misled at the motion to dismiss stage. Dismissal Order at 17. *See also  Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. App. Div. 2002) (reversing dismissal at the pleading stage and concluding that "[w]hether the advertisements contained material misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact."); *Bollino v. Hitzig*, No. 22913/99, 2001 N.Y. Misc. LEXIS 1106, at *7 (Sup. Ct. Dec. 7, 2001) (denying dismissal and holding "[w]hether defendants' representations would have mislead a reasonable consumer acting reasonably under the circumstances is a question of fact.") (citations omitted).

loosely based on three model acts.[10]   Accordingly, many UDAP statutes have common elements;

however, they also incorporate individually unique features.  None are exactly the same.  That

stated, and albeit in varying degrees, all fifty states have a UDAP statute allowing consumers to

enforce their consumer protection laws.

The old legal aphorism states, "If you have the facts on your side, pound the facts.  If you

have the law on your side, pound the law.  If you have neither on your side, pound the table."

Plaintiffs' SCAC alleges claims pursuant to (and specifically cites) forty-nine state UDAP

statutes.  Without mentioning a single statute, citing the elements of any UDAP statute, and/or

applying the relevant facts to the applicable statutory elements, Defendant pounds on the

proverbial table, and makes the blanket assertion that Plaintiffs cannot state a *prima facie* cause

of action.  In other words, without ever saying why, or engaging in any meaningful analysis,

Defendant repeats its mantra that Plaintiffs cannot state a claim.

### 2.     Defendant's Sales And Promotion Practices Were Both Deceptive And Unfair, And Caused Plaintiffs A Loss

Defendant argues that its conduct was not deceptive, or unfair.  Defendant further posits

that Plaintiffs do not allege an injury.  Both assertions are invalid.

The power and waste storage capacity of the vacuums are critically important to

consumers because, as set forth in the SCAC, the vacuums are intended for heavy-duty work.

Notwithstanding, Defendant maintains that its misrepresentations about the power are not

---

[10] The three model laws are the Uniform Deceptive Trade Practices Act (1966) revision available online at www.law.upenn.edu/bll/archives/ulc/fnact99/1920_69/rudtpa66.pdf), the Uniform Consumer Sales Practices Act (uniform version found at 7A U.L.A.231 (1985)), and the Unfair Trade Practices and Consumer Protection Act, which was a draft model law created by the FTC in collaboration with the Council of State Governments in 1967 and revised in 1971.  Albert N. Shelden, *State Consumer Protection Laws and Unfair Competition*, SF74 ALI-ABA 501, 508 n.5 (2011).  While the majority of state consumer protection laws can be traded to this last model, at least three variations of it have been adopted across the states.  Mary Dee Pridgen, *Consumer Protection And the Law* §2:10(2009).

deceptive because Plaintiffs should somehow know that it is not possible that the vacuums could actually deliver the performance promised. This argument is absurd.

While it is true that Plaintiffs allege that the Defendant's promise of high-performance vacuums could not be true because the vacuums could not deliver the amount of horsepower that Defendant advertised and promised, it does not follow that consumers knew, or should have known, as much when they made their purchase. Consumers are not charged with the knowledge of sophisticated electrical engineering concepts in connection with their decisions to purchase wet-dry vacuums. *See, e.g., Ivie v. Kraft Foods Global, Inc.*, 2013 U.S. Dist. LEXIS 93940, at *27-29 (N.D. Cal. June 28, 2013). ("The court disagrees with defendants that a plaintiff would be required to know of the particular FDA or state law regulations in order for violations thereof to cause an economic injury.").

In fact, in evaluating a consumer claim under a UDAP statute, the "least sophisticated consumer" is often that applicable standard. Some states that do not rely upon this standard instead apply a "reasonable consumer" standard.[11] Whether the standard is "least sophisticated" or "reasonable," a consumer could not possibly be expected to know that the science of horsepower would not allow Defendant's vacuums to deliver on Defendant's promises. Thus, there is no merit to Defendant's argument that Plaintiffs should have known that the horsepower claims were false has no merit.

---

[11] The three model laws are the Uniform Deceptive Trade Practices Act (1966) revision available online at www.law.upenn.edu/bll/archives/ulc/fnact99/1920_69/rudtpa66.pdf), the Uniform Consumer Sales practices Act (uniform version found at 7A U.L.A. 231 (1985)), and the Unfair Trade Practices and Consumer Protection Act, which was a draft model law created by the FTC in a collaboration with the Council of State Governments in 1967 and revised in 1971. Albert N. Shelden, *State Consumer Protection Laws and Unfair Competition*, SF74 ALI-ABA 501, 508 n.5 (2001). While the majority of state consumer protection laws can be traced to this last model, at least three variations of it have been adopted across the states. Mary D. Pridgen, *Consumer Protection And The Law* § 2:10 (2009).

### a.   Establishing Deception

The elements needed to establish that an advertisement or sales practice is deceptive depend on the particular state law at issue.  Many UDAP laws include a list of specific acts or practices that are deemed to be deceptive or unfair.  Thus, to determine whether an act or practice is illegal under a state's consumer protection law, one must first review the law.[12]  In its motion, Defendant does not review any law.  Defendant simply makes the blanket assertion that Plaintiffs cannot state any claims.

The above notwithstanding, it is worth noting some common tenets of UDAP statutes.

> **(1)   Consumer protection laws should be broadly interpreted in favor of protecting consumers.**[13]

This principle applies broadly.[14]  When interpreting consumer protection statutes - what kinds of conduct are covered, and who is protected - courts should not interpret the law narrowly because the purpose of the law is to root out consumer fraud, in whatever creative form it might be found.

> **(2)   The *net* or *overall impression* of the advertisement or practice is what matters.**[15]

If the net effect of a practice is misleading, almost every UDAP statute the law is violated -- even if an ad makes statements that are literally true.  Moreover, omissions of material information can be just as deceptive or misleading as affirmative statements or representations.[16]

---

[12] Shelden, *supra* note 6, at 515.

