**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: SHOP-VAC MARKETING | : | MDL No. 2380 |
| AND SALES PRACTICE | : | |
| LITIGATION | : | Civil Action No.: 4:12-MD-02380-YK |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |
| THIS DOCUMENT RELATES TO: | : | (Chief Judge Kane) |
| | : | |
| ALL CASES | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE
<u>SECOND CONSOLIDATED AMENDED COMPLAINT</u>**

LOEB & LOEB LLP
Michael L. Mallow, Esq. (*pro hac vice*)
Michael B. Shortnacy, Esq. (*pro hac vice*)
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Tel: (310) 282-2000
Fax: (310) 282-2200

BUCHANAN INGERSOLL & ROONEY PC
Thomas G. Collins, Esq.
409 N. Second Street
Harrisburg, PA  17101
Tel: (717) 237-4843
Fax: (717) 233-0852

*Attorneys for Defendants Shop-Vac
Corporation and Lowe's Home Centers, LLC
(formerly known as Lowe's Home Centers,
Inc., and Lowe's HIW, Inc.)*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ...............................................................................................2

I.    THE PRODUCT PACKAGING SHOWING THE
      REPRESENTATIONS ABOUT WHICH PLAINTIFFS
      COMPLAIN IS PROPERLY BEFORE THE COURT ...............................2

II.   CHOICE-OF-LAW DETERMINATION CAN BE PROPERLY
      MADE BECAUSE ALL OF THE NECESSARY FACTS ARE
      ALLEGED IN THE SCAC ...............................................................5

III.  PLAINTIFFS' EXPRESS WARRANTY CLAIMS (COUNT III)
      FAIL.............................................................................................6

      A.    The Peak Horsepower Ratings Actually Made Cannot Mean
            What Plaintiffs Claim and Therefore Do Not Create the
            Operational Warranties Plaintiffs Allege .............................6

      B.    The Tank Size Representations Actually Made Cannot Mean
            "Capacity" and Therefore Do Not Create the Operational
            Warranties Plaintiffs Allege ...............................................7

      C.    Plaintiffs' Express Warranty Claims Fail Because They Have
            Not Pleaded Sufficient Notice Under the U.C.C. ....................9

            1.    Plaintiff McMichael Admittedly Did Not Provide
                  Notice ....................................................................9

            2.    Plaintiff Harbut's Alleged Notice Is Not Sufficient .............10

            3.    Plaintiff Reid's Notice Is Not Sufficient......................10

IV.   PLAINTIFFS' IMPLIED WARRANTY CLAIMS (COUNT IV)
      FAIL...........................................................................................11

      A.    The Law of Merchantability Requires Only that the Vacuums
            be Fit for their Ordinary Purpose .......................................11

# TABLE OF CONTENTS (CONTINUED)

**Page**

B.    Plaintiffs' "Cannot Pass Without Objection in the Trade" Argument Fails Because it is Based on an Admittedly Impossible Hypothetical ........................................................... 14

C.    Plaintiff Harbut Did Not Provide Notice to Defendants as Required by Missouri Law ................................................... 15

V.    PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS (COUNT II) FAIL .......................................................... 15

A.    Plaintiffs' "New" Warranty Theory Fails Because it is Not Alleged in the SCAC and the Alleged Warranty Does Not Claim the Products are Defect Free Nor Specify a Level of Performance Over a Period of Time as Required by the MMWA ............................................................................. 16

1.    The New Parts List Warranty Language is Not A Warranty Under § 2301(6)(A) ................................... 17

2.    Plaintiffs' New Parts List Warranty Theory Fails Under § 2301(6)(B) Because the Language Could Not Have Been the Basis for the Bargain ....................... 19

B.    Plaintiffs' Original MMWA Theory Fails Because Peak Horsepower and Tank Size Claims are not a MMWA Warranty ........................................................................... 20

VI.    PLAINTIFFS' CONSUMER FRAUD CLAIMS (COUNT I) FAIL ............ 21

A.    Industry-Wide Usage of the Ratings Shows That Plaintiffs Did Not Suffer Any Injury-in-Fact and Have No Standing ................ 21

B.    Plaintiffs' "Up to" Analogy Has No Application Here ....................... 23

CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arlandson v. Hartz Mountain Corp.*,
792 F. Supp. 2d 691 (D.N.J. 2011) ....................................................................13

*Ashcroft v. Iqbal*,
566 U.S. 662 (2009) ..........................................................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................10

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ............................................................................13

*Borchardt v. Mako Marine Int'l, Inc.*,
2011 U.S. Dist. LEXIS 55150 (S.D. Fla. May 24, 2011) ..................................18

*Chester v. Beard*,
657 F. Supp. 2d 534 (M.D. Pa. 2009) .............................................................9, 22

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ..........................................................................16

*Cooper v. Samsung Elecs. Am., Inc.*,
374 F. App'x 250 (3d Cir. 2010) .....................................................................5, 16

*Drobnak v. Andersen Corp.*,
561 F.3d 778 (8th Cir. 2009) ............................................................................11

*Gertz v. Toyota Motor Corp.*,
No. CV 10-1089 PSG (VBKx) (C.D. Cal. Apr. 28, 2011), *aff'd on
other grounds sub nom. Troup v. Toyota Motor Corp.*, No. 11-
56637 (9th Cir. Dec. 16, 2013) ...........................................................................8

*Green v. Green Mountain Coffee Roasters, Inc.*,
279 F.R.D. 275 (D.N.J. 2011) ......................................................................12, 13

*Gross v. Stryker Corp.*,
858 F. Supp. 2d 466 (W.D. Pa. 2012) ...............................................................20

# TABLE OF AUTHORITIES (CONTINUED)

**Page**

*Harper v. LG Elecs. USA, Inc.*,
  595 F. Supp. 2d 486 (D.N.J. 2009) ...................................................................5

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  801 F. Supp. 2d 993 (S.D. Cal. 2011) ............................................................20

*Kelly v. Microsoft Corp.*,
  2007 U.S. Dist. LEXIS 66721 (W.D. Wa. Sept. 10, 2007) ..............................21

