**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: SHOP-VAC MARKETING AND | : | MDL No. 2380 |
| SALES PRACTICES LITIGATION | : | |
| _____ | : | No. 4:12-md-2380 |
| | : | |
| THIS DOCUMENT RELATES TO: | : | (Judge Kane) |
| | : | |
| ALL CASES | : | |

**MEMORANDUM**

Before the Court is Defendants' motion to dismiss Plaintiffs' second consolidated

amended complaint.  (Doc. No. 102.)  For the reasons that follow, the Court will grant

Defendants' motion in part, and deny it in part.

**I.      BACKGROUND**

Plaintiffs filed the first consolidated amended complaint in the above-captioned

multidistrict litigation (MDL)[1] on February 19, 2013, alleging that Defendants Shop-Vac

Corporation and Lowe's Home Improvement made fraudulent and misleading representations

regarding the peak horsepower and tank capacity on Shop-Vac vacuums.  (Doc. No. 62.)

Defendants moved to dismiss the first consolidated amended complaint (Doc. No. 68) and, on

June 20, 2013, the Court heard oral argument on the motion.  The Court subsequently dismissed

Plaintiffs' complaint without prejudice on August 9, 2013.  (Doc. No. 94.)  The dismissal was

primarily premised on Plaintiffs' failure to allege with specificity the products they purchased,

the time and place in which they purchased the products, and the exact nature of the alleged

---

[1]  The case was transferred to this court by order of the Panel on Multidistrict Litigation
on August 16, 2012.  (Doc. No. 1.)

promises and warranties contained on the packaging.[2]  (Id.)  The Court also found that Plaintiffs

failed to allege that they provided pre-litigation notice to Defendants regarding the breach of

warranty claims.  (Id.)

On September 12, 2013, Plaintiffs filed a second consolidated amended complaint

("SCAC").  (Doc. No. 97.)  The SCAC brings essentially the same allegations as the earlier

complaint, but now contains specific allegations regarding the products purchased, the time and

place of the purchases, and the specific nature of the representations on the Shop-Vac packaging.

(Id.)  The SCAC contains only three named Plaintiffs: Alan McMichael, a Florida resident who

purchased his Shop-Vac at a Lowe's store in Florida; Andrew Harbut, a Missouri resident who

purchased his Shop-Vac at a Lowe's store in Missouri; and Kris Reid, a California resident who

purchased his Shop-Vac at a Stock Building Supply in California.  (Id. ¶¶ 7-9.)

As in the prior complaint, Plaintiffs allege that they relied on misrepresentations made by

Shop-Vac regarding the peak horsepower and tank capacity of the company's vacuum cleaners.

(Doc. No. 97 ¶¶ 7-9.)  Specifically, Plaintiffs allege that Shop-Vac misleads consumers by

representing that its vacuums are capable of reaching a peak horsepower that is impossible to

attain in actual use by consumers.  (Id. ¶¶ 14-45.)  Plaintiffs also allege that Shop-Vac makes

misleading representations about the vacuums' tank capacities, because, in actual operation, the

vacuums stop working when their tanks reach between 47% and 83% of their stated capacity.

(Id. ¶¶ 46-49.)  Plaintiffs assert that these representations are misleading to reasonable

---

[2] In particular, the Court found the first amended complaint insufficient pursuant to Rule
9(b) of the Federal Rules of Civil Procedure, which places a heightened pleading standard on
claims based in fraud or mistake.

consumers.  (Id. ¶¶ 17, 49.)  Plaintiffs also allege that Defendant Lowe's sells a line of Shop-Vac

vacuums with the company's blue trade dress that contain identical misrepresentations on the

boxes, as well as in advertisements and buyer's guides for its "Lowe's Shop-Vacs."  (Id. ¶¶ 50-

55.)

        Plaintiffs assert four separate counts in the SCAC: (1) violations of various state

consumer fraud laws; (2) violations of the Magnuson-Moss Warranty Act; (3) breach of express

warranty, and (4) breach of the implied warranty of merchantability.  (Doc. No. 97.)  Plaintiffs

seek to represent a class of consumers in all states – other than New Jersey – who purchased any

Shop-Vac vacuum within the relevant statute of limitations period.  (Id. ¶ 56.)  They also seek to

represent a subclass of all consumers who purchased their Shop-Vac at Lowe's home

improvement stores.  (Id. ¶ 57.)  On October 25, 2013, Defendants filed a motion to dismiss

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 102.)  Once the

motion was fully briefed, the Court held oral argument on the motion on Monday, May 19, 2014.

(Doc. No. 114.)  The motion is ripe for disposition.

