# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380 |
| | Civil Action No. 4:12-md-02380-YK |
| | (Chief Judge Yvette Kane) |
| THIS DOCUMENT RELATES TO: All Cases | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT,
CERTIFICATION OF SETTLEMENT CLASS, AND
DISSEMINATION OF CLASS NOTICE**

Dated: April 1, 2016

**DILWORTH PAXSON LLP**
Elizabeth Goldstein
Penn National Insurance Plaza
2 North 2nd Street, Suite 1101
Harrisburg, Pennsylvania 17101
Telephone:    (717) 236-4812
Facsimile:    (717) 236-7811
Email:    egoldstein@dilworthlaw.com

*Interim Liaison Counsel*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY..................3

     A.    The Alleged Misrepresentations and the Claims Asserted in this Action. ....................................................................................................3

          1.    The Multidistrict Litigation............................................................5

          2.    The New Jersey Action...................................................................6

     B.    Investigation and Discovery Relating to the Alleged Misrepresentations....................................................................................8

     C.    The Mediation Before The Honorable Edward A. Infante (Ret.) and Subsequent Settlement Negotiations. ...........................................10

III.  MATERIAL TERMS OF THE SETTLEMENT .........................................11

     A.    Proposed Nationwide Settlement Class ...............................................11

     B.    Benefits to Settlement Class Members .................................................11

     C.    Release of Claims.................................................................................12

     D.    Class Notice..........................................................................................13

     E.    Costs, Fees and Representative Awards................................................14

IV.  ARGUMENT..............................................................................................14

     A.    Preliminary Approval of the Proposed Settlement Is Appropriate .....14

          1.    The Standard for Preliminary Approval of Class Settlement...................................................................................14

          2.    The Settlement is Procedurally Fair and Not a Product of Collusion..............................................................................16

          3.    The Proposed Settlement Contains No Obvious Deficiencies and Falls Within the Range of Possible Approval....................18

B.     The Settlement Class Meets Rule 23 Requirements for Class Certification ........................................................................21

    1.    Numerosity is Satisfied ............................................21

    2.    Commonality is Satisfied .........................................22

    3.    Typicality is Satisfied ..............................................23

    4.    Adequacy of Representation is Satisfied ..................25

    5.    Common Questions of Law and Fact Predominate ..................26

    6.    Class Adjudication is Superior to Other Methods ...................28

C.     Plaintiffs' Counsel Should Be Appointed As Class Counsel..............29

D.     The Proposed Notices and Notice Program Satisfy Rule 23 .............30

E.     A Final Fairness Hearing Should Be Scheduled. ................................32

V.     CONCLUSION...........................................................................32

# TABLE OF AUTHORITIES

Case                                                                                    Page(s)

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................27

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013)............................................................................................26

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) .......................................................................................24

*Barr v. Harrah's Entm't, Inc.*,
   242 F.R.D. 287 (D.N.J. 2007).................................................................................23

*City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*,
   Civ. No. 12-5275, 2015 U.S. Dist. LEXIS 115287
   (D.N.J. Aug. 31, 2015)...........................................................................................23

*Clark v. Bally's Park Place, Inc.*,
   298 F.R.D. 188 (D.N.J. 2014).................................................................................27

*Craig v. Rite Aid Corp.*,
   No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658
   (M.D. Pa. Jan. 7, 2013) ..........................................................................................20

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ...................................................................................14

*Gates v. Rohm and Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008)..............................................................................17

*Harry M. v. Pa. Dep't of Pub. Welfare*,
   No. 10-cv-922, 2013 U.S. Dist. LEXIS 48758
   (M.D. Pa. Apr. 4, 2013) ..........................................................................................15

*Hegab v. Family Dollar Stores, Inc.*,
   Civ. No. 11-1206 (CCC), 2015 U.S. Dist. LEXIS 28570
   (D.N.J. Mar. 9, 2015)..............................................................................................19

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)............................................................................15

*In re IKON Office Solutions Secs. Litig.*,
209 F.R.D. 94 (E.D. Pa. 2002)..............................................................................26

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003)....................................................................16

*Lachance v. Harrington*,
965 F. Supp. 630 (E.D. Pa. 1997).........................................................................30

*In re LifeUSA Holding Inc.*,
242 F.3d 136 (3d Cir. 2001) .................................................................................18

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .................................................................................24

*Mehling v. New York Life Ins. Co.*,
246 F.R.D. 467 (E.D. Pa. 2007)......................................................................15, 30

*In re Mercedes-Benz Antitrust Litig.*,
213 F.R.D. 180 (D.N.J. 2003)...............................................................................28

*In re Metropolitan Life Ins. Co. Sales Practices Litig.*,
MDL No. 1091, 1999 U.S. Dist. LEXIS 22688
(W.D. Pa. Dec. 28, 1999)......................................................................................18

*Montgomery v. Beneficial Consumer Disc. Co.*,
No. 04-CV-2114, 2005 U.S. Dist. LEXIS 3249
(E.D. Pa. Mar. 2, 2005).........................................................................................30

*Moskowitz v. Lopp*,
128 F.R.D. 624 (E.D. Pa. 1989)............................................................................21

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) .................................................................................25

*In re NFL Players' Concussion Injury Litig.*,
301 F.R.D. 191 (E.D. Pa. 2014)............................................................................21

*In re Philips/Magnavox TV Litig.*,
   Civ. No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287
   (D.N.J. May 14, 2012) ........................................................................16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ...............................................................15

*Rivera v. Leb. Sch. Dist.*,
   No. 11-cv-147, 2013 U.S. Dist. LEXIS 32021
   (M.D. Pa. Mar. 6, 2013)......................................................................16

*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372 (3d Cir. 2013) ...............................................................22

*Rossi v. P&G*,
   Civ. No. 11-7238 (JLL), 2013 U.S. Dist. LEXIS 143180
   (D.N.J. Oct. 3, 2013).....................................................................24, 27

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ...............................................................24

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ...............................................................22

*Sullivan v DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .........................................................20, 21

*In re ViroPharma Inc. Sec. Litig.*,
   No. 12-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ...............17

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).................................................................22, 23

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .......................................................14, 23, 28

## Other Authorities

Fed. R. Civ. P. 23 ................................................. 21, 25, 26, 28, 29, 30

## I.     **INTRODUCTION**

Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino and Scott Giannetti and Defendants Shop-Vac Corporation ("Shop-Vac") and Lowe's Home Centers, LLC ("Lowe's") (collectively, the "Parties") have reached through the guidance of a mediator a proposed Settlement of this action and a parallel New Jersey Action ("Lawsuits") and  respectfully present the terms of the proposed Settlement to the Court.  By this motion, the Parties seek preliminary approval of their Settlement Agreement, preliminary certification of a nationwide Settlement Class, and approval of the proposed notice plan to disseminate notice to members of the Settlement Class.[1]

The Lawsuits allege that Defendants overstate the peak horsepower ratings of Shop-Vac's Vacuums.[2]  Plaintiffs also allege that the canister size measurement, as represented in Defendants' marketing, is misleading.