[13] *See, e.g.,* Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-2; *Kirk v. Source One Mortgage Servs. Corp.*, 54 Cal. Rptr. 2d 358, 362 (Cal. Ct. App. 1996); *Randels v. Best Real Estate, Inc.*, 612 N.E.2d 984, 987 (Ill. App. Ct. 1993); *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 495-96 (Minn. 1996); *Lemelledo v. Beneficial Mgmt. Corp.*, 696 A.2d 546, 551 (N.J. 1997); and *Elder v. Fischer*, 717 N.E.2d 730, 737 (Ohio Ct. App. 1998).

[14] *Cf. Ly. v. Nystrom*, 615 N.W.2d 302 (Minn. 2000) (limiting availability of attorneys' fees for private plaintiffs' under state consumer protection law to those who can demonstrate that their cases serve a public benefit); *Michael v. Mosquera-Lacy*, 200 P.2d 694 (Wash. 2009) (noting same principle applies in Washington).

[15] Cox, *supra* note 16, at 85 and cases cited therein; Shelden *supra* note 6, at 516.

[16] Pridgen, *supra* note 6, at § 3:1; Shelden *supra* note 6, at 517.

    (3)      **The *tendency or capacity* to deceive a consumer is the important inquiry.**

Proof that consumers were *actually* deceived is generally not required.[17]

    (4)      **The ad or practice should be viewed from the perspective of either the "least sophisticated, or the "reasonable consumer."**

As this Court has noted, "only in the clearest of cases is it proper for a court to make a determination that a reasonable consumer is not likely to be misled at the motion to dismiss stage." Dismissal Order p. 17 (internal citations omitted). Courts typically assess the potential net effect of the ad or practice from the perspective of the reasonable or average consumer who is being targeted. In some cases, however, courts will apply a more lenient "least sophisticated consumer" standard instead.[18]

Defendants' misrepresentations are deceptive, unfair, and form the basis of a legitimate and cognizable claim under with of the applicable standards. This is because when viewed from the perspective of with the "least sophisticated" or the "reasonable" consumer, the statements leave an overall impression that has the tendency to mislead.

Indeed, courts have recognized that quantitative representations, including claims of operation "up to" a certain level, are likely to mislead consumers where the stated level cannot be achieved. *See Walters v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1034 (N.D. Cal. 2010) (plaintiffs unable to obtain promised "download speeds of up to 1.2 Mbps, with typical speeds about 700 Kbps to 800 Kbps during peak times") (internal quotations and citations

---

[17] Pridgen, *supra* note 6, at § 3:1; *see also* Shelden, *supra* note 6, at 518.
[18] Shelden, *supra* note 6, at 515, *compare Aron v. U-Haul Co. of Cal.*, 49 Cal. Rptr. 3d 555, 562 (Ct. App. 2006) (applying "reasonable consumer" standard), *and Quigley v. Esquire Deposition Servs.*, LLC 975 A.2d 1042, 1047 (N.J. Super. Ct. App. Div. 2009) (applying "average consumer" standard), *and Fayne v. Vincent*, 301 S. W.3d 162, 177 (Tenn. 2009) (applying "reasonable consumer" standard), *and Bisson v. Ward*, 628 A.2d 1256, 1261 (Vt. 1993) (same), *with Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479-80 (Tex. 1995) ("Generally, an act is false, misleading or deceptive if it has the capacity to deceive an 'ignorant, unthinking, or credulous person.'") (citations omitted).

omitted); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (certifying Rule 23 class action where "the central predominating question is whether Defendants' marketing statements about 'up to 6X BETTER ABSORPTION' or 'effectiveness' [are] materially misleading"); *Thompson Med. Co., Inc. v. Ciba-Geigy Corp.*, 643 F. Supp. 1190, 1200 (S.D.N.Y. 1986) (enjoining defendant from representing that "thousands of consumers have reported to us that they lost up to 5 lbs. the first week" since, although this "may be literally true," it leads "consumers [to] believe they will lose 5 lbs. or more" making the claim "unquestionably false and misleading").

In addition, the FTC recently warned marketers to avoid the use of misleading "up to" claims, akin to Defendants "peak" claims here.  In an FTC-commissioned study it was determined that when marketers use the phrase "up to" in claims about their products, many consumers are likely to believe that they will achieve the maximum "up to" results.[19]  The FTC has also determined that such false claims are violative of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).  *See e.g., In Re Long Fence and Home, LLLP*, 77 Fed. Reg. 12588 (Mar. 1, 2012).  Such a misrepresentation to consumers in violation of the FTC Act necessarily violates state consumer protection laws.

Here, Defendants' "peak" claims are statements that could fairly be understood to constitute an affirmation or representation that the Shop-Vac vacuums possess the ability to reach and/or operate at the "peak horsepower" as well as the maximum capacity stated by Defendants on the packaging and advertising.  Defendants' tank capacity representations on the Shop-Vac and Lowe's Shop-Vac boxes also have the capability to mislead a reasonable consumer.  A reasonable consumer might likely -- and quite naturally -- understand that

---

[19] FTC Report at 17-18.

representation to relate to the operation of the vacuum, and would not likely understand that, for example, "3.0 GALL." refers to the tank size when the vacuum is disassembled and the tank is just sitting there by itself and in an inoperable state.

The absurdity of Defendant's claims with regard to damages should be equally apparent. Plaintiffs bargained, and paid a premium, for vacuums with high horsepower and significant waste storage. They did not receive what they bargained for in either regard. Because Plaintiffs did not get what they bargained for, and paid a premium for what they did not receive, they suffered a loss.

**F.     The SCAC Sufficiently States Claims For Breach Of Express Warranty Under Both The Magnuson-Moss Act And The Uniform Commercial Code**

Plaintiffs have now greatly elaborated on their warranty claims, in response to the Court's admonition relating to the CAC that, "Plaintiffs have not alleged that Defendants made a written affirmation of fact or promise that the vacuums are "defect free" or "will meet a specified level of performance over a specified period of time." Dismissal Order at 7. These additional details in the SCAC clarify that the breach of warranty relates to the failure of the Vacuums to perform at their stated power specifications which were specifically and repeatedly represented by the Defendants -- but at which the Vacuums do not, and never have performed. SCAC ¶¶ 7-9, 128-29, 135-36. The SCAC additionally now provides details of how the failures to meet the stated specifications have resulted in reduced performance of the Vacuums in accomplishing their intended goals, with the result that the Plaintiffs would not have purchased the Vacuums, or paid as much for the Vacuums, if it was known that the Vacuums would not meet these specifications. *Id.* at ¶¶ 7-9. As a result of the failure of the Vacuums to perform at their stated specifications, Plaintiffs and the Class have been denied the benefit of their bargains with Shop-Vac and Lowes.