*League of Women Voters of Pa. v. Cappy*, 2009 U.S. Dist. LEXIS
  54705 (M.D. Pa. June 26, 2009) ...................................................................22

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ................................................................12

*Local 98 IBEW Comm. on Political Educ. v. Phila. Bd. of Ethics*,
  2008 U.S. Dist. LEXIS 52818 (E.D. Pa. July 9, 2008) ....................................16

*Maniscalco v. Brother Int'l (USA) Corp.*,
  709 F.3d 202 (3d Cir. 2013) ...........................................................................5

*McKinniss v. Gen. Mills, Inc.*,
  2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007) .................................6

*Mozdzierz v. Accenture, LLP*,
  2010 U.S. Dist. LEXIS 115527 (E.D. Pa. Oct. 28, 2010) ................................16

*Nw. Sav. Bank & Fin. Servs. v. NS First St., LLC*,
  2011 U.S. Dist. LEXIS 112240 (M.D. Pa. Sept. 30, 2011) ................................9

*Payne v. Fujifilm U.S.A., Inc.*,
  2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010) .......................................5

*Pelayo v. Nestle USA, Inc.*,
  2013 U.S. Dist. LEXIS 154434 (C.D. Cal. Oct. 25, 2013) .................................4

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
  998 F.2d 1192 (3d Cir. 1993) ...........................................................................4

# TABLE OF AUTHORITIES (CONTINUED)

**Page**

*Prohias v. Pfizer, Inc.*,
   485 F. Supp. 2d 1329 (S.D. Fla. 2007) ............................................................22

*Rehberger v. Honeywell Int'l, Inc.*,
   2012 U.S. Dist. LEXIS 74454 (M.D. Tenn. May 30, 2012) .............................20

*States v. BFG Electroplating & Mfg. Co.*,
   1989 U.S. Dist. LEXIS 16899 (W.D. Pa. Oct. 18, 1989)..................................21

*In re: Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
   2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 11, 2009).....................................13

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013)................................................................6

*Werbel v. Pepsico, Inc.*,
   2010 U.S. Dist. LEXIS 76289 (N.D. Cal. Jul. 2, 2010) ......................................6

**Statutes**

15 U.S.C. § 2301(6)(A)...........................................................................17, 20, 21

15 U.S.C. § 2301(6)(B)........................................................................................19

U.C.C. § 2-314 ...............................................................................................14, 15

U.C.C. § 2-607 .................................................................................................9, 11

**Rules**

Federal Rule of Evidence 106...............................................................................4

Federal Rule of Evidence 201 ..............................................................................4

**Other**

2-12 MOORE'S FEDERAL PRACTICE - CIVIL § 12.30 (2013) ...................................22

## PRELIMINARY STATEMENT

None of the arguments in Plaintiffs' Opposition Brief changes the inescapable point that this case ultimately boils down to artificial distinctions about Shop-Vac's wet/dry vacuums that are important only to lawyers.

Notwithstanding Plaintiffs' manipulations of Shop-Vac's actual product claims, this case does <u>not</u> involve any representations about "operational horsepower," or "air horsepower," or "actual suction power" or "maximum operational horsepower."  (SCAC ¶ 34.)  Rather, this case is about Shop-Vac's representation of "peak horsepower," which Plaintiffs concede is an industry term of art used for years, the accuracy of which Plaintiffs' do not directly challenge. Similarly, Plaintiffs accuse Shop-Vac of misstating the capacity of its vacuums' tanks, yet Plaintiffs fail to identify a single representation making a claim about such capacity.  In fact, the only statement Shop-Vac made about tank capacity (which varies) was that it does not equate to tank size (which is a constant).

Plaintiffs' persistent need to rewrite the representations that Shop-Vac actually made about its products in order to carry Plaintiffs' warranty and consumer fraud based claims illustrates why Plaintiffs' Second Consolidated Amended Complaint ("SCAC") (Doc. No. 97) should be dismissed in its entirety with prejudice.

## **ARGUMENT**

I.   **THE PRODUCT PACKAGING SHOWING THE REPRESENTA-TIONS ABOUT WHICH PLAINTIFFS COMPLAIN IS PROPERLY BEFORE THE COURT**

In a separate motion (Doc. No. 104)[1], Defendants request the Court take judicial notice of the First Consolidated Amended Complaint in the parallel *Emerson* litigation (Doc. No. 105)[2], as well as the product packaging for the specific Vacuums that Plaintiffs allege to have purchased.  (Doc. No. 106.) Plaintiffs concede that the Court can and should take judicial notice of documents "outside the pleading[s]" where those documents are central to the claims advanced.  (Opp. at 9.)  But, because they cannot legitimately contend that the packaging Plaintiffs allege to have seen and relied upon in making their purchases is not central to their claims, Plaintiffs resort instead to stating—without explanation—that they "cannot at this time verify" the accuracy of the packaging.

---

[1]  Plaintiffs have not opposed Defendants' motion but instead inappropriately oppose that separate motion in their opposition to the motion to dismiss.  (Opp. at 1, 9-11.)  Notwithstanding this procedural deficiency, Defendants will respond herein.

[2]  Plaintiffs concede that the Court can take judicial notice of the operative *Emerson* complaint because it is a public record.  (Opp. at 10 n.4.)  Whether Interim Class Counsel in this case appear on the *Emerson* amended pleading, and regardless of how involved counsel still are in that litigation (Opp. at 10 n.5), the fact remains that they commenced litigation against Shop-Vac's primary competitor, Emerson.  This demonstrates counsels' understanding that determining peak horsepower by way of a dynamometer measurement taken at the motor is the industry standard.  (Mov. Br. at 16.)

2

(Opp. at 9-10.)[3]  This is a stark admission, given that Plaintiffs allege (SCAC ¶¶ 7-9) and argue (Opp. at 29) that they <u>do</u> know what they saw and relied upon in making their purchases—facts integral to their consumer fraud and warranty claims.  Plaintiffs' refusal to "verify" the packaging exposes that the representations therein did not form the basis of Plaintiffs' bargain.  This is fatal to each of Plaintiffs' claims.