## II.    LEGAL STANDARD

        A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In

reviewing a motion to dismiss, a court may "consider only the allegations in the complaint,

exhibits attached to the complaint, matters of public record, and documents that form the basis of

a claim."  Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Consistent with the

Supreme Court's ruling in Bell Atlantic Corporation v. Twombly, and Ashcroft v. Iqbal, the

Third Circuit requires district courts to engage in a two-part analysis when reviewing a Rule

12(b)(6) motion: (1) First, a court should separate the factual and legal elements of a claim, accepting well-leaded factual matter and disregarding any legal conclusions; (2) Second, a court should determine whether the remaining well-pleaded facts sufficiently demonstrate that a plaintiff has a "plausible claim" for relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Although the Rule 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'"  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## III.   DISCUSSION

This memorandum will first address three preliminary issues raised by Defendants' motion: (1) Defendants' request for judicial notice, (2) choice of law, and (3) standing.  The memorandum will then address Plaintiffs' four causes of action in the following order: (1) breach of express warranty; (2) breach of implied warranty; (3) violations of the Magnuson-Moss Warranty Act; and (4) consumer fraud claims.

### A.   Judicial notice

In conjunction with their motion to dismiss, Defendants ask the Court to take judicial notice of certain documents in ruling upon the motion.  (Doc. Nos. 104-106.)  Specifically, they

ask the Court to take notice of (1) Shop-Vac packaging[3] purportedly utilized on the vacuums the

Plaintiffs allegedly purchased, images of which are not included in Plaintiffs' complaint, and (2)

a complaint in a separate lawsuit that raises substantially similar claims.  (Id.)  Plaintiffs object

to judicial notice of the documents, particularly the packaging.  (Doc. No. 107 at 9-11.)

Plaintiffs contest that they "cannot at this time verify [the packaging's] accuracy and therefore

must object to its authenticity."  (Id. at 9.)

　　　　"Generally speaking, a trial court has discretion to address evidence outside the

complaint when ruling on a motion to dismiss."  Pryor v. Nat'l Collegiate Athletic Ass'n., 288

F.3d 548, 559-60 (3d Cir. 2002).  A court may consider an undisputedly authentic document that

a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

document.  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.

1993).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss

simply by failing to attach a dispositive document on which it relied."  Id.  "While the [Federal

Rules of Evidence] allow a court to take judicial notice at any stage of the proceeding,

Fed.R.Evid. 201(f), . . . it should be done sparingly at the pleadings stage.  Only in the clearest of

cases should a district court reach outside the pleadings for facts necessary to resolve a case at

that point."  Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007) (citing Fed.R.Evid.

---

[3] Defendants argue that if the Court took judicial notice of the packaging, it would mandate dismissal of Plaintiffs' allegations that the Shop-Vac promised a tank capacity of sixteen gallons.  (Doc. No. 103 at 26-28.)  Specifically, according to the images of the boxes provided by Defendants, the packaging states that, regarding the tank, "working capacity may vary by use."  (Doc. No. 106-1.)  Therefore, Defendants ask to the Court to conclude that the packaging expressly disclaimed and therefore did not promise a 16-gallon capacity.  (Doc. No. 103 at 26-28.)

201(b)).  "For all practical purposes,  judicially noticing a fact is tantamount to directing a verdict against a party as to the noticed fact."  <u>LaSalle Nat. Bank v. First Conn. Holding Grp., LLC</u>, 287 F.3d 279, 290 (3d Cir. 2002) (citing <u>Werner v. Werner</u>, 267 F.3d 288, 295 (3d Cir. 2001)).

Applying the standard for judicial notice to the vacuum packaging provided by Defendants, there is no doubt that Plaintiffs' claims are "based on the document [sought to be noticed]," as the allegations in the complaint directly concern the assertions on the vacuum packaging.  However, Plaintiffs <u>do</u> raise an authenticity objection, albeit a non-specific one, and authenticity objections are generally dispositive regarding requests for judicial notice.  <u>See, e.g.</u>, <u>Brown v. Hain Celestial Grp., Inc.</u>, 913 F. Supp. 2d 881, 893-94 (N.D. Cal. 2012).  Accordingly, in consideration of the Third Circuit's reluctance to convert motions to dismiss into motions for summary judgment, and Plaintiffs' objections to judicial notice, the Court will decline to exercise its discretion to take notice of the packaging and its contents at this time.  <u>See</u> <u>Pryor</u>, 288 F.3d at 559-60 ("[D]ocuments whose contents are alleged in the complaint <u>and whose authenticity no party questions</u>, but which are not physically attached to the pleading, may be considered.") (emphasis added).  The Court finds that these additional questions regarding the packaging and its bearing on Plaintiffs' allegations are better suited for disposition after the parties conduct discovery.

Regarding Defendants' request that the Court take judicial notice of an earlier complaint filed in another action, which Plaintiffs' counsel insist they had no part in drafting (Doc. No. 107 at 21), the Court finds this document has no bearing on the Court's disposition of the motion to dismiss and will therefore decline to take notice.

6

**B.      Choice of law**

In the Court's order on Defendants' first motion to dismiss, it declined to conduct a

choice of law analysis:

> Defendants urge the Court to engage in a detailed choice-of-law analysis in ruling
> on their motion to dismiss.  The Court, however, declines to do so at this stage,
> because resolution of the instant motion to dismiss does not require such analysis.
> Instead, the Court will focus on the pleading requirements set forth in Rule 8 and
> 9 of the Federal Rules of Civil Procedure, which apply irrespective of the choice-
> of-law analysis.