This litigation has been hard fought by both sides.  After significant motion practice, propounding and responding to extensive written discovery, review of 22,000 pages of documents[3] and depositions of each named Plaintiff and corporate

---

[1] The defined terms in this motion shall have the same meaning ascribed to them in the Settlement Agreement.

[2] "Vacuums" means Shop-Vac brand wet/dry vacuums sold in the United States and its territories during the Class Period.

[3] While there were substantially more documents assembled by Defendants, the parties negotiated targeted search terms that were used to cull potentially

designees of Shop-Vac, expert analysis of the technical issues involved in the case as well as the exchange of expert opinions and rebuttal opinions, extensive litigation in the parallel New Jersey Action (which included all of the above, plus certification of a state wide class, denial of multiple dispositive motions, and preparation for a scheduled class-wide trial that was averted only after the parties advised the state court about the potential resolution of the present matter), an all-day mediation session before the Honorable Edward A. Infante (Ret.), and lengthy negotiations among the Parties with the direction of Judge Infante (Ret.) post-mediation, the Parties reached the proposed Settlement on all substantive terms for the Settlement Class. It was only after the Settlement documents and procedural details were principally negotiated and prepared that the Parties were presented with a "mediator's proposal" by Judge Infante (Ret.) for resolution of the issue concerning attorneys' fee, which was accepted by both sides.

As detailed below, the Settlement is fair, reasonable, and adequate, achieves meaningful relief for the Settlement Class, and should be preliminarily approved by the Court. Indeed, if the Settlement is approved, Shop-Vac will extend its manufacturer's warranty on the motors of the Vacuums for the longer of: (a) 24 months from the date a Vacuum's current manufacturer's warranty would expire

responsive documents for review and production. In addition to the 22,000 pages of documents that were produced to Plaintiffs, Defendants separately reviewed 66,000 pages of documents as a result of the negotiated search terms and determined those documents to be non-responsive.

by its own terms, or (b) for those whose current manufacturer's warranty has expired by its own terms prior to the Effective Date, for a period of 24 months after the Effective Date of the Settlement. *See* Section IV.A.1 of the Settlement Agreement. Moreover, Shop-Vac has agreed to alter the manner in which the Vacuums' peak horsepower and tank size ratings are marketed and labeled.

Lastly, no assertion could be made that the proposed Settlement is the result of collusion, as the substantive terms of the Settlement were negotiated at arm's length and the proposed attorneys' fees were agreed to as a result of the mediator's proposal only after – months after – the substantive relief to the class was agreed upon and reported to the Court. As a result of these efforts, the Parties are fully informed of the merits of the claims and defenses in this action and the Settlement. Accordingly, the Parties respectfully request that the Court: (1) preliminarily approve the proposed Settlement; (2) preliminarily certify the Settlement Class for purposes of settlement only; (3) approve the form and manner of notice to inform the Settlement Class of the Settlement and right to object or opt out; and (4) set a hearing date for consideration of final approval of the Settlement.

## II.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

### A.   **The Alleged Misrepresentations and the Claims Asserted in this Action.**

This consolidated action consists of nine cases in which numerous plaintiffs allege that Shop-Vac misled consumers by representing that the Vacuums are

capable of reaching a stated peak horsepower that is impossible to attain in actual use by consumers.   The action also includes claims that Defendants make misleading representations about the tank capacities of the Vacuums.

Since at least January 1, 2006, Shop-Vac manufactured, advertised for sale, sold and distributed the Vacuums, which are designed to remove solid debris and liquid through the use of suction generated by an electric motor.  Since these Vacuums are designed to suction materials heavier than that of a conventional household vacuum, Plaintiffs allege that the power level of the device is among the most important characteristics to a consumer, along with price and tank capacity.

Shop-Vac markets the Vacuums with specific "peak horsepower" ratings generally ranging from 1 to 6.5 "peak horsepower."  These "peak horsepower" ratings are featured on the Vacuums, their packaging and in marketing materials. Plaintiffs' expert performed testing in 2011, which found that the Vacuums were incapable of operating at their represented "peak horsepower," and produced a range of only 17% to 51% of the advertised "peak horsepower" when measured at the motor and a range between a negligible percentage and 10.3% when measuring the air suction power of the Vacuums.  Further, according to Plaintiffs' technical expert's testing, the Vacuums stop working when the safety cut-off features are activated upon the tanks reaching between 47% and 83% of the stated capacity in the tested vacuums.