As such, the SCAC now sufficiently alleges breach of express warranty in two separate, but related ways.  Firstly, the Defendants' sell the Vacuums with a Three-Year written home use warranty that they will perform in accordance with the User Manual and in "correct operating condition" -- which the vacuums of alleged to be simply incapable of doing.  As the Defendants are alleged to violate this written warranty that the machines will perform as represented for a specified -- three year -- period of time, and their promised remedial action in their 3 year written warranty is impossible, Plaintiffs have stated a violation under the Magnuson-Moss Consumer Warranty Act.

Second, the power representations of the Defendants may be express warranties under the Uniform Commercial Code, even if not technically "written warranties" under the Magnuson-Moss Act.  The regulations promulgated by the Federal Trade Commission pursuant to Magnuson-Moss make clear that representations such as these -- even to the extent that they are not "written warranties" covered by Magnuson-Moss -- may be express warranties under the Uniform Commercial Code.  According to these regulations, "The [Magnuson-Moss] Act, imposes specific duties and liabilities on suppliers who offer written warranties on consumer products.  Certain representations, such as energy efficiency ratings for electrical appliances, care labeling of wearing apparel, and other product information disclosures may be express warranties under the Uniform Commercial Code.  16 CFR §700.3(a).  As the regulations make explicit, Magnuson-Moss supplements -- and does not replace -- traditional U.C.C. remedies, and the power representations relating to the Defendants electrical appliances create express warranties under state Uniform Commercial Codes even to the extent that they are not "written warranties" under the federal Act.  *Id.*  As Defendants' violated these express warranties regarding the power of the Vacuums, and Plaintiffs and the Class have been denied the benefit of

their bargains as a result, and allege that they would not have paid the same price for them had they known the true facts, the SCAC states claims for breach of express warranty under the Uniform Commercial Code applicable to their purchase.

### 1.   Breach Of Express Warranty Under The Magnuson-Moss Warranty Act

Defendants argue Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim (Count I), should be dismissed for failure to state a claim, because, as Defendants argue, Plaintiffs' MMWA claim must be dismissed because they failed to state claims for breach of an express or implied warranty under state law.  Defendants' Br. at 41-42.

Defendants' cursory treatment of the MMWA claim is fundamentally wrong because it overlooks an important distinction between the MMWA's standards for express written warranty claims, on the one hand, and implied warranty claims, on the other.  MMWA claims concerning implied warranties are dependent on state law, but MMWA claims based on an express written warranty, such as the claims in this case, are not dependent on state law.  *Compare* 15 U.S.C. §15 U.S.C. § 2301(7) (defining an "implied warranty" as "an implied warranty arising under State law") *with* 15 U.S.C. § 2301(6) (defining the terms of a "written warranty," with no mention of state law).  Where an MMWA claim concerns an express written warranty, it is independent of state law, and the protections of the MMWA are often broader than state law protections.  *See, e.g., Borchardt v. Mako Marine Int'l., Inc.*, No. 08-CV-61199, 2011 U.S. Dist. LEXIS 55150, at *15 (S.D. Fla. May 23, 2011) (denying motion to dismiss MMWA claim based on an express written warranty, stating "the plaintiffs' MMWA claim does not fail simply because their state law express warranty claims fail"); *see also Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1439-40 (M.D. Ala. 1997) ("Congress's overall purpose in creating the Act was to protect consumers by prescribing new, detailed standards for written warranties that

supplemented existing state law ... By contrast, Congress's intentions regarding non-written [express] and implied warranties were far less ambitious. Rather than significantly revamp or supplement the treatment of implied warranties under existing state law, Congress opted to maintain the status quo.").

The Complaint alleges every element of an express written warranty claim under the MMWA. The statute defines a "written warranty" as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time ... which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6)(A). Plaintiffs allege Defendants created a written warranty as defined in 15 U.S.C. § 2301(6). SCAC ¶ 125 ("Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that Shop-Vac wet/dry vacuums had certain 'peak horsepowers' and had a certain capacity in gallons.'"). Every statutory element is pleaded, SCAC ¶¶ 121-130, including damages and causation, *id.* ¶ 130. These allegations are a textbook example of how to properly plead a claim for breach of an express written warranty under the MMWA. As such, Defendants' attempt to dismiss Plaintiffs' MMWA claim must fail.

### 2.    Plaintiffs' Magnuson-Moss Notice Was Adequate

Defendants next claim that they did not receive the required notice under the Magnuson-Moss Warranty Act. This argument is incorrect on both the facts and the law.

Plaintiffs provided notice to the Defendants on behalf of themselves as well as the Class. Defendants acknowledge that the SCAC states that Plaintiffs sent Defendants notice complying with the CLRA notice requirements, but fails to recognize that these notice requirements fulfill

any duties under Magnusson-Moss.  Defendants now ask the Court to find that the notice

requirements of the CLRA, and notice letters that comply with the CLRA, fail to (1) notify the

defendant of the alleged breach of warranty (2) provide a "reasonable opportunity" to cure the

alleged breach, and (3) notify the defendant that they are acting on behalf of a putative class.

This argument must fail as being plainly incorrect.  Defendants have provided no reasons why

the notices provided by these Plaintiffs was insufficient to put them on notice of the Class'

claims relating to peak horsepower and tank capacity, and allow them to take remedial action if

they so desired.[20]

### 3.     Breach Of Express Warranty Under The Uniform Commercial Code

Whether a given statement constitutes an express warranty is, a question of fact.  *In re

Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-CV-4558, 2008 U.S. Dist. LEXIS 73690,

at *13-14 (D.N.J. Sept. 3, 2008) (citing cases); *McDonnell Douglas Corp. v. Thiokol Corp.*, 124

F.3d 1173, 1176 (9th Cir. 1997) ("[W]hether seller affirmed a fact amounting to an express

warranty is a question of fact.") (citing *Royal Business Machines Inc. v. Lorraine Corp.*, 633

F.2d 34, 43 (7th Cir.1980)); *see also Putensen v. Clay Adams, Inc.*, 12 Cal. App. 3d 1062, 1080

(Cal. Ct. App. 1970) ("The issue normally is one of fact.") (quoting comment 3 to section 2313

of the U.C.C.).