Moreover, Plaintiffs give the Court no reason to question the sworn testimony of the Director of Marketing that the proffered documents are what they purport to be: true and accurate copies of the packaging referenced in the SCAC, as kept in the ordinary course of business, corresponding to the products Plaintiffs allege to have purchased.  (SCAC ¶¶ 7-9; Doc. No. 106.)  Significantly, Plaintiffs never (and cannot) deny that the identified product packaging corresponds to the <u>specific</u> Vacuum <u>units</u> that Plaintiffs allege to have purchased.

Plaintiffs also argue that they "contest the truth of the matter asserted."

---

[3]  Plaintiffs incorrectly state that Defendants present the Court with "only 3 to 4 sides" of the box cartons (Opp. at 10), and raise questions about apparent differences between a parts list previously submitted to the Court that does not contain the language on which Plaintiffs now rely for their warranty claims.  (Opp. at 11.)  The complete 12-side box carton packaging can be found on the first page of each exhibit annexed to Doc. No. 106.  And, the parts list annexed to Plaintiffs' opposition (Doc. 107 at 53), indicates on its face that it was revised in October 2009 ("Rev 10/09" printed in lower right hand corner), and is simply an older version of the document revised in December 2012 ("Rev 12/12") submitted by Defendants in March 2013.  (Doc. 70-8.)

(Opp. at 9-10.)  The packaging, however, is not offered to prove the truth of the peak horsepower and tank size ratings asserted therein, but rather only to show what Plaintiffs themselves allege to have seen and relied upon at the time of their purchases.

Federal Rule of Evidence 201 states that the Court <u>must</u> take judicial notice of an adjudicative fact "whose accuracy cannot reasonably be questioned."  Here, there is no reasonable dispute about the authenticity of the packaging, and the Court can, and should, consider the packaging on this motion to dismiss without converting it to a motion for summary judgment.[4]  This is especially true in cases such as this where the representations on packaging that Plaintiffs allege to have relied upon is central to their claims.  *Pelayo v. Nestle USA, Inc.*, 2013 U.S. Dist. LEXIS 154434, at *7-8 (C.D. Cal. Oct. 25, 2013) (granting dismissal based on product packaging).

Finally, allowing Plaintiffs to rely on the peak horsepower and tank size representations as the basis for their claims, while refusing to consider the actual packaging in order to give the statements at issue their proper context would be manifestly unfair.  Therefore, Federal Rule of Evidence 106's "rule of

---

[4] *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993) ("When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence [via summary judgment] is greatly diminished.").

completeness" provides an independent basis for the Court to consider the product packaging on this motion to dismiss.  (Doc. No. 106 at 2.)

## II.   CHOICE-OF-LAW DETERMINATION CAN BE PROPERLY MADE BECAUSE ALL OF THE NECESSARY FACTS ARE ALLEGED IN THE SCAC

Plaintiffs ask this Court to ignore choice-of-law rules because the analysis is so "fact-intensive" it would be "premature" at this stage.  (Opp. at 11-13.)  The SCAC alleges each Plaintiff's state of residency and the state of purchase.  These facts are all that is required to evaluate which state law applies to Plaintiffs' consumer fraud and warranty based claims, whether under New Jersey or Pennsylvania choice-of-law rules.[5]  And, there is ample authority for determining choice-of-law prior to class certification where the necessary facts are clearly alleged, as they are here.  *See, e.g.*, *Maniscalco*; *Cooper*; *see Harper*, 595 F. Supp.

---

[5]  Because this is a multidistrict litigation, the applicable choice-of-law rules are those of New Jersey (the location of the transferor court for Plaintiffs McMichael and Harbut) and Pennsylvania (the forum court for Plaintiff Reid, whose case was voluntarily dismissed in California and never transferred to this Court).  (Mov. Br. at 10 n.2.)  Under either state's choice-of-law rules, the analysis would be the same: the law of the state of purchase governs Plaintiffs' consumer fraud claims.  *See, e.g.*, *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 209 (3d Cir. 2013); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010); *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 489 (D.N.J. 2009).  The same analysis applies to Plaintiffs' contract-based warranty claims. *See, e.g., Payne v. Fujifilm U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 52808, at *29-30 (D.N.J. May 28, 2010) (per New Jersey choice-of-law principles, the law of each state where a plaintiff viewed advertisements and made a purchase shall apply). Thus, the applicable state law is: Plaintiff Harbut (Missouri) (SCAC ¶ 7); Plaintiff McMichael (Florida) (SCAC ¶ 8); and Plaintiff Reid (California) (SCAC ¶ 9).

2d at 491 ("Some choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss.") (Opp. at 12.)

## III.   PLAINTIFFS' EXPRESS WARRANTY CLAIMS (COUNT III) FAIL

Express warranty claims are contractual in nature. *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 895-96 (C.D. Cal. 2013). The words used to create an express warranty are to be construed narrowly, and can be determined as a matter of law on a motion to dismiss. *McKinniss v. Gen. Mills, Inc.*, 2007 U.S. Dist. LEXIS 96107, at *19 (C.D. Cal. Sept. 18, 2007); Mov. Br. at 15 n.4. Here, Plaintiffs rewrite Shop-Vac's actual representations, consistently dropping the word "peak" and interchangeably using "capacity" for the represented tank size. Plaintiffs' claims are thus founded impermissibly upon Plaintiffs' subjective interpretation of the actual words used. Shop-Vac never made representations regarding <u>operating</u> horsepower or tank <u>capacity</u>, and the actual words used do not create the warranties that Plaintiffs allege. *Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289, at *14-15 (N.D. Cal. Jul. 2, 2010).

### A.   The Peak Horsepower Ratings Actually Made Cannot Mean What Plaintiffs Claim and Therefore Do Not Create the Operational Warranties Plaintiffs Allege

Plaintiffs allege that by placing the term of art "5.75 Peak Horsepower" on the product packaging Defendants create an express warranty that the vacuums will produce 5.75 horsepower in actual operation. Plaintiffs claim this is so because

even though the word "operation" is not contained in the offending representation, a reasonable consumer could infer such a meaning.