(Doc. No. 94 at 6 n.4).  In their second motion to dismiss, Defendants assert that, should the

Court find a choice of law analysis necessary, the SCAC contains sufficient facts for the Court to

conclude that the law of the states in which the three named Plaintiffs purchased their vacuums

(Florida, Missouri, and California) should govern those respective claims.  (Doc. No. 103 at 17-

18.)  Plaintiffs object, arguing that a choice of law analysis is premature at the motion to dismiss

stage.  (Doc. No. 107 at 22-24.)  Plaintiffs also contend that such analysis is unnecessary because

of similarities in the respective states' laws.  (Id.)

In the Third Circuit, a court "must apply an individualized choice of law analysis to each

of plaintiff's claims."  Georgine v. Amchem Prods., Inc., 83 F.3d 610, 627 (3d Cir. 1996).  A

federal court sitting in diversity jurisdiction must apply the forum state's choice of law rules.

Warriner v. Stanton, 475 F.3d 497, 499–500 (3d Cir. 2007).  The forum state in an MDL

proceeding is the district court where the action was originally filed, in this case, New Jersey.[4]

---

[4] Defendants argue that because Plaintiff Reid voluntarily dismissed his earlier case, it
was technically never transferred to this Court and thus Pennsylvania, rather than New Jersey,
choice of law principles should apply to his claim (Doc. No. 103 at 18 n.2).  Because the Court
will decline to perform a choice of law analysis at this stage, it will not address this dispute.

<u>See</u> <u>In re MTBE Prods. Liab. Litig.</u>, 175 F.Supp.2d 593, 606 n.20 (S.D.N.Y. 2001).   Due to the factual inquiry that may be necessary to decide choice of law questions, "it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place."  <u>In re Samsung DLP Television Class Action Litig.</u>, No. 07–2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009).  Nonetheless, "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss." <u>Harper v. LG Elecs. USA, Inc</u>., 595 F.Supp.2d 486, 491 (D.N.J. 2009).  A pre-requisite to a choice of law analysis is that a conflict in the laws actually exist; courts have noted that before "entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."  <u>Jean v. Dugan</u>, 20 F.3d 255, 260 (7th Cir. 1994)

Defendants encourage the Court to conduct this analysis in conjunction with the motion to dismiss, but do not highlight for the Court the conflicts in potentially applicable state laws, nor do they address how any differences are material to the Court's disposition of the pending motion.  Thus, because it does not appear that a choice of law analysis is dispositive of any of the issues currently before the Court, the Court will defer ruling on the choice of law issue until the parties present a factual record and more substantive briefing on the issue.  <u>See</u> <u>In Re Hypodermic Prods. Antitrust Litig.</u>, No. 1730, 2007 WL 1959225, at *16 (D.N.J. June 29, 2007) ("[T]he anticipated complexity of a choice-of-law analysis may itself be a factor in determining the certifiability of the class.").

## C.      Standing/actual injury

Next, Defendants argue that Plaintiffs' claims must be dismissed because Plaintiffs have

not alleged an injury in fact, and thus lack standing to sue.[5]  (Doc. No. 103 at 18-22.)

Defendants' position is that Plaintiffs have not suffered any injury; rather, "they paid for a

wet/dry vacuum and received a wet/dry vacuum, which they used without suffering any harm."

(Doc. No. 103 at 19.)   To have standing to sue, a "plaintiff must have suffered an 'injury in fact'

– an invasion of a legally protected interest which is (a) concrete and particularized, and (b)

actual or imminent, not conjectural or hypothetical."  Lujan v. Defenders of Wildlife, 504 U.S.

555, 560 (1992) (citations, internal quotation marks, and footnote omitted).

The Court disagrees with Defendants' assertion and finds Plaintiffs sufficiently allege an

injury, in that the product they purchased was not as promised and bargained for.  Specifically,

Plaintiffs bargained for more than a functional vacuum; they bargained for a vacuum with certain

specifications regarding power and tank size.  (Doc. No. 97 ¶¶ 14-37.)  Plaintiffs allege that

Defendants "grossly misrepresent the horsepower the vacuums can reach under any conditions

for any length of time to consumers," and that the "vacuums are incapable of reaching the

advertised tank capacities."  (Id. ¶¶ 37, 47.)  Plaintiffs also allege that they would not have

purchased the vacuums but for these misrepresentations, and that they therefore paid an unfair

---

[5]  Plaintiffs object to Defendants' motion to the extent it is brought pursuant to Federal
Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, because Defendants "fail
to raise the issue of any lack of subject matter jurisdiction."  (Doc. No. 107 at 19.)  Accordingly,
Plaintiffs contend "the Court should strike Defendants' 12(b)(1) allegations."  (Id. at 20.)
However, Defendants move to dismiss for lack of standing and "[a] motion to dismiss for want
of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional
matter."  See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d
235, 243 (3d Cir. 2012).

price[6] for their vacuums.  (Id. ¶¶ 7-9, 143.)  These allegations suffice to establish injury at this

stage of the litigation.  See In re Hydroxycut Mktg. & Sales Practices Litig., 801 F. Supp. 2d

993, 1003 (S.D. Cal. 2011) ("Courts have held that a plaintiff is injured and has suffered a

cognizable and ascertainable loss when he  receives less than what he was promised."); In re

Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices, and Prod. Liab. Litig., 754

F.Supp.2d 1145, 1164 (C.D. Cal. 2010) ("As long as plaintiffs allege a legally cognizable loss

under the 'benefit of the bargain' or some other legal theory, they have standing.").