### 1.    The Multidistrict Litigation

Multiple nationwide class actions were filed in federal district courts in California, New York, New Jersey and Pennsylvania.  Plaintiff McMichael filed the first complaint in the District of New Jersey on February 6, 2012, Civil Action No. 2:12-cv-00726.  Since that time, eleven additional cases were commenced in six district courts.[4]

On May 4, 2012, Defendants filed a motion with the Judicial Panel on Multidistrict Litigation (the "Panel") for centralization of the related cases in the United States District Court for the District of New Jersey.  On May 22, 2012, counsel for *Smallwood* and *Reid* voluntarily dismissed the cases in an effort to self-organize and advance the litigation in the District of New Jersey.  On July 7, 2012, Defendants amended their motion to seek centralization of the related cases in the Middle District of Pennsylvania.  On August 16, 2012, the Panel transferred then-pending cases to this Court for coordination of pretrial proceedings.  By order

---

[4] These actions are: *Smallwood v. Shop-Vac Corp.*, No. 2:12-cv-02926 (C.D. Cal. filed on May 22, 2012); *Reid v. Shop-Vac Corp.*, No. 2:12-cv-03848 (C.D. Cal. filed on May 23, 2012); *Scott v. Shop-Vac Corp.*, No. 2:12-cv-02504 (D.N.J. filed on Apr. 27, 2012); *Harbut v. Shop-Vac Corp.*, No. 2:12-cv-01474 (D.N.J. filed on Mar. 9, 2012); *Selizhuk v. Shop-Vac Corp.*, No. 2:12-cv-03848 (E.D.N.Y. filed on May 22, 2012); *DiMare v. Shop-Vac Corp.*, No. 4:12-cv-01019 (M.D. Pa. filed on May 30, 2012); *Blaylock v. Shop-Vac Corp.*, No. 4:12-cv-01020 (M.D. Pa. filed on May 30, 2012); *Philips v. Shop-Vac Corp.*, No. 2:12-cv-3783 (D.N.J. filed on June 21, 2012); *Lavespere v. Shop-Vac Corp.*, No. 1:12-cv-01960 (W.D. La. filed on July 19, 2012); *Kates v. Shop-Vac Corp.*, No. 8:12-cv-01181 (C.D. Cal. filed on July 19, 2012);and *Johnson v. Shop-Vac Corp.*, No. 2:12-cv-02121 (E.D. La. filed on Aug. 20, 2012).

dated January 17, 2013, the Court appointed Plaintiffs' Counsel as interim class counsel.

Plaintiffs McMichael, Harbut and Reid filed a consolidated class action complaint (the "Consolidated Complaint") against Shop-Vac and Lowe's on February 19, 2013.  In the Consolidated Complaint, Plaintiffs assert claims against Defendants on behalf of a nationwide class (except New Jersey) for breach of express warranty, breach of implied warranty, injunctive and declaratory relief, and for violations of the federal Magnuson-Moss Warranty Act and consumer fraud laws of 49 states.

On Defendants' motion, this Court dismissed all of Plaintiffs' claims, with leave to amend on August 9, 2013.   Thereafter, Plaintiffs filed a second Consolidated Complaint on September 12, 2013.  By order dated July 17, 2014, the Court denied Defendants' motion to dismiss with respect to: 1) Plaintiff Harbut and Reid's express and implied warranties claims, 2) Plaintiff Harbut and Reid's claims alleging violations of the Magnuson-Moss Warranty Act, and 3) Plaintiffs' claims alleging violations of state consumer protection laws.  All other claims were dismissed with prejudice.

### 2.    The New Jersey Action

An action on behalf of a proposed New Jersey class was initiated in the Superior Court of New Jersey, Law Division, Bergen County on February 10,

2012, captioned *Palomino v. Shop-Vac Corp.*, No. BER-L-1399-12 (the "New Jersey Action"), which is based on substantially the same facts as the federal cases. The complaint in the New Jersey Action alleges breach of warranty and violation of the New Jersey Consumer Fraud Act against Shop-Vac only. The New Jersey Action survived a threshold motion to stay in favor of the multidistrict litigation, a motion for a more definite statement as to both claims, a motion to dismiss and multiple motions for summary judgment. Fact and expert discovery, involving the same experts for the Parties as in the present matter were completed.

By order dated February 6, 2015, the New Jersey state court certified a class of consumers who are New Jersey citizens who purchased Shop-Vac brand wet/dry vacuums in New Jersey between February 1, 2006 and May 8, 2015. Shop-Vac sought leave to appeal the class certification to the Appellate Division of the New Jersey Superior Court, but the Appellate Division denied interlocutory review.

The state court adjourned a September 1, 2015 trial date to allow the Parties to engage in mediation of the New Jersey Action and the present matter. On October 9, 2015, in light of the Settlement, the state court stayed the New Jersey Action pending the completion of the federal proceedings. Other than the consolidated action and the parallel New Jersey Action, the Parties are unaware of any other case pending in any state or federal court concerning the same subject matter as the Consolidated Complaint which would be affected by this Settlement.

Defendants deny all of the allegations in the Lawsuits and assert numerous defenses to each of the claims alleged in the Lawsuits.  Defendants assert that peak horsepower, which is used by Defendants, and operational horsepower, which is not, are different measures of power and, therefore, no consumers have been deceived.  Defendants also assert that tank size representations were not deceptive because tank sizes that are represented are possible and Defendants provides visible disclosures that tank capacity varies depending on use.

### B. Investigation and Discovery Relating to the Alleged Misrepresentations

Both before and after filing their actions, Plaintiffs' expert conducted tests to determine the peak horsepower of the Vacuums in actual operation, using independent testing methods as well as the same type of commercial dynamometry equipment that Shop-Vac utilizes in setting the peak horsepower ratings. Plaintiffs' expert concluded that based on the tests he conducted that the Vacuums were incapable of reaching even half of their advertised peak horsepower. Similarly, Plaintiffs' expert concluded through his testing that an automatic shutoff feature causes the Vacuums to stop working when the tanks reach between 47% and 83% of stated capacity.

Plaintiffs served their first set of interrogatories and document requests on Shop-Vac on May 14, 2013.[5]  Defendants served their interrogatories and requests for production on October 31, 2014.  Plaintiffs subsequently served their first set of interrogatories and documents on Lowe's and their second set of interrogatories and document requests on Shop-Vac on January 20, 2015.  In connection with these requests, the Parties produced documents on a rolling basis, which was substantially completed as of March 2015.  In total, Shop-Vac produced more than 22,000 pages of documents, after performing limiting searches to pare down 66,000 pages of non-responsive documents much of which contained complicated technical material and data.

Plaintiffs' Counsel also deposed several key corporate personnel of Shop-Vac, including Scott Smith, the Director of Product Evaluation, and Larry Tempesco, the Senior Vice President for Sales and Marketing on March 11 and 12, 2015, respectively.  Plaintiffs' Counsel also deposed Defendants' expert, John Loud, on February 13, 2015.  Defendants deposed Plaintiffs Reid, McMichael, and Harbut on February 9, February 13, and March 13, 2015, respectively.  Defendants also deposed Plaintiffs' principal expert on electrical engineering, Glen Stevick, on

---

[5] The parties in the New Jersey Action served multiple rounds of paper discovery in that case that were separate from the discovery served in the present matter.  For purposes of this brief, however, Plaintiffs will focus on the discovery in the present matter only.