The Third Circuit has recognized a strong presumption that alleged misrepresentations of

fact form part of the benefit of the bargain, sufficient to satisfy an express warranty claim.  *See

Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 568. (3d Cir. 1990), *rev'd in part on other

grounds*, 505 U.S. 504 (1992).  In doing so, the Third Circuit recognized that, "once the buyer

has become aware of the affirmation of fact or promise, the statements are presumed to be part of

---

[20] Even if Defendants were correct that additional notice were required, as set forth in greater detail herein, dismissal for lack of notice in a consumer warranty matter would not be warranted absent a showing of prejudice.

the 'basis of the bargain' unless the defendant, by 'clear affirmative proof,'" shows that the

buyer "knew that the affirmation of fact or promise was untrue." *Id.* Thus, this issue cannot be

resolved on Defendants' Motion to Dismiss. *See In Re Ford Motor Co.*, 2008 U.S. Dist. LEXIS

73690, at *14-15.

Nonetheless, Plaintiffs have stated a claim for breach of express warranty. Each of

Plaintiff's purchases was made in a state that has adopted the Uniform Commercial Code

provisions for warranty claims. *Compare* U.C.C. § 2-313, *with* Fla. Stat. § 672.313; Mo. Rev.

Stat. § 400.2-313; Cal. Com. Code § 2313; 810 ILCS 5/2-313; Ariz. Rev. Stat. § 47-2313. These

laws impose the same three elements for a breach of express warranty.

"To prevail on a claim for breach of express warranty, a plaintiff must show that '(1) the

seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods';

(2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached.'"

*Allen v. Hylands, Inc.*, 2012 U.S. Dist. LEXIS 61606, at *7-8 (C.D. Cal. May 2, 2012) (quoting

*Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227, 103 Cal. Rptr. 3d 614 (2010)); *see

also* N.Y. U.C.C. § 2-313. "Courts liberally construe sellers' affirmations of quality in favor of

injured consumers." *Allen*, 2012 U.S. Dist. LEXIS 61606, at *8. *See also New Hope Pipe

Liners, LLC v. Composites One, LLC*, No. 09-CV-3222, 2009 U.S. Dist. LEXIS 111217, at *14-

15 (D.N.J. Nov. 25, 2009) (indicating that in order to plead a claim for breach of express

warranty, a plaintiff must set forth facts sufficient to support a plausible inference that: (1)

"Defendant(s) made an affirmation, promise, or description);" (2) "that became part of the basis

of the bargain;" and (3) "the goods ultimately did not conform to the affirmation, promise, or

description;" *see also* Defendants' Br. at 29-30.

### a.   First Element Of UCC Express Warranty Claim

As to the first element of a successful warranty, Defendants' position seems to be that Plaintiffs either do not allege any affirmation of fact or promise made by Defendants to buyers of the Shop-Vac wet/dry vacuums, and/or that the affirmations of fact and promises they made are true[21] (contrary to Plaintiffs' allegations), and that the purchasers of the vacuums misunderstood those affirmations and promises.  Defendants Br. at 29-31.

In the SCAC, Plaintiffs make clear factual allegations about Defendants' affirmations of facts and promises, and the falsity thereof.  *See e.g.,* SCAC ¶ 36 ("In each and every machine tested all wholly failed to come close to the claimed horsepower."); SCAC ¶ 37 "In short, Defendants grossly misrepresent the horsepower (and peak horsepower) that the vacuums can reach under any conditions for any length of time to consumers."); SCAC ¶ 46 ("Shop-Vac's representations about the capacity of the vacuum tanks are misleading because in actual operation the vacuums stop working, due to an automatic shut off feature, when the tanks reach between 47% and 83% of stated capacity (an average of 64%)."); SCAC ¶ 47 ("Plaintiffs' expert tests have confirmed that Shop-Vac vacuums are incapable of reaching the advertised tank capacities."); Defendants further suggest that Plaintiffs misunderstood Defendants' affirmations or promises regarding the peak horsepower and capacity of the Shop-Vac vacuums.  An express warranty can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer

---

[21] In support of Defendants' argument that its affirmations of fact and promises regarding "peak horsepower" are truthfully stated, contrary to the specific factual allegations in the operative SCAC, Defendants make reference to prior and inoperative pleadings. Defendants' Br. at 17-18 ("counsel for Plaintiffs admitted in earlier iterations of the complaint that the vacuums, when tested using methodology employed by Shop-Vac, reach their peak horsepower (even if only briefly)). This is improper.  Defendants' motion is to dismiss the operative amended complaint.  An amended complaint supersedes the original complaint and renders it of no legal effect. *King v. Dogan*, 31 F.3d. 344, 346 (5th Cir. 1994) ("properly filed amended complaint superseded original and was therefore the only effective complaint in the case."); *see also, Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998) ("it is black letter law that when the parties amend the pleadings, the amended pleadings supersede the original pleadings."). However, even if these pleadings were operative, defendants would still be incorrect.  A reasonable consumer might, and indeed *would*, be deceived into thinking that the vacuum might reach the stated peak horsepower in actual operation, not only for a split second in a lab test.

which relates to the goods and becomes part of the basis of the bargain," or "[a]ny description of the goods which is made part of the basis of the bargain." N.J.S.A. § 12A:2-313.  It is not necessary to "use formal words such as 'warrant' or 'guarantee'" to create an express warranty. N.J.S.A. § 12A:2-313.  In practice, this means "[a] statement can amount to a warranty ... if it could fairly be understood ... to constitute an affirmation or representation that the [product] possess[s] a certain quality or capacity relating to future performance." *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993) (citations omitted) (applying New Jersey law).

Like they do with Plaintiffs' consumer law claims, Defendants seeks to define consumers' fair understanding of Defendants' "peak horsepower" and capacity claims vis-à-vis inoperable disclaimers made elsewhere.  Defendants contend that a statement on its website "explains that peak horsepower is determined from a laboratory dynamometer test," implying this somehow negates the falsity of Defendants' peak horsepower claims made in advertisements, marketing materials and advertisements (notably Defendants do not claim to make any statements about dynamometer tests in product packaging or labeling).  Defendants' Br. at 31.  This is wrong.  "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Chapter on parol or extrinsic evidence (Section 2202) *negation or limitation is inoperative to the extent that such construction is unreasonable.*" Cal. Com. Code § 2316 (emphasis added).