First, "peak horsepower" cannot mean actual operation because, as Plaintiffs allege, it is impossible for the vacuums to operate at that level in actual use using "typical household voltage."  (SCAC ¶¶ 19, 22, 29, 30, 45; Opp. at 16.)  Whether a reasonable consumer actually knows this (Opp. at 26 n.21) is irrelevant to determining the plain meaning of the actual term used in the supposed "express warranty."  Second, "peak horsepower" does not mean actual operation because it is a term of art used "throughout the industry" and means the measure of power taken at the motor with sensitive laboratory instruments.  (Mov. Br. at 16.) Plaintiffs alleged as much in their CAC,[6] and their counsel are well aware of this fact from the *Emerson* litigation.  *Id.*  So not only is the phrase "in actual operation" never used, it cannot be inferred because it is an impossibility and is contrary to the meaning of that term of art as used in the industry.

### B.     The Tank Size Representations Actually Made Cannot Mean "Capacity" and Therefore Do Not Create the Operational Warranties Plaintiffs Allege

Plaintiffs argue that by placing the words "16 Gallons" on the packaging Defendants created an express warranty that the vacuums will hold 16 gallons of

---

[6]  The article referenced in the prior CAC (¶ 33) states that peak horsepower is "used throughout the vacuum industry."  Declaration of Michael B. Shortnacy, dated March 21, 2013, Exh. A (Doc No. 70-3).  The Court previously took judicial notice of this article.  (Doc. No. 94 at 1.)

material in actual operation.  Plaintiffs claim this is so because even though the word "capacity" is not contained in the offending representation, a reasonable consumer could infer it.  As used on the actual packaging that Plaintiffs allege they relied on, however, the term "16 Gallons" cannot plausibly mean "capacity."  It does not create the express warranty that Plaintiffs' claim.  (Mov. Br. at 18-19.)

The only time that the word "capacity" ever appears on the packaging is where Shop-Vac distinguishes tank size (which is constant) from tank capacity (which is variable based on what material is being vacuumed).  Specifically, the packaging states "*Working Capacity May Vary Based on Use."  (Doc. Nos. 106-1 at 2, Doc. 106-2 at 2, 106-3 at 2, 106-4 at 2, 106-5 at 2, and 106-6 at 2.)  This statement does not "disclaim" anything.  It *explains* the meaning of the actual term used (*e.g.*, "16 Gallon") by contrasting it against the term "capacity."  The cases cited by Plaintiffs about "ineffective disclaimers" are inapposite because they all pertain to written sales contracts with specifically disclaimed provisions.[7]  (Opp. at 27-29.)  It is also implausible that products would be marketed by using a completely variable rating, rather than a constant one like tank size.

---

[7]  Even if the explanatory "capacity" phrase were a disclaimer, the Court in *Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG (VBKx) (C.D. Cal. Apr. 28, 2011), *aff'd on other grounds sub nom. Troup v. Toyota Motor Corp.*, No. 11-56637 (9th Cir. November 20, 2013) dismissed express warranty claims based on the phrase "Actual mileage may vary."

### C.   Plaintiffs' Express Warranty Claims Fail Because They Have Not Pleaded Sufficient Notice Under the U.C.C.

The Court has already ruled that Plaintiffs must allege they have provided pre-suit notice to Defendants pursuant to U.C.C. § 2-607 to "open[] the way for normal settlement through negotiation." (Doc. No. 94 at 12.) The Court also ruled that the filing of a lawsuit is not sufficient notice because it "'would obviate the need for the notice requirement,'" and rejected Plaintiffs' argument that notice is excused in the absence of prejudice to Defendants. (Doc. No. 94 at 12-13)[8] (citation omitted).

### 1.   Plaintiff McMichael Admittedly Did Not Provide Notice

Plaintiffs concede that Plaintiff McMichael did not provide pre-suit notice of his alleged warranty claim. (Opp. at 32.) This fact alone is sufficient to dismiss Plaintiff McMichael's express warranty claim. Plaintiffs argue that pre-suit notice by McMichael was not necessary because his complaint is adequate notice under

---

[8]   These rulings are the law of the case and govern the relevant issues on this motion. "[T]he law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' . . . To that end, where, as here, a district court has previously ruled on a question of law, that ruling 'should continue to govern the same issues in subsequent stages in the litigation.'" *Nw. Sav. Bank & Fin. Servs. v. NS First St., LLC*, 2011 U.S. Dist. LEXIS 112240, at *5-6 (M.D. Pa. Sept. 30, 2011) (Kane, C.J.) (citations omitted); *see also Chester v. Beard*, 657 F. Supp. 2d 534, 537-38 (M.D. Pa. 2009) (dismissing complaint because law of the case doctrine "operates to limit relitigation of issues once they have been decided" except in "extraordinary circumstances," including new evidence, new law, or manifest injustice) (Kane, C.J.).

Pennsylvania law.  The Court has already ruled to the contrary, and Pennsylvania law does not apply to this Florida plaintiff's claim.  *See* Section II n.5, *supra*. Plaintiffs also argue that the U.C.C. notice requirement "has been eliminated absent a showing of prejudice to the seller."  (Opp. at 33.)  The Court has already rejected this argument.  (Doc. No. 94 at 13.)

### 2.    Plaintiff Harbut's Alleged Notice Is Not Sufficient

Plaintiff Harbut alleges that he returned to the Lowe's store and "notified" Lowe's personnel at the store of his "dissatisfaction with the performance of the vacuum."  (SCAC ¶ 7.)  Yet, he never alleges the Vacuum was inoperable, and inexplicably, he did not return the product for a refund.  Rather, he purchased "within several weeks" a "replacement vacuum" of an unknown kind (likely with the same peak horsepower and tank size ratings) from an unknown source.  (Opp. at 32 n.24; SCAC ¶ 7.)  Plaintiff Harbut has not pleaded facts sufficient to plausibly infer under *Ashcroft v. Iqbal*, 566 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) that he notified Defendants of a breach or placed Defendants on notice that the "transaction was troublesome and must be watched."  (Doc. No. 94 at 12.)