Plaintiffs further allege actual injury in that the vacuums did not perform as promised for

their intended purpose, as they were unable to remove most items from the floor.  (Id.)  See

Koronthaly v. L'Oreal USA, Inc., 374 F. App'x 257, 259 (3d Cir. 2010) ("Absent any allegation

that [a plaintiff] received a product that failed to work for its intended purpose or was worth

objectively less than what one could reasonably expect, [a plaintiff] has not demonstrated a

concrete injury in fact.").  Because all of these allegations support a finding that Plaintiffs

received less than they bargained for and therefore suffered an injury-in-fact, the Court will not

---

[6]  In their brief in support of their motion to dismiss, Defendants argue that Plaintiffs'
damages are based on a speculative price inflation theory that does not constitute an injury in
fact.  In support of their argument, Defendants refer to Prohias v. Pfizer, Inc., 485 F. Supp. 2d
1329, 1337 (S.D. Fla. 2007).  However, in Prohias, the plaintiffs continued to purchase Lipitor
despite their allegations that Pfizer misrepresented the drug's coronary benefits.  See id. at 1336
("[T]he fact that [the plaintiffs] currently take Lipitor, in light of the information they have,
requires me to conclude that they take Lipitor for its cholesterol-reduction or other undisputed
health benefits, and therefore cannot claim to have suffered any damage from the allegedly
misleading statements about Lipitor's coronary benefits.").  Here, however, Plaintiffs have
alleged that they would not have purchased their vacuums but for the alleged misrepresentations.
(Doc. No. 97 ¶ 143.)

dismiss the second consolidated amended complaint for a lack of standing.[7]

**D.    Breach of express warranty**

Defendants move to dismiss Plaintiffs' breach of express warranty claims in Count Three on the grounds that (1) the SCAC does not challenge Defendants' peak horsepower and tank capacity representation as false because the representations are literally true, and (2) Plaintiffs' fail to allege that they provided notice of the breach as required by UCC § 2-607.  The Court will address these arguments in turn.

**1.    Representations were not false**

To state a claim for breach of express warranty, a plaintiff must allege that: (1) the defendant made an affirmation of fact or description of its goods; (2) the statement formed part of the basis of the bargain between the parties; and (3) the product failed to conform with the affirmation or description.  U.C.C. § 2-313.  "[O]nce the buyer has become aware of the affirmation of fact or promise, the statements are presumed to be part of the 'basis of the bargain' unless the defendant, by 'clear affirmative proof,' shows that the buyer knew that the affirmation of fact or promise was untrue."  Cipollone v. Liggett Grp., Inc., 893 F.2d 541, 568 (3d Cir. 1990) rev'd in part on other grounds, 505 U.S. 504 (1992).  "Whether a given statement

_____

[7] Defendants argue that Plaintiffs cannot assert that they would have purchased a different vacuum because Shop-Vac's competitors also use peak horsepower ratings.  (See Doc. No. 103 at 21-22, 33.)  Defendants contend that the peak horsepower is simply a "data point" in that it is a "representation that compares to other competitive units in this industry."  (Doc. No. 114 at 9-11.)  However, Plaintiffs' SCAC supports a finding that the stated peak horsepower can be misleading regardless of whether it is an industry-wide phenomenon.  For example, Plaintiffs have alleged that a vacuum with a stated peak horsepower of 3.5 can create more power with a full load than a vacuum with a stated peak horsepower of 5.5.  (Doc. No. 97 ¶ 35.)  Thus, the SCAC supports a finding that Shop-Vac's representations do not provide a helpful data point for comparison with other vacuums.

constitutes an express warranty is normally a question of fact for the jury."  Snyder v. Farnam

Cos., Inc., 792 F. Supp. 2d 712, 721-22 (D.N.J. 2011).

The Court finds that Plaintiffs have adequately alleged breach of an express warranty.

As discussed above, they allege they purchased vacuums that made specific representations

regarding peak horsepower and tank capacity, that these representations were false, and that

these misrepresentations were the basis of the bargain because they would not have purchased

the machines if not for the representations on the label.  See Stewart v. Smart Balance, Inc., No.

11-6174, 2012 WL 4168584, at *12 (D.N.J. June 26, 2012) ("[T]he Court concludes that

Plaintiffs state a claim for breach of express warranty because they sufficiently allege: (1) the

Defendant makes a specific description that the product is "fat free;" (2) the description was the

basis of the bargain for the product; and (3) the product ultimately did not conform to the

description because it contained one gram of fat per serving.")