February 5, 2015 and April 27, 2015.  As a result of this discovery, the Parties are fully informed about the strengths and weaknesses of their claims and defenses.

### C.     The Mediation Before The Honorable Edward A. Infante (Ret.) and Subsequent Settlement Negotiations.

The Parties conducted extensive discovery and Plaintiffs were prepared to move for class certification, but the Court granted the Parties' joint request to adjourn all litigation dates to allow the Parties to mediate before the Hon. Edward A. Infante, retired Chief Magistrate Judge of the United States District Court for the Northern District of California.  The Parties provided lengthy and detailed mediation statements to Judge Infante (Ret.) in advance of the scheduled mediation.  On August 13, 2015, the Parties participated in an all-day mediation with Judge Infante (Ret.).  Although the Parties made progress on the substantive terms of the Settlement at the mediation, no agreement was reached.

Thereafter, with the involvement of Judge Infante (Ret.), the Parties continued to negotiate the terms of the proposed Settlement, reaching a settlement in principle on material relief to the proposed Settlement Class on September 11, 2015.  On October 1, 2015, all pending dates in the case management order were vacated in anticipation of this motion.  On March 14, 2016, the Court directed the Parties file a joint motion for preliminary approval of the Settlement on or before April 1, 2016.  The Parties have finalized the Settlement Agreement.

III.   **MATERIAL TERMS OF THE SETTLEMENT**

A.      **Proposed Nationwide Settlement Class**

The proposed Settlement Class consists of each person in the United States and its territories who, from January 1, 2006 to the date of entry of the Preliminary Approval Order ("Class Period"), either (1) purchased a Vacuum, or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means. Excluded from the Settlement Class is any person or entity who purchased or acquired a Vacuum for the purpose of resale, all judges to whom the lawsuits are assigned and the officers, directors and counsel of record for Defendants, and all employees of Defendants. *See* Section I.W of the Settlement Agreement.

B.      **Benefits to Settlement Class Members**

The valuable benefits made available pursuant to the Settlement Agreement, as well as the alterations to Defendants' marketing of the Vacuums, squarely address the issues raised in this litigation.

Plaintiffs' principal allegation is that the electric motors of the Vacuums do not have the peak horsepower ratings ascribed to them by Defendants, which Plaintiffs allege, and their expert opined after conducting tests of the Vacuums in actual operation, and could result in a shorter expected service life.  If the Settlement is approved, Shop-Vac will extend the manufacturer's warranty on the motors of the Vacuums for the longer of: (a) 24 months from the date a Vacuum's current manufacturer's warranty would expire by its own terms, or (b) for those

11

whose current manufacturer's warranty has expired by its own terms prior to the Effective Date, 24 months after the Effective Date of the Settlement.  *See* Section IV.A.1 of the Settlement Agreement.

Moreover, Shop-Vac has agreed to alter the manner in which the Vacuums are marketed and labeled.  The Settlement requires Shop-Vac to provide information on marketing materials that disclose the issues that Plaintiffs maintained were incorrectly represented.  Specifically, the Settlement requires that Shop-Vac refer to "Peak Horsepower" of the Vacuums or their motors in a manner that is materially consistent with the following statement:

> "Peak Horsepower" (PHP) is a term used in the wet-dry vacuum industry for consumer comparison purposes.  It does not denote the operational horsepower of a wet-dry vacuum but rather the horsepower output of a motor, including the motor's inertial contribution, achieved in laboratory testing.  In actual use, Shop-Vac's motors do not operate at the peak horsepower shown.

*See* Section IV.A.2 of the Settlement Agreement. Shop-Vac further agreed to modify the existing tank gallon legend of the Vacuums to read: "Tank capacity refers to actual tank volume, and does not reflect capacity available during operation." *See* Section IV.A.3 of the Settlement Agreement.

### C.    Release of Claims

In exchange for the foregoing relief, members of Settlement Class who do not opt out of the Settlement will release Defendants from all claims asserted in this action and the New Jersey Action, and any claims that relate to any of the

alleged inadequacies, misstatements, or issues of or associated with the Vacuums alleged in the consolidated action and New Jersey Action or that could have been alleged in these actions. *See* Section IX of the Settlement Agreement.

**D.    Class Notice**

The Settlement Agreement contains a comprehensive notice plan to be paid for by Defendants and administered by Epiq Systems, an experienced Settlement Administrator approved by all Parties. The Settlement Administrator will cause the Settlement Notice, in the form approved by this Court, to be sent directly through a combination of postal mail and electronic mail to members of the Settlement Class who can be reasonably identified in Defendants' records. *See* Section V.B. of the Settlement Agreement. The proposed plan will also include publishing in *People* magazine and *Family Handyman*, as well as internet banner notifications on *Conversant Ad Network* and Facebook. *See* Section V.B. of the Settlement Agreement and Ex. 4 to the Preliminary Approval Order.

If the Settlement and notice plan are preliminarily approved, the Settlement Administrator will establish and maintain the Settlement Website, www.shopvacphpsettlement.com, which Settlement Class Members can visit to read or request additional information regarding the Settlement. A hyperlink to the Settlement Website will be placed on the Support page of the Shop-Vac USA website. *See* Sections I.Z, IV.B, and V.B. of the Settlement Agreement.

### E.     Costs, Fees and Representative Awards

Defendants have agreed to bear the costs of providing notice and administration of the Settlement, including processing requests for exclusion. As a matter negotiated long after the relief to the Settlement Class was agreed to, Plaintiffs' Counsel will seek court approval of: 1) attorneys' fees and costs in an amount no more than $4,250,000 and 2) awards for named Plaintiffs not to exceed $5,000 each, to be paid from the attorneys' fees awarded to Plaintiffs' Counsel by the Court. *See id.* Section VIII.A. The obligations to pay court-approved attorneys' fees, expenses and incentive awards will not reduce or otherwise have any effect on the benefits the Settlement Class will receive. *See id.* Section V.III.F.