Indeed, a warranty disclaimer inconsistent with an express warranty is inoperative. *Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*, 890 F.2d 108 (9th Cir. 1989) (finding that a disclaimer of warranties in a "printed form contract was ineffective to void [prior] express

warranties" where seller was alleged to have warranted that a computer would "put your inventory, receivables, and invoicing under complete control"); *see also Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 83 N.J. 320, 330 (1980) ("The complete exclusion of express warranties is strongly disfavored in the UCC."). Here, the disclaimer in the on the website is neither "reasonable" nor "consistent." Moreover, Plaintiffs cannot be expected to visit Shop-Vac's website to read such disclaimers while contemporaneously being exposed to Defendants misrepresentations on the product marketing materials while physically in a Lowe's retail location. Further, and consistent with the basic U.C.C. principle that the substance of the parties' actual agreement is more meaningful than the form of the written contract, section 2-316(1) provides that a seller cannot make a statement of fact or promise in the negotiation, in advertising, or in writing, and then attempt to avoid the legal consequences by virtue of a contract disclaimer. *See* N.J.S.A. 2-316(1); *see generally Realmuto v. Straub Motors, Inc.*, 65 N.J. 336 (1974). Therefore, even clauses that ***explicitly*** purport to disclaim an express warranty are ineffective. *Petroleo Brasileiro, S.A., Petrobras v. Nalco Chemical Co.*, 784 F. Supp. 160, 164 (D.N.J. 1992) ("[a]n exclusion of express warranties is inoperative to the extent its terms are unreasonably inconsistent with the express warranties that are given"); *Gladden*, 83 N.J. at 330; *Realmuto*, 65 N.J. 336 (language in contract that buyer expressly agreed that seller and manufacturer made no express warranties was inoperative to disclaim express warranty that car had 30 day warranty and guaranteed to pass state inspection); *see also Consolidated Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F.2d 385 (9th Cir. 1983) (New York law*); USM Corp. v. Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 546 N.E.2d 888 (1989) (express warranty in written agreement should be given effect even if its content overlaps with the content of an implied warranty disclaimed in the same written agreement); *Bowen v. Young*, 507 S.W.2d

600 (Tex. Civ. App. 1974) (disclaimer on sales contract ineffective to overcome seller's express warranties that mobile home would conform to model); *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 265 N.W.2d 513 (1978) (disclaimer of all express warranties ineffective when same document gave express warranty against defects).

Defendants also contend that while the packaging and marketing materials of each vacuum indicates that it is equipped with a tank of a certain size, the packaging and marketing materials also clearly state the vacuums' "[w]orking capacity may vary by use." Defendants Br. at 32-33.  That argument fails for the same reason.

### b.    Second Element Of UCC Express Warranty Claim

Defendants do not address the second element of a breach of express warranty claim, which requires the plaintiff to allege the warranty became part of the basis of the bargain.  Here, each Plaintiff alleges they relied on the Defendants' labels and advertising, and that the labels were part of the "basis of the bargain" because he would not have purchased the vacuums if they had known the vacuums could not meet the peak horsepower advertised.  *See e.g.,* SCAC ¶¶ 7-9; Such allegations sufficiently plead an express warranty because they constitute an inducement to the Plaintiffs to use the Defendants' products.  *See Knipe v. Smithkline Beecham*, 583 F. Supp. 2d 602, 625 (E.D. Pa. 2008); *Viking Yacht Co. v. Composites One LLC,* 496 F. Supp.2d 462, 469-470 (D.N.J. 2007) (express warranty sufficiently pleaded where plaintiffs alleged that defendant's language in product bulletin induced them to use product); *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 371 (1960) ("Under the broad terms of the Uniform Sale of Goods Law any affirmation of fact relating to the goods is an express warranty if the natural tendency of the statement is to induce the buyer to make the purchase.") (citation omitted).

### c.    Third Element Of UCC Express Warranty Claim

With respect to the third express warranty element, that the goods ultimately did not conform to the affirmation, promise, or description, the Complaint certainly makes that allegation. *See e.g,* SCAC. ¶¶ 36-37 (vacuums could not reach advertised horsepower) ¶¶ 46-47 (vacuum tanks lacked advertised capacity in actual use).  These allegations, which must be taken as true and construed in Plaintiffs' favor, are sufficient to state a claim that the label is an express warranty.[22]

### G.    The SCAC Includes Expanded Allegations Regarding UCC Warranty Notice, Which Are Sufficient For The Plaintiffs And The Class To Pursue Warranty Claims

Although not reaching the issue, the Order of Dismissal sought expanded allegations regarding the provision of warranty notice and opportunity to cure under UCC 2-607.  Plaintiffs have now complied, and the allegations contained in the SCAC are sufficient to provide notice commensurate for consumer transactions.  It is undisputed that Mr. Reid provided his notice of claim on behalf of himself and the Class in a formal document, which Defendants concede was timely. Defs' Brief at 20.[23]  Defendants do not dispute that notice was provided by Messrs.

---

[22] *See also L.S. Heath & Son, Inc.*, 9 F.3d at 570 (finding AT&T created an express warranty when it represented that its "completely integated [sic] data processing and voice/data communications network [will] satisf[y] all your aforementioned objectives" and refusing to enforce a subsequent disclaimer similar to Whirlpool's Limited Warranty); *Cipolle v. Liggett Group, Inc.*, 683 F. Supp. 1487, 1490-91, 1497 (D.N.J. 1988) (holding advertisements concerning the health effects of cigarettes created an express warranty); *rev'd on other grounds*, 893 F.2d 541, 574 (3d Cir. 1990) ("The seller may be liable if its representation regarding the goods takes the form of newspaper, magazine, radio or television advertisements."); *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 958 (N.D. Ill. 2007) (holding representations made on a corporate website regarding the nutritional content of McDonald's potato products were written warranties); *Smith v. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1341-43 (S.D. Fla. 2009) (holding representations on packaging concerning chewing gum's ability to kill germs was a written warranty); *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187, 193-94 (N.Y. App. Div. 1992) (holding an "inspection checklist" issued by a motor home retailer was a written warranty); *Marine Midland Bank v. Carroll*, 98 A.D.2d 516, 520 (N.Y. App. Div. 1984) (finding that an "inspection form" of a motor home was a written warranty under the Magnuson-Moss Act).