### 3.    Plaintiff Reid's Notice Is Not Sufficient

Plaintiff Reid filed his class action complaint ten days after he alleges he dropped a notice letter in the mail.  Such pro forma notice defies the very purpose

of the U.C.C. notice provision, which as this Court recognized, is to open the channels of settlement.  (Doc. No. 94 at 12; U.C.C. § 2-607 official cmt. 4.)  This determination can be made as a matter of law, and is not a question of fact as Plaintiffs suggest.[9]  (Opp. at 30-31 n.23.)

## IV.   PLAINTIFFS' IMPLIED WARRANTY CLAIMS (COUNT IV) FAIL

Plaintiffs' Opposition (at 35-36) makes clear that their implied warranty claims are premised <u>solely</u> on the allegation that Shop-Vac's vacuums do not operate at the stated peak horsepower and tank size.  Plaintiffs, however, admit in the SCAC that their Vacuums do in fact function, and are thus fit for their ordinary purpose.  This concession exposes Plaintiffs' claims as not only incorrect as a matter of law, but also entirely duplicative of their consumer fraud and express warranty claims.  Plaintiffs' implied warranty claims should be dismissed with prejudice.

### A.   The Law of Merchantability Requires Only that the Vacuums be Fit for their Ordinary Purpose

Plaintiffs contend (Opp. at 35) that their Vacuums are unmerchantable because they allegedly fail to live up to promises made on the Vacuums' containers regarding peak horsepower and tank size.  This contention conflates the analysis

---

[9]  Even if Plaintiff Reid's notice was sufficient, it will not inure to the benefit of Plaintiff McMichael and Harbut.  *See Drobnak v. Andersen Corp.*, 561 F.3d 778, 784-85 (8th Cir. 2009) (affirming 12(b)(6) dismissal of U.C.C. claims where named plaintiffs did not give notice on their behalf).

for consumer fraud and express warranty claims and "attempt[s] to fit the square peg of a false advertising or consumer fraud type claim into the round hole of an entirely unrelated warranty claim." *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 544 (D.N.J. 2011) (dismissing implied warranty claims).

An implied warranty claim focuses only on whether the product worked and is merchantable, not on what is represented about the product.  Judge Wigenton, in a case on all fours with Plaintiffs' claims here and applying New Jersey's U.C.C. statute, rejected implied warranty claims on precisely these grounds.  In *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 278, (D.N.J. 2011), Plaintiffs alleged consumer fraud and express and implied warranty claims because Green Mountain falsely advertised on its website and packaging that "one K-cup would brew a programmed quantity of coffee."

Judge Wigenton found that merchantability under the Uniform Commercial Code requires only that a product "'conform to its ordinary and intended use'" and that the law "'does not impose a general requirement that goods precisely fulfill the expectation of the buyer.'"  *Id.* at 282 (citations omitted).  Judge Wigenton concluded that the general purpose of a coffee brewer was to brew coffee.  *Id.* at 283.  The Plaintiff in *Green*, however, like Plaintiffs and their admittedly functioning Vacuums here, did not allege that his coffee brewer did not work—

only that it did not brew the correct *amount* of coffee.  *Id.*  Significantly, Judge

Wigenton held that "[a]lthough Defendants may have advertised that the machines

would brew a specific amount of beverage, that alone does not transform the

'general' purpose [of a coffee brewer]."  *Id.  See, e.g.*, *In re: Toshiba Am. HD DVD*

*Mktg. & Sales Practices Litig.*, 2009 U.S. Dist. LEXIS 82833, *53-54 (D.N.J. Sept.

11, 2009) (applying the U.C.C. and dismissing implied warranty claims for lack of

allegations that DVD players were not fit for their ordinary purpose—to play

DVDs); *Lieberson*, 865 F. Supp. 2d at 538 (dismissing implied warranty claims

where product claim that baby lotion was "clinically proven to help babies sleep

better" did not change the general purpose of baby lotion—to cleanse and

moisturize babies' skin); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009)

(affirming dismissal where plaintiffs admit that the iPod has an "ordinary purpose

of listening to music" and finding "The plaintiffs do not allege the iPods failed to

do anything they were designed to do. . .").[10]

Vacuuming is the ordinary purpose of a vacuum cleaner.  (Doc. 94 at 14.)

And, here, each of the Plaintiffs admits in the SCAC that the Vacuums are capable

---

[10]  The only case that Plaintiffs cite, *Arlandson v. Hartz Mountain Corp.*,
792 F. Supp. 2d 691 (D.N.J. 2011) is not only distinguishable, but further
illustrates Plaintiffs' failure to state a claim.  In *Arlandson*, the alleged purpose of
flea and tick treatments for dogs and cats was to safely remove fleas and ticks.
Plaintiffs alleged that it was not fit for this purpose because it sickened and killed
the pets, rendering the product completely unsafe and unusable, and not merely
ineffective.

of operating, and in fact do operate, as functioning vacuum cleaners, although "not as powerful as [] expected."[11]   Under the Uniform Commercial Code, and as set forth in detail in the Moving Br. (at 24-25), these admissions are fatal to Plaintiffs' implied warranty claims.

### B.     Plaintiffs' "Cannot Pass Without Objection in the Trade" Argument Fails Because it is Based on an Admittedly Impossible Hypothetical

Attempting to salvage their implied warranty claims, Plaintiffs repeat their allegation that, *if* the Vacuums actually *operated* at the stated peak horsepower[12]— which Shop-Vac never claimed and Plaintiffs insist is *impossible*—the Vacuums would violate electrical safety standards and therefore "would not pass freely and without objection into the stream of commerce."  (Opp. at 36.)  As discussed in Defendants' Moving Brief (at 23), an entirely theoretical and admittedly impossible safety violation cannot support a claim for relief.  Moreover, the official comments to the Uniform Commercial Code state that § 2-314(a) ("pass without objection") must be read together with subsection (b), that fungible goods, such as vacuum cleaners here, be of "fair average quality."  U.C.C. § 2-314 official cmt. 7.  Ironically, Plaintiffs' own descriptions of their Vacuums' operational

---

[11]  Plaintiffs make no allegation that they experienced their Vacuums' failing to hold as much material in the tanks as Plaintiffs wanted or expected.  (SCAC ¶¶ 7-9.)

[12]  Plaintiffs do not argue that allegedly not meeting the stated tank size rating makes the Vacuums fail to pass in the trade without objection.