Defendants argue that the claims should be dismissed because Plaintiffs "never challenge

Shop-Vac's actual representations of fact as untrue."  (Doc. No. 103 at 28.)  Stated another way,

Defendants contend that Plaintiffs do not allege breach of an express warranty because the

representations regarding "peak horsepower" and tank capacity are technically true; for example,

"peak horsepower," according to Defendants, is a term of art that only refers to horsepower

levels reached for a brief time in laboratory conditions, not during actual consumer use, and that

this use of the term on the packaging is therefore true and standard in the industry.  (Id. at 23-

26.)

On a motion to dismiss, however, the Court must "accept all allegations of fact as true

and draw all reasonable inferences in [plaintiffs'] favor."  See Oshiver v. Levin, Fishbein, Sedran

& Berman, 38 F.3d 1380, 1391 (3d Cir. 1994).  Here, Plaintiffs allege Defendants made certain

representations regarding "peak horsepower" and tank size (Doc. No. 97 ¶¶ 7-9), that Plaintiffs

bought the vacuums as a result of those representations (id. ¶ 149), and that the representations

were false and the products failed to conform with the description on the labels.  (Id. ¶¶ 37, 47.)

Defendants' position, that its representations were technically true, relies on information outside

the pleadings,[8] such as Defendants' proffered packaging (of which the Court declines to take

judicial notice), and the Court finds it would not be proper to consider them at the motion to

dismiss stage. See Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 103 (D.N.J. 2011)

(denying motion to dismiss express warranty claim where "Defendants' argument as to the

accuracy of the labels assumes facts not pleaded or relied upon in the Amended Complaint.").

Accordingly, because a determination of whether Defendants' products actually conformed with

their description is not proper at the motion to dismiss stage, the Court will deny the motion to

dismiss the breach of express warranty claims.

### 2.       Notice of breach

Defendants also argue that the breach of warranty claims should be dismissed because

---

[8] For example, Defendants assert that earlier iterations of this MDL complaint expressly noted that the "peak horsepower" representations were technically true in a laboratory setting. (See Doc. No. 103 at 25-26.; Doc. No. 109 at 29 n.20.)  However, "an amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader." W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank, 712 F.3d 165, 171-72 (3d Cir. 2013) (quoting 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 736 (7th Cir. 2002).  Stated another way, "[w]hen a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions."  Id. (quoting Huey v. Honeywell, Inc., 82 F.3d 327, 333 (9th Cir. 1996).

Plaintiffs Harbut, Reid and McMichael did not provide adequate notice of the breach prior to the initiation of the lawsuit.  (Doc. No. 103 at 28-30.)  Section 2-607 of the UCC provides that, "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  U.C.C. 2-607(3)(a).  "The notification . . . need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."  Id. cmt. 4.  Generally, the notice must be both timely and sufficient under the circumstances and is governed by the buyer's obligation to act in good faith.  Royal Typewriter Co., a Div. of Litton Bus. Sys., Inc. v. Xerographic Supplies Corp., 719 F.2d 1092, 1102 (11th Cir. 1983).  Where the buyer gives some notice of the breach, the issues of timeliness and sufficiency are questions of fact.  Id.

The Court disagrees with Defendants and finds that Plaintiffs Harbut and Reid adequately allege that they provided notice of the breach.  First, Harbut alleges he returned to the Lowe's store where he made his purchase to complain about its performance, thereby giving notice to the seller of the problematic transaction.  (Doc. No. 97 ¶ 7.)  Defendants essentially ask the Court to conclude that, as a matter of law, this form of notice is inadequate.  (Doc. No. 103 at 30.)  However, as Harbut alleges he provided some notice prior to initiation of the suit, whether or not that notice is adequate is a question of fact that the Court cannot determine on a motion to dismiss.  See id.  Second, Defendants similarly ask the Court to conclude that Reid's alleged notice – in letter to Shop-Vac sent ten days prior to initiation of the suit (Doc. No. 97 ¶ 9.) – was too close to the filing of the complaint to be considered sufficient or in good faith.  (Doc. No. 103 at 29-30.)  However, as with Harbut, Reid alleges he provided notice prior to filing suit, and

whether that notice was sufficient or was, as Defendants argue, "sham notice," (id. at 30) is a question of fact not suited for resolution on a motion to dismiss.[9]  Accordingly, the Court will not dismiss the warranty claims as to Harbut and Reid.

However, the third named Plaintiff, McMichael, does not allege he gave any notice to Defendants prior to the filing of the complaint.  Rather, he alleges he provided notice on August 13, 2013, after initiation of the lawsuit and after the Court granted the initial motion to dismiss. (Doc. No. 97 ¶ 7.)  Plaintiffs again argue that (1) the filing of the complaint can be sufficient notice under the UCC where there is no showing of prejudice, and (2) that Defendants can be charged with constructive notice of the problem by virtue of the notice provided by other Plaintiffs.  (Doc. No. 107 at 43-46.)  However, the Court examined and rejected these arguments in granting Defendants' first motion to dismiss.  (See Doc. No. 94.)  First, the Court found that "permitting the filing of the complaint to serve as notice of an alleged defect [on a warranty claim] would obviate the need for the notice requirement."  (Id. at 12.)  Second, the Court rejected Plaintiffs' position that constructive notice is adequate, finding that general awareness of a defect by Defendants is insufficient because "the notice requirements of Section 2-607(3) . . . . require notice of an alleged defect with respect to a plaintiff's actual transaction."  (Id.) Because the Court has already ruled on these issues, it will not address them a second time.[10]

---

[9]  "Where more than one inference may be drawn from undisputed facts, or the facts are disputed, the timeliness and sufficiency of a notice of breach of warranty are questions for the jury to resolve. The question of reasonableness must be determined from the circumstances in the individual case."  Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292, 298 (3d Cir. 1961).