## IV.  __ARGUMENT__

### A.     Preliminary Approval of the Proposed Settlement Is Appropriate

#### 1.     The Standard for Preliminary Approval of Class Settlement

Courts encourage, and public policy favors, compromise and settlement of class actions to conserve judicial and private resources. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 174

14

(E.D. Pa. 2000) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").  It is within the court's sound discretion to approve a proposed class action settlement.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 329 (3d Cir. 1998) (concluding that the district court's approval of the proposed class settlement was "within its sound discretion").

Preliminary approval is the first step in a class settlement approval process. *See Harry M. v. Pa. Dep't of Pub. Welfare*, No. 10-cv-922, 2013 U.S. Dist. LEXIS 48758, at *3 (M.D. Pa. Apr. 4, 2013) (stating that a review of a proposed class settlement is a "two-step process" that includes (1) preliminary approval and (2) a subsequent fairness hearing).  The purpose of the preliminary approval process is not to determine ultimately if the settlement is fair, reasonable and adequate. *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) ("[T]he Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies . . .") (internal quotes omitted).  Instead, the court should grant preliminary approval of the proposed settlement where, as here, "the agreement appears to be the product of 'serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the

class and falls within the range of possible approval.'" *Rivera v. Leb. Sch. Dist.*,
No. 11-cv-147, 2013 U.S. Dist. LEXIS 32021, at *3 (M.D. Pa. Mar. 6, 2013).

### 2. The Settlement is Procedurally Fair and Not a Product of Collusion

The Settlement more than satisfies the criteria for preliminary approval; it is
the product of extensive, arm's-length bargaining conducted by experienced
counsel after significant discovery and trial preparation. *See*, *e.g.*, *In re Linerboard
Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of
correctness is said to attach to a class settlement reached in arms-length
negotiations between experienced, capable counsel after meaningful discovery").

Counsel for the Parties have conducted a thorough investigation of, and are
aware of, the factual contentions of their clients and the legal risks associated with
continuing to pursue this litigation.  In this matter and the parallel New Jersey
Action, the Parties engaged in more than three years of discovery related to the
alleged misrepresentations, Plaintiffs' claims, and Defendants' defenses. *See In re
Philips/Magnavox TV Litig.*, Civ. No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS
67287, at *30-31 (D.N.J. May 14, 2012) (finding that class counsel had a thorough
appreciation of the merits of the case where the parties have substantially
completed discovery, which included physical inspection of "Plaintiffs'
televisions, review of hundreds of thousands of pages of documents, and multiple
depositions.").  Plaintiffs' Counsel propounded several sets of interrogatories,

requests for documents and admissions, and took and defended multiple depositions, including those of experts. Defendants produced over 22,000 pages of documents, much of it containing complicated technical material and data. Plaintiffs' Counsel reviewed all of the documents and data produced by Defendants. Moreover, Plaintiffs' Counsel consulted with several experts regarding the impact of this discovery. Therefore, Plaintiffs and their counsel "conducted sufficient discovery to estimate the merits and value of the Plaintiffs' case . . . and reach a reasonable settlement." *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008).

The Parties, after significant discovery and motion practice, engaged in extensive good faith negotiations that included in-person and telephonic settlement conferences. These extensive negotiations culminated in an all-day mediation conducted by Judge Infante (Ret.), who is known for adjudicating and mediating class actions. Following the mediation, the Parties engaged in further negotiations with the assistance of Judge Infante (Ret.) to reach final agreement on the terms of the Settlement. *See In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at *32 (E.D. Pa. Jan. 25, 2016) (finding that the settlement results from arm's-length negotiations after the parties fully briefed the main issues in the case, conducted merits-based discovery, and reached the terms of settlement with the assistance of an experienced mediator).

Accordingly, the Court should preliminarily approve the Settlement because it was the product of arm's-length negotiations over a seven-month period by experienced counsel after extensive motion practice and discovery. *See In re Metropolitan Life Ins. Co. Sales Practices Litig.*, MDL No. 1091, 1999 U.S. Dist. LEXIS 22688, at *76 (W.D. Pa. Dec. 28, 1999) (approving a settlement that was, "negotiated at arms-length over a ten-month period by highly experienced class action counsel on both sides, following several years of voluminous, hard fought and probing discovery and motion practice, and that both sides had a full appreciation of the risks of continuing this action to trial").

### 3. The Proposed Settlement Contains No Obvious Deficiencies and Falls Within the Range of Possible Approval

While Plaintiffs believe their claims have merit, they recognize that they face significant legal, factual and procedural obstacles to recovery. Defendants continue to dispute Plaintiffs' allegations in the lawsuits and deny any liability to Plaintiffs or to members of the Settlement Class. Despite Plaintiffs' confidence in the claims and ability to certify a nationwide class, a favorable outcome is not assured. *See e.g.*, *In re LifeUSA Holding Inc.*, 242 F.3d 136, 146 (3d Cir. 2001) (decertifying a nationwide litigation class). Even if a judgment were entered against Defendants, any appeal in the Third Circuit would likely take years to resolve. By settling, Plaintiffs and the Settlement Class avoid these risks, as well as the delays of a lengthy trial and appellate process. The Settlement will provide

18

Settlement Class with benefits that are immediate, certain and substantial, and will avoid obstacles that might prevent the Settlement Class from obtaining relief. *See Hegab v. Family Dollar Stores, Inc.*, Civ. No. 11-1206 (CCC), 2015 U.S. Dist. LEXIS 28570, at *23 (D.N.J. Mar. 9, 2015) (concluding that a settlement was fair, reasonable and adequate in light of the substantial risks that plaintiff faces and the immediate benefits provided by the settlement).