[23] Despite this concession Defendants argue that this timely notice should be rejected because it was not made in "good faith" and did not provide adequate time for them to resolve the claims which are now stated.  Defendants' provide no case law to support their definition of "good faith" much less that it can be determined on the pleadings. Moreover, Defendants' fail to explain how much time would have been adequate to resolve the claims, much less that they would have resolved these claims if given an appropriate amount of time, such that they have been

Harbut or McMichael, but they dispute its efficacy.  Defendants, however, are incorrect on the law.

### 1.    Mr. Harbut's Notice Alleged In The SCAC Is Clearly Valid Under Missouri Law

The SCAC alleges that after his purchase, Mr. Harbut returned to the Lowe's store where he made his purchase to complain to Defendant Lowe's personnel about its poor performance and lack of power -- well prior to his initiation of his suit.  SCAC ¶ 7.  Without citation to any case law, Defendants claim that this notice is insufficient.  Missouri case law however demonstrates that Defendants are wrong, and that such a complaint is all that is required of a consumer to satisfy any obligations under §2-607 to a retailer or remote manufacturer.  *See Ragland v. General Motors Corp.*, 763 S.W.2d 357, 361 (Mo. App. 1989); *see also Palmer v. A.H. Robbins, Co., Inc.*, 684 P.2d 187, 205-7 (Colo. 1984); *Goldstein v. G.D. Searle & Co.*, 62 Ill. App. 3d 344, 378 (1978).

Defendants portray the notice requirements of §2-607 as formal and rigorous -- but the exact opposite is true.  Missouri in particular has recognized that "the notice contemplated by the U.C.C. does not require any particular formality or detail as to the nature of the buyer's complaint" and "the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched."  *Kansas City, Mun. Corp., v. Keene Corp.*, 855 S.W.2d 360 (Mo. Supreme Court 1993).  This is particular true in a consumer case, so that "any act or series of acts imparting notice of the buyers claim is sufficient."  *Ragland* at 361.  As such, all that is required is "to demonstrate notice to the immediate seller" -- here Lowe's -- which is sufficient to pursue a claim against that seller and a remote manufacture.  *Id.*  There is

---

prejudiced. To the limited extent that these issues are relevant, they raise questions of fact inappropriate for determination at this stage of the litigation.

no requirement however to notify the manufacturer itself. *Kansas City Mun. Corp. v. Keene* at 369. The Missouri Supreme court has left no doubt that notifying a sales representative of the seller of the purchaser's dissatisfaction of the product at issue is entirely sufficient to satisfy 2-607. *Id.*

Defendants' brief contains many suppositions about Plaintiffs' duties under 2-607, but no applicable law. With regard to Mr. Harbut and his duties under the laws of Missouri, the law is crystal clear. His providing notice of his dissatisfaction with this product to a sales representative of the seller Lowes, is clearly sufficient to comply with any notice requirements under the laws of his home state both as to Lowe's as well as Shop-Vac. *Id.*[24]

### 2.    Mr. McMichael's Notice Allegations Are Sufficient

Plaintiffs concede that Mr. McMichael did not provide pre-suit notice of his warranty claim to Defendants. Nonetheless, Mr. McMichael's suffice for three distinct reasons.

First, it is undisputed that such notice had previously been provided by other class representatives on behalf of all consumers similarly situated, and the representative nature of class action litigation under Rule 23 allows a class representative's notice, like Mr. Reid's, to suffice on behalf of all other class members.

Second, Mr. McMichael's complaint is adequate notice for warranty claims under Pennsylvania law, which may be applied to his claims. Pennsylvania law permits a civil complaint, such as served by Mr. McMichael, to serve as notice of warranty under this State's analogue to U.C.C. 2-607. The Middle District of Pennsylvania has held that "nothing in section 1201 or 2607 . . . specifically prohibits a civil complaint from serving as notice of a breach of warranty." *Bednarski v. Hideout Homes & Realty, Inc.,* 709 F. Supp. 90, 93 (M.D. Pa. 1988).

---

[24] Defendant's engage in rank supposition to make the claim that since Mr. Harbut returned to the store, he must likely have returned his Vacuum, and lost standing to pursue his suit. There is in fact nothing in the pleadings from which to make such an assertion, which is in any case incorrect.

The court in *Bednarski* relied upon a prior ruling by the Pennsylvania Superior Court that the filing of a complaint was sufficient for notice of rejection of goods, and reasoned that there was no indication that the Pennsylvania Supreme Court would rule otherwise with regard to notice of breach of warranty. *Id.* at 93-94 (discussing *Yates v. Clifford Motors, Inc.,* 283 Pa. Super. 293, 423 A.2d 1262, 1269-70 (Pa. Super. Ct. 1980)). As discussed earlier, it is impossible to determine at this juncture if Pennsylvania law will he held to apply to this controversy -- but if it does, Mr. McMichael's original complaint is sufficient notice to preserve his warranty claims. As Shop-Vac is headquartered in PA, it is a distinct possibility that its laws could apply to these transactions, and being merely possible serves as sufficient grounds to deny dismissal of Mr. McMichael's claim on this motion to dismiss.

Third, the notice requirement in the consumer context has been eliminated absent a showing of prejudice to the seller, and since no prejudice can exist, this issue serves as no bar to the maintenance of these claims.

There is an applicable exception to the notice requirement where the defendant already is aware of the alleged defect and/or has learned of it through other sources of information, and the complaint may serve as notice in certain cases. *See, e.g., Connick v. Suzuki Motor Co., Ltd.,* 174 Ill. 2d 482, 625 N.E.2d 584 (1996); *Perona v. Volkswagen of America, Inc.,* 292 Ill. App.3d 59, 684 N.E.2d 859 (1997). Direct pre-suit notice of a breach of warranty claim is not required when the seller has actual notice of the defect in a particular product. *In re McDonald's French Fries Litigation,* 503 F.Supp.2d 953 (N.D. Ill. 2007). *See also Church of the Nativity of Our Lord v. WatPro, Inc.,* 491 N.W.2d 1, 5 (Minn. 1992) (holding: "[w]here the record discloses prior knowledge of similar complaints, the defendant will already have investigated the possible

causes and therefore cannot argue that it is prejudiced by any delay in receiving notice of the specific complaint.")