14

capabilities (SCAC ¶¶ 7-9) show that "fair and average" is exactly the quality that Plaintiffs ascribe to the Vacuums."[13]

### C.   Plaintiff Harbut Did Not Provide Notice to Defendants as Required by Missouri Law

For the same reasons that Plaintiff Harbut failed to meet the notice requirements for his breach of express warranty claims, Plaintiff Harbut also fails to meet the notice requirements under Missouri law for his breach of implied warranty claim.  *See* Section III(C)(2), *supra*; *see also* Doc. No. 94 at 14 n.12 (citing U.C.C. § 2-607 for implied warranty notice requirements).

## V.   PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS (COUNT II) FAIL

Recognizing that the SCAC still fails to allege any specified period of time to the alleged "warranties" of peak horsepower and tank size ratings, as required under the MMWA, Plaintiffs improperly seek to introduce a whole new written warranty by attaching a document to the last page of their Opposition Brief (Doc. No. 107 at 53-54).  But Plaintiffs' MMWA claims fail under their new theory advanced for the first time in their opposition and under the theory actually pleaded in the SCAC (¶¶ 121-30).  Because Plaintiffs cannot plead viable MMWA

---

[13]   Failing to ground their argument in any allegation in the SCAC, Plaintiffs state in their Opposition that their Vacuums are unmerchantable for the additional reason that they have "false labels" citing U.C.C. § 2-314(2)(e).  (Opp. at 36.) However, as Official Comment 10 makes clear, this section applies only where the nature of the goods requires a specific type of container or package (*e.g.*, fragile or glass goods).  *See also* Mov. Br. at 26.

claims,[14] those claims should be dismissed as a matter of law with prejudice.

A.     **Plaintiffs' "New" Warranty Theory Fails Because it is Not Alleged in the SCAC and the Alleged Warranty Does Not Claim the Products are Defect Free Nor Specify a Level of Performance Over a Period of Time as Required by the MMWA**

Plaintiffs now claim (Opp. 11, 21-22) that they have alleged an independent MMWA claim based on a purported "express written warranty" that Plaintiffs claim is contained on a "parts list" that no Plaintiff alleges to have ever seen or relied upon, for a specific Shop-Vac vacuum that is not one of the Vacuums that Plaintiffs allegedly purchased.  That these new "allegations" are untethered to any facts in the SCAC and raised for the first time in an opposition brief, rather than a pleading, requires the Court to reject this new theory at the outset.  *Local 98 IBEW Comm. on Political Educ. v. Phila. Bd. of Ethics*, 2008 U.S. Dist. LEXIS 52818, at *16 (E.D. Pa. July 9, 2008) ("Courts in our district have regularly refused to address "'claims raised for the first time in a brief in opposition to a motion to dismiss.'") (citation omitted) (collecting cases); *Mozdzierz v. Accenture, LLP*, 2010 U.S. Dist. LEXIS 115527, at *20 (E.D. Pa. Oct. 28, 2010) ("Since Plaintiff may not present new claims in his opposition to the Motion to Dismiss, we need not

---

[14]   As the Court has already recognized (Doc. No. 94 at 6-7), except insofar as Plaintiffs can plead an independent MMWA claim based on a warranty as specifically defined in 15 U.S.C. § 2301, their MMWA claims rise or fall with their state law implied and express warranty claims.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *Cooper*, 374 F. App'x at 254; Mov. Br. at 30.  Plaintiffs' implied and express warranty claims are addressed herein at Sections III and IV.

16

consider this argument.").

Assuming, *arguendo*, that the parts list to which Plaintiffs now point was grounded in factual allegations in the SCAC and was properly before the Court on this motion,[15] the MMWA claims still fail.  First, the alleged warranty found on the parts list is not a warranty under 15 U.S.C. § 2301(6)(A) as Plaintiffs argue.  Second, this particular "warranty" language is not alleged (or argued in the Opposition Brief) to have been seen by Plaintiffs and therefore could not have become the "basis of the bargain"—defeating any claims under both section 2301(6)(A) and (B).

### 1.    The New Parts List Warranty Language is Not A Warranty Under § 2301(6)(A)

To support their argument, Plaintiffs point to 15 U.S.C. § 2301(6)(A)[16] and the following language from the identified parts list:

**THREE-YEAR HOME USE WARRANTY**
Your Shop-Vac® vacuum cleaner is warranted in normal household use, in accordance with the User Manual, against original defects in

---

[15]  In attaching the document in question to their Opposition Brief, Plaintiffs have not properly placed the document before the Court.  Plaintiffs fail to authenticate the document, and have not requested that the Court take judicial notice of the document.

[16]  Section 2301(6)(A) defines a written warranty as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship **and** affirms or promises that such material or workmanship is defect free or will meet a specified level of performance **over a specified period of time**." (Emphasis added.)

material and workmanship for a period of three years from date of
purchase. . . Shop-Vac Corporation warrants placing this vacuum
cleaner in correct operating condition, by repair or parts replacement,
during the warranty period, without charge.

(Opp. at 53.)

Plaintiffs argue (Opp. at 21) that pursuant to the foregoing language Shop-Vac

warrants that all of its vacuums will "perform in … 'correct operating condition'"

and "as represented" for a three-year period of time.  Plaintiffs claim Shop-Vac

violates this "warranty" because the Vacuums are "incapable" of operating at their

stated peak horsepower and tank size.  Plaintiffs, however, misread the "warranty"

language.

First, warranting against original defects in material and workmanship, as

the parts list language does, is not the equivalent of warranting the product as

"defect-free."[17]  *Borchardt v. Mako Marine Int'l, Inc.*, 2011 U.S. Dist. LEXIS

55150 (S.D. Fla. May 24, 2011), which Plaintiffs cite (Opp. at 22), illustrates this

point.  There, the alleged written warranty stated that the product "is <u>free from</u>

<u>structural defects</u> . . . for a period of twelve (12) years from the date of purchase."