[10]  The Court is also not persuaded by Plaintiffs' argument that under Pennsylvania law, which Plaintiff asserts "may apply to [McMichael's] claims," a civil complaint can serve as

(See id.)  Therefore, the Court will dismiss McMichael's warranty claims for failure to allege that he provided independent notice of the breach prior to initiation of the litigation.[11]  See Cohen v. Implant Innovations, Inc., 259 F.R.D. 617, 642 (S.D. Fla. 2008).

### E.      Breach of implied warranty

Defendants also move to dismiss Plaintiffs' breach of implied warranty claims for failure to state a claim.  (Doc. No. 69 at 46-51.)  Under Section 2-314 of the Uniform Commercial Code, there is an implied warranty "that the goods shall be merchantable . . . if the seller is a merchant with respect to goods of that kind."  U.C.C. § 2-314(1).  Under the UCC, goods are merchantable if they:

> (a) pass without objection in the trade under the contract description; and
>
> (b) in the case of fungible goods, are of fair average quality within

---

notice of a breach of warranty.  (Doc. No. 107 at 43.)  See, e.g., Schmidt v. Ford Motor Co., 972 F. Supp. 2d 712, 718 (E.D. Pa. 2013) (finding that under Pennsylvania law, a "plaintiff, specifically a buyer, must provide notification of the alleged product defect to the manufacturer prior to bringing suit on a breach-of-warranty theory").  The Schmidt court also concluded that "actual or constructive notice of the defect on the part of the manufacturer is irrelevant; the plaintiff must provide notification independently."  Id.

[11]  At oral argument, Plaintiffs also argued that although they did not allege McMichael provided notice prior to initiation of the lawsuit, they do allege he provided notice on August 13, 2013, after the motion to dismiss was granted and therefore prior to the filing of the operative SCAC.  (See Doc. No. 114 at 18.)  The Court finds that this also does not constitute notice.  Permitting a Plaintiff to provide notice after litigation has begun as McMichael has done would, as the Court found in the initial motion to dismiss, "obviate the need for the notice requirement" and the rule's purpose of "allow[ing] the seller an opportunity to either cure the defect or settle the dispute prior to the initiation of a lawsuit."  (See Doc. No. 94 at 12-13); In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II), No. 03-cv-4558, 2008 WL 4126264, at *10 (D.N.J. Sept. 2, 2008) ("[W]here a plaintiff alleges no pre-litigation notice at all, the issue of the notice's sufficiency is moot and appropriately can be decided as a matter of law at this stage.") (emphasis added).

the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

U.C.C. § 2-314(2).

The Court finds that Plaintiffs have adequately stated a claim for a breach of the implied warranty of merchantability.  As to whether the vacuums were "fit for their ordinary purposes," Plaintiff alleges that, among other problems, "the suction of the vacuum was insufficient to pick up screws, metal droppings, or drywall dust, and was not able to entirely remove saw dust from a plywood surface," "was unable to remove cat hair from sofas and furniture," and "struggled to pick up or clean up debris or liquid as expected or represented."  (Doc No. 97 ¶¶ 7-9.)

In response, Defendant highlights Plaintiffs' use of phrases like "not able to entirely remove" in support of their position that it is clear from the face of complaint that the Shop-Vac products operated as functional vacuums and were therefore "fit for their ordinary purpose" of vacuuming.  (Doc. No. 103 at 32-33.)  But taking Plaintiffs allegations as true, the Court is in no position to make that determination at the motion to dismiss stage.  See In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II), No. 03-4558, 2008 WL 4126264, at *14 (D.N.J. Sept. 2, 2008) (denying motion to dismiss implied warranty claim because "whether a vast majority of

Ford E350s did what they were supposed to do for as long as they were supposed to do it – i.e., whether they were fit for their ordinary purpose – remains an open question which this Court cannot determine on a motion to dismiss, especially where [Plaintiff] does not concede merchantability").

Moreover, Plaintiffs allege that the vacuums that they purchased did not conform to the affirmations made on the box regarding horsepower and tank capacity.  (See Doc. No. 97 ¶¶ 7-9, 18, 24, 37, 46.)  Accordingly, Plaintiffs have alleged facts sufficient to support a finding that the vacuums did not "conform to the promises or affirmations of fact made on the container," and thus were not merchantable under U.C.C. § 2-314(2).  Because Plaintiffs allege the vacuums failed to function properly, failed to conform to the representations on the container, and therefore failed to pass without objection in the trade, the Court will deny the motion to dismiss the implied warranty claims of named Plaintiffs Reid and Harbut.  However, because the same notice requirements apply here as to the express warranty claim, McMichael's implied warranty claim will be dismissed for failure to allege that he provided proper notice.