The Settlement grants relief addressing the alleged deceptive and misleading practices asserted in this litigation, and remediates their affects upon consumers. Shop-Vac will extend manufacturer's warranty on the motors of the Vacuums for the longer of: (a) 24 months from the date a Vacuum's current manufacturer's warranty would expire by its own terms, or (b) 24 months after the Effective Date of the Settlement.  Warranties of this kind can have significant value, and are actually sold by defendant Lowe's for a cost of $6.97 to $29.99, depending on the cost of the warranted appliance.[6]  Millions of units of the Vacuums were sold throughout the United States during the Class Period.  If purchased from Lowe's,

---

[6] Lowes offers a number of product protection plans that extend the manufacturer's warranty.  *See* http://www.lowes.com/cd_small+appliances_71817861_  (last visited on April 1, 2016).  One such protection plan applies to those Vacuums costing $200 or more and costs $29.00 for a two year warranty extension. Protection plans for less expensive vacuums would cost between $6.97 and $24.97 for a two year plan.  *See* http://www.lowes.com/cd_replacement+plans_ 822428212_ (last visited on April 1, 2016).  These plans provide a useful data point in demonstrating that the warranty extensions offered by Shop-Vac as a term of the proposed Settlement have real value to the Settlement Class.

the estimated value of these extended warranties would be well into the millions of dollars.  As additional remedial measures under the Settlement, Shop-Vac will also change the "peak horsepower" designations and the tank capacity legend in its marketing materials for the Vacuums so that consumers are able to more fully understand the capabilities of the motors and tank capacities.

The Settlement Agreement contains no obvious deficiencies such as large payments of awards to the Plaintiffs or unjustified attorneys' fees to Plaintiffs' Counsel.  Plaintiffs will seek awards of up to $5,000 each for acting on behalf of the entire Settlement Class as class representatives.   Any award must be determined by the Court and would be paid from court-approved attorneys' fees.  These awards are permissible in class action litigation, and the requested awards in this case would fall within the range approved in the Third Circuit.  *See Sullivan v DB Invs., Inc*., 667 F.3d 273, 333 n.65 (3d Cir. 2011) (noting that plaintiff awards are "not uncommon in class action litigation"); *Craig v. Rite Aid Corp*., No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658, at *50 (M.D. Pa. Jan. 7, 2013) ("In the Third Circuit, such awards have ranged from $1,000 up to $30,000.").  Defendants have also agreed to pay reasonable attorneys' fees and expenses as approved by the Court in an amount not to exceed $4.25 million.  This amount was agreed to as a result of a mediator's proposal after extensive negotiation and with the assistance of Judge Infante (Ret.), and long after agreement on all other substantive terms of

20

the Settlement.  This amount is also less than Plaintiffs' Counsel's current lodestar.  The payment of attorneys' fees and expenses by Defendants is separate from and in addition to the relief afforded to the Settlement Class.  Given the potential of a non-recovery, the Settlement provides a favorable resolution of the Lawsuits, and does not unduly prefer Plaintiffs over segments of the Settlement Class.

### B.    The Settlement Class Meets Rule 23 Requirements for Class Certification

Certification of a class for settlement purposes only is permissible and appropriate.[7]  *In re NFL Players' Concussion Injury Litig*., 301 F.R.D. 191, 199-200 (E.D. Pa. 2014) (stating that a court may certify the class for the purposes of providing notice at the preliminary approval stage).  Where a class is proposed in connection with a motion for preliminary approval, the court must ensure that the requirements of Rule 23(a) and (b) have been met.  *Sullivan*, 667 F.3d at 296.  The proposed Settlement Class satisfies the requirements under Rule 23(a) and at least one of the subsections of Rule 23(b).

### 1.    Numerosity is Satisfied

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While "[n]o magic number exists" to satisfy the requirement, *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D.

---

[7] This is particularly true here in light of the fact that a Class of New Jersey consumers was certified in the New Jersey Action after that issue was fully litigated in that action.

Pa. 1989), the Third Circuit has held that the requirement is met "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Millions of units of the Vacuums were sold throughout the United States during the Class Period. Thus, joinder of all Settlement Class Members is impracticable and the numerosity requirement is met.

### 2.   Commonality is Satisfied

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is met when the class wide issues can "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Under Third Circuit precedent, "the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is 'on whether the defendant's conduct was common as to all of the class members.'"  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382-383 (3d Cir. 2013).

Plaintiffs contend that one common question that cuts across every claim of every Settlement Class Member is whether Defendants misrepresented the peak horsepower and tank capacity of these Vacuums.   Plaintiffs contend that Defendants' representations are false because the Vacuums are incapable of reaching the peak horsepower represented by Defendants and that the tank capacity

representations are higher than the actual volume of material the Vacuums can hold during operation. The answer to this question will certainly "drive the resolution of this litigation." *Dukes*, 131 S. Ct. at 2551.

Other common questions for the proposed Settlement Class include whether Defendants' representations violated the consumer protection statutes of Plaintiffs' home states, breached an express and/or implied warranty under the respective home state laws, and whether Defendants were unjustly enriched from the sale of the Vacuums under these laws. The answers to these questions, similarly, will help resolve the litigation. As such, commonality is satisfied.

### 3. Typicality is Satisfied

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he threshold for satisfying the typicality prong is a low one." *Barr v. Harrah's Entm't, Inc.*, 242 F.R.D. 287, 292 (D.N.J. 2007) (internal quotations omitted); *see also City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, Civ. No. 12-5275, 2015 U.S. Dist. LEXIS 115287, at *23 (D.N.J. Aug. 31, 2015) ("The standard for demonstrating typicality under Rule 23(a)(3) is similarly undemanding . . ."). As with the preceding requirement, typicality does not require that all class members share the same claims. *Warfarin*, 391 F.3d at 531-32. The Third Circuit has noted that varying fact patterns underlying the individual claims

do not render a plaintiff's claims atypical if the case challenges the same unlawful conduct that affects both plaintiff and the proposed class. *See Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012) ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class.").

Here, Plaintiffs' claims and the claims of all other Settlement Class Members arise from the same conduct, Defendants' pattern of overstating the "peak horsepower" and tank capacity of the Vacuums.  Plaintiffs, like all Settlement Class Members, were exposed to identical misrepresentations because Defendants market the Vacuums with specific "peak horsepower" claims and tank capacity on the machines, their packaging and in marketing materials. Accordingly, Plaintiffs and Settlement Class Members allege the same injury and seek corresponding damages. *Rossi v. P&G*, Civ. No. 11-7238 (JLL), 2013 U.S. Dist. LEXIS 143180, at *6 (D.N.J. Oct. 3, 2013) (finding typicality satisfied where the named plaintiff and the class assert claims based on the same statements in the advertising and marketing of the product at issue).  Moreover, Plaintiffs are not "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *In re Schering Plough Corp.*

*ERISA Litig.,* 589 F.3d 585, 599 (3d Cir. 2009).  Plaintiffs' claims are therefore

typical of the Settlement Class they seek to represent.