Defendants rely upon inapposite commercial cases, in foreign jurisdictions, involving commercial transactions to support their arguments regarding notice. The standard to be applied in this consumer case however, is far different. It has been recognized within the U.C.C. commentary itself, as well as the courts, that, "'a reasonable time' for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." N.J.S.A. § 12A:1-204 cmt. 4, *quoted by, Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 551 (D.N.J. 1998). In other words, this provision is designed not as a loophole for a manufacturer to escape liability for wrongful acts against less sophisticated consumers, but rather to give a good faith seller an opportunity to cure and mitigate a defect of which it was not aware.

Based upon this understanding of the purpose of the statute, "[c]ourts have interpreted this section as implying a requirement that the defendant be prejudiced by the lack of notice. *Boyes* at 552 (citing *Cipollone v. Liggett Group, Inc.*, 683 F. Supp. at 1498 n. 14 ("the court notes that whether defendant was prejudiced by the lack of notice is also a relevant consideration")); *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 298 (3d Cir. 1961) (one of the factors to be considered is whether the delay in giving notice or its form prejudiced the seller). Therefore, in a consumer context as presented here, this Court should look at whether Defendant's claims to be prejudiced are because of any such delay or lack of notice. *Boyes*, 27 F. Supp. 2d 543, 552 ("even if the plaintiffs failed to complain within a 'reasonable time,' the defendants have not alleged any prejudice from such delay. For this reason the claim that

[defendant] is not liable is denied."). The Defendants have not alleged the existence of any such prejudice, as it has suffered none. The only surprise that it can legitimately claim is over how long they were able to get away with their unfair and deceptive practices before being sued herein. As such, Mr. McMichael's failure to provide pre-suit notice should not bar his warranty claim.

### H.    Plaintiffs Have Stated Claims For Breach Of Implied Warranty

Defendants mischaracterize Plaintiffs' allegations as a "selective reading" of its warranties. However, it is Defendants who are selectively reading the allegations in the CAC. Defendants ignore the well-pleaded allegations in Plaintiffs' Complaint. Defendants Br. at 34-36.

As Defendants acknowledge, in order for goods to be merchantable they must:

> (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (e) are adequately contained, packaged, and labeled as the agreement may require; *and* (f) conform to the promises or affirmations of fact made on the container or label if any.

(Emphasis added) Defendants Br. at 36.

While further acknowledging that the SCAC alleges violations of subsections (a), (c), and (f), Defendants seem to imply that vacuums only need to meet some and not all the criteria for merchantability. The implied warranty of merchantability actually requires goods to meet *all* applicable criteria under the statute, including: "pass without objection in the trade under the contract description;" "in the case of fungible goods, … [be] of fair average quality within the description;" "[be] adequately contained, packaged, and labeled as the agreement may require;" *and* "conform to the promises or affirmations of fact made on the container or label if any." *See*

35

U.C.C. § 2-314(2)(a)-(f).  A product is unmerchantable if it fails to meet *any* of those criteria. *See id; see also Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011) (citing N.J. Stat. Ann. § 12A:2-314; U.C.C. § 2-314).

Plaintiffs allege that Defendants breached the warranty implied in the contract for the sale of its vacuums.  Plaintiffs further allege that the Shop-Vac wet/dry vacuums do not conform to promises made on their containers or labels, as required under subsection (f) of the statute, because contrary to the statements on its packaging, the vacuums cannot operate anywhere near the stated peak horsepower and have tanks that have capacities which are significantly less than represented. *See e.g.*, SCAC ¶ 83.  Moreover, the vacuums are not adequately packaged and labeled, as required by subsection (e), because the labels are false. *See e.g. id.*

In addition, the products do not pass without objection in the trade *under the contract description*, as required in subsection (a), because if Shop-Vac's peak horsepower representations were correct, "then they would not comply with applicable standards for such devices and the vacuums would not pass freely and without objection into the stream of commerce and would violate the implied warranty of merchantability. *Id* ¶ 88.  The allegations are thus sufficient to state claims for breach of the implied warranty of merchantability.

## I.     Plaintiffs Have Pleaded That Lowes Made Independent Representations And Adopted Those Of Shop-Vac

The SCAC alleges that Shop-Vac produces a special line of wet/dry vacuums to Lowe's specifications which are only sold by Lowe's. ¶ 50.  The SCAC further alleges that the boxes for Lowe's contain the same misrepresentations on the box about horsepower and tank capacity as regular Shop-Vac vacuums. ¶ 52.  Where a retailer affirmatively adopts a manufacturers' misrepresentations, the retailer may be held liable.  Under very similar circumstances, in *Best Buy Co.*, 2013 U.S. Dist. LEXIS 20440 at 2-3, manufacturer Toshiba provided information

regarding the battery life of its computers to retailer Best Buy.  Best Buy then displayed this

information on shelf tags throughout its store.  As a result of the misleading nature of the

representations that certain computers could experience "up to 3.2 hours" of battery life, Best

Buy was held liable for the misleading representations.  *Id.*  In the present case, Lowe's

displayed and sold the Lowe's Shop-Vacs in boxes which made the misrepresentations relied

upon by Plaintiffs.  ¶ 52.  Therefore, just as in *Best Buy*, independent of any theories against

Shop-Vac, Lowe's is responsible and liable for the representations on the products produced and

boxed to their specifications.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion should be denied.