(*See Borchardt* Doc. No. 147 at ¶¶ 34, 131) (emphasis added).  Thus, the written

warranty terms in *Borchardt* are precisely as the MMWA requires, but nothing at

---

[17]  Even if the quoted language did create a "defect-free" warranty under the
MMWA, Plaintiffs do not allege or argue a violation of such a warranty.  Plaintiffs
make no allegation that the Vacuums' purported failure to operate at the specified
peak horse power and tank size ratings is a defect—the word "defect" cannot be
found in the SCAC.

all like the language in the parts list.

Second, the parts list does not state, as Plaintiffs argue (Opp. at 21), that the units "will *perform* … in correct operating condition" for a *specified period of time*. (Emphasis added.)  The language does not say, or imply, anything about the vacuum unit's peak horsepower or tank size performance, in actual operation or otherwise.  The language merely limits the remedy for breach to *placing* the units in correct operating condition by repair or parts replacement should an original defect in materials or workmanship manifest in the required time period, subject to other stated conditions.

> ### 2. Plaintiffs' New Parts List Warranty Theory Fails Under § 2301(6)(B) Because the Language Could Not Have Been the Basis for the Bargain

While neither alleged in the SCAC nor argued in their Opposition Brief, Plaintiffs could conceivably point to 15 U.S.C. § 2301(6)(B)[18] to try to support their MMWA claims.  That argument would also fail because Plaintiffs cannot now allege consistent with their Rule 11 obligations—almost two years after commencing their suit—that this parts list contains the warranty they saw and relied on to make their purchases.  This is especially the case where the parts list

---

[18] 15 U.S.C. § 2301(6)(B) defines a written warranty as "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking..."

does not relate to any of the Vacuums Plaintiffs' allege they purchased.  Because

they cannot so allege, their claims should be dismissed, with prejudice.  *Rehberger*

*v. Honeywell Int'l, Inc.*, 2012 U.S. Dist. LEXIS 74454, at *10-12 (M.D. Tenn.

May 30, 2012); *see generally Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 501

(W.D. Pa. 2012); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d

993, 1008 (S.D. Cal. 2011).

### B. Plaintiffs' Original MMWA Theory Fails Because Peak Horsepower and Tank Size Claims are not a MMWA Warranty

Plaintiffs' argument (Opp. at 23) that Paragraphs 121-30 of the SCAC are a

"textbook example" of how to properly plead a MMWA claim under 15 U.S.C.

§ 2301(6)(A) misses the mark.  Indeed, Plaintiffs admit (Opp. at 21) that their

alleged "express warranties" concerning peak horsepower and tank size are not

"technically" written warranties under the MMWA.  Plaintiffs also fail to refute

that product descriptions, without more, are not MMWA warranties, as a matter of

law.  (Mov. Br. at 29 (collecting cases).)

Even assuming, *arguendo*, that the "express warranty" representations made

by Shop-Vac are "promises" "relat[ing] to the nature of the material or

workmanship," and that the representations "affirm[] or promise[]" that such

material will meet a "specified level of performance" (*i.e.*, peak horsepower and

tank size), Plaintiffs still fail to allege that the supposed promise is of performance

"*over a specified period of time*."  15 U.S.C. § 2301(6)(A) (emphasis added).

*Kelly v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 66721, at *12-13 (W.D. Wa.

Sept. 10, 2007) (dismissing MMWA claim because of no temporal element to

alleged warranty despite plausible inferences by consumers to the contrary,

because "the words themselves do not contain a promise of a certain level of

performance 'over a specified period of time.'") (citation omitted); *States v. BFG*

*Electroplating & Mfg. Co.*, 1989 U.S. Dist. LEXIS 16899, at *28 (W.D. Pa.

Oct. 18, 1989).  The "express warranties" allegedly issued by Shop-Vac

concerning peak horsepower and tank size, taken as true on this motion to dismiss,

plainly do not meet the statutory definition of section 2301(6)(A), and Plaintiffs'

claims should be dismissed with prejudice.

## VI.   PLAINTIFFS' CONSUMER FRAUD CLAIMS (COUNT I) FAIL

### A.   Industry-Wide Usage of the Ratings Shows That Plaintiffs Did Not Suffer Any Injury-in-Fact and Have No Standing

Plaintiffs have no answer to Defendants' argument (Mov. Br. 30-31) that

Plaintiffs cannot possibly have been damaged or suffered an actual injury because

the vacuums that Plaintiffs claim they would have purchased, had they not been

allegedly deceived (*i.e.*, vacuums that <u>operate</u> at 5.5 horsepower in actual use),

admittedly do not exist.  There is nothing else they could have bought that would

have met their expectations, which expectations are therefore unreasonable as a

matter of law.  For this reason, and also because the complained about ratings are

used throughout the industry, Plaintiffs' claim for "price premium" damages is too

speculative as a matter of law to create an injury in fact, and therefore Plaintiffs have no standing.[19]

Indeed, because the ratings are used across the industry, pricing across wet/dry vacuum brands is based, in part, on peak horsepower ratings, and not the mythical and variable operational horsepower that Plaintiffs suggest.  As such, Plaintiffs could not possibly have "paid a premium" (Opp. at 14, 20) for their Vacuums because vacuums are priced across the industry using the same specifications.  *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336-39 (S.D. Fla. 2007) (dismissing consumer fraud claims based on "price inflation" theory as too speculative where plaintiffs could not point to substitute goods for damages analysis).

The speculative nature of Plaintiffs' damages claim is also illustrated by Plaintiffs' argument that they paid a "price premium" for vacuums with "high

---

[19]  Plaintiffs ask the Court to "strike Defendants [sic] 12(b)(1) allegations" because Defendants do not use the word "jurisdiction" in their moving brief.  (Opp. at 8-9.)  It is axiomatic, however, that a plaintiff must establish an injury-in-fact to have Article III standing.  Without it, the court lacks subject matter jurisdiction to hear the case.  *See League of Women Voters of Pa. v. Cappy*, 2009 U.S. Dist. LEXIS 54705, at *15 (M.D. Pa. June 26, 2009) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.") (Kane, C.J.); *see, e.g.*, *Chester v. Beard*, 657 F. Supp. 2d at 538 (considering motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenging Article III standing) (Kane, C.J.)  It is equally axiomatic that questions of subject matter jurisdiction can be raised at any time, including *sua sponte*.  2-12 MOORE'S FEDERAL PRACTICE - CIVIL § 12.30 (2013).

horsepower" and "significant waste storage." (Opp. at 20.) There is nothing to measure these vague expectations against to possibly determine what price premium Plaintiffs could have paid. (Mov. Br. 10-14.)