### F.    Magnuson-Moss Warranty Act

Defendants also move to dismiss Plaintiffs' implied and express warranty claims under the Magnuson-Moss Warranty Act (MMWA).  Under the MMWA, 15 U.S.C. § 2310(d)(1), "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."  Regarding warranty claims under the MMWA, "this court's disposition of the state law warranty claims determines

the disposition of the Magnuson-Moss Act claims."[12]  Clemens v. DaimlerChrysler Corp., 534

F.3d 1017, 1022 (9th Cir. 2008); see also Cooper v. Samsung Elecs. Am., Inc., 374 Fed. App'x

250, 254 (3d Cir. 2010) ("In the instant case, [plaintiff's] Magnuson-Moss claim is based upon

his state law claims of breach of express and implied warranties. Since the District Court

correctly dismissed both of those claims, [plaintiff's] Magnuson-Moss claim was also properly

dismissed.").  Thus, because the Court will allow named Plaintiffs Harbut and Reid's state law-

based warranty claims to go forward, their MMWA warranty claims must similarly proceed.

However, because Plaintiff McMichael failed to properly plead a breach of warranty claim under

state law, he cannot maintain his MMWA warranty claim, and it will be dismissed.[13]

Plaintiffs additionally argue that their MMWA express warranty claims are not based on

state law, but rather constitute an independent MMWA express written warranty violation.

(Doc. No. 107 at 32-33.)  The MMWA defines a written warranty as:

> any written affirmation of fact or written promise made in connection
> with the sale of a consumer product by a supplier to a buyer which
> relates to the nature of the material or workmanship and affirms or
> promises that such material or workmanship is defect free or will
> meet a specified level of performance over a specified period of

---

[12]  Defendants do not dispute this point, and acknowledge that "except insofar as Plaintiffs can plead an independent MMWA claim based on a warranty as specifically defined in 15 U.S.C. 2301, their MMWA claims rise or fall with their state law implied and express warranty claims."  (Doc. No. 109 at 22 n.14.)

[13]  Although this Court held that pre-litigation notice was not necessarily required under the MMWA (Doc. No. 94 at 8-9), Plaintiffs' MMWA warranty claims survive or fail with the state law warranty claims, and, as discussed in Section III.D.2, McMichael has not alleged a valid state law breach of warranty claim.  See Clemens, 534 F.3d at 1022; see also Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004) ("The [MMWA] . . .  allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action.")

time.

15 U.S.C.A. § 2301(6)(A) (emphasis added).  Defendants argue that Plaintiffs have not alleged

beyond conclusory labels that Defendants promised a defect-free product or a certain level of

performance over a specific time period.  (Doc. No. 103 at 27-29.)  Plaintiffs argue that they

have alleged independent MMWA express warranty claims based on (1) the failure of the

vacuums to meet the power and capacity representations (Doc. No. 107 at 31), and (2) a three-

year written home use warranty included on the machines' parts list (id. at 32).

　　　To the extent Plaintiffs' independent MMWA express warranty claim is premised on the

allegedly fraudulent representations regarding horsepower and tank capacity, the Court finds that

Plaintiffs do not state a claim.  The alleged misrepresentations regarding peak horsepower and

tank capacity constitute descriptions of the product, not promises that the product will be "defect

free" under the MMWA.  See Jones v. ConAgra Foods, Inc., 912 F. Supp. 2d 889, 903-04 (N.D.

Cal. 2012) (dismissing MMWA claim and finding that mere product descriptions do not

constitute a promise that a product is "defect free").

　　　Additionally, although Plaintiffs state in their complaint that "Defendants have . . . made

written affirmations of fact or promises that the vacuums would meet a specified level of

performance over a specified period of time" (Doc. No. 97 ¶ 33), the SCAC does not specify any

such promises or warranties and a court "need not credit a complaint's 'bald assertions' or 'legal

conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist. 132 F.3d

902, 906 (3d Cir. 1997).  However, in their brief in opposition to the motion to dismiss, Plaintiffs

now argue that their MMWA express warranty claim is premised on a three-year written

warranty allegedly included with the machines, a scan of which they included as an exhibit

attached to their brief in opposition to the motion to dismiss as Exhibit A.  (Doc No. 107 at 32,

53.)  Critically, Plaintiffs did not refer to this alleged three-year written warranty anywhere in the

SCAC and did not attach this warranty as an exhibit to the SCAC.  Plaintiffs cannot amend their

complaint through a brief in opposition to a motion to dismiss.  See Car Carriers, Inc. v. Ford

Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1984) ("It is

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

dismiss.").  Because Plaintiffs have not alleged in their SCAC beyond conclusory averments that

Defendants made a written affirmation of fact or promise that the vacuums are "defect free" or

"will meet a specified level of performance over a specified period of time," the Court finds

Plaintiffs have not alleged an independent MMWA claim based on an express written warranty.

Accordingly, although Plaintiffs Harbut and Reid's MMWA claims may proceed based on the

valid underlying state law causes of action, Plaintiff McMichael's MMWA claim will be

dismissed.