### 4.      Adequacy of Representation is Satisfied

Adequacy requires that "the representative parties will fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement

involves a two-prong inquiry: (1) whether the representatives' interests conflict

with the interests of the class, and (2) whether the plaintiffs' attorneys are capable

of representing the class.  *See Newton v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.*, 259 F.3d 154, 185 (3d Cir. 2001) (stating that adequacy of class

representative requires determination of both prongs).

First, Plaintiffs, like each absent Settlement Class Member, have a strong

interest in proving Defendants' common course of conduct, establishing its

unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining

redress.  For four years, Plaintiffs have vigorously protected the interests of the

Settlement Class.  They have described their relevant experiences related to the

Vacuums, reviewed and authorized the filing of complaints, responded to

expansive discovery, sat for lengthy depositions, and prepared the New Jersey

Action for trial.  Further, Plaintiffs have no interests antagonistic to the interests of

absent Settlement Class Members and there are no material conflicts between

Plaintiffs' interests in this litigation and those of the Settlement Class that would make class certification inappropriate.

Second, Plaintiffs have retained counsel competent and experienced in complex class action litigation.  As indicated by the extensive docket in this case, and by the history of the New Jersey Action, Plaintiffs' Counsel vigorously prosecuted the two cases, and demonstrated that they have committed significant resources to this litigation and will continue to do so. Accordingly, Plaintiffs have demonstrated that their attorneys "possess the expertise to litigate this matter effectively, as evidenced by the quality, timeliness and professional nature of their work" in this litigation.  *In re IKON Office Solutions Secs. Litig.*, 209 F.R.D. 94, 103 (E.D. Pa. 2002).

### 5.    Common Questions of Law and Fact Predominate

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both are met here.

Predominance only requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191

(2013). "That common issues must be shown to predominate does not mean that individual issue[s] need be non-existent. All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other." *Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 199 (D.N.J. 2014) (internal quotations and citation omitted). This is "a test readily met in certain cases alleging consumer . . . fraud." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

Predominance is satisfied here, where the pertinent issues relevant to the Settlement Class center on whether Defendants' representations concerning the Vacuums are false, misleading and likely to deceive the public. *Rossi*, 2013 U.S. Dist. LEXIS 143180 at *9-10 (finding predominance satisfied where the "common legal and factual questions are at the core of the litigation and are focused on the actions of [defendant], not Plaintiffs."). Every Settlement Class Member's claim may be proven by the same set of facts regarding Defendants' advertising and marketing of the "peak horsepower" and tank capacity of the Vacuums that misled reasonable consumers into believing the Vacuums can operate at their stated "peak horsepower" ratings and tank capacity. Further, whether the Vacuums can, as a matter of scientific fact, reach their advertised "peak horsepower," is integral to each Settlement Class Member's case and can be achieved by generalized proof. Therefore, the predominance requirement is met.

27

### 6.    Class Adjudication is Superior to Other Methods

In addition, the court must determine that class treatment is superior to other available methods of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  Class treatment is not merely superior, but is the only manner in which to ensure fair and efficient adjudication of this action.  The size of each Settlement Class Member's alleged loss is too small to be economically litigated outside of a class action.  *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 191 (D.N.J. 2003) ("The high price of Mercedes-Benz automobiles notwithstanding, . . . the relatively small amount at stake for each claimant vitiates any argument that each has an interest in controlling the prosecution of the case").  A class action will allow individual class members to bring together claims that would be economically infeasible to litigate otherwise.  *See Warfarin*, 391 F.3d at 534 ("[I]ndividual consumer class members have little interest in 'individually controlling the prosecution or defense of separate actions,' because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit" (internal citations omitted)).  Class treatment in the settlement context is also superior to individual suits or piecemeal litigation because it facilitates favorable resolution of all Settlement Class Members' claims and conserves scarce judicial resources.

## C.      Plaintiffs' Counsel Should Be Appointed As Class Counsel

This Court appointed Milberg LLP, Lax LLP, and Faruqi & Faruqi LLP as interim class counsel on January 17, 2013.  Interim class counsel and Lite DePalma Greenberg, LLC are now seeking appointment as Class Counsel.[8]  Rule 23(g), which governs the framework for appointing class counsel for a certified class, establishes four factors the court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in investigating and identifying the claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).

This Court's order appointing interim class counsel has already found that they meet all of these criteria.  *See* Memorandum, Appointment of Interim Class Counsel, Dkt. No. 55; Case Management Order 5, Dkt. No. 56.  The work interim class counsel and Lite DePalma have done since that appointment, as described

---

[8] In the New Jersey Action, the Milberg and Lax firms were appointed as Class Counsel along with Lite DePalma Greenberg, LLC.  Since the Settlement resolves both the present matter and the New Jersey Action, Plaintiffs request that the Court appoint Milberg, Lax, Faruqi, and Lite DePalma as Class Counsel here.

29

above, buttresses the Court's prior findings and confirms that they are qualified for

appointment as Class Counsel for the Settlement Class.

### D.    The Proposed Notices and Notice Program Satisfy Rule 23

The court must direct notice in a reasonable manner to class members who

would be bound by the proposed settlement.  Fed. R. Civ. P. 23(e).  Actual notice

is not required.  *Montgomery v. Beneficial Consumer Disc. Co*., No. 04-CV-2114,

2005 U.S. Dist. LEXIS 3249, at *17 (E.D. Pa. Mar. 2, 2005) ("The requirement of

'best notice practicable under the circumstances' has consistently been held ***not*** to

require actual notice for every class member." (emphasis in original)).   Rather,

class notice should be "reasonably calculated under all the circumstances to apprise

interested parties of the pendency of the action and afford them an opportunity to

present their objections."  *Lachance v. Harrington*, 965 F. Supp. 630, 636 (E.D.