Dated:  December 9, 2013                     Respectfully submitted,

**DILWORTH PAXSON LLP**

By:  _____ */s/ Joseph U. Metz*_____
Joseph U. Metz (PA ID No. 32958)
112 Market Street, Suite 800
Harrisburg, Pennsylvania 17101-2015
Tel:  717-236-4812
Fax: 717-236-7811
Email: jmetz@dilworthlaw.com
*Interim Liaison Counsel*

**MILBERG LLP**
Sanford P. Dumain
Andrei Rado
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Tel:  212-594-5300
Fax: 212-868-1229
Email: sdumain@milberg.com
Email: arado@milberg.com

**LAX LLP**
Robert I. Lax
380 Lexington Avenue, 31st Floor

New York, New York 10168
Tel:  212-818-9150
Fax: 212-818-1266
Email: rlax@lax-law.com

**FARUQI & FARUQI LLP**
Adam Gonnelli
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel:  212-983-9330
Fax: 212-983-9331
Email: agonnelli@faruqilaw.com

*Interim Class Counsel*

**LITE DePALMA GREENBERG LLC**
Bruce Daniel Greenberg
Marissa Lenore Quigley
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel:  (973) 623-3000
Email: bgreenberg@litedepalma.com
        mquigley@litedepalma.com

**REESE RICHMAN LLP**
Michael R. Reese
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Tel:  (212) 643-0500
Fax: (212) 253-4272
Email: mreese@reeserichman.com

**BARON & HERSKOWITZ**
Jon Herskowitz
9100 South Dadeland Boulevard
One Datran Center, Suite 1704
Miami, Florida 33156
Tel: (305) 670-0101
Email: jon@bhfloridalaw.com

**PINILIS HALPERN LLP**
William J. Pinilis
160 Morris Street
Morristown, New Jersey 07962
Tel: (973) 401-1111
Fax: (973) 401-1114
Email: wpinilis@consumerfraudlawyer.com

*Interim Executive Committee Members*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on December 9, 2013, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated:  December 9, 2013

_____
*/s/ Joseph U. Metz*
Joseph U. Metz

# EXHIBIT  A

# 16RT Series          Model 16RT500A



| ITEM | DESCRIPTION | PART NO. |
|------|-------------|----------|
| 1 | Handle | 3751031 |
| 2 | Switch Button - I | 7414200 |
| 3 | Switch Button - O | 7414210 |
| 4 | Cord Hook | 3856430 |
| 5 | Motor Cover Assembly | 2432221 |
| 6 | Screw 10 - 3/4" Trilobe, Twin Lead | 1517699 |
| 7 | Power Unit Assembly | 8130697 |
| 8 | Float | 3545000 |
| 9 | Lid Latch | 7441601 |
| 10 | Lid Cage & Latch Assembly | 1944705 |
| 11 | Cartridge Filter | 90304 |
| 12 | Filter Retainer | 3008000 |
| 13 | Disposable Filter Bag | 90662 |
| 14 | Tank Assembly | 1027397 |
| 15 | Inlet Deflector | 7413100 |
| 16 | Casterfoot A | 8568000 |
| 17 | Casterfoot B | 8568010 |
| 18 | Caster | 6774200 |
| 19 | Screw 10 x 3/4" SL Hex Head | 1503999 |
| 20 | Drain Cover | 7446800 |
| 21 | Tool Holder | 8412000 |

\* Replacement parts may differ from original equipment.

**THREE-YEAR HOME USE WARRANTY**
Your Shop-Vac® vacuum cleaner is warranted in normal household use, in accordance with the User Manual, against original defects in material and workmanship for a period of three years from date of purchase. Should this product be used for commercial or rental use, a 90 day limited warranty will apply. Shop-Vac Corporation warrants placing this vacuum cleaner in correct operating condition, by repair or parts replacement, during the warranty period, without charge. This warranty does not cover accessories. Use of non-recommended filters and/or accessories may void the manufacturer's warranty.
For product service contact Shop-Vac Corporation, Customer Service, at (570) 326-3557 or go to www.shopvac.com/support. Shop-Vac® assumes no responsibility for damage or faulty performance caused by misuse or careless handling, or where repairs or modifications have been made or attempted by others. Proof of purchase date is required. This warranty gives you specific legal rights, and you may also have other rights, which vary from state to state. This warranty is void outside of the United States.

# Ultra Pro Series

# Model BLB550



| ITEM | DESCRIPTION | PART NO. |
|------|-------------|----------|
| 1 | Switch Button - I | 7414200 |
| 2 | Switch Button - O | 7414210 |
| 3 | Power Unit (includes 1-7) | 7263197 |
| 4 | Intake Screen | 8541205 |
| 5 | Inlet Shield | 7442301 |
| 6 | Ferrule | 7350400 |
| 7 | Screw 10 x 3/4 Trilobe T25 Head | 1516099 |
| 8 | Tank Cover | 7350520 |
| 9 | Float | 7411200 |
| 10 | Lid latch | 7444500 |
| 11 | Lid Cage & Latch Assembly | 7350665 |
| 12 | Cartridge Filter | 9030462 |
| 13 | Filter Retainer | 3008000 |
| 14 | Tank Assembly | 7365397 |
| 15 | Inlet Deflector | 7413100 |
| 16 | Collection Bag | 9066262 |
| 17 | Rear Caster Dolly | 7431235 |
| 18 | Casterfoot A | 7431300 |
| 19 | Casterfoot B | 7431310 |
| 20 | Retainer | 8565700 |
| 21 | Flatwasher | 0704399 |
| 22 | Caster | 6773900 |
| 23 | Screw 10 x 3/4 SL Hex Head | 1503999 |
| 24 | Drain Cover | 7413620 |

## STANDARD ACCESSORIES
- 8' x 2-1/2" Lock-On® hose
- (2) 2-1/2" Extension wands
- 14" Floor nozzle w/brush
- Concentrator nozzle
- 2-1/2" Crevice tool
- 8" Utility nozzle
- Elbow grip
- Blower nozzle

## FOUR-YEAR HOME USE WARRANTY
Your Shop-Vac® vacuum cleaner is warranted in normal household use, in accordance with the User Manual, against original defects in material and workmanship for a period of four years from date of purchase. Should this product be used for commercial or rental use, a 90 day limited warranty will apply.  Shop-Vac Corporation warrants placing this vacuum cleaner in correct operating condition, by repair or parts replacement, during the warranty period, without charge. This warranty does not cover accessories.  Use of non-recommended filters and/or accessories may void the manufacturer's warranty.
For product service contact Shop-Vac Corporation, Customer Service, at (570) 326-3557 or e-mail service@shopvac.com.  Shop-Vac assumes no responsibility for damage or faulty performance caused by misuse or careless handling, or where repairs or modifications have been made or attempted by others.  Proof of purchase date is required.  This warranty gives you specific legal rights, and you may also have other rights, which vary from state to state.  This warranty is void outside of the United States.