Plaintiffs therefore try to shift the focus of the inquiry to the irrelevant question of whether a reasonable consumer could infer that the "sophisticated electrical engineering concepts" (Opp. at 16) of peak horsepower and tank size ratings are descriptions of the Vacuums' performance in actual operation. A reasonable consumer's knowledge, however, is irrelevant to determining whether Plaintiffs can plausibly—or possibly—state an actual injury because the products they allege they wanted to buy do not exist.

### B.     Plaintiffs' "Up to" Analogy Has No Application Here

Plaintiffs' reliance on the "up to" cases (e.g., "download speeds of up to 1.2 Mbps," and "SIX TIMES BETTER ABSORPTION," "up to 5 lbs. the first week") is misplaced. (Opp. at 18-20.) The representations there make expressly quantitative promises of operational performance. Shop-Vac has made no such representations. Plaintiffs chose to rewrite the terms actually used on the product packaging in order to read into them meanings the terms do not have.[20]

As admitted by Plaintiffs, peak horsepower is an industry-wide term used to

---

[20]     Plaintiffs have also admitted in their prior pleadings and in the CAC (¶ 33) that the "peak horsepower" rating can be achieved in laboratory tests, making the statements true in any event.

describe a scientific measurement **that is different from the operating horsepower**.  The term is only a comparative data point for purchasing a vacuum because it shows the power of the motor as determined by a dynamometer test.  As such, the representations are distinguishable from the easily identifiable end results promised in Plaintiffs' cited "up to" scenarios, such as "losing up to five pounds in a week" or internet speed of up to 1.2 megabytes per second.  The equivalent statement for a wet/dry vacuum would be that "it can vacuum four inch nails" or "vacuum five gallons of water in a single tank."  No such claims are alleged here.

## CONCLUSION

For the foregoing reasons, each of Plaintiffs' claims in the Second Consolidated Amended Complaint should be dismissed in their entirety, as a matter of law, with prejudice.

Dated:   January 10, 2014                    By:   /s/ Michael B. Shortnacy
                                                   Michael L. Mallow (*pro hac vice*)
                                                   Michael B. Shortnacy (*pro hac vice*)
                                                   LOEB & LOEB LLP
                                                   10100 Santa Monica Blvd., Suite 2200
                                                   Los Angeles, CA  90067
                                                   Telephone: 310.282.2000
                                                   Facsimile: 310.282.2200

                                                   *Attorneys for Defendants Shop-Vac Corporation, and Lowe's Home Centers, LLC (formerly known as Lowe's Home Centers, Inc., and Lowe's HIW, Inc.)*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)**

Pursuant to Local Rule 7.8(b)(2), and Case Management Order No. 13 (Doc. No. 101), it is hereby certified that Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Consolidated Amended Complaint Pursuant contains 6,152 words (exclusive of the tables of contents and citations, the certificate of service, and this certificate), according to the Microsoft® Word 2010 word processing system used to prepare it, and that the Memorandum of Law, therefore, complies with the Court's Case Management Order No. 13.

By:   /s/ Michael B. Shortnacy
Michael B. Shortnacy

## <u>CERTIFICATE OF SERVICE</u>

I, Michael B. Shortnacy, hereby state that I have this day caused the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Second Consolidated Amended Complaint to be transmitted to the Court via the Middle District of Pennsylvania's electronic case filing ("ECF") system for electronic service upon the following attorneys:

| | |
|---|---|
| Sanford P. Dumain<br>Andrei Rado<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10018<br>PH: 212-594-5300<br>sdumain@milberg.com<br>arado@milberg.com | Interim Class Counsel for Plaintiffs |
| Robert I. Lax<br>Lax LLP<br>380 Lexington Avenue<br>31st Floor<br>New York, NY 10168<br>PH: 212-818-9150<br>rlax@lax-law.com | Interim Class Counsel for Plaintiffs |
| Adam R. Gonnelli<br>Faruqi and Faruqi LLP<br>369 Lexington Avenue, 10th Floor<br>New York, NY 10017<br>agonnelli@faruqilaw.com | Interim Class Counsel for Plaintiffs |
| Joseph U. Metz (PA ID No. 32959)<br>Dilworth Paxson LLP<br>112 Market Street, Suite 800<br>Harrisburg, Pennsylvania 17101-2015<br>Tel: 717-236-4812<br>Fax: 717-236-7811<br>jmetz@dilworthlaw.com | Interim Liaison Counsel for Plaintiffs |

| | |
|---|---|
| Bruce Daniel Greenberg<br>Marissa Lenore Quigley<br>Lite DePalma Greenberg LLC<br>Two Gateway Center<br>12th Floor<br>Newark, NJ  07102<br>PH:  973-623-3000<br>mquigley@litedepalma.com<br>bgreenberg@litedepalma.com | Interim Executive Committee Members for Plaintiffs |
| Jon Herskowitz<br>Baron & Herskowitz<br>9100 South Dadeland Boulevard<br>PH-1, Suite 1704<br>Miami, FL  33156<br>PH:  305-670-0101<br>jon@bhfloridalaw.com | Interim Executive Committee Members for Plaintiffs |
| Michael R. Reese<br>Reese Richman LLP<br>875 Avenue of the Americas<br>18th Floor<br>New York, NY  10001<br>PH:  212-643-0500<br>mreese@reeserichman.com | Interim Executive Committee Members for Plaintiffs |
| William J. Pinilis<br>PinilisHalpern LLP<br>160 Morris Street<br>Morristown, NJ  07962<br>PH:  973-401-1111<br>wpinilis@consumerfraudlawyer.com | Interim Executive Committee Members for Plaintiffs |

LOEB & LOEB LLP


Date: January 10, 2014                    By:   /s/ Michael B. Shortnacy



LA2342064.1
004978-10018

27