### G.  Consumer fraud claims

Lastly, Defendants move to dismiss Plaintiffs' claims under state consumer protection

statutes for deceptive and unfair trade practices on the grounds that (1) no reasonable consumer

could have been misled by the representations because Plaintiffs' expectations were

unreasonable as a matter of law, (2) Plaintiffs do not allege actual injury, and (3) to the extent

Plaintiffs allege unfair business practices in violation of state consumer fraud statutes, Plaintiffs

do not actually allege unfair conduct by Defendants.  (Doc. No. 103 at 38-42.)  Regarding

Defendants' second argument, the Court has already found Plaintiffs have alleged actual injury.[14]
See supra Part III.C.  Thus, the only arguments the Court still needs to address are whether
Plaintiffs' expectations were unreasonable as a matter of law, and whether Plaintiffs allege unfair
business practices by Defendants.

First, the Court will address Defendants' contention that the claims should be dismissed
because no reasonable consumer could have been misled by the alleged misrepresentations.
Under the reasonable consumer standard, "if no reasonable consumer would be misled, then the
allegations may also be dismissed as a matter of law." Haskell v. Time, Inc., 857 F. Supp. 1392,
1399 (E.D. Cal. 1994).  The crux of Defendants' argument is that the horsepower expected by
Plaintiffs is impossible in actual use, and therefore "reasonable consumers could not reasonably
be deceived into believing that 'peak horsepower' means they were purchasing a vacuum that
produces 'operational horsepower' at levels that do not exist."  (Doc. No. 103 at 39-40.)
Additionally, Defendants contend that "peak horsepower" is an essentially meaningless term to a
reasonable consumer.  (Id. at 40 n.12)

In the Court's order dismissing the original complaint, it noted that because it was
dismissing the complaint due to a lack of specificity in the pleading, it declined to address
Defendants' argument that Plaintiffs' expectations were unreasonable as a matter of law.  (Doc.
No. 94 at 17.)  However, the Court cautioned in its order that "only in the clearest of cases is it
proper for a court to make a determination that a reasonable consumer is not likely to be misled

---

[14] See also Ivie v. Kraft Foods Global, Inc., 961 F. Supp. 2d 1033, 1045-46 (N.D. Cal.
2013) ("The alleged purchase of a product that plaintiff would not otherwise have purchased but
for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's
unfair competition claims.").

at the motion to dismiss stage."[15]  (Id.)  Here, Defendants' argument presupposes a rather heightened awareness by consumers of what constitutes achievable horsepower levels for a vacuum.  Consistent with its warning in the initial order, the Court finds that it cannot conclude at this stage that a reasonable consumer would not understand the term "peak horsepower" to mean horsepower achieved in actual use of the vacuum.  Accordingly, because this is not the rare occasion in which the Court can resolve this question at the motion to dismiss stage, it will not dismiss the consumer fraud claims on the basis that no reasonable consumer would be misled by Defendants' alleged misrepresentations.

Further, the Court disagrees with Defendants' contention that Plaintiffs do not allege unfair behavior, which Defendants define as conduct that "offends public policy; is immoral, unethical, oppressive or unscrupulous; or causes substantial injury."  (Doc. No. 103 at 42.) Essentially, Defendants assert that the SCAC's allegations cannot amount to unfair conduct, because Plaintiffs "do not even allege that Shop-Vac's peak horsepower and tank size representations are untrue."  (Id.)  In other words, Defendants argue that they accurately disclosed the peak horsepower and tank size of their vacuums.  (Id.)  As discussed in Section III.B.1, in ruling on Defendants' motion to dismiss, the Court must accept Plaintiffs' factual allegations as true, and the Court finds that Plaintiffs have adequately alleged that the machines

---

[15] See Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 252 (3d Cir. 2011) (holding that no reasonable consumer could be misled as to the origin of Bacardi's "Havana Club" rum, where the bottle prominently features the phrase "Puerto Rican Rum"); cf. F.T.C. v. Cantkier, 767 F. Supp. 2d 147, 159 (D.D.C. 2011) ("Whether or not Lady's ads and websites, taken in their full context, were 'likely to mislead consumers acting reasonably under the circumstances' is ultimately a factual question that cannot be resolved at the motion to dismiss stage.").

do not comport with the horsepower and tank capacity representations.  Because the factual issue of whether Defendants accurately disclosed the horsepower and tank size of their vacuums is not properly determined at this stage, the Court will deny the motion to dismiss Plaintiffs' consumer fraud claims on this ground as well.

**IV.   CONCLUSION**

The Court will deny Defendants' motion to dismiss the breach of express and implied warranty claims brought by named Plaintiffs Hubert and Reid.  However, the Court finds the third named Plaintiff, McMichael, has not adequately alleged actionable breach of express and implied warranty claims, and will dismiss his warranty claims.  Similarly, while the Court will not dismiss the Magnuson-Moss Warranty Act claims brought by Plaintiffs Hubert and Reid, to the extent Plaintiff McMichael brings a MMWA claim, it will be dismissed.  Lastly, the Court will not dismiss any of the consumer fraud claims.  An order consistent with this memorandum follows.