Pa. 1997).  At a minimum, the "notice must inform class members of (1) the nature

of the litigation; (2) the settlement's general terms; (3) where complete information

can be located; and (4) the time and place of the fairness hearing and that objectors

may be heard."  *Mehling*, 246 F.R.D. at 477 (E.D. Pa. 2007).

The proposed notice program here, which informs the Settlement Class of

their rights and includes a comprehensive plan for delivery of notice by U.S. postal

mail, electronic mail and publication, constitutes the best notice practicable under

the circumstances of this case.  The Settlement Administrator expects that they will

be able to reach at least 70% of the Settlement Class. *See* Decl. of Cameron R. Azari, Esq., on Settlement Notice Plan ¶¶ 16, 32, 37, attached as Ex. 4 to Ex. A of the Settlement Agreement. Settlement Class Members whose address is known and readily available to Defendants will be sent notice directly by postal or electronic mail. It is anticipated that known Class Members will exceed 1 million. *See id.* ¶ 17. Settlement Class Members whose addresses are not known and readily available to Defendants will receive notice through publication. Notices will also be published in *People* magazine, *Family Handyman*, and posted on the Settlement Website to be created and maintained by the Settlement Administrator. Internet banner notifications will be placed on *Conversant Ad Network* and Facebook. Finally, before disseminating the Settlement Notice, the Settlement Administrator will set up and operate a toll-free automated interactive voice response system through which Settlement Class Members can access settlement information and facilitate requests for the Settlement Notice and other settlement information.

The notices accurately inform the Settlement Class of the salient terms of the litigation and the Settlement, identifies who is included in the Settlement Class, details concerning the Fairness Hearing, and the rights of Settlement Class Members, including the rights to file objections or opt out of the Settlement Class. *See* Exs. 1, 2, and 3 to Ex. A of the Settlement Agreement.

31

### E.    A Final Fairness Hearing Should Be Scheduled.

The Court should schedule a final fairness hearing to determine whether final approval of the Settlement is proper.  The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy and reasonableness of the Settlement.  At that time, appointed class counsel will present their application for their fees and expenses pursuant to Rule 23(h) as well as for the award to the named class representatives.  Accordingly, the Parties request that the Court schedule the final fairness hearing no earlier than sixteen weeks or the equivalent of one hundred and twelve days after the entry of the Preliminary Approval Order, well after the expiration of the waiting period required by 28 U.S.C. §1715(d), at the Middle District of Pennsylvania courthouse in Harrisburg, PA.

## V.    **CONCLUSION**

For all of the foregoing reasons, the Parties jointly and respectfully request that the Court:  (1) preliminarily approve the proposed Settlement; (2) certify the Settlement Class for purposes of settlement only; (3) approve the form and manner of notice to inform the Settlement Class of the Settlement and right to object or opt out; and (4) set a Fairness Hearing date for consideration of final approval of the Settlement.

Dated: April 1, 2016                         Respectfully Submitted,

                                             **DILWORTH PAXSON LLP**


                                             By:   */s/ Elizabeth Goldstein*
                                                    Elizabeth Goldstein
                                                    egoldstein@dilworthlaw.com
                                             Penn National Insurance Plaza
                                             2 North 2nd Street
                                             Suite 1101
                                             Harrisburg, PA 17101
                                             Telephone: (717) 236-4812
                                             Facsimile: (717) 236-7811

                                             *Interim Liaison Counsel*


                                             **FARUQI & FARUQI LLP**
                                             Adam Gonnelli
                                             agonnelli@faruqilaw.com
                                             685 Third Avenue, 26th Floor
                                             New York, NY 10017
                                             Telephone: (212) 983-9330
                                             Facsimile: (212) 983-9331

                                             *Interim Class Counsel*


                                             **LAX LLP**
                                             Robert I. Lax
                                             rlax@lax-law.com
                                             380 Lexington Avenue, 31st Floor
                                             New York, NY 10168
                                             Telephone: (212) 818-9150
                                             Facsimile: (212) 208-4309

                                             *Interim Class Counsel*

**MILBERG LLP**
>Sanford P. Dumain
>sdumain@milberg.com
>Andrei Rado
>arado@milberg.com
>Jennifer Czeisler
>jczeisler@milberg.com

One Penn Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Interim Class Counsel*

**LITE DePALMA GREENBERG LLP**
Bruce D. Greenberg
bgreenberg@litedepalma.com
570 Broad Street, 12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0211

*Interim Class Counsel*

**BARON & HERSKOWITZ**
Jon Herskowitz
jon@bhfloridalaw.com
9100 South Dadeland Boulevard
One Datran Center, Suite 1704
Miami, FL 33156
Telephone: (305) 670-0101
Facsimile: (305) 670-2393

*Executive Committee Member*

**PINILISHALPERN LLP**
William J. Pinilis
wpinilis@consumerfraudlawyer.com
160 Morris Street
Morristown, NJ 07962
Telephone: (973) 401-1111
Facsimile: (973) 401-1114

*Executive Committee Member*

**REESE LLP**
Michael R. Reese
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Executive Committee Member*

**WALSH PLLC**
Bonner C. Walsh
bonner@walshpllc.com
3100 SCR 406
PO BOX 1343
Sonora, TX 76950
Telephone: (903) 200-6069
Facsimile: (866) 503-8206

*Executive Committee Member*

**SIDLEY AUSTIN LLP**
Michael L. Mallow
mmallow@sidley.com
Michael B. Shortnacy
mshortnacy@sidley.com
555 West 5th Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Counsel for Defendants Shop-Vac*
*Corporation and Lowe's Home Centers,*
*LLC*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)**

Pursuant to Local Rule 7.8(b)(2), and the Court's March 31, 2016 Order (Doc. No. 159), it is hereby certified that Parties' Memorandum of Law in Support of The Joint Motion for Preliminary Approval of Class Settlement, Certification of Settlement Class, And Dissemination of Class Notice contains 7,079 words (exclusive of the tables of contents and citations, the certificate of service, and this certificate), according to the Microsoft® Word 2010 word processing system used to prepare it, and that the Memorandum of Law, therefore, complies with the Court's March 31, 2016 Order.

By: _/s/ Adam Gonnelli_
Adam Gonnelli