## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380<br><br>Civil Action No. 4:12-md-2380<br>(Judge Kane) |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | |

### CLASS ACTION SETTLEMENT AGREEMENT

This agreement ("Settlement Agreement") is between Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino and Scott Giannetti on behalf of themselves and as representatives of the proposed Settlement Class, as defined herein, on the one hand, and Defendant Shop-Vac Corporation ("Shop-Vac") and Defendant Lowe's Home Centers, LLC ("Lowe's") (Shop-Vac and Lowe's, together, "Defendants") on the other hand, to fully and finally settle and resolve and to effect dismissal with prejudice of all of the Released Claims (as defined herein) asserted against Defendants in the action captioned *In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380 (M.D. Pa.) ("the MDL") brought on behalf of the Settlement Class against Defendants relating to Shop-Vac brand wet/dry vacuums as defined below (hereinafter referred to individually and collectively as a "Vacuum" or the "Vacuums"). This Settlement Agreement would also effect the dismissal with prejudice and release of claims against Defendant Shop-Vac in a parallel action pending in the Superior Court of New Jersey, Law Division, Bergen County, captioned *Palomino, et al. v. Shop-Vac Corporation*, Docket No. BER-L-1399-12 (the "New Jersey Action" and, together with the MDL, the "Lawsuits"), a case brought on behalf of New Jersey purchasers of Shop-Vac brand wet/dry vacuums. David Palomino and Scott Giannetti are the named representative plaintiffs in the New Jersey Action.

Plaintiffs' central allegation in the MDL and the New Jersey Action is that Shop-Vac overstates the horsepower ratings of its Vacuums. Plaintiffs also allege in the MDL only that Shop-Vac's canister size measurement, as represented in its marketing, is misleading.

Multiple actions against Shop-Vac and Lowe's were filed in federal courts across the country. The Judicial Panel on Multidistrict Litigation consolidated all of these actions in the Middle District of Pennsylvania. Plaintiffs McMichael (a resident of Florida), Harbut (a resident of Missouri), and Reid (a resident of California) filed a Consolidated Amended Complaint against Shop-Vac and Lowe's, asserting causes of action for breaches of the consumer protection statutes of each of the fifty states (except New Jersey), express and implied warranties, and the Magnuson-Moss Warranty Act. On Defendants' motion, the MDL Court dismissed all of these claims, with leave to amend, on August 9, 2013. 964 F. Supp. 2d 355. Thereafter, Plaintiffs McMichael, Harbut, and Reid filed a Second Consolidated Amended Complaint. Almost all of Plaintiffs' claims survived a motion to dismiss. *See In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380, No. 4:12-md-2380, 2014 U.S. Dist. LEXIS 98075 (M.D. Pa. July 17, 2014). The parties conducted extensive discovery and Plaintiffs were prepared to file a motion for class certification, but the Court granted the parties' joint request to adjourn all then-pending litigation dates in order to allow the parties to mediate the case before the Hon. Edward A. Infante, retired Chief Magistrate Judge of the United States District Court for the Northern District of California.

The complaint in the New Jersey Action, for breach of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, and for breach of warranty, is against Defendant Shop-Vac only. That case survived a threshold motion to stay that lawsuit in favor of the MDL, a motion for a more definite statement as to both the warranty and NJCFA claims, a motion to dismiss the

warranty claim, and motions for summary judgment asserting applicable statutes of limitation as to all individual claims by Plaintiffs Palomino and Giannetti. Both fact and expert discovery have been completed. A class was certified consisting of all consumers who are New Jersey citizens who purchased Shop-Vac brand wet/dry vacuums in New Jersey between February 1, 2006 and May 8, 2015. Shop-Vac sought leave to appeal the class certification to the Appellate Division of the New Jersey Superior Court, but the Appellate Division denied interlocutory review. The New Jersey state court adjourned a September 3, 2015 trial date until October 19, 2015, to allow the parties to engage in mediation. On October 9, 2015, the New Jersey state court adjourned the trial and stayed the New Jersey Action pending the completion of the approval process in the MDL Court.

Defendants deny all of the allegations in the Lawsuits and assert numerous defenses to each of the claims alleged in the Lawsuits. Defendants assert that peak horsepower, which is used by Defendants, and operational horsepower, which is not, are different measures of power and, therefore, no consumers have been deceived. Defendants also assert that tank size representations were not deceptive because tank sizes that are represented are accurate and Defendant provides visible disclosures that tank capacity varies depending on use.

Plaintiffs and Defendants, after significant discovery and motion practice and having engaged in arm's length settlement negotiations with the assistance of a mediator, the former Chief Magistrate Judge of the Northern District of California, Judge Edward A. Infante (Ret.), have now reached an agreement providing for a settlement of both of the Lawsuits with a proposed nationwide settlement class.

Plaintiffs and Plaintiffs' Counsel, who are experienced in this type of class action litigation, have examined and considered the benefits to be provided to Settlement Class

Members under the settlement provided for in this Settlement Agreement (the "Settlement"); have considered the laws of the states, and the claims that could be asserted under those laws regarding the Vacuums; and believe the Settlement to be in the best interest of the Settlement Class, taking into account what they believe to be the substantial benefits to be provided to the Settlement Class by Defendants, the risks of litigation, and the length of time that would be required to complete the litigation and any appeals.

Defendants have at all times disputed, and continue to dispute, Plaintiffs' allegations in the Lawsuits and have denied, and continue to deny, any liability for any of the claims that have or could have been raised regarding the Vacuums by Plaintiffs or Settlement Class Members, but believe that the comprehensive resolution of the claims relating to the Vacuums as provided in this Settlement Agreement will avoid the substantial expense and disruption of continued litigation.

The Parties agree that neither this Settlement Agreement nor the Settlement it represents shall be construed as an admission by Defendants of any wrongdoing whatsoever including an admission of a violation of any statute or law, or of liability on the claims or allegations in the Lawsuits.

The Parties agree and understand that neither this Settlement Agreement nor the Settlement it represents shall be construed or admissible as an admission by Defendants in the Lawsuits or any other proceedings that the Plaintiffs' claims or similar claims are, or would be, suitable for class treatment if the Lawsuits proceeded through both litigation and trial.

The Parties agree that this Settlement Agreement supersedes any and all agreements previously entered into by the Parties with respect to claims asserted in the Lawsuits.

Now, therefore, the Parties stipulate and agree as follows:

## I.      DEFINITIONS

A.      "Administration Expenses" means reasonable fees and expenses incurred by the Settlement Administrator for all tasks the Settlement Administrator and any third parties perform in furtherance of the administration of the Settlement, including: (1) preparation and distribution of the Settlement Notice, and (2) preparation of status reports to the Parties and the Court.

B.      "Application" means the application to be filed by Class Counsel to the MDL Court by which they will seek an award of reasonable attorneys' fees and reimbursement of costs they incurred prosecuting both of the Lawsuits, as well as awards to be paid to the Plaintiffs in both of the Lawsuits.

C.      "Class Counsel" means the law firms (1) Faruqi & Faruqi, LLP; (2) Lax LLP; (3) Lite DePalma Greenberg, LLC; and (4) Milberg LLP.

D.      "Court" means the United States District Court for the Middle District of Pennsylvania.

E.      "Defendants" means Shop-Vac Corporation and Lowe's Home Centers, LLC.

F.      "Effective Date" means the first date after all the following have occurred: (i) this Settlement Agreement has been fully executed; (ii) the Court has entered an order certifying a Settlement Class and granting final approval of the Settlement in accordance with the terms of this Settlement Agreement; (iii) the time for any challenge to the Court's orders relating to the Settlement, both in the Court and on appeal, has elapsed; and (iv) the Settlement has become Final as defined herein.

G.      "Fairness Hearing" means the final hearing, to be held after notice has been provided to the Settlement Class in accordance with this Settlement Agreement and as directed by the Court: (1) to consider the fairness, reasonableness, and adequacy of the proposed settlement and to determine whether to grant final approval to (a) the certification of the Settlement Class, (b) the designation of Plaintiffs as the representatives of the Settlement Class, (c) the designation of Class Counsel as counsel for the Settlement Class, and (d) the Settlement; (2) to rule on Class Counsel's Application for an award of reasonable attorneys' fees and reimbursement of costs and for awards to Plaintiffs; and (3) to consider whether to enter the Final Approval Order.

H.      "Final" when referring to a judgment or order means that: (1) the judgment is a final, appealable judgment; and (2) either (a) no appeal has been taken from the judgment relating to the merits of the Settlement (as opposed to any appeals relating solely to the Application, which will not affect finality as defined herein) as of the date on which all times to appeal therefrom have expired, or (b) an appeal or other review proceeding of the judgment relating to the merits of the Settlement having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in a manner that affirms the judgment in all material respects.

I.      "Final Approval Order" means the proposed Order Granting Final Approval of the Class Action Settlement Agreement and Entry of Final Judgment, to be

entered by the Court with the provisions and in the form of Exhibit B attached to this Settlement Agreement.

J.     "Lawsuits" means the putative class action lawsuit pending, as of the date of this Settlement Agreement, in the Court as MDL No. 2380, Civil Action No. 4:12-md-2380, and the putative class action lawsuit pending, as of the date of this Settlement Agreement, in the Superior Court of New Jersey, Law Division, Bergen County, captioned *Palomino, et al. v. Shop-Vac Corporation*, Docket No. BER-L-1399-12.

K.     "Liaison Counsel" means the law firm Dilworth Paxson LLP.

L.     "Parties" means Plaintiffs and Defendants in the Lawsuits.

M.     "Plaintiffs" means Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino, and Scott Giannetti.

N.     "Plaintiffs' Counsel" means Liaison Counsel, Class Counsel, and the law firms Baron & Herskowitz, Pinilis Halpern LLP, Reese LLP, and Walsh PLLC.

O.     "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval to Class Action Settlement, to be entered by the Court with the terms and in the form of Exhibit A attached to this Settlement Agreement.

P.     "Posted Notice" means the proposed notice, with the terms and form of the document attached to the Preliminary Approval Order as Exhibit 2, to be approved by the Court and to be posted online in accordance with Section V of this Settlement Agreement.

Q.      "Publication Notice" means the proposed notice, with the terms and in the form of the document attached to the Preliminary Approval Order as Exhibit 3, to be approved by the Court and to be published in accordance with Section V of this Settlement Agreement.

R.      "Released Claims" means any and all claims, actions, causes of action, administrative claims, demands, debts, liens, offsets or liabilities, damages, costs, attorney's fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, other than claims for personal injury, that Plaintiffs or any member of the Settlement Class now have or, absent the Settlement Agreement, may in the future have, against Releasees, or any of them, by reason of any act, omission, harm, matter, cause, or event whatsoever that has occurred at any time up to and including the entry of the Preliminary Approval Order, that (a) has been alleged in the Lawsuits or (b) could have been alleged in the Lawsuits or in another court action and relates (i) to any of the alleged inadequacies, misstatements, or issues of or associated with the Vacuums alleged in the Lawsuits or (ii) to any act, omission, damage, matter, cause, or event whatsoever arising out of or related to the initiation, defense, or settlement of the Lawsuits or the claims or defenses asserted or that could have been asserted in the Lawsuits.

S.      "Releasees" means (a) Defendants, together with their respective predecessors and successors in interest, parents, subsidiaries, affiliates, and assigns; (b) each of their respective past, present, and future owners, shareholders, officers, directors, agents, representatives, employees, attorneys, and insurers; and (c) all suppliers, distributors, dealers, retailers, trade partners, licensors, licensees, franchisees, public

8

relations firms, advertising and production agencies, and other entities, whether foreign or domestic, who were or are in the chain of, or played any role in, the design, testing, manufacture, assembly, distribution, marketing, sale, lease, installation, or servicing of the Vacuums or their component parts.

T.      "Settlement" means the settlement provided for in this Settlement Agreement.

U.      "Settlement Administrator" means Epiq Systems Class Action and Claims Solutions, the entity selected by the Parties to administer the Settlement.

V.      "Settlement Agreement" means this Settlement Agreement and the exhibits attached hereto.

W.      "Settlement Class" means each person in the United States and its territories who, from January 1, 2006 to the date of entry of the Preliminary Approval Order, either (1) purchased a Vacuum, or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means. Excluded from the Settlement Class is any person or entity who purchased or acquired a Vacuum for the purpose of resale, all judges to whom the Lawsuits are assigned and the officers, directors and counsel of record of Defendants, and all employees of Defendants. Also excluded from the Settlement Class are any putative Settlement Class Members who properly and timely exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Preliminary Approval Order.

X.      "Settlement Class Members" means all persons who are members of the Settlement Class and do not properly and timely exclude themselves from the Settlement Class in the manner and time prescribed by the Court in the Preliminary Approval Order.

Y.      "Settlement Notice" means the proposed form of written notice attached to the Preliminary Approval Order as Exhibit 1, to be approved by the Court and to be sent to those Settlement Class Members whose e-mail or mailing addresses are known to and readily identifiable by Defendants in accordance with Section V of this Settlement Agreement.

Z.      The "Settlement Website" means www.shopvacphpsettlement.com, which Settlement Class Members can visit to read or request additional information regarding the Settlement, and a hyperlink to the Settlement Website will be placed on the Support page of the Shop-Vac USA website.

AA.     "Vacuums" means Shop-Vac brand wet/dry vacuums sold in the United States and its territories during the Class Period.

## II.    CONDITIONAL CERTIFICATION OF NATIONWIDE CLASS SETTLEMENT

For the purpose of implementing this Settlement Agreement, and for no other purpose, Defendants stipulate to the conditional certification of the nationwide Settlement Class in the MDL, in full settlement of both of the Lawsuits, as set forth in the Preliminary Approval Order. If for any reason this Settlement Agreement should fail to become effective, Defendants' stipulation to certification of the Settlement Class provided for in this Section II, or to any other class or subclass, shall be null and void, and the Parties shall return to their respective positions

in the Lawsuits as those positions existed on September 3, 2015, when the Parties reached an agreement-in-principle to settle. Nothing stated in this Settlement Agreement shall be deemed an admission or waiver of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in the MDL, the New Jersey Action, or any other action or proceeding of any kind.

## III.    REQUIRED EVENTS

      A.    As soon as practicable after the execution of this Settlement Agreement, the Parties shall jointly file this Settlement Agreement and a motion in the MDL seeking entry of the Preliminary Approval Order, substantially in the form of Exhibit A.

      B.    At the Fairness Hearing, the Parties will jointly request the Court to enter the Final Approval Order, substantially in the form of Exhibit B.

      C.    The Parties and their counsel will cooperate and take all reasonable actions to accomplish the above. If the Court fails or refuses to enter either the Preliminary Approval Order or the Final Approval Order, the Parties and their counsel will use all reasonable efforts that are consistent with this Settlement Agreement to cure any defect identified by the Court, except that Defendants have no obligation to provide any additional consideration beyond what is specified herein, to effectuate a settlement of the Lawsuits. If, despite such efforts, the Court does not enter the Preliminary Approval Order and the Final Approval Order, the Parties will return to their prior positions in the Lawsuits, in accordance with Section II of this Settlement Agreement.

IV.    **BENEFITS TO SETTLEMENT CLASS MEMBERS AND PROCEDURES FOR PROVIDING BENEFITS TO SETTLEMENT CLASS MEMBERS**

A.    **Benefits to Settlement Class Members**

In accordance with the terms of this Settlement Agreement and its exhibits, in exchange for the dismissal of the Litigation, with prejudice, of the Released Claims as provided herein, Defendants agree to provide the following consideration and benefits to the Settlement Class:

1.    Upon the Effective Date, Shop-Vac will extend the manufacturer's warranty on the motors of the Vacuums for the longer of: (a) 24 months from the date a Vacuum's current manufacturer's warranty would expire by its own terms, or (b) for those Class Members whose current manufacturer's warranty has expired by its own terms prior to the Effective Date, 24 months after the Effective Date;

2.    No later than thirty (30) calendar days after the Effective Date, Shop-Vac will provide on its website, product boxes, and any other marketing materials that refer to Peak Horsepower of the Vacuums or their motors, information that is materially consistent with the following statement:

"Peak Horsepower" (PHP) is a term used in the wet-dry vacuum industry for consumer comparison purposes. It does not denote the operational horsepower of a wet-dry vacuum but rather the horsepower output of a motor, including the motor's inertial contribution, achieved in laboratory testing. In actual use, Shop-Vac's motors do not operate at the peak horsepower shown.

3.    No later than thirty (30) calendar days after the Effective Date,
Shop-Vac will alter the existing tank gallon legend of the Vacuums
to read: "Tank capacity refers to actual tank volume, and does not
reflect capacity available during operation."; and

4.    For the duration of the warranty extension period, Shop-Vac will
maintain an informational webpage and dedicated toll-free number
for Settlement Class Members to seek a warranty remedy under the
Settlement. All inquiries concerning the extended warranty will be
administered by Shop-Vac's warranty/customer service
department, knowledgeable to answer such inquiries related to the
warranty extension.

The Parties further agree that Shop-Vac shall self-administer the dissemination of
benefits specified above, subject to reasonable, good faith auditing requests by Class Counsel.

**B.    Procedures for Providing Benefits to Settlement Class Members**

The Parties shall jointly ask the Court to approve Epiq Systems Class Action and Claims
Solutions as the Settlement Administrator. The Settlement Administrator shall administer the
Settlement subject to the jurisdiction of the Court. The Settlement Administrator shall perform
the following functions in accordance with the terms of this Settlement Agreement, the
Preliminary Approval Order, and the Final Approval Order:

1.    As described above, disseminate the Settlement Notice to members
of the Settlement Class by e-mail, where an e-mail address is
known and readily available to Defendants, and by mail, where a

mailing address is known and readily available to Defendants but an e-mail address is not;

2.      Before disseminating the Settlement Notice, establish the Settlement Website;

3.      Before disseminating the Settlement Notice, set up and operate a toll-free automated interactive voice response system through which Settlement Class Members can access settlement information and facilitate requests for the Settlement Notice and other settlement information;

4.      Send via e-mail or mail notice packets or other settlement information to all those who may request the information via the toll-free number or mail;

5.      Before disseminating the Settlement Notice, establish a postal address to which Settlement Class Members can request to be excluded from the Settlement Class;

6.      Process requests for exclusion from the Settlement in accordance with Section IV.B of the Settlement Agreement; and

7.      Promptly provide to Class Counsel and Defendants' Counsel copies of the Requests for Exclusion and a list of the names of all persons who submitted Requests for Exclusion. Class Counsel and Defendants shall jointly report in writing to the Court the names of

all such persons, no later than one (1) week/ seven (7) days before the Fairness Hearing, or on such date as the Court may order.

## V.   NOTICE

### A.   Settlement Notice

The Parties agree that the Settlement Notice provides the Settlement Class and Settlement Class Members information sufficient to inform them of: the essential terms of this Settlement Agreement; appropriate means for obtaining additional information regarding the Settlement Agreement and the Lawsuits; and, appropriate information concerning the procedure for challenging or excluding themselves from the Settlement, if they should wish to do so. To facilitate the efficient administration of this Settlement, and to ensure appropriate notice regarding the Settlement, the Parties have drafted the Settlement Notice. The Parties will request the Court to approve the Settlement Notice in the Preliminary Approval Order.

Similarly, the Parties agree that the Publication Notice provides to the Settlement Class and Settlement Class Members information sufficient to inform them of: the essential terms of this Settlement Agreement; appropriate means for obtaining additional information regarding the Settlement Agreement and the Lawsuits; and, appropriate information about the procedure for challenging or excluding themselves from the Settlement, if they should wish to do so. The Parties will request the Court to approve the Publication Notice in the Preliminary Approval Order.

### B.   Methods for Dissemination of Notice

#### 1.   Dissemination of the Settlement Notice and Publication Notice

As soon as practicable, but no later than three (3) weeks/ twenty-one (21) days after the Court's entry of the Preliminary Approval Order, the Settlement Administrator shall disseminate

to every member of the Settlement Class who reasonably can be identified in Defendants'
records, and for whom Defendants know and have readily available a mailing address or an e-
mail address, a copy of the Settlement Notice. The Settlement Administrator will disseminate the
Settlement Notice to members of the Settlement Class by email where an email address is known
and readily available to Defendants. The Settlement Administrator will disseminate the
Settlement Notice to members of the Settlement Class by United States Mail where a mailing
address is known and readily available to Defendants, but an email address is not, or where the
Settlement Administrator notifies Defendants that the e-mail was returned "undeliverable" and a
mailing address is known and readily available to Defendants. Before the Settlement
Administrator sends copies of the Settlement Notice by United States Mail, the Settlement
Administrator will obtain or cause to be obtained address updates using a National Change of
Address database and use any updated addresses when mailing. If any Settlement Notice is
returned bearing a forwarding address for a member of the Settlement Class, the Settlement
Administrator shall make one attempt to mail the Settlement Notice to that forwarding address.

In addition, as soon as practicable, but no later than one (1) week/ seven (7) days after the
Court's entry of the Preliminary Approval Order, the Posted Notice will be posted by the
Settlement Administrator on the Settlement Website.

Defendants shall disseminate, cause to be disseminated, or ensure that the Settlement
Administrator has disseminated, the Publication Notice as outlined by the Settlement
Administrator's Notice Plan, attached to the Preliminary Approval Order as Exhibit 4.
Dissemination of the Publication Notice will start within three (3) weeks/twenty-one (21) days
after the entry of the Preliminary Approval Order and will continue until the Notice Plan is fully
implemented.

The Parties agree that the dissemination of the Settlement Notice and the Publication Notice in the manner specified in this Section V satisfies the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable laws, and constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. The Parties will jointly request the Court to approve, in the Preliminary Approval Order, the dissemination of notice as set forth above in this Section V.

No later than one (1) week/ seven (7) days before the Fairness Hearing, or on such other date as the Court may order, Defendants will file with the Court a declaration of compliance with this plan of notice, including a statement of the number of addresses to which the Settlement Notice was e-mailed or mailed.

## VI.   COSTS OF NOTICE AND ADMINISTRATION

In addition to providing to Settlement Class Members the benefits described in Section IV above, Defendants will pay: (A) the costs of preparing and disseminating the notices provided for in Section V above; and (B) the other Administration Expenses, including payments made for the services of the Settlement Administrator.

## VII.   PROCEDURES FOR SETTLEMENT APPROVAL

### A.   Preliminary Approval

The Parties shall jointly file this Settlement Agreement and a motion in the MDL seeking entry of the Preliminary Approval Order, substantially in the form of Exhibit A.

### B.   Final Approval

At the Fairness Hearing, the Parties will jointly request the Court to enter the Final Approval Order, substantially in the form of Exhibit B.

## VIII. CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS, AND FOR AWARDS TO PLAINTIFFS

A.      Class Counsel will submit to the Court an application seeking an award of not more than $4,250,000 in attorneys' fees and expenses. Class Counsel may also submit to the Court an application seeking awards to Plaintiffs not to exceed $5,000 each. Class Counsel will not request more than these amounts.

B.      Defendants will not oppose or object to the application by Class Counsel for an award of not more than $4,250,000 in attorneys' fees and expenses, as this figure has been agreed to by the Parties as the result of a Mediator's Proposal, after extensive negotiation and with the assistance of Judge Infante (Ret.) as mediator. The Parties recognize that the Court will have the final authority to award the amount of fees and expenses. The Parties represent that the agreed upon fees and expenses were mediated several months after agreement on all other substantive terms of the Settlement and proposed relief offered to the Settlement Class Members.

C.      Within 30 days of the award of fees and costs by the Court, Shop-Vac shall cause the award to be paid to an escrow agent to be mutually agreed upon by the Parties, notwithstanding the existence of any timely filed objections to the award, or potential for appeal from the award, or collateral attack on the Settlement or any part thereof.  The amount ordered to be paid to Class Counsel will be released from escrow immediately upon the Effective Date.

D.      Plaintiffs and Defendants hereby waive any right to any appeal of any Order relating to the Court's determination of attorneys' fees, reimbursement of expenses, or awards to Plaintiffs.

E.      Class Counsel shall allocate the attorneys' fees amongst Plaintiffs'

Counsel in a manner in which they in good faith believe reflects the contributions of such

counsel to the prosecution and settlement of the Lawsuits with Defendants.

F.      After the Effective Date, Class Counsel shall pay any amounts awarded by

the Court to Plaintiffs. These amounts shall be paid from the attorneys' fees awarded to

Class Counsel by the Court. In no event will Defendants have any obligation to pay any

awards to Plaintiffs approved by the Court.

G.      Defendants have no liability or obligation with respect to any attorneys'

fees, reimbursement of expenses, or awards to Plaintiffs other than Defendants'

obligation to pay or cause to be paid the amounts as are awarded by the Court. Class

Counsel agree that upon payment to Class Counsel of the amounts awarded by the Court,

pursuant to wire transfer information provided by Class Counsel, Defendants' obligations

to Class Counsel with respect to any attorneys' fees, reimbursement of expenses, or

awards to Plaintiffs shall be fully satisfied and discharged. It is not a condition of this

Settlement Agreement that any particular amount of attorneys' fees, costs or expenses be

awarded by the Court, other than the limitation set forth in subparagraph (A) of this

Section. Defendants shall have no tax liability related to the payment of attorneys' fees to

Class Counsel or any award to Plaintiffs. Plaintiffs and Class Counsel shall be liable for

their own respective tax liability that arises from or is related to payments made to

Plaintiffs or Class Counsel by Defendants.

## IX.    RELEASES

A.      By executing this Settlement Agreement, the Parties acknowledge that,

following both the entry of the Final Approval Order by the Court and the passing of the

Effective Date, the Lawsuits shall be dismissed with prejudice and without costs (other than as stated in this Settlement Agreement). All Released Claims shall thereby be conclusively settled, compromised, satisfied, and released as to the Releasees. The Final Approval Order shall provide for and effect the full and final release by Plaintiffs and all Settlement Class Members of all Released Claims against the Releasees. The Released Claims do not include claims to enforce this Settlement. No later than ten (10) days following the passing of the Effective Date, the Parties will file with the New Jersey Superior Court the necessary papers to dismiss the New Jersey Action with prejudice and without costs (other than as stated in this Settlement Agreement).

B.     The Final Approval Order shall further provide for and effect the release by Defendants and the other Releasees of all actions, causes of action, claims, administrative claims, demands, debts, damages, costs, attorney's fees, obligations, judgments, expenses, compensation, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, that they now have against Plaintiffs, Settlement Class Members, Class Counsel, or Plaintiffs' Counsel by reason of any act, omission, harm, matter, cause, or event whatsoever arising out of the initiation, prosecution, or settlement of the Lawsuits or the claims and defenses asserted in the Lawsuits (the "Released Defendants' Claims"). The Released Defendants' Claims do not include claims to enforce this Settlement.

C.     With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon both the entry of the Final Approval Order by the Court, and the passing of the Effective Date, Plaintiffs and Defendants shall expressly waive, and each of the Settlement Class Members and the Releasees shall be

deemed to have waived, and by operation of the Final Approval Order shall have waived,

relinquished and released any and all provisions, rights and benefits conferred by or

under Cal. Civ. Code § 1542 or any law of the United States or any state of the United

States or territory of the United States, or principle of common law that governs or limits

a person's release of unknown claims, including any law or principle of common law that

is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT KNOW
> OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE
> MATERIALLY AFFECTED HIS OR HER
> SETTLEMENT WITH THE DEBTOR.

The Parties acknowledge that they understand the significance and consequence of this

release and specific waiver. It is the intention of Plaintiffs and Defendants, and by operation of

law, the Settlement Class Members and the Releasees, to completely, fully, finally and forever

extinguish any and all Released Claims and Released Defendants' Claims, known or unknown,

suspected or unsuspected, which now exist, or heretofore existed, and without regard to the

subsequent discovery of additional or different facts. The Parties acknowledge, and the

Settlement Class Members and the Releasees by operation of law shall be deemed to have

acknowledged, that the inclusion of this waiver was separately bargained for and was a material

element of the Settlement and was relied upon by each and all of the Parties in entering into the

Settlement Agreement.

D.     The Parties acknowledge that they are aware that they or their attorneys

may hereafter discover claims or facts in addition to or different from those which they

now know or believe to exist with respect to the Released Claims or the Released

Defendants' Claims, but that it is their intention to hereby fully, finally, and forever settle

and release all of the Released Claims and Released Defendants' Claims. In furtherance

of this intention, the releases shall be and remain in effect notwithstanding the discovery

or existence of any such additional different claims or facts.

E.      Notwithstanding the above, the Court shall retain jurisdiction over the

Parties and the Settlement Agreement with respect to the future performance of the terms

of the Settlement Agreement, and to assure that all payments and other actions required

of any of the Parties by the Settlement are properly made or taken.

## X.    REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants to, and agrees with, each of the other Parties

as follows:

A.      Each of the Parties has had the opportunity to receive, and has received,

independent legal advice from his or its attorneys regarding the advisability of making

the Settlement, the advisability of executing this Settlement Agreement, and the legal and

income-tax consequences of this Settlement Agreement, and fully understands and

accepts the terms of this Settlement Agreement.

B.      Plaintiffs represent and warrant that no portion of any claim, right,

demand, action, or cause of action against any of the Releasees that Plaintiffs have or

may have arising out of the Lawsuits or pertaining to the design, manufacture, testing,

marketing, purchase, use, sale, servicing, or disposal of the Vacuum otherwise referred to

in this Settlement Agreement, and no portion of any recovery or settlement to which

Plaintiffs may be entitled, has been assigned, transferred, or conveyed by or for Plaintiffs

in any manner; and no Person other than Plaintiffs has any legal or equitable interest in

the claims, demands, actions, or causes of action referred to in this Settlement Agreement as those of Plaintiffs themselves.

C.      None of the Parties relies or has relied on any statement, representation, omission, inducement, or promise of any other Party (or any officer, agent, employee, representative, or attorney for any other Party) in executing this Settlement Agreement, or in making the Settlement provided for herein, except as expressly stated in this Settlement Agreement.

D.      Each of the Parties has investigated the facts pertaining to the Settlement and this Settlement Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that Party and his or its attorneys.

E.      Each term of this Settlement Agreement, under the titles of the various Sections, is contractual and not merely a recital.

## XI.    MISCELLANEOUS

### A.      Effect of Exhibits

The exhibits to this Settlement Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

### B.      Conditional Nature of Settlement

Defendants and Plaintiffs shall each have the right to terminate the Settlement by providing written notice of their election to do so to the other within thirty (30) days of: (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Settlement Agreement or any material part of it; (c) the Court's declining to enter the Final Approval Order in any material respect; (d) the date upon which the Final Approval Order is modified or reversed in any material respect by the Court of Appeals or

the Supreme Court; or (e) in the event that the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and none of the Parties elect to terminate this Settlement, the date that such Alternative Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

### C.    Effectiveness, Amendments, and Binding Nature

This Settlement Agreement may be amended only by a written agreement signed by the Parties. Except as otherwise stated above, each of the Parties, including Plaintiffs on behalf of themselves and the Settlement Class, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Settlement Agreement are hereafter found to be other than as now believed or assumed by that Party to be true or applicable, this Settlement Agreement shall nevertheless remain effective.

This Settlement Agreement is binding on, and shall inure to the benefit of, the Parties and their respective agents, employees, representatives, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest. All Releasees other than Defendants, who are Parties to this Settlement Agreement, are intended to be third-party beneficiaries of this Settlement Agreement.

### D.    Cooperation in Implementation

Defendants, Plaintiffs, and their respective counsel agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Settlement Agreement.

### E.    No Admission of Liability

The Parties are entering into this Settlement Agreement for the purpose of compromising and settling disputed claims. Nothing in this Settlement Agreement or in the documents relating to this Settlement Agreement shall be construed, deemed, or offered as an admission by any of

the Parties, or by any member of the Settlement Class, for any purpose in any judicial or

administrative action or proceeding, whether in law or in equity, regardless of whether this

Settlement Agreement ultimately becomes effective.

**F.     Entire Agreement**

This Agreement represents the entire agreement and understanding among the Parties and

supersedes all prior proposals, negotiations, agreements, and understandings relating to the

subject matter of this Settlement Agreement. The Parties acknowledge, stipulate, and agree that

no covenant, obligation, condition, representation, warranty, inducement, negotiation, or

understanding concerning any part or all of the subject matter of this Settlement Agreement has

been made or relied on except as expressly set forth in this Settlement Agreement. No

modification or waiver of any provisions of this Settlement Agreement shall in any event be

effective unless the same shall be in writing and signed by the person or Party against whom

enforcement of the Agreement is sought.

**G.     Arm's-Length Negotiations and Good Faith**

The Parties have negotiated all of the terms and conditions of this Settlement Agreement

at arm's length. All terms, conditions, and exhibits in their exact form are material and necessary

to this Settlement Agreement and have been relied upon by the Parties in entering into this

Settlement Agreement. The Parties agree to act in good faith during the settlement administration

process.

**H.     Stay Pending Court Approval**

The Parties agree to stay all proceedings, other than those proceedings necessary to carry

out or enforce the terms and conditions of the Settlement, until the Effective Date of the

Settlement has occurred. If, despite the Parties' best efforts, this Settlement Agreement should

fail to become effective, the Parties will return to their prior positions in the Lawsuits, in accordance with Section II of this Settlement Agreement.

The Parties also agree to use their best efforts to seek the stay and dismissal of, and to oppose entry of any interim or final relief in favor of any Settlement Class Member in, any other proceedings against any of the Releasees which challenges the Settlement or otherwise asserts or involves, directly or indirectly, a Released Claim.

**I.      Confidentiality Agreements**

All agreements made and orders entered during the Litigation relating to the confidentiality of information will survive the Settlement Agreement.

**J.      Extensions of Time**

The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice (subject to Court approval as to Court dates).

**K.      Authority to Execute Settlement Agreement**

Each counsel or other person executing this Settlement Agreement or any of its exhibits on behalf of any Party hereto warrants that such person has the authority to do so.

**L.      Right to Rescind**

If one thousand (1,000) Settlement Class Members properly and timely exercise their right to opt out of the Settlement, Defendants shall have the right to terminate this Settlement Agreement without penalty or sanction, without prejudice to its position on the issue of class certification and the amenability of the claims asserted in the Litigation to class treatment, and the Parties shall be restored to their litigation position existing immediately before the execution of this Settlement Agreement.

## M.     Signatures

This Settlement Agreement is being executed by counsel for Defendants and for Plaintiffs, each of whom represents and warrants that he or she has been granted full and complete authority from his or her client or clients to enter into this Settlement Agreement and to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

This Settlement Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original.

PLAINTIFFS:

Dated: _____April 1_____, 2016          _____
                                                                          ANDREW HARBUT


Dated: _____, 2016          _____
                                                                          ALAN MCMICHAEL


Dated: _____, 2016          _____
                                                                          KRIS REID


Dated: _____, 2016          _____
                                                                          DAVID PALOMINO


Dated: _____, 2016          _____
                                                                          SCOTT GIANNETTI

## M.    Signatures

This Settlement Agreement is being executed by counsel for Defendants and for Plaintiffs, each of whom represents and warrants that he or she has been granted full and complete authority from his or her client or clients to enter into this Settlement Agreement and to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

This Settlement Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original.

PLAINTIFFS:

Dated: _____, 2016

 

                                        ANDREW HARBUT

Dated: 3/31/2016, 2016

                                        ALAN MCMICHAEL

Dated: _____, 2016

                                        KRIS REID

Dated: _____, 2016

                                        DAVID PALOMINO

Dated: _____, 2016

                                        SCOTT GIANNETTI

**M.    Signatures**

This Settlement Agreement is being executed by counsel for Defendants and for
Plaintiffs, each of whom represents and warrants that he or she has been granted full and
complete authority from his or her client or clients to enter into this Settlement Agreement and to
take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to
effectuate its terms.

This Settlement Agreement may be executed in counterparts, and, when so executed,
shall constitute a binding original.

PLAINTIFFS:

Dated: _____, 2016           _____
                                                        ANDREW HARBUT


Dated: _____, 2016           _____
                                                        ALAN MCMICHAEL


Dated: ___3/30_____, 2016              _____
                                                        KRIS REID


Dated: _____, 2016           _____
                                                        DAVID PALOMINO


Dated: _____, 2016           _____
                                                        SCOTT GIANNETTI

**M.    Signatures**

This Settlement Agreement is being executed by counsel for Defendants and for Plaintiffs, each of whom represents and warrants that he or she has been granted full and complete authority from his or her client or clients to enter into this Settlement Agreement and to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

This Settlement Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original.

PLAINTIFFS:

Dated: _____, 2016          _____
                                                                    ANDREW HARBUT


Dated: _____, 2016          _____
                                                                    ALAN MCMICHAEL


Dated: _____, 2016          _____
                                                                    KRIS REID

Dated: _MARCH 30_, 2016                 _____
                                                                    DAVID PALOMINO


Dated: _____, 2016          _____
                                                                    SCOTT GIANNETTI

**M.**     **Signatures**

This Settlement Agreement is being executed by counsel for Defendants and for Plaintiffs, each of whom represents and warrants that he or she has been granted full and complete authority from his or her client or clients to enter into this Settlement Agreement and to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

This Settlement Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original.

PLAINTIFFS:

Dated: _____, 2016          _____
                                       ANDREW HARBUT

Dated: _____, 2016          _____
                                       ALAN MCMICHAEL

Dated: _____, 2016          _____
                                       KRIS REID

Dated: _____, 2016          _____
                                       DAVID PALOMINO

Dated: __April 1__, 2016          _____
                                       SCOTT GIANNETTI

ON BEHALF OF PLAINTIFFS
AND THE SETTLEMENT CLASS:

Dated: *March 30*, 2016

**DILWORTH PAXSON LLP**

By: *Elizabeth Goldstein*

    Elizabeth Goldstein
    egoldstein@dilworthlaw.com
Penn National Insurance Plaza
2 North 2nd Street
Suite 1101
Harrisburg, PA 17101
Telephone: (717) 236-4812
Facsimile: (717) 236-7811

**Liaison Counsel**

Dated: _____, 2016

**FARUQI & FARUQI LLP**

By: _____

    Adam Gonnelli
    agonnelli@faruqilaw.com
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

**Class Counsel**

Dated: _____, 2016

**LAX LLP**

By: _____

    Robert I. Lax
    rlax@lax-law.com
380 Lexington Avenue, 31st Floor
New York, NY 10168
Telephone: (212) 818-9150
Facsimile: (212) 818-1266

**Class Counsel**

28

ON BEHALF OF PLAINTIFFS
AND THE SETTLEMENT CLASS:

Dated: _____, 2016

DILWORTH PAXSON LLP

By: _____
      Elizabeth Goldstein
      egoldstein@dilworthlaw.com
Penn National Insurance Plaza
2 North 2nd Street
Suite 1101
Harrisburg, PA 17101
Telephone: (717) 236-4812
Facsimile: (717) 236-7811

**Liaison Counsel**

Dated: _____, 2016

**FARUQI & FARUQI LLP**

By: _____
      Adam Gonnelli
      agonnelli@faruqilaw.com
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

**Class Counsel**

Dated: _____, 2016

**LAX LLP**

By: _____
      Robert l. Lax
      rlax@lax-law.com
380 Lexington Avenue, 31st Floor
New York, NY 10168
Telephone: (212) 818-9150
Facsimile: (212) 818-1266

**Class Counsel**

28

ON BEHALF OF PLAINTIFFS
AND THE SETTLEMENT CLASS:

Dated: _____, 2016

Dated: _____, 2016

Dated: _Murch 30_____, 2016

**DILWORTH PAXSON LLP**

By: _____
    Elizabeth Goldstein
    egoldstein@dilworthlaw.com
Penn National Insurance Plaza
2 North 2nd Street
Suite 1101
Harrisburg, PA 17101
Telephone: (717) 236-4812
Facsimile: (717) 236-7811

**Liaison Counsel**

**FARUQI & FARUQI LLP**

By: _____
    Adam Gonnelli
    agonnelli@faruqilaw.com
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

**Class Counsel**

**LAX LLP**

By: _____
    Robert I. Lax
    rlax@lax-law.com
380 Lexington Avenue, 31st Floor
New York, NY 10168
Telephone: (212) 818-9150
Facsimile: (212) 818-1266

**Class Counsel**

28

Dated: 3/31, 2016

**MILBERG LLP**

By: _____

     Sanford P. Dumain
     sdumain@milberg.com
     Andrei Rado
     arado@milberg.com
     Jennifer Czeisler
     jczeisler@milberg.com
One Penn Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**Class Counsel**

Dated: 3/30, 2016

**LITE DePALMA GREENBERG LLC**

By: _____

     Bruce D. Greenberg
     bgreenberg@litedepalma.com
570 Broad Street. 12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0211

**Class Counsel**

**BARON & HERSKOWITZ**
Jon Herskowitz
jon@bhfloridalaw.com
9100 South Dadeland Boulevard
One Datran Center. Suite 1704
Miami, FL 33156
Telephone: (305) 670-0101
Facsimile: (305) 670-2393

**Executive Committee Member**

29

**PINILISHALPERN LLP**
William J. Pinilis
wpinilis@consumerfraudlawyer.com
160 Morris Street
Morristown, NJ 07962
Telephone: (973) 401-1111
Facsimile: (973) 401-1114

**Executive Committee Member**

**REESE LLP**
Michael R. Reese
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**Executive Committee Member**

**WALSH PLLC**
Bonner C. Walsh
bonner@walshpllc.com
3100 SCR 406
PO BOX 1343
Sonora, TX 76950
Telephone: (903) 200-6069
Facsimile: (866) 503-8206

**Executive Committee Member**

DEFENDANTS:

SHOP-VAC CORPORATION

By: _____
Jonathan Miller
Chairman, President and CEO
Shop-Vac Corporation


LOWE'S HOME CENTERS, LLC

By: _____
Paul A. Dame
Corporate Counsel
Lowe's Companies, Inc.


ON BEHALF OF DEFENDANTS SHOP-VAC CORPORATION AND LOWE'S HOME CENTERS, LLC:

Dated: _April 1__, 2016


SIDLEY AUSTIN LLP

By: _____
Michael L. Mallow
mmallow@sidley.com
Michael B. Shortnacy
mshortnacy@sidley.com
555 West 5th Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

**Counsel for Defendants Shop-Vac Corporation and Lowe's Home Centers, LLC**

31

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380<br><br>Civil Action No. 4:12-md-02380 (Judge Kane) |
| THIS DOCUMENT RELATES TO:<br>All Cases | |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL TO CLASS ACTION SETTLEMENT

On April 1, 2016, Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino and Scott Giannetti ("Plaintiffs"), on behalf of themselves and the Settlement Class, and Defendants Shop-Vac Corporation ("Shop-Vac"), Lowe's Home Centers, Inc. ("HCI"), and Lowe's HIW, Inc. ("HIW") (Plaintiffs and Defendants are collectively "the Parties") executed a proposed Settlement Agreement (the "Settlement Agreement"). Pursuant to the Settlement Agreement, the Parties jointly moved for entry of an order granting preliminary approval to the settlement provided for in the Settlement Agreement (the "Settlement"). Having reviewed the Settlement Agreement and considered the submissions in support of preliminary approval of the Settlement, the Court now finds, concludes, and orders as follows:

## I.   CERTIFICATION OF A NATIONWIDE SETTLEMENT CLASS

The Settlement Agreement provides for a nationwide class settlement of the claims that are the subject of this litigation.

A.     The Court has considered the (1) allegations, information, arguments, and authorities provided by the Parties in connection with pleadings previously filed in this case; (2) information, arguments, and authorities provided by Plaintiffs in their memoranda of points and authorities submitted in support of their unopposed motion for

entry of an order granting preliminary approval to the Settlement; (3) the terms of the

Settlement Agreement, including, but not limited to, the definition of the Settlement

Class and the benefits to be provided to the Settlement Class; and (4) the Settlement's

elimination of any potential manageability issue, and individualized issues of fact and

law that could have had a bearing on the certification of a nationwide class for trial in this

case. Based on those considerations, the Court hereby finds as follows:

      1.     Since at least January 1, 2006, Shop-Vac manufactured, advertised

for sale, sold, and/or distributed to others to sell Shop-Vac brand wet/dry vacuums

in the United States and its territories (the "Vacuums"), including the models

falling within the following series: AllAround Series, Ash Vacuum Series, Back

Pack Series, Blower Vac Series, BullDog Series, Farm Ranch and Home Series,

Hardware Store Wet/Dry Vac Series, Heavy Duty Portable Series, Industrial

Series, Lowe's Wet/Dry Vac Series, Menards Wet/Dry Vac Series, Micro Series,

Mulcher Series, Portable Series, Professional Series, Pump Vac Series, Quiet

Series, Stainless Series, The Right Stuff Series, Tool Mate Series, Wall-Mount

Series, and Walmart Wet/Dry Series.

      2.     Persons and entities throughout the nation purchased thousands of

Vacuums. The number of purchasers of the Vacuums satisfies the numerosity

requirement of Rule 23 of the Federal Rules of Civil Procedure. Defendants do

not contest this numerosity.

      3.     There are questions of law and fact common to all members of the

Settlement Class based on the manufacture, advertising, sale and distribution of

the Vacuums. Such questions include, but are not necessarily limited to, the following:

   a. Whether Defendants misrepresented the peak horsepower, horsepower, and/or tank capacity of the Vacuums;

   b. Whether Defendants knew their claims regarding the Vacuums were false and/or misleading;

   c. Whether Defendants breached express warranties by selling and delivering the Vacuums which do not conform to their represented product specifications and which do not perform as well as products which would conform, and whether Plaintiffs are entitled to revocation of acceptance and other warranty damages as a result;

   d. Whether Defendants breached implied warranties by selling the Vacuums which do not pass for sale into the trade without objection, due to the inaccurate specifications, and failure of the product to perform to specifications as to power and capacity;

   e. Whether Defendants have been unjustly enriched as a result of their misrepresentations;

   f. Whether Defendants sale of Vacuums which were delivered in a manner which do not conform to represented product specifications violate the Magnuson-Moss Act, 15 U.S.C. § 291, et seq.;

g.      Whether Defendants' actions as described above violate the consumer fraud laws of individual states; and

h.      Whether Plaintiffs and the other members of the Settlement Class are entitled to damages, restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

4.      Plaintiffs' claims are typical of the claims of the Settlement Class. Plaintiffs are members of the Settlement Class and allege that they have been damaged by the same conduct of Global that they allege has damaged other members of the Settlement Class. Plaintiffs' claims are not in conflict with or antagonistic to the claims of the Settlement Class as a whole. The claims of Plaintiffs and other members of the Settlement Class are based upon corresponding theories.

5.      The Settlement Class is ascertainable. The unnamed members of the Settlement Class have in common that each of them either (1) purchased a Vacuum, or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means.

6.      Plaintiffs can fairly, fully, and adequately protect the interests of the Settlement Class. Class Counsel are experienced in prosecuting complex class action litigation, and Plaintiffs and their counsel have no interest that conflicts with, or is adverse to, the interests of the Settlement Class.

7.      Questions of law and fact common to all members of the Settlement Class predominate over any questions affecting only individual members for settlement purposes.

8.    A nationwide class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of this controversy.

B.    Pursuant to Federal Rule of Procedure 23(b)(3), the Court hereby provisionally certifies the following Settlement Class for settlement purposes only:

> Each person in the United States and its territories who, from January 1, 2006 to the date of entry of this Preliminary Approval Order, either (1) purchased a Vacuum, or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means. Excluded from the Settlement Class is any person or entity who purchased or acquired a Vacuum for resale, all judges to whom the Lawsuits are assigned and the officers, directors and counsel of record of Defendants, and all employees of Defendants.

C.    Andrew Harbut, Alan McMichael, Kris Reid, David Palomino, and Scott Giannetti are appointed as the representatives of the Settlement Class, and the law firm Dilworth Paxson LLP is appointed as Liaison Counsel and the law firms Faruqi & Faruqi, LLP, Lax LLP, Lite DePalma Greenberg, LLC, and Milberg LLP are appointed as Class Counsel for the Settlement Class.

D.    If for any reason the Settlement Agreement should fail to become effective, Defendants' stipulation to certification of the Settlement Class, or to any other class or subclass, shall be null and void, and the Parties shall return to their respective positions in the Lawsuits as those positions existed on September 3, 2015, when the Parties reached an agreement-in-principle to settle. Nothing stated in the Settlement Agreement shall be deemed an admission or waiver of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in the MDL, the New Jersey Action, or any other action or proceeding of any kind.

II.     **PRELIMINARY APPROVAL OF THE TERMS OF THE SETTLEMENT**

Defendants have at all times disputed, and continue to dispute, Plaintiffs' factual allegations in the Lawsuits and to deny any liability for any of the claims that have or could have been alleged by Plaintiffs or other members of the Settlement Class.

A.     The Settlement requires Defendants to provide specified benefits to each member of the Settlement Class. The Settlement provides extend the manufacturer's warranty on the motors of the Vacuums for the longer of: (a) 24 months from the date a Vacuum's current manufacturer's warranty would expire by its own terms, or (b) 24 months after the Effective Date of the Settlement. The proposed Settlement further provides for changes to Peak Horsepower designations in the marketing of the Vacuums and to the tank capacity legend of the Vacuums.

B.     On a preliminary basis, therefore, taking into account (1) the value of the benefits to be provided by the Settlement to the Settlement Class; (2) the defenses asserted by Defendants, (3) the risks to the members of the Settlement Class that Defendants would successfully defend against claims arising out of the facts and legal theories pled and asserted in this case, whether litigated by members of the Settlement Class themselves or on their behalf in a class action, and (4) the length of time that would be required for members of the Settlement Class, or any group of members of the Settlement Class, to obtain a final judgment through one or more trials and appeals, the Settlement appears fair, reasonable, and adequate. Moreover, the Parties have reached the Settlement after vigorous litigation, significant investigation and discovery conducted by Plaintiffs, Class Counsel, and Defendants, and a protracted, arm's-length negotiation process facilitated by a mediator, and the Settlement is not in any way the product of

collusion. For all these reasons, the Settlement falls within the appropriate range of possible approval and does not appear in any way to be the product of collusion.

C.     Accordingly, the Settlement Agreement and corresponding Settlement are hereby preliminarily approved.

D.     The Court hereby adopts and incorporates the terms of the Settlement Agreement for the purposes of this Preliminary Approval Order, including the Definitions set forth in the Settlement Agreement.

III.   **APPROVAL OF THE SETTLEMENT NOTICE, THE PUBLICATION NOTICE, AND THE PLAN FOR DISTRIBUTING THE NOTICES**

As provided for in the Settlement Agreement, the Parties have submitted a proposed Settlement Notice, a copy of which is attached to this Order as Exhibit 1; a proposed Posted Notice, a copy of which is attached to this Order as Exhibit 2; a proposed Publication Notice, a copy of which is attached to this Order as Exhibit 3; and a plan for distributing the Settlement Notice to the Settlement Class described in the Settlement Agreement and for disseminating the Publication Notice, a copy of which is attached to this Order as Exhibit 4. Having reviewed each, the Court finds and concludes as follows:

A.     Distribution of the Settlement Notice and Publication Notice, in substantially the forms attached hereto, through the methodology described in the Settlement Agreement and the Notice Plan is the only notice required, and such notice satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable laws, and constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

B.     The Settlement Notice and Publication Notice fairly, accurately, and reasonably inform members of the Settlement Class of: (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about how to obtain additional information regarding this matter and the Settlement Agreement; and (3) appropriate information about how to challenge, or exclude themselves from, the Settlement, if they wish to do so. The Settlement Notice and Publication Notice also fairly and adequately inform members of the Settlement Class that if they do not comply with the specified procedures and the deadline for objections, they will lose any opportunity to have any objection considered at the Fairness Hearing or otherwise to contest approval of the Settlement or to appeal from any order or judgment entered by the Court in connection with the Settlement.

Accordingly, the Court hereby orders as follows:

1.     The form and content of the proposed Settlement Notice, Posted Notice, and Publication Notice are hereby approved. The proposed Notice Plan is hereby approved and notice shall be given to the Settlement Class as provided by the notice methodology described in the Settlement Agreement and the Notice Plan.

2.     Promptly following the entry of this Order, the Parties shall prepare final versions of the Settlement Notice and the Publication Notice, and incorporate into each of them the Fairness Hearing date and the deadlines set forth in paragraph IV of this Order.

3.     Within one (1) week/ seven (7) days after the entry of this Preliminary Approval Order, Defendants, through the Settlement Administrator,

shall cause the Posted Notice to be posted on the Settlement Website,

**www.shopvacphpsettlement.com**, and linked to the Support page of the Shop-Vac USA website.

       4.     Within three (3) weeks/twenty-one (21) days after the entry of this Order, the Settlement Administrator shall disseminate to every member of the Settlement Class who reasonably can be identified in Defendants' records, and for whom Defendants know and have readily available a mailing address or an e-mail address, a copy of the Settlement Notice. The Settlement Administrator will disseminate the Settlement Notice to members of the Settlement Class by email where an email address is known and readily available to Defendants. The Settlement Administrator will disseminate the Settlement Notice to members of the Settlement Class by United States Mail where a mailing address is known and readily available to Defendants, but an email address is not, or where the Settlement Administrator notifies Defendants that the e-mail was returned "undeliverable" and a mailing address is known and readily available to Defendants. Before the Settlement Administrator sends copies of the Settlement Notice by United States Mail, the Settlement Administrator will obtain or cause to be obtained address updates using a National Change of Address database and use any updated addresses when mailing. If any Settlement Notice is returned bearing a forwarding address for a member of the Settlement Class, the Settlement Administrator shall make one attempt to mail the Settlement Notice to that forwarding address.

5.      Defendants shall disseminate, cause to be disseminated, or ensure that the Settlement Administrator has disseminated, the Publication Notice as outlined by the Settlement Administrator's Notice Plan. Dissemination of the Publication Notice will start within three (3) weeks/twenty-one (21) days after the entry of this Order and will continue until the Notice Plan is fully implemented.

6.      This civil action was commenced after February 18, 2005. As a result, the Court directs Defendants to notify the appropriate Federal and State officials under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Defendants' Counsel shall file with the Court proof of compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

7.      No later than one (1) week/seven (7) days before the Fairness Hearing, Defendants shall file with this Court a declaration of compliance with paragraphs 3, 4, 5, and 6 above.

8.      Epiq Systems Class Action and Claims Solutions is hereby approved as the Settlement Administrator, whose reasonable costs in administering the Settlement are to be paid by Defendants.

9.      The Settlement Administrator shall administer the Settlement subject to the jurisdiction of the Court.

10.     The Settlement Administrator shall perform the following functions in accordance with the Settlement Agreement, this Preliminary Approval Order, and subsequent orders that may be entered by this Court in this case:

a.      As described above, disseminate the Settlement Notice to members of the Settlement Class by e-mail, where an e-mail address is known and readily available to Defendants, and by mail, where a mailing address is known and readily available to Defendants but an e-mail address is not;

b.      Before disseminating the Settlement Notice, establish the Settlement Website;

c.      Before disseminating the Settlement Notice, set up and operate a toll-free automated interactive voice response system through which Settlement Class Members can access settlement information and facilitate requests for the Settlement Notice and other settlement information;

d.      Send via e-mail or mail notice packets or other settlement information to all those who may request via the toll-free number or mail;

e.      Before disseminating the Settlement Notice, establish a postal address to which Settlement Class Members can request to be excluded from the Settlement Class;

f.      Disseminate Publication Notice and supervise and carry out the Notice Plan;

g.      Process requests for exclusion from the Settlement in accordance with Section IV.B of the Settlement Agreement; and

h.      Promptly provide to Class Counsel and Defendants'

Counsel copies of the Requests for Exclusion and a list of the names of all

persons who submitted Requests for Exclusion. Class Counsel and

Defendants shall jointly report in writing to the Court, no later than one (1)

week/seven (7) days before the Fairness Hearing, the names of all such

persons.

## IV.    PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT

### A.    Fairness Hearing

The Court hereby schedules a Fairness Hearing at _____:_____ ___.m. on

_____, 2016, which date is approximately (and no less than) sixteen (16)

weeks/one hundred and twelve (112) days after the entry of this Order, to determine whether the

certification of the Settlement Class, the designation of Plaintiffs as class representatives, the

appointment of Class Counsel, the Settlement Agreement, and the Settlement should receive

final approval. At that time, the Court also will consider Class Counsel's application for an

award of attorneys' fees and reimbursement of costs they incurred prosecuting both of the

Lawsuits, as well as awards to be paid to Plaintiffs in both of the Lawsuits, all in accordance with

the terms of the Settlement Agreement (the "Application").

### B.    Deadline for Requests for Exclusion from the Settlement Class

Settlement Class Members shall be bound by all determinations and judgments in the

Litigations, whether favorable or unfavorable, unless such persons request exclusion from the

Settlement Class in a timely and proper manner, as hereinafter provided. Members of the

Settlement Class who wish to be excluded from the Settlement Class must mail their requests for

exclusion in written form to the Settlement Administrator by first-class United States mail,

postmarked by the United States Postal Service no later than thirteen (13) weeks/ninety-one (91)

days after the entry of this Order. Any request for exclusion submitted in any other manner shall be deemed to have been submitted when actually received by the Settlement Administrator. The request for exclusion shall clearly indicate the name, address and telephone number of the person seeking exclusion, that the sender requests to be excluded from the Settlement Class in *In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380, Civil Action No. 4:12-md-02380, and must be signed by the person seeking exclusion. The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court.

### C.    Deadline for Filing Objections and Requests to Appear

All objections to certification of the Settlement Class, the designation of Plaintiffs as class representatives, the appointment of Class Counsel, the Settlement, the Settlement Agreement, or Class Counsel's Application, shall be made in writing and, no later than thirteen (13) weeks/ninety-one (91) days after the entry of this Order, filed with this Court and mailed to Defendants' Counsel and to the representative for Plaintiffs' Counsel listed below, by first-class United States Mail, at the following addresses:

Clerk of the Court
U.S. District Court for the Middle District of Pennsylvania
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17101

For Defendants:

Michael B. Shortnacy
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013

For the Settlement Class:

Elizabeth Goldstein
DILWORTH PAXSON LLP
Penn National Insurance Plaza
2 North 2nd Street, Suite 1101
Harrisburg, PA 17101

13

Any written objection must include: (i) your name, address, and telephone number; (ii) the full case name and number (*In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380, Civil Action No. 4:12-md-02380); (iii) a statement that you are a Settlement Class Member; (iv) a statement of each objection asserted; (v) a detailed description of the facts underlying each objection; (vi) a detailed description of the legal authorities supporting each objection; (vii) a statement of whether you intend to appear and speak at the Fairness Hearing and, if so, how much time the you anticipate needing to present the objection; (viii) a list of the exhibits that you may offer during the Fairness Hearing, along with copies of such exhibits; and (ix) your signature. In addition, if applicable, please include: (i) the identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to your objection; (ii) the number of times in which you, your counsel (if any), or your counsel's law firm (if any) has objected to a class action settlement within the five years preceding the date that the objector files the objection and the caption of each case in which such objection was made; and (iii) a statement disclosing any consideration that you, your counsel (if any), or your counsel's law firm (if any) has received in connection with the resolution or dismissal of an objection to a class action settlement within the five years preceding the date that the objector files the objection. If the Objector or his or her counsel has *not* objected to any other class action settlement in any court in the United States in the previous five (5) years, he or she must affirmatively state as much in their submission to the Court. Any papers not filed and served in the prescribed manner and time will not be considered at the Fairness Hearing, and all objections not made in the prescribed manner and time shall be deemed waived.

The filing of an objection allows Class Counsel or Defendants' Counsel to take the Objector's deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon

location, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an Objector to make himself or herself available for a deposition or otherwise comply with expedited discovery requests may result in the Court striking the Objector's objection and otherwise denying the Objector the opportunity to make an objection or be further heard. The Court may tax the costs of any such discovery to the Objector or the Objector's counsel should the Court determine that the objection is frivolous or is made for an improper purpose.

All persons wishing to appear at the Fairness Hearing, either in person or by counsel, for the purpose of objecting to any aspect of the certification of the Settlement Class, the designation of Plaintiffs as representatives of the Settlement Class, the appointment of Class Counsel, the Settlement, the Settlement Agreement, or Class Counsel's Application, must file with the Court and serve, on Defendants' Counsel and on the listed representative for Plaintiffs' Counsel, no later than thirteen (13) weeks/ninety-one (91) days after the entry of this Order,, a notice of their intention to appear setting forth the basis of their objections and summarizing the nature and source of any evidence they intend to present at the Fairness Hearing.

Any memorandum or other material the Parties wish to submit in response to any objections to the certification of the Settlement Class, the designation of Plaintiffs as representatives of the Settlement Class, the appointment of Class Counsel, the Settlement, the Settlement Agreement, or Class Counsel's Application, or otherwise in support of the Settlement Class, the Settlement, the Settlement Agreement, or Class Counsel's Application, shall be made in writing and, no later than one (1) week/seven (7) days before the Fairness Hearing, filed with this Court and served on each other and any objectors.

**D.     Deadline for Class Counsel to File Papers in Support of Final Approval of Settlement and Fee Application**

No later than three (3) weeks/twenty-one (21) days before the deadlines for Requests for Exclusion and for Filing Objections and Requests to Appear, Class Counsel shall file with this Court, and serve on Defendants, Class Counsel's Application, pursuant to the Settlement Agreement, their papers in support of final approval of the Settlement and their application for an award of attorneys' fees and reimbursement of costs incurred in the Lawsuits and for awards to Plaintiffs.

**V.     STAY OF PROCEEDINGS**

Pending final determination of whether the Settlement should be approved, the Plaintiffs, all other Settlement Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence or prosecute any action which asserts Released Claims against any Releasee. Pending the Fairness Hearing, the Court stays all proceedings in the Lawsuit, other than those proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement.

IT IS SO ORDERED.

Dated: _____, 2016

_____
YVETTE KANE, District Judge
Middle District of Pennsylvania

EXHIBIT 1 TO EXHIBIT A

## LEGAL NOTICE

**If you bought or received a Shop-Vac® brand wet/dry vacuum between
January 1, 2006 and _____, 2016, you could benefit from a class action settlement.**

A settlement has been proposed in a class action lawsuit (*In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380, Civil Action No. 4:12-md-02380) about certain advertising related to Shop-Vac® brand wet/dry vacuums (the "Vacuums"). The U.S. District Court for the Middle District of Pennsylvania authorized this notice and will decide whether to approve the settlement.

**What is the case about?** Plaintiffs allege that Defendants Shop-Vac Corporation and Lowe's Home Centers, LLC misrepresented the horsepower ratings and tank capacity of the Vacuums. The Defendants deny these allegations.

**Who's included?** The Settlement Class includes all persons in the United States and its territories who, from January 1, 2006 to _____, 2016, either (1) purchased a Vacuum, or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means, other than for resale or distribution.

**What does the Settlement provide?** If approved, the proposed Settlement will extend the manufacturer's warranty on the motors of the Vacuums for at least 2 years. The proposed Settlement also includes changes to the Peak Horsepower ratings and tank capacity on marketing materials.

**How do you get benefits?** You do not need to do anything in order to qualify for the settlement benefits. The manufacturer's warranty extension will automatically apply and the changes to the Peak Horsepower ratings and tank capacity description will be made.

**What are your options?** The Court will hold a Fairness Hearing at the Ronald Reagan Federal Bldg. & U.S. Courthouse, 228 Walnut Street, Harrisburg, PA 17101 on _____, 2016 at __:__ _.m. to determine whether the settlement is fair, reasonable and adequate and to consider Class Counsel's applications for attorneys' fees and expenses of up to $4,250,000 to be paid by Defendants and for awards up to $5,000 each for the five plaintiffs to be paid from the attorneys' fees. If you wish, you or your lawyer may ask to appear and speak at the hearing at your own expense, but you do not have to.

If the Settlement is approved by the Court, and you do not exclude yourself, you will be bound by the judgment and legal claims that you may have against Defendants related to the Vacuums will be released. If you do not wish to be bound by the Settlement, you must mail a written request for exclusion to *Shop-Vac Wet/Dry Vacuum Class Settlement*, Settlement Administrator, P.O. Box _____, CITY, ST ZIP postmarked by _____, 2016.  Or, you may file a formal written objection to the Settlement by _____, 2016.

**This notice is only a summary.** For more information, visit **www.shopvacphpsettlement.com**, or call 1-800-000-0000. Do not contact the Court or Defendants.

EXHIBIT 2 TO EXHIBIT A

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF
PENNSYLVANIA

## NOTICE OF PROPOSED CLASS SETTLEMENT

If you (1) purchased, (2) received as a gift, or (3) acquired possession through other lawful means a Shop-Vac brand wet/dry vacuum between January 1, 2006 and _____, 2016 in the United States, other than for resale or distribution, then you could be entitled to benefits under a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The Settlement resolves lawsuits over advertising and marketing claims about the horsepower ratings of Shop-Vac Vacuums.[1]

- The Settlement would extend the manufacturer's warranty on the motors of the Vacuums for the longer of: (a) 24 months from the date a Vacuum's current manufacturer's warranty would expire by its own terms, or (b) for those Class Members whose current manufacturer's warranty has expired by its own terms prior to the Effective Date, 24 months after the Effective Date. The proposed Settlement further provides for changes to Peak Horsepower designations in the marketing of the Vacuums and to the tank size legend of the Vacuums.

- Your legal rights are affected whether you act or do not act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **EXCLUDE YOURSELF BY** _____, 2016 | Receive no warranty extension.  You will not be bound by the terms of the Settlement. This is the only option that allows you to ever be part of any other lawsuit against Defendants and the other Releasees about the Released Claims. |
| **OBJECT BY** _____, 2016 | Write to the Court about why you do not like the Settlement. You must remain a member of the Settlement Class (i.e., you cannot ask to be excluded) in order to object to the settlement. |
| **GO TO A HEARING ON** _____, 2016 | Ask to speak in Court about the Settlement. |
| **DO NOTHING** | Receive a warranty extension and be bound by the terms of the Settlement.  Give up your rights to sue. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

---

[1] Capitalized terms used herein have the same meaning ascribed to them in the Class Action Settlement Agreement, which can be viewed on the settlement website **www.shopvacphpsettlement.com**.

QUESTIONS? CALL 1-8__-___-____ TOLL FREE OR VISIT www.shopvacphpsettlement.com

- The Court in charge of this case has preliminarily approved the Settlement, but still must decide whether to give final approval. The relief to be provided to Settlement Class Members will only be provided if the Court gives final approval to the Settlement and after any appeals are resolved. *Please be patient.*

INSERT TOC

## BACKGROUND INFORMATION

| 1.  Why did I get this notice? |
|---|

If you (1) purchased, (2) received as a gift, or (3) acquired possession through other lawful means a Vacuum in the United States or its territories between January 1, 2006 and _____, 2016, other than for resale or distribution, then you could be entitled to benefits under the proposed settlement that has been reached in the class action lawsuits.

The Court directed that this Notice be posted because Settlement Class Members have a right to know about the proposed settlement, and about all of their options, before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after objections and appeals are resolved, Defendants will provide the benefits to the Settlement Class that the Settlement provides.

This Notice explains the nature of the lawsuits, the general terms of the proposed settlement, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Middle District of Pennsylvania, and the case is known as *In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380, Civil Action No. 4:12-md-02380 (the "MDL").

The Settlement would also release claims in a parallel action in the Superior Court of New Jersey, Law Division, Bergen County, captioned *Palomino, et al. v. Shop-Vac Corporation*, Docket No. BER-L-1399-12 (the "New Jersey Action" and, together with the MDL, the "Lawsuits"). That case was brought on behalf of New Jersey purchasers of Vacuums against Shop-Vac only, and its allegations parallel those of the MDL. David Palomino and Scott Giannetti are the named plaintiffs in the New Jersey Action. The court in the New Jersey Action will be asked to enter an order of dismissal with prejudice and without costs (other than as stated in the Settlement Agreement).

The people who sued, Andrew Harbut, Alan McMichael, and Kris Reid in the MDL and David Palomino and Scott Giannetti in the New Jersey Action, are called "Plaintiffs" and the companies they sued, Shop-Vac Corporation ("Shop-Vac") in both the MDL and the New Jersey Action and Lowe's Home Centers, LLC in the MDL, are called "Defendants."

| 2.  What is this lawsuit about? |
|---|

The Lawsuits claimed, among other things, that Shop-Vac misrepresents the operational horsepower of its Vacuums. Defendants deny any wrongdoing and any liability whatsoever, and no court or other entity has made any judgment or other determination of any liability.

The above description of the Lawsuits is general and does not cover all of the issues and proceedings that have occurred. In order to see the complete file for the MDL, you should visit the website of the Administrative Office of the U.S. Courts, PACER Service Center, located at http://www.pacer.gov/. The files for the New Jersey Action are available at the Civil Law Records Office, 10 Main Street, Room 110, Hackensack, NJ 07601. You can also review a

number of documents pertinent to this case, including the Class Action Settlement Agreement dated April 1, 2016 (the "Settlement Agreement") at **www.shopvacphpsettlement.com**.

| **3.  What is a class action and who is involved?** |
| --- |

In a class action, one or more individuals, called class representatives (in this case Andrew Harbut, Alan McMichael, Kris Reid, David Palomino, and Scott Giannetti), sue on behalf of people who have similar claims. All these people are a class or class members, and are represented by attorneys referred to as Class Counsel. One court resolves the issues for all class members, except those who exclude themselves from the class. U.S. District Court Judge Yvette Kane is presiding over this class action.

| **4.  Why is there a settlement?** |
| --- |

The Court has not decided in favor of Plaintiffs or Defendants. Instead, both sides, with the assistance of former Chief Magistrate Judge of the U.S. District Court, Northern District of California, Edward A. Infante acting as a mediator, agreed to a settlement. That way, they avoid the cost of a trial, and the Settlement Class Members receive relief after the settlement is approved by the Court rather than years from now, if at all. The Plaintiffs and Class Counsel believe the settlement is in the best interest of the Settlement Class.

| **5.  How do I know if I am part of the settlement?** |
| --- |

The Court directed, for the purposes of the proposed settlement, that everyone who fits this description is a Settlement Class Member:

> Each person in the United States and its territories who, from January 1, 2006 to _____, 2016, either (1) purchased a Vacuum, or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means. Excluded from the Settlement Class is any person or entity who purchased or acquired a Vacuum for resale, all judges who have had any role in the Lawsuits, and the officers, directors and counsel of record of Defendants, and all employees of Defendants.

| **6.  What if I am still not sure if I am included?** |
| --- |

If you are still not sure whether you are included, you can ask for free help. You can write to the Settlement Administrator at *Shop-Vac Wet/Dry Vacuum Class Settlement*, Settlement Administrator, P.O. Box ____, CITY, ST ZIP, call 1-800-____-_____, or visit **www.shopvacphpsettlement.com** for more information. You may also contact Class Counsel at the address listed in response to Question 15 below.

## THE SETTLEMENT BENEFITS — WHAT YOU GET

### 7.  What does the Settlement provide?

In accordance with the terms of this Settlement Agreement and its exhibits, Defendants will provide benefits as follows:

1.  Upon the Effective Date, Shop-Vac will extend the manufacturer's warranty on the motors of the Vacuums for the longer of: (a) 24 months from the date a Vacuum's current manufacturer's warranty would expire by its own terms, or (b) for those Class Members whose current manufacturer's warranty has expired by its own terms prior to the Effective Date, 24 months after the Effective Date;

2.  No later than thirty (30) calendar days after the Effective Date, Shop-Vac will provide on its website, product boxes, and any other marketing materials that refer to Peak Horsepower of the Vacuums or their motors, information that is materially consistent with the following statement:

"Peak Horsepower" (PHP) is a term used in the wet-dry vacuum industry for consumer comparison purposes. It does not denote the operational horsepower of a wet-dry vacuum but rather the horsepower output of a motor, including the motor's inertial contribution, achieved in laboratory testing. In actual use, Shop-Vac's motors do not operate at the peak horsepower shown.

3.  No later than thirty (30) calendar days after the Effective Date, Shop-Vac will alter the tank capacity legend of the Vacuums to "Tank capacity refers to actual tank volume, and does not reflect capacity available during operation"; and

4.  For the duration of the warranty extension period, Shop-Vac will maintain an informational webpage and dedicated toll-free number for Settlement Class Members to seek a warranty remedy under the Settlement. All inquiries concerning the extended warranty will be administered by Shop-Vac's warranty/customer service department, knowledgeable to answer such inquiries related to the warranty extension.

You do not need to do anything in order to qualify for the benefits described above. The manufacturer's warranty extension will automatically apply and the changes to the Peak Horsepower ratings and tank capacity description will be made.

### 8.  When will I receive this benefit?

The Court will hold a hearing on _____, 2016 to decide whether to approve the Settlement. If Judge Kane approves the Settlement after that hearing, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Please be patient.

## DISMISSAL OF ACTION AND RELEASE OF ALL CLAIMS

| 9.   What am I giving up to receive these benefits or stay in the class? |
| --- |

Unless you exclude yourself, you are staying in the Settlement Class, and that means that all of the Court's orders will apply to you and legally bind you. Upon the "Effective Date," you will release all "Released Claims" (as defined below) against the "Releasees" (as defined below).

"Released Claims" means any and all claims, actions, causes of action, administrative claims, demands, debts, liens, offsets or liabilities, damages, costs, attorney's fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, other than claims for personal injury, that Plaintiffs or any member of the Settlement Class now have or, absent the Settlement Agreement, may in the future have, against Releasees, or any of them, by reason of any act, omission, harm, matter, cause, or event whatsoever that has occurred at any time up to and including the entry of the Preliminary Approval Order, that (a) has been alleged in the Lawsuits or (b) could have been alleged in the Lawsuits or in another court action and relates (i) to any of the alleged inadequacies, misstatements, or issues of or associated with the Vacuums alleged in the Lawsuits or (ii) to any act, omission, damage, matter, cause, or event whatsoever arising out of or related to the initiation, defense, or settlement of the Lawsuits or the claims or defenses asserted or that could have been asserted in the Lawsuits.

"Releasees" means (a) Defendants, together with their respective predecessors and successors in interest, parents, subsidiaries, affiliates, and assigns; (b) each of their respective past, present, and future owners, shareholders, officers, directors, agents, representatives, employees, attorneys, and insurers; and (c) all suppliers, distributors, dealers, retailers, trade partners, licensors, licensees, franchisees, public relations firms, advertising and production agencies, and other entities, whether foreign or domestic, who were or are in the chain of, or played any role in, the design, testing, manufacture, assembly, distribution, marketing, sale, lease, installation, or servicing of the Vacuums or their component parts.

The "Effective Date" will occur when an order entered by the Court approving the Settlement becomes final and not subject to appeal.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want benefits from this settlement, but you want to keep any right you may have to sue or continue to sue the Defendants and the other Releasees, on your own, about the Released Claims, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as "opting out" of the settlement class.

| 10. How do I get out of the Settlement? |
| --- |

To exclude yourself from the Settlement Class, you must send a signed letter ("Exclusion Request") by mail stating that you "want to be excluded from the Settlement Class, do not wish to be a Settlement Class Member, and want to be excluded from any judgment entered pursuant to the settlement in *In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380,

Civil Action No. 4:12-md-02380." Your letter must provide your name, address, telephone number, and your signature. You must mail your exclusion request postmarked no later than _____, 2016 to the Settlement Administrator at:

*Shop-Vac Wet/Dry Vacuum* Class Settlement
EXCLUSIONS
Settlement Administrator
P.O. Box _____
CITY, ST ZIP

You cannot exclude yourself on the phone or by e-mail. If you submit a valid Exclusion Request, you will not get any settlement benefits, and you cannot object to the Settlement. However, you will not be legally bound by anything that happens in this lawsuit.

---

**11. If I do not exclude myself, can I sue the Defendants and the other Releasees for the same thing later?**

---

No. Unless you submit a valid Exclusion Request, you give up the right to sue Defendants and other Releasees for the claims that the Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that pending lawsuit immediately. You must exclude yourself from *this* Settlement Class to continue your own lawsuit. Remember, the exclusion deadline is _____, 2016.

---

**12. If I exclude myself, can I still receive settlement benefits?**

---

No. If you submit a valid Exclusion Request, you are no longer a Settlement Class Member and will not receive the warranty extension. But, you may exercise any right you may have to sue, continue to sue, or be part of a different lawsuit against the Defendant and the other Releasees about the Released Claims.

### THE LAWYERS REPRESENTING THE CLASS

---

**13. Do I have a lawyer in this case?**

---

The Court ordered that the law firms of Faruqi & Faruqi, LLP in New York, NY, Lax LLP in New York, NY, Lite DePalma Greenberg, LLC in Newark, NJ, and Milberg LLP in New York, NY will represent the Settlement Class. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

---

**14. How will the lawyers be paid?**

---

Class Counsel will ask the Court for an award of attorneys' fees and expenses of up to $4,250,000. The fees and expenses would pay for investigating the facts, litigating the case, and negotiating the settlement and will be the only payment to Plaintiffs' Counsel for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis. The attorneys' fees and expenses will be paid by Defendants.

Class Counsel will ask for awards of up to $5,000 each to Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino and Scott Giannetti for acting on behalf of the entire Settlement Class as class representatives. The plaintiff awards will be paid from the award of attorneys' fees.

Defendants have agreed to pay (or cause to be paid) up to $4,250,000 to Class Counsel, on behalf of Plaintiffs' Counsel, for attorneys' fees and expenses. This amount was agreed to after extensive negotiation and with the assistance of Judge Infante (Ret.) as mediator and after agreement on all other substantive terms of the Settlement.

The Court must approve any attorneys' fees and expenses or awards to the Plaintiffs. The Court may award less than these amounts.

Defendants are also paying the costs to notify the Settlement Class and to administer the settlement. These attorneys' fees and expenses, awards to Plaintiffs, and notice and administration costs will not reduce the benefits available to Settlement Class.

Class Counsel will file their papers in support of final approval of the Settlement and their application for attorneys' fees and expenses and for plaintiff awards to the Class Representatives, by no later than _____, 2016. Copies of these papers will be available on the settlement website, **www.shopvacphpsettlement.com**.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it.

### 15. How do I tell the Court that I do not like the settlement?

If you are a Settlement Class Member (that is, if you do not exclude yourself, or opt-out, from the settlement), you can object to the settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views.

To object, you must send a signed letter stating that you object to the proposed settlement in *In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380, Civil Action No. 4:12-md-02380. Your written objection must include:

(i) your name, address, and telephone number;

(ii) the full case name and number (*In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380, Civil Action No. 4:12-md-02380);

(iii) a statement that you are a Settlement Class Member;

(iv) a statement of each objection asserted;

(v) a detailed description of the facts underlying each objection;

(vi) a detailed description of the legal authorities supporting each objection;

(vii) a statement of whether you intend to appear and speak at the Fairness Hearing and, if so, how much time the you anticipate needing to present the objection;

(viii) a list of the exhibits that you may offer during the Fairness Hearing, along with copies of such exhibits; and

(ix) your signature.

You do not need to hire legal counsel to comment on or object to the Settlement. But, if you are represented by legal counsel, you must also file your comment or objection to the settlement electronically with the Court.

In addition, if applicable, please include: (i) the identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to your objection; (ii) the number of times in which you, your counsel (if any), or your counsel's law firm (if any) has objected to a class action settlement within the five years preceding the date that the objector files the objection and the caption of each case in which such objection was made; and (iii) a statement disclosing any consideration that you, your counsel (if any), or your counsel's law firm (if any) has received in connection with the resolution or dismissal of an objection to a class action settlement within the five years preceding the date that the objector files the objection. If the Objector or his or her counsel has *not* objected to any other class action settlement in any court in the United States in the previous five (5) years, he or she must affirmatively state as much in their submission to the Court.

The filing of an objection allows Class Counsel or Defendants' Counsel to take the Objector's deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an Objector to make himself or herself available for a deposition or otherwise comply with expedited discovery requests may result in the Court striking the Objector's objection and otherwise denying the Objector the opportunity to make an objection or be further heard. The Court may tax the costs of any such discovery to the Objector or the Objector's counsel should the Court determine that the objection is frivolous or is made for an improper purpose.

The deadline to file your objection is _____, 2016. The objection must be **filed** with the Court by that date. The address to file your written objection with the United States District Court is:

Clerk of the Court
U.S. District Court for the Middle District of Pennsylvania
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17101

You must also send a copy of your written objection to counsel for both parties at the addresses below:

| FOR DEFENDANTS: | FOR THE SETTLEMENT CLASS: |
|---|---|

| Michael B. Shortnacy | Elizabeth Goldstein |
|---|---|
| SIDLEY AUSTIN LLP | DILWORTH PAXSON LLP |
| 555 West Fifth Street, Suite 4000 | Penn National Insurance Plaza |
| Los Angeles, California 90013 | 2 North 2nd Street, Suite 1101 |
| | Harrisburg, PA 17101 |

If you do not timely make your objection, you will be deemed to have waived all objections and will not be entitled to speak at the fairness hearing.

## 16. What is the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you remain a Settlement Class Member. Excluding yourself is telling the Court that you do not want to be a part of the Settlement Class and wish to forgo the relief provided by the Settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court has preliminarily approved the Settlement Agreement and will hold a hearing on _____, 2016 to decide whether to give final approval to the proposed settlement. You may attend and you may ask to speak, but you do not have to.

## 17. When and where will the Court decide whether to approve the proposed settlement?

The Court will hold the Fairness Hearing at ___:_____ ___.m. on _____, 2016 at the Ronald Reagan Federal Bldg. & U.S. Courthouse, 228 Walnut Street, Harrisburg, PA 17101. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.

If there are objections, the Court will consider them. Judge Kane will listen to people who have asked to speak at the hearing. *See* Question 19 for more information about speaking at the hearing. After the Fairness Hearing, the Court will decide whether to approve the Settlement and whether to award any attorneys' fees and expenses and awards to Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino and Scott Giannetti. We do not know how long these decisions will take.

## 18. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Kane may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to the Court to talk about it. As long as you filed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary. Settlement Class Members do not need to appear at the hearing or take any other action to indicate their approval.

**19. May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380, Civil Action No. 4:12-md-02380." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than _____, 2016, and be sent to the Clerk of the Court, Defense Counsel, and the representative for the Settlement Class, at the three addresses in Question 15. The letter must state the position you intend to present at the hearing, state the identities of all attorneys, if any, who will represent you, and must include your full name, current address, telephone number, and your signature. Unless otherwise ordered by the Court, you cannot speak at the Fairness Hearing if you excluded yourself from the Settlement Class or if you have not provided written notice of your intention to speak at the Fairness Hearing by the deadline identified, and in accordance with the procedures described in this section and Question 15 above.

## IF YOU DO NOTHING

**20. What happens if I do nothing at all?**

If you do nothing, and if you don't opt out by the deadline in response to Question 10, you will receive the warranty extension described in response to Question 7. If you do not exclude yourself from the Settlement Class, you will be legally bound by the settlement and release, and cannot sue Defendants and the other Releasees about the Released Claims.

## GETTING MORE INFORMATION

**21. Are there more details about the Settlement?**

This notice summarizes the proposed settlement. More detailed terms are in the signed Settlement Agreement. You can get a copy of the Settlement Agreement by writing to Class Counsel at the address above or by visiting **www.shopvacphpsettlement.com**, where you will also find Class Counsel's papers in support of the Settlement and their applications for attorneys' fees, expenses, and plaintiff awards (after they are filed), and other documents. All other papers that have been filed in the MDL may be inspected at the Office of the Clerk of the Court of the United States District Court for the Middle District of Pennsylvania, Ronald Reagan Federal Bldg. & U.S. Courthouse, 228 Walnut Street, Harrisburg, PA 17101 and all other papers that have been filed in the New Jersey Action may be inspected at the Civil Law Records Office, 10 Main Street, Room 110, Hackensack, NJ 07601, during regular business hours.

**PLEASE DO NOT CALL THE COURT OR THE CLERK OF COURT FOR ADDITIONAL INFORMATION ABOUT THE SETTLEMENT.**

EXHIBIT 3 TO EXHIBIT A

## SUMMARY NOTICE OF PROPOSED NATIONWIDE CLASS ACTION SETTLEMENT

## IF YOU BOUGHT OR RECEIVED A SHOP-VAC® BRAND WET/DRY VACUUM BETWEEN JANUARY 1, 2006 AND _____, 2016, THEN YOU COULD BENEFIT FROM A CLASS-ACTION SETTLEMENT

### This Legal Notice May Affect Your Rights. Please Read It Carefully.

A settlement has been proposed in a class action lawsuit (*In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380, Civil Action No. 4:12-md-02380) about certain advertising related to Shop-Vac® brand wet/dry vacuums (the "Vacuums"). The U.S. District Court for the Middle District of Pennsylvania authorized this Notice and will decide whether to approve the settlement.

### What is the case about?

Plaintiffs allege that Defendants Shop-Vac Corporation and Lowe's Home Centers, LLC misrepresented the horsepower ratings and tank capacity of the Vacuums. Defendants deny these allegations.

The Settlement would extend the manufacturer's warranty on the motors of the Vacuums for at least 2 years. The proposed Settlement also includes changes to the Peak Horsepower ratings and tank capacity on marketing materials

### Who's included?

"Settlement Class Members" are each person in the United States and its territories who, from January 1, 2006 to _____, 2016, either (1) purchased a Vacuum, or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means, other than for resale or distribution.

### How do you get benefits?

You do not need to do anything in order to qualify for the settlement benefits. The manufacturer's warranty extension will automatically apply and the changes to the Peak Horsepower ratings and tank capacity description will be made.

### What are your options?

The Court will hold a Fairness Hearing at the Ronald Reagan Federal Bldg. & U.S. Courthouse, 228 Walnut Street, Harrisburg, PA 17101 on _____, 2016 at __:__ .m. to determine whether the settlement is fair, reasonable and adequate and to consider Class Counsel's applications for attorneys' fees and expenses of up to $4,250,000 to be paid by Defendants and for awards up to $5,000 each for the five plaintiffs to be paid from the attorneys' fees. If you wish, you or your lawyer may ask to appear and speak at the hearing at your own expense, but you do not have to.

If the Settlement is approved by the Court, and you do not exclude yourself, you will be bound by the judgment and legal claims that you may have against Defendants related to the Vacuums will be released. If you do not wish to be bound by the Settlement, you must mail a written request for exclusion to *Shop-Vac Wet/Dry Vacuum Class Settlement*, Settlement Administrator, P.O. Box ____, CITY, ST ZIP postmarked by _____, 2016. Or, you may file a formal written objection to the Settlement by _____, 2016.

**This notice is only a summary.** For more information, visit **www.shopvacphpsettlement.com**, or call 1-800-000-0000. Do not contact the Court or Defendants.

### Key Dates

| | |
|---|---|
| Deadline to request exclusion from the Class | Must be postmarked or received by _____, 2016 |
| Deadline to object to the Settlement | Must be postmarked or received by _____, 2016 |
| Deadline to send your Notice of Intention to Appear at the Fairness Hearing | Must be postmarked or received by _____, 2016 |
| Court's Fairness Hearing | _____, 2016 at __:__ .m. |

**www.shopvacphpsettlement.com**                                                                1-800-000-0000

EXHIBIT 4 TO EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380 |
| | Civil Action No. 4:12-md-2380 (Judge Kane) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**DECLARATION OF CAMERON R. AZARI, ESQ., ON SETTLEMENT NOTICE PLAN**

I, CAMERON R. AZARI, ESQ., hereby declare and state as follows:

1.    My name is Cameron R. Azari, Esq. I am over the age of twenty-one and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.    I am a nationally recognized expert in the field of legal notice and I have served as a legal notice expert in dozens of federal and state cases involving class action notice plans.

3.    I am the Director of Legal Notice for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans. Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.  Hilsoft is a business unit of Epiq Systems Class Action and Claims Solutions ("ECA").

4.    With experience in more than 200 cases, notices prepared by Hilsoft Notifications have appeared in 53 languages with distribution in almost every country and territory in the world. Judges, including in published decisions, have recognized and approved numerous notice plans

1

developed by Hilsoft Notifications, which decisions have always withstood collateral reviews by other courts and appellate challenges.

## EXPERIENCE RELEVANT TO THIS CASE

5.    Hilsoft Notifications has served as notice expert and has been recognized and appointed by courts to design and provide notice in many large and complex cases, including: *In Re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.) (multiple bank settlements in 2010-2016 involving direct mail and email to millions of class members and publication in relevant local newspapers); *Johnson v. Community Bank, N.A. et al.* M.D. Pa., 3:12-cv-01405-RDM (overdraft fee settlement in the Middle District of Pennsylvania); *Rose v. Bank of Am. Corp.*, Case No. 11-cv-02390-EJD (N.D. Cal.) (TCPA settlement with email and postcard notice to over 6.9 million class members and publication notice in *Parade Magazine* and other consumer publications); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* MDL No. 1720 (JG)(JO) (over 19.8 million direct mail notices, insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications, banner notices generating more than 770 million adult impressions); and *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179 (notice efforts include over 5,400 insertions in 2,000+ publications, over 10,000 local television and radio spots, local and national banner ads, notices in English, Spanish and Vietnamese).

6.    We have been recognized by courts for our testimony as to which method of notification is appropriate for a given case, and have provided testimony on numerous occasions on

2

whether a certain method of notice represents the best notice practicable under the circumstances.

For example:

        a)      In *Marolda v. Symantec Corporation*, No. 08-cv-05701 (N.D. Cal.) Judge

Edward M. Chen stated on April 5, 2013:

> *Approximately 3.9 million notices were delivered by email to class members,*
> *but only a very small percentage objected or opted out . . .  The Court . . .*
> *concludes that notice of settlement to the class was adequate and satisfied all*
> *requirements of Federal Rule of Civil Procedure 23(e) and due process.*
> *Class members received direct notice by email, and additional notice was*
> *given by publication in numerous widely circulated publications as well as in*
> *numerous targeted publications.  These were the best practicable means of*
> *informing class members of their rights and of the settlement's terms.*

        b)      In *In Re: Zurn Pex Plumbing Products Liability Litigation*, No. 0:08cv01958

(D. Minn.): Judge Ann D. Montgomery stated on February 27, 2013:

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-*
> *notice consultant, to design and carry out the notice plan. The form and*
> *content of the notices provided to the class were direct, understandable, and*
> *consistent with the "plain language" principles advanced by the Federal*
> *Judicial Center.  The notice plan's multi-faceted approach to providing notice*
> *to settlement class members whose identity is not known to the settling parties*
> *constitutes "the best notice [\*26] that is practicable under the circumstances"*
> *consistent with Rule 23(c)(2)(B).*

        c)      In *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,*

*on April 20, 2010* (Economic and Property Damages Settlement), MDL No. 2179 (E.D. La.):

Judge Carl J. Barbier stated on December 21, 2012:

> *The Court finds that the Class Notice and Class Notice Plan satisfied and*
> *continue to satisfy the applicable requirements of Federal Rule of Civil*
> *Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. §*
> *1711 et seq.), and the Due Process Clause of the United States Constitution*
> *(U.S. Const., amend. V), constituting the best notice that is practicable under*
> *the circumstances of this litigation.*

3

> *The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

    d)    In *Schulte v. Fifth Third Bank*, No. 1:09-cv-6655 (N.D. Ill.), Judge Robert M.

Dow, Jr. stated on July 29, 2011:

> *The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

    e)    In *In re: Heartland Payment Systems, Inc. Customer Data Security Breach*

*Litigation,* MDL 09-2046 (S.D. Tex.), Judge Lee Rosenthal stated on March 2, 2012:

> *The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at \*23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197 (internal quotation marks omitted).*

    7.    Numerous other court opinions and comments as to our testimony, and opinions on the

adequacy of our notice efforts, are included in Hilsoft Notifications' curriculum vitae attached as

<u>Attachment 1</u>.

8.     In forming my expert opinions, my staff and I draw from our in-depth class action case experience, as well as our educational and related work experiences.  I am an active member of the Oregon State Bar, receiving my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College.  I have served as the Director of Legal Notice for Hilsoft Notifications since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs since that time.  Prior to assuming my current role with Hilsoft Notifications, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising).  Overall, I have fifteen years of experience in the design and implementation of legal notification and claims administration programs, having been personally involved in well over one hundred successful notice programs. I have been directly and personally responsible for designing all of the notice planning here, including analysis of the individual notice options and the media audience data and determining the most effective mixture of media required to reach the greatest practicable number of Settlement Class Members.

9.     This declaration will describe the Notice Plan designed by Hilsoft Notifications and proposed here for the parties' settlement in *In re: Shop-Vac Marketing and Sales Practices Litigation*, MDL No. 2380 (M.D. Pa.), including how the Notice Plan was developed and why it will be effective.  We developed the Notice Plan based on our extensive prior experience and research into the notice issues in this case.  We have analyzed the most effective method of notice for this Settlement Class.

5

## NOTICE PLANNING METHODOLOGY

10.     Rule 23 directs that the best notice practicable under the circumstances must include "individual notice to all members who can be identified through reasonable effort."[1]  The proposed notice effort here satisfies this direction.  I understand that associated physical mailing addresses can be identified for some Settlement Class Members.  Address updating (both prior to mailing and on undeliverable pieces) and re-mailing protocols will meet or exceed those used in other class action settlements.

11.     Separate from the compilation of the individual notice mailing lists, data sources and tools that are commonly employed by experts in this field were used to analyze the reach and frequency[2] of the media portion of this Notice Plan.  These include GfK Mediamark Research & Intelligence, LLC ("MRI") data,[3] which provides statistically significant readership and product usage data, and Alliance for Audited Media ("AAM")[4] statements, which certify how many readers

---

[1] FRCP 23(c)(2)(B).

[2] Reach is defined as the percentage of a class exposed to a notice, net of any duplication among people who may have been exposed more than once.  Notice "exposure" is defined as the opportunity to read a notice.  The average "frequency" of notice exposure is the average number of times that those reached by a notice would be exposed to a notice.

[3] MRI is a leading source of publication readership and product usage data for the communications industry.  MRI offers comprehensive demographic, lifestyle, product usage and exposure to all forms of advertising media collected from a single sample.  As the leading U.S. supplier of multimedia audience research, MRI provides information to magazines, televisions, radio, Internet, and other media, leading national advertisers, and over 450 advertising agencies—including 90 of the top 100 in the United States.  MRI's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S.

[4] Established in 1914 as the Audit Bureau of Circulations ("ABC"), and rebranded as AAM in 2012, AAM is a non-profit cooperative formed by media, advertisers, and advertising agencies to audit the paid circulation statements of magazines and newspapers.  AAM is the leading third party auditing organization in the U.S. It is the industry's leading, neutral source for documentation on the actual distribution of newspapers, magazines, and other publications. Widely accepted throughout the industry, it certifies thousands of printed publications as well as emerging digital editions read via

6

buy or obtain copies of publications.  Online media planning data was provided by comScore, Inc.[5]
These tools, along with demographic breakdowns indicating how many people use each media
vehicle, as well as computer software that take the underlying data and factor out the duplication
among audiences of various media vehicles, allow us to determine the net (unduplicated) reach of a
particular media schedule.  We combine the results of this analysis to help determine notice plan
sufficiency and effectiveness.

12. ***Tools and data trusted by the communications industry and courts***.  Virtually all of
the nation's largest advertising agency media departments utilize, scrutinize, and rely upon such
independent, time-tested data and tools, including net reach and de-duplication analysis
methodologies, to guide the billions of dollars of advertising placements that we see today, providing
assurance that these figures are not overstated.  These analyses and similar planning tools have
become standard analytical tools for evaluations of notice programs, and have been regularly
accepted by courts.

13. In fact, advertising and media planning firms around the world have long relied on
audience data and techniques: AAM data has been relied on since 1914; 90-100% of media directors

---

tablet subscriptions. Its publication audits are conducted in accordance with rules established by its
Board of Directors. These rules govern not only how audits are conducted, but also how publishers
report their circulation figures.  AAM's Board of Directors is comprised of representatives from the
publishing and advertising communities.
[5] comScore, Inc.is a global leader in measuring the digital world and a preferred source of digital
marketing intelligence.  In an independent survey of 800 of the most influential publishers,
advertising agencies and advertisers conducted by William Blair & Company in January 2009,
comScore was rated the "most preferred online audience measurement service" by 50% of
respondents, a full 25 points ahead of its nearest competitor.

7

use reach and frequency planning;[6] all of the leading advertising and communications textbooks cite the need to use reach and frequency planning.[7] Ninety of the top one hundred media firms use MRI data and at least 15,000 media professionals in 85 different countries use media planning software.[8]

## NOTICE PLAN DETAIL

14.   Notice shall be disseminated to the Settlement Class pursuant to the details set forth below and referred to as the "Notice Plan."

15.   The Settlement Agreement defines the "Settlement Class" as "each person in the United States and its territories who, from January 1, 2006 to the date of entry of the Preliminary Approval Order, either (1) purchased a Vacuum, or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means." Specifically excluded from the Settlement Class are any person or entity who purchased or acquired a Vacuum for the purpose of resale, all judges to whom the Lawsuits are assigned and the officers, directors and counsel of record of Defendants, and all employees of Defendants. Also excluded from the Settlement Class are any putative Settlement

---

[6] *See generally* Peter B. Turk, *Effective Frequency Report: Its Use And Evaluation By Major Agency Media Department Executives*, 28 J. ADVERTISING RES. 56 (1988); Peggy J. Kreshel et al., *How Leading Advertising Agencies Perceive Effective Reach and Frequency*, 14 J.ADVERTISING 32 (1985).

[7] Textbook sources that have identified the need for reach and frequency for years include: JACK S. SISSORS & JIM SURMANEK, ADVERTISING MEDIA PLANNING, 57-72 (2d ed. 1982); KENT M. LANCASTER & HELEN E. KATZ, STRATEGIC MEDIA PLANNING 120-156 (1989); DONALD W. JUGENHEIMER & PETER B. TURK, ADVERTISING MEDIA 123-126 (1980); JACK Z. SISSORS & LINCOLN BUMBA, ADVERTISING MEDIA PLANNING 93-122 (4th ed. 1993); JIM SURMANEK, INTRODUCTION TO ADVERTISING MEDIA: RESEARCH, PLANNING, AND BUYING 106-187 (1993).

[8] For example, Telmar is the world's leading supplier of media planning software and support services. Over 15,000 media professionals in 85 countries use Telmar systems for media and marketing planning tools including reach and frequency planning functions. Established in 1968, Telmar was the first company to provide media planning systems on a syndicated basis.

Class Members who properly and timely exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Preliminary Approval Order.

16. To guide the selection of measured media in reaching the Settlement Class, the Notice Plan has a primary target audience of: all adults 18 years and older who shop at Lowes. The combined measurable effort will reach at least 70.2% of Settlement Class Members an average of 2.5 times each. In my experience, the projected reach and frequency of the Notice Plan is consistent with other court-approved notice programs, and has been designed to meet due process requirements.

### *Individual Notice*

17. The Defendants will provide to ECA data files representing all Settlement Class Members whose e-mail or mailing addresses are known to and readily identifiable by Defendants. It is anticipated that known Class Members will exceed 1 million.

18. The Settlement Notice, attached to the Preliminary Approval Order as Exhibit 1, will be sent by email to all potential Settlement Class Members for whom a facially valid email address is available. This notice will use an embedded html text format. This format will provide text that is easy to read without graphics, tables, images and other elements that would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters. The emails will be sent using a server known to the major emails providers as one not used to send bulk "SPAM" or "junk" email blasts. Also, the emails will be sent in small groups so as to not be erroneously flagged as a bulk junk email blast. Each emailed Settlement Notice will be transmitted with a unique message identifier. If the receiving e-mail server cannot deliver the message, a

9

"bounce code" should be returned along with the unique message identifier. For any emailed Settlement Notice for which a bounce code is received indicating that the message is undeliverable, at least two additional attempts will be made to deliver the notice by email.

19. The Settlement Notice includes the website address of the Settlement Website. By accessing the website, recipients will be able to easily access the Posted Notice, Settlement Agreement and other information about the Settlement. The proposed Posted Notice is attached to the Preliminary Approval Order as Exhibit 2.

20. For all ultimately undeliverable emailed Settlement Notices for which there is an associated physical mailing address and for all Settlement Class Members for whom only an associated physical mailing address is known, the Exhibit 1 Settlement Notice will be mailed via USPS First Class Mail. Prior to the initial mailing of the Settlement Notice, postal mailing addresses will be checked against the National Change of Address database maintained by the USPS, which contains records of all reported permanent moves for the past four years. All addresses will be certified via the Coding Accuracy Support System to ensure the quality of the zip codes, and verified through the Delivery Point Validation to verify the accuracy of the addresses.

21. Mailed Settlement Notices returned as undeliverable will be re-mailed to any new address available through postal service information, for example, to the address provided by the postal service on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the postal service returns the piece with the address indicated. Upon successfully determining better addresses, Settlement Notices will be promptly re-mailed.

10

Additionally, the Settlement Notices will be mailed to all persons who request one via the toll-free phone number maintained by the administrator.

### *National Consumer Magazines and Online Banner Notice*

22.   The Notice Plan includes a highly visible notice placement in the most widely read consumer publication in the United States, *People Magazine*. *People* has an estimated circulation of 3.4 million[9] and a total readership of 42.08 million[10]. Readership is an estimate of the total number of readers per issue, including non-subscribers. Notice will also be placed one time in *Family Handyman* to target individuals interested in home repair. *Family Handyman* has a circulation of 1.1 million. The proposed Publication Notice is attached to the Preliminary Approval Order as Exhibit 3.

23.   The Notice Plan also provides for a Banner Notice measuring 728 x 90 pixels or 300 x 250 pixels which will be placed on the *Conversant Ad Network*. The Banner Notice will appear across the country. We estimate that the *Conversant* Banner Notice will generate approximately 67,500,000 unique impressions[11].

24.   Online Banner Notices measuring 254 x 133 pixels will also run on *Facebook* in both English and Spanish. The English version of the *Facebook* Banner Notice will generate approximately 215,000,000 impressions and the Spanish version will generate approximately 4,000,000 impressions.

---

[9] *People Magazine*, January 1, 2016.
[10] 2015 MRI Doublebase.
[11] An impression (in the context of online advertising) is a measure of the number of times an ad is displayed, whether it is clicked on or not. Each time an ad displays it is counted as one impression.

25.   In order to reach smartphones and other handheld devices, mobile Banner Notices measuring 320 x 480, 300 x 250 and 320 x 50 will be placed on the *Conversant Mobile Ad Network*. Approximately 4,000,000 impressions will be generated.  The Banner Notice will be drafted using the headline from the Settlement Notice.

### *Sponsored Search Listings*

26.   To facilitate locating the Settlement Website, sponsored search listings will be acquired on the three most highly-visited Internet search engines: *Google*, *Yahoo!* and *Bing*.  When search engine visitors search on common keyword combinations such as "Shop-Vac Settlement" or "Shop-Vac Class Action," the sponsored search listing will display either at the top of the page prior to the search results or in the upper right hand column.

### *Informational Release*

27.   To build additional reach and extend exposures, an Informational Release will be issued to approximately 4,200 print and broadcast and 5,500 online press outlets throughout the United States.

28.   The Informational Release will serve a valuable role by providing additional notice exposures beyond that which will be provided by the direct mailed notice and paid media.   The release will also include the toll-free number and Settlement Website address.

### *Settlement Website*

29.   A neutral, informational, settlement website at www.ShopVacPHPSettlement.com will be established where potential Settlement Class Members can obtain additional information and documents including the Posted Notice, Settlement Agreement, Preliminary Approval Order and any

12

other information that the parties agree to provide or that the Court may require. The domain name will not be case sensitive. The Settlement Website will also include information on how potential Settlement Class Members can opt-out of the Settlement if they choose.  The Settlement Website address will be prominently displayed in all notice documents. A hyperlink to the Settlement Website will be placed on the Support page of the Shop-Vac USA website.

### *Toll-free Telephone Number and Postal Mailing Address*

30.   A toll-free number will be established.  Callers will hear an introductory message. Callers will then have the option to continue to get information about the Settlement in the form of recorded answers to frequently asked questions.  Callers will also have an option to request a Posted Notice by mail.

31.   A postal mailing address and email address will be provided, allowing Settlement Class Members to request additional information or ask questions via these channels.

## PERFORMANCE OF THE NOTICE PLAN

### *Reach*

32.   Using standard advertising media industry methodologies to calculate the overlap inherent in exposures to the individual postal mail, print publication and online efforts we arrive at a combined measurable reach of 70.2% of adults, aged 18+ in the U.S. who shop at Lowe's.  Reach will be enhanced further by the sponsored search listings, informational release and the Settlement Website.

33.   Many courts have accepted and understood that a 70.2 percent reach is more than adequate.  In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims

Process Checklist and Plain Language Guide. This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%.[12] Here we were able to develop a notice plan that, combined with a substantial individual notice component, achieves this. These statistics reinforce the fact that the Notice Plan is broad in scope and is designed to reach Settlement Class Members.

## CONCLUSION

34.   In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice. This framework directs that the notice program be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way. All of these requirements will be met in this case.

35.   Our notice effort follows the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

A. "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee

---

[12] Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010)*, p. 3.

might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).

B.  "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) citing *Mullane* at 314.

36.    The Notice Plan will provide the best notice practicable under the circumstances of this case, conforms to all aspects of Federal Rule of Civil Procedure 23, and comports with the guidance for effective notice articulated in the Manual for Complex Litigation 4th Ed.

37.    As reported above, the Notice Plan will effectively reach approximately 70.2% of adults aged 18+ who shop at Lowes and therefor a similar percentage of Settlement Class Members. It will deliver notices to capture Settlement Class Members' attention, and provide them with information necessary to understand their rights and options.

38.    The Notice Plan schedule will afford enough time to provide full and proper notice to Settlement Class Members before the opt-out and objection deadlines.

39.    At the conclusion of the Notice Plan, we will provide a final report verifying its effective implementation.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 1st, 2016.

Cameron R. Azari, Esq.

15

Attachment 1

# HILSOFT
# NOTIFICATIONS

Hilsoft Notifications is a leading provider of legal notice services for large-scale class action and bankruptcy matters.  We specialize in providing quality, expert, notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny.  For more than 21 years, Hilsoft Notifications' notice plans have been approved and upheld by courts.  Hilsoft Notifications has been retained by defendants and/or plaintiffs on more than 300 cases, including more than 30 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world.  Case examples include:

> One of the largest claim deadline notice campaigns ever implemented, for BP's $7.8 billion settlement claim deadline relating to the Deepwater Horizon oil spill.  Hilsoft Notifications designed and implemented the claim deadline notice program, which resulted in a combined measurable paid print, television, radio and Internet effort that reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each.  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.).

> *Large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience.  In re: Energy Future Holdings Corp., et. al. (Asbestos Claims Bar Date Notice)*, 14-10979(CSS) (Bankr. D. Del.).

> Landmark $6.05 billion settlement reached by Visa and MasterCard.  The intensive notice program involved over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications.  Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a case website in eight languages, and acquisition of sponsored search listings to facilitate locating the website.  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.).

> BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill emerged from possibly the most complex class action in U.S. history.  Hilsoft Notifications drafted and opined on all forms of notice.  The 2012 notice program designed by Hilsoft reached at least 95% Gulf Coast region adults via television, radio, newspapers, consumer publications, trade journals, digital media and individual notice.  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.).

> Momentous injunctive settlement reached by American Express regarding merchant payment card processing.  The notice program provided extensive individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspapers in each of the U.S. territories and possessions.  *In re American Express Anti-Steering Rules Antitrust Litigation (II)*, MDL No. 2221 (E.D.N.Y.) ("Italian Colors").

> Overdraft fee class actions have been brought against nearly every major U.S. commercial bank.  For related settlements, Hilsoft Notifications has developed programs that integrate individual notice and paid media efforts.  PNC, Citizens, TD Bank, Fifth Third, Harris Bank M&I, Comerica Bank, Susquehanna Bank, Capital One, M&T Bank and Synovus are among the nearly 20 banks that have retained Hilsoft.  *In re Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.).

> Possibly the largest data breach in U.S. history with approximately 130 million credit and debit card numbers stolen.  *In re Heartland Data Security Breach Litigation*, MDL No. 2046 (S.D. Tex.)

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE                10300 SW ALLEN BLVD
1420 LOCUST ST 30 F                BEAVERTON, OR 97005
PHILADELPHIA, PA 19102                T 503.597.7697
T 215.721.2120                WWW.HILSOFT.COM
INFO@HILSOFT.COM

➢ Largest and most complex class action in Canadian history.  Designed and implemented groundbreaking notice to disparate, remote aboriginal people in the multi-billion dollar settlement.  *In re Residential Schools Class Action Litigation*, 00-CV-192059 CPA (Ont. Super. Ct.).

➢ Extensive point of sale notice program of a settlement providing payments up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period.  *Vereen v. Lowe's Home Centers*, SU10-CV-2267B (Ga. Super. Ct.).

➢ Largest discretionary class action notice campaign involving virtually every adult in the U.S. for the settlement. *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.).

➢ Most complex national data theft class action settlement involving millions of class members.  *Lockwood v. Certegy Check Services, Inc.*, 8:07-cv-1434-T-23TGW (M.D. Fla.).

➢ Largest combined U.S. and Canadian retail consumer security breach notice program.  *In re TJX Companies, Inc., Customer Data Security Breach Litigation*, MDL No. 1838 (D. Mass.).

➢ Most comprehensive notice ever in a securities class action for the $1.1 billion settlement of *In re Royal Ahold Securities and ERISA Litigation*, MDL No. 1539 (D. Md.).

➢ Most complex worldwide notice program in history.  Designed and implemented all U.S. and international media notice with 500+ publications in 40 countries and 27 languages for $1.25 billion settlement.  *In re Holocaust Victims Assets, "Swiss Banks"*, No. CV-96-4849 (E.D.N.Y.).

➢ Largest U.S. claim program to date.  Designed and implemented a notice campaign for the $10 billion program. *Tobacco Farmer Transition Program*, (U.S. Dept. of Ag.).

➢ Multi-national claims bar date notice to asbestos personal injury claimants.  Opposing notice expert's reach methodology challenge rejected by court.  *In re Babcock & Wilcox Co*, No. 00-10992 (E.D. La.).

## LEGAL NOTICING EXPERTS

### *Cameron Azari, Esq., Director of Legal Notice*

Cameron Azari, Esq. has more than 16 years of experience in the design and implementation of legal notification and claims administration programs.  He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes.  Cameron has been responsible for hundreds of legal notice and advertising programs.  During his career, he has been involved in an array of high profile class action matters, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa)*, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, *Heartland Payment Systems, In re: Checking Account Overdraft Litigation, Lowe's Home Centers, Department of Veterans Affairs (VA)*, and *In re Residential Schools Class Action Litigation*.  He is an active author and speaker on a broad range of legal notice and class action topics ranging from amendments to FRCP Rule 23 to email noticing, response rates and optimizing settlement effectiveness.  Cameron is an active member of the Oregon State Bar.  He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College.  Cameron can be reached at caza@legalnotice.com.

### *Lauran Schultz, Executive Director*

Lauran Schultz consults extensively with clients on notice adequacy and innovative legal notice programs.  Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration for the past seven years.  High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation.  Prior to joining Epiq Systems in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio.  Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies.  Lauran can be reached at lschultz@hilsoft.com.


HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE        10300 SW ALLEN BLVD        BEAVERTON, OR 97005      T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F        PHILADELPHIA, PA 1910    T 215-721-2120

2

ARTICLES AND PRESENTATIONS

➤ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➤ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➤ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.

➤ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➤ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➤ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.

➤ **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

➤ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

➤ **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

➤ **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

➤ **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

➤ **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.

➤ **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

➤ **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

➤ **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

➤ **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

➤ **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

HILSOFT NOTIFICATIONS     PORTLAND AREA OFFICE     10300 SW ALLEN BLVD     BEAVERTON, OR 97005     T 503-597-7697
                          PHILADELPHIA AREA OFFICE  1420 LOCUST ST 30 F     PHILADELPHIA, PA 1910     T 215-721-2120

3

➤ **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

➤ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

➤ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

➤ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

➤ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan litigation group, Los Angeles, CA, 2005.

➤ **Cameron Azari** Author, "Twice the Notice or No Settlement."  Current Developments – Issue II, August 2003.

➤ **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.


## JUDICIAL COMMENTS


**Judge Robert W. Gettleman,** *Adkins v. Nestle Purina PetCare Company, et al.,* (June 23, 2015) No. 12-cv-2871 (N.D. Ill.):

"*Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*"

**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.,* (December 29, 2014) No. 1:10-cv-10392-RWZ (D. Mass.):

"*This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law.  The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*"

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* (August 29, 2014) No. 5:11-CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.):

"*The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*"


HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

4

**Judge James A. Robertson, II,** *Wong et al. v. Alacer Corp.* (June 27, 2014) No. CGC-12-519221 (Cal. Super. Ct.):

> *"Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process."*

**Judge John Gleeson,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* (December 13, 2013) No. 1:05-cv-03800 (E.D. NY.):

> *"The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications. The notice here meets the requirements of due process and notice standards… The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here."*

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al,* (July 7, 2013) No. 2:11-cv-02067 (E.D. La.):

> *The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation,* (April 5, 2013) No. 08-cv-05701 (N.D. Cal.):

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . . The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process. Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications. These were the best practicable means of informing class members of their rights and of the settlement's terms.*

**Judge Ann D. Montgomery,** *In re Zurn Pex Plumbing Products Liability Litigation,* (February 27, 2013) No. 0:08cv01958 (D. Minn.):

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.*
>
> *The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [\*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

**Magistrate Judge Stewart,** *Gessele et al. v. Jack in the Box, Inc.,* (January 28, 2013) No. 3:10-cv-960 (D. Or.):

> *Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing. Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.*

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Medical Benefits Settlement),* (January 11, 2013) MDL No. 2179 (E.D. La.):

> *Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed. Only 10,700 mailings—or 3.3%—were known to be undeliverable. (Azari Decl. ¶¶ 8, 9.) Notice was also provided*

 HILSOFT NOTIFICATIONS   PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697   PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

5

through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements).   Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.   The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each.  (Id. ¶¶ 8, 10.)  All notice documents were designed to be clear, substantive, and informative.  (Id. ¶ 5.)

The Court received no objections to the scope or content of the [Medical Benefits] Notice Program.  (Azari Supp. Decl. ¶ 12.)   The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort.  Likewise, the Notice and Notice Plan satisfied the requirements of Due Process.  The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Economic and Property Damages Settlement)*, (December 21, 2012) MDL No. 2179 (E.D. La.):

The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.

The notice program surpassed the requirements of Due Process, Rule 23, and CAFA.  Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.

The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval.  The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers.  Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights.  See Azari Decl. ¶¶ 8, 15, 68.  The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.

The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each.  These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings.  The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.

**Judge Alonzo Harris,** *Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.*, (August 17, 2012) No. 12-C-1599 (27th Jud. D. Ct. La.):

Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class.   Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE            10300 SW ALLEN BLVD             BEAVERTON, OR 97005       T 503-597-7697
PHILADELPHIA AREA OFFICE       1420 LOCUST ST 30 F             PHILADELPHIA, PA 1910      T 215-721-2120

6

**Judge James Lawrence King, In re Checking Account Overdraft Litigation (IBERIABANK),** (April 26, 2012) MDL No. 2036 (S.D. Fla):

> The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.

**Judge Bobby Peters, Vereen v. Lowe's Home Centers,** (April 13, 2012) SU10-CV-2267B (Ga. Super. Ct.):

> The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.

> The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.

**Judge Lee Rosenthal, In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation,** (March 2, 2012) MDL No. 2046 (S.D. Tex.):

> The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197 (internal quotation marks omitted).

**Judge John D. Bates, Trombley v. National City Bank,** (December 1, 2011) 1:10-CV-00232 (D.D.C.):

> The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.

**Judge Robert M. Dow, Jr., Schulte v. Fifth Third Bank,** (July 29, 2011) No. 1:09-cv-6655 (N.D. Ill.):

> The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of


PORTLAND AREA OFFICE   10200 SW ALLEN BLVD       BEAVERTON, OR 97005   T 503-597-7897
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F       PHILADELPHIA, PA 1910   T 215-721-2120

7

*Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle,** *Williams v. Hammerman & Gainer Inc.,* (June 30, 2011) No. 11-C-3187-B (27th Jud. D. Ct. La.):

*Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Stefan R. Underhill,** *Mathena v. Webster Bank, N.A.,* (March 24, 2011) No. 3:10-cv-1448 (D. Conn.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart,** *Miller v. Basic Research, LLC,* (September 2, 2010) No. 2:07-cv-871 (D. Utah):

*Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number. Similar mixed media plans have been approved by other district courts post class certification. The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi,** *Pavlov v. Continental Casualty Co.,* (October 7, 2009) No. 5:07cv2580 (N.D. Ohio):

*As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims. With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson,** *In re Department of Veterans Affairs (VA) Data Theft Litigation,* (September 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

**Judge Lisa F. Chrystal,** *Little v. Kia Motors America, Inc.,* (August 27, 2009) No. UNN-L-0800-01 (N.J. Super. Ct.):

*The Court finds that the manner and content of the notices for direct mailing and for publication notice, as specified in the Notice Plan (Exhibit 2 to the Affidavit of Lauran R. Schultz), provides the best practicable notice of judgment to members of the Plaintiff Class.*



| | | | |
|---|---|---|---|
| HILSOFT | PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| NOTIFICATIONS | PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

8

**Judge Barbara Crowder,** ***Dolen v. ABN AMRO Bank N.V.,*** (March 23, 2009) No. 01-L-454, 01-L-493 (3rd Jud. Cir. Ill.):

> *The Court finds that the Notice Plan is the best notice practicable under the circumstances and provides the Eligible Members of the Settlement Class sufficient information to make informed and meaningful decisions regarding their options in this Litigation and the effect of the Settlement on their rights. The Notice Plan further satisfies the requirements of due process and 735 ILCS 5/2-803. That Notice Plan is approved and accepted. This Court further finds that the Notice of Settlement and Claim Form comply with 735 ILCS 5/2-803 and are appropriate as part of the Notice Plan and the Settlement, and thus they are hereby approved and adopted. This Court further finds that no other notice other than that identified in the Notice Plan is reasonably necessary in this Litigation.*

**Judge Robert W. Gettleman,** ***In re Trans Union Corp.,*** (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> *The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law... Accordingly, all objections are hereby OVERRULED.*

**Judge Steven D. Merryday,** ***Lockwood v. Certegy Check Services, Inc.,*** (September 3, 2008) No. 8:07-cv-1434-T-23TGW (M.D. Fla.):

> *The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances. The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process.*

**Judge William G. Young,** ***In re TJX Companies,*** (September 2, 2008) MDL No. 1838 (D. Mass.):

> *The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge Philip S. Gutierrez,** ***Shaffer v. Continental Casualty Co.,*** (June 11, 2008) SACV-06-2235-PSG (PJWx) (C.D. Cal.):

> *...was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

**Judge Robert L. Wyatt,** ***Gunderson v. AIG Claim Services, Inc.,*** (May 29, 2008) No. 2004-002417 (14th Jud. D. Ct. La.):

> *Notices given to Settlement Class members...were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination...Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Mary Anne Mason,** ***Palace v. DaimlerChrysler Corp.,*** (May 29, 2008) No. 01-CH-13168 (Ill. Cir. Ct.):

> *The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.*


HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

9

**Judge David De Alba,** *Ford Explorer Cases,* (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> [T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved—submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.

**Judge Kirk D. Johnson,** *Webb v. Liberty Mutual Ins. Co.,* (March 3, 2008) No. CV-2007-418-3 (Ark. Cir. Ct.):

> The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.

**Judge Carol Crafton Anthony,** *Johnson v. Progressive Casualty Ins. Co.,* (December 6, 2007) No. CV-2003-513 (Ark. Cir. Ct.):

> Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable…The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process.

**Judge Kirk D. Johnson,** *Sweeten v. American Empire Insurance Co.,* (August 20, 2007) No. CV-2007-154-3 (Ark. Cir. Ct.):

> The Court does find that all notices required by the Court to be given to class members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation. It was done through individual notice, first class mail, through internet website and the toll-free telephone call center…The Court does find that these methods were the best possible methods to advise the class members of the pendency of the action and opportunity to present their objections and finds that these notices do comply with all the provisions of Rule 23 and the Arkansas and United States Constitutions.

**Judge Robert Wyatt,** *Gunderson v. F.A. Richard & Associates, Inc.,* (July 19, 2007) No. 2004-2417-D (14th Jud. D. Ct. La.):

> Okay. Let me sign this one. This is the final Order and Judgment regarding the fairness, reasonableness and adequacy. And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time. Congratulations, gentlemen.

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation,* (July 19, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.

**Judge Joe Griffin,** *Beasley v. The Reliable Life Insurance Co.,* (March 29, 2007) No. CV-2005-58-1 (Ark. Cir. Ct.):

> [T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process…So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter.

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation,* (March 1, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication


PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

10

*of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order...meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Anna J. Brown,** ***Reynolds v. The Hartford Financial Services Group, Inc.,*** (February 27, 2007) No. CV-01-1529-BR (D. Or):

*[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class.  The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.*

**Judge Kirk D. Johnson,** ***Zarebski v. Hartford Insurance Company of the Midwest,*** (February 13, 2007) No. CV-2006-409-3 (Ark. Cir. Ct.):

*Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class.  Accordingly, the Class Notice and Claim Form as disseminated are finally approved as fair, reasonable, and adequate notice under the circumstances.  The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Richard J. Holwell,** ***In re Vivendi Universal, S.A. Securities Litigation,*** 2007 WL 1490466, at *34 (S.D.N.Y.):

*In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries.  According to this...the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Samuel Conti,** ***Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,*** (November 17, 2006) No. C-05-04289-SC (N.D. Cal.):

*After reviewing the evidence and arguments presented by the parties...the Court finds as follows...The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.*

**Judge Ivan L.R. Lemelle,** ***In re High Sulfur Content Gasoline Prods. Liability Litigation,*** (November 8, 2006) MDL No. 1632 (E.D. La.):

*This Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications...The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.*

**Judge Catherine C. Blake,** ***In re Royal Ahold Securities and "ERISA" Litigation,*** (November 2, 2006) MDL No. 1539 (D. Md.):

*The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district.  The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages.*

 PORTLAND AREA OFFICE    10300 SW ALLEN BLVD       BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F        PHILADELPHIA, PA 1910   T 215-721-2120

11

*The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.*

**Judge Elaine E. Bucklo,** *Carnegie v. Household International,* (August 28, 2006) No. 98 C 2178 (N.D. Ill.):

*[T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification[s]...who the Court recognized as experts in the design of notice plans in class actions.   The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.*

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest,* (June 13, 2006) No. CV-2005-58-1 (Ark. Cir. Ct.):

*Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances...and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Norma L. Shapiro,** *First State Orthopedics et al. v. Concentra, Inc., et al.,* (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

*The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law.   The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.*

**Judge Thomas M. Hart,** *Froeber v. Liberty Mutual Fire Ins. Co.,* (April 19, 2006) No. 00C15234 (Or. Cir. Ct.):

*The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (January 6, 2006) MDL No. 1539 (D. Md.):

*I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litigation,* 437 F.Supp.2d 467, 472 (D. Md. 2006):

*The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances.   The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Robert H. Wyatt, Jr.,** *Gray v. New Hampshire Indemnity Co., Inc.,* (December 19, 2005) No. CV-2002-952-2-3 (Ark. Cir. Ct.):

*Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a*



PORTLAND AREA OFFICE      10300 SW ALLEN BLVD          BEAVERTON OR 97005     T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30F           PHILADELPHIA, PA 1910   T 215-721-2120

12

*summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed. The Notice properly informed Class members of the formula for the distribution of benefits under the settlement…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort.   Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times.  The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley,** ***Defrates v. Hollywood Entm't Corp.,*** (June 24, 2005) No. 02 L 707 (Ill. Cir. Ct.):

*[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter,** ***Thibodeaux v. Conoco Phillips Co.,*** (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

*Notice given to Class Members…were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*

**Judge Michael Canaday,** ***Morrow v. Conoco Inc.,*** (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):

*The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova,** ***Nichols v. SmithKline Beecham Corp.,*** (April 22, 2005) No. 00-6222 (E.D. Pa.):

*Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice…After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge Douglas L. Combs,** ***Morris v. Liberty Mutual Fire Ins. Co.,*** (February 22, 2005)  No. CJ-03-714 (D. Okla.):

*I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class.  That, to me, is admirable.  And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting.  In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin,** ***In re Serzone Products Liability Litigation,*** 231 F.R.D. 221, 231 (S.D. W. Va. 2005):

*The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans.  Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow…To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months.  Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*



PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697
PHILADELPHIA AREA OFFICE      1420 LOCUST ST 30F           PHILADELPHIA, PA 1910        T 215-721-2120

13

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation*, (November 24, 2004) MDL No. 1430 (D. Mass.):

> *After review of the proposed Notice Plan designed by Hilsoft Notifications…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation*, (November 23, 2004) MDL No. 1430 (D. Mass.):

> *I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge James S. Moody, Jr.,** *Mantzouris v. Scarritt Motor Group Inc.,* (August 10, 2004) No. 8:03 CV- 0015-T-30 MSS (M.D. Fla.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.*

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) No. 3:02CV431 (E.D. Va.)**:**

> *The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently…The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice.*

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2 (Cal. Super. Ct.):

> *The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard…The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

*Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,* 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup. Ct. S.C. 2004):

> *Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.*

**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litigation,* 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

> *The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

14

**Judge James D. Arnold,** *Cotten v. Ferman Mgmt. Servs. Corp.,* (November 26, 2003) No. 02-08115 (Fla. Cir. Ct.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement…*

**Judge Judith K. Fitzgerald,** *In re Pittsburgh Corning Corp.,* (November 26, 2003) No. 00-22876-JKF (Bankr. W.D. Pa.):

> *The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.*

**Judge Carter Holly,** *Richison v. American Cemwood Corp.,* (November 18, 2003) No. 005532 (Cal. Super. Ct.):

> *As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice…The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.*

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.,* (June 13, 2003) MDL No. 1227 (M.D. Tenn.):

> *Notice of the settlement has been given in an adequate and sufficient manner.  The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 68 (S.D.N.Y. 2003):

> *In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted…who would be covered by the settlement…[T]he notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Edgar E. Bayley,** *Dimitrios v. CVS, Inc.,* (November 27, 2002) No. 99-6209; *Walker v. Rite Aid Corp.,* No. 99-6210; and *Myers v. Rite Aid Corp.,* No. 01-2771 (Pa. Ct. C.P.):

> *The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.,* (November 22, 2002) No. 13007 (Tenn. Ch.):

> *The content of the class notice also satisfied all due process standards and state law requirements…The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.*

**Judge James R. Williamson,** *Kline v. The Progressive Corp.,* (November 14, 2002) No. 01-L-6 (Ill. Cir. Ct.):

> *Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated.  The notice contained the essential elements necessary to satisfy due process…*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

15

**Judge Marina Corodemus,** **_Talalai v. Cooper Tire & Rubber Co.,_** (September 13, 2002) No. L-008830.00 (N.J. Super. Ct.):

> *Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** **_Thompson v. Metropolitan Life Ins. Co.,_** (September 3, 2002) No. 00 Civ. 5071-HB (S.D.N.Y.):

> *The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** **_Scott v. Blockbuster Inc.,_** (January 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct.) Ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

> *In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained. This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** **_Talalai v. Cooper Tire & Rubber Co.,_** (October 30, 2001) No. MID-L-8839-00-MT (N.J. Super. Ct.):

> *The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The form of the notice is reasonably calculated to apprise class members of their rights. The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

**Judge Marina Corodemus,** **_Talalai v. Cooper Tire & Rubber Co.,_** (October 29, 2001) No. L-8830-00-MT (N.J. Super. Ct.):

> *I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** **_Microsoft I-V Cases,_** (April 1, 2001) J.C.C.P. No. CJC-00-004106 (Cal. Super. Ct.):

> *[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** **_Microsoft I-V Cases,_** (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

> *Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition. The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*



PORTLAND AREA OFFICE      10300 SW ALLEN BLVD      BEAVERTON, OR 97005      T 503-597-7697
PHILADELPHIA AREA OFFICE  1420 LOCUST ST 30F       PHILADELPHIA, PA 1910   T 215-721-2120

16

LEGAL NOTICE CASES

Hilsoft Notifications has served as a notice expert for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| *Andrews v. MCI (900 Number Litigation)* | S.D. Ga., CV 191-175 |
| *Harper v. MCI (900 Number Litigation)* | S.D. Ga., CV 192-134 |
| *In re Bausch & Lomb Contact Lens Litigation* | N.D. Ala., 94-C-1144-WW |
| *In re Ford Motor Co. Vehicle Paint Litigation* | E.D. La., MDL No. 1063 |
| *Castano v. Am. Tobacco* | E.D. La., CV 94-1044 |
| *Cox v. Shell Oil (Polybutylene Pipe Litigation)* | Tenn. Ch., 18,844 |
| *In re Amino Acid Lysine Antitrust Litigation* | N.D. Ill., MDL No. 1083 |
| *In re Dow Corning Corp. (Breast Implant Bankruptcy)* | E.D. Mich., 95-20512-11-AJS |
| *Kunhel v. CNA Ins. Companies* | N.J. Super. Ct., ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litigation (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litigation* | D. N.J., 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litigation)* | M.D. Ga., 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litigation)* | Cal. Cir. Ct., C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litigation)* | Or. Cir. Ct., 9709-06901 |
| *Spitzfaden v. Dow Corning (Breast Implant Litigation)* | La. D. Ct., 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litigation)* | N.D. Ill., 95 C 5635 |
| *McCurdy v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-95-2601 |
| *Johnson v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litigation* | E.D. Pa., MDL No. 1039 |
| *Barnes v. Am. Tobacco Co. Inc.* | E.D. Pa., 96-5903 |
| *Small v. Lorillard Tobacco Co. Inc.* | N.Y. Super. Ct., 110949/96 |
| *Naef v. Masonite Corp (Hardboard Siding Litigation)* | Ala. Cir. Ct., CV-94-4033 |
| *In re Synthroid Mktg. Litigation* | N.D. Ill., MDL No. 1182 |
| *Raysick v. Quaker State Slick 50 Inc.* | D. Tex., 96-12610 |
| *Castillo v. Mike Tyson (Tyson v. Holyfield Bout)* | N.Y. Super. Ct., 114044/97 |
| *Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts Litigation)* | Ill. Cir. Ct., 97-L-114 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE       10300 SW ALLEN BLVD          BEAVERTON, OR 97005     T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F          PHILADELPHIA, PA 1910   T 215-721-2120

17

| *Walls v. The Am. Tobacco Co. Inc.* | N.D. Okla., 97-CV-218-H |
|---|---|
| *Tempest v. Rainforest Café (Securities Litigation)* | D. Minn., 98-CV-608 |
| *Stewart v. Avon Prods. (Securities Litigation)* | E.D. Pa., 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp (Securities Litigation)* | D. Md., PJM 95-3461 |
| *Delay v. Hurd Millwork (Building Products Litigation)* | Wash. Super. Ct., 97-2-07371-0 |
| *Gutterman v. Am. Airlines (Frequent Flyer Litigation)* | Ill. Cir. Ct., 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)* | Cal. Super. Ct., 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litigation* | E.D. Pa., MDL No. 1244 |
| *In re Silicone Gel Breast Implant Prods. Liability Litigation, Altrichter v. INAMED* | N.D. Ala., MDL No. 926 |
| *St. John v. Am. Home Prods. Corp. (Fen/Phen Litigation)* | Wash. Super. Ct., 97-2-06368 |
| *Crane v. Hackett Assocs. (Securities Litigation)* | E.D. Pa., 98-5504 |
| *In re Holocaust Victims Assets Litigation (Swiss Banks Litigation)* | E.D.N.Y., CV-96-4849 |
| *McCall v. John Hancock (Settlement Death Benefits)* | N.M. Cir. Ct., CV-2000-2818 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding Litigation)* | Cal. Super. Ct., CV-995787 |
| *Kapustin v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 98-CV-6599 |
| *Leff v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 95-CV-89 |
| *In re PRK/LASIK Consumer Litigation* | Cal. Super. Ct., CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., 1:98CV51-D-D |
| *Scott v. Am. Tobacco Co. Inc.* | La. D. Ct., 96-8461 |
| *Jacobs v. Winthrop Financial Associates (Securities Litigation)* | D. Mass., 99-CV-11363 |
| *Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litigation)* | Ala. Cir. Ct., CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litigation)* | E.D. Pa., 00-87 |
| *Mangone v. First USA Bank (Credit Card Litigation)* | Ill. Cir. Ct., 99AR672a |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litigation)* | Wash. Super. Ct., 00201756-6 |

HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

18

| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042, 711400 |
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litigation)* | Ont. Super. Ct., 98-CV-158832 |
| *In re Texaco Inc. (Bankruptcy)* | S.D.N.Y. 87 B 20142, 87 B 20143, 87 B 20144 |
| *Olinde v. Texaco (Bankruptcy, Oil Lease Litigation)* | M.D. La., 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litigation)* | S.D. Ill., 00-612-DRH |
| *In re Bridgestone/Firestone Tires Prods. Liability Litigation* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corp. (Credit Card Litigation)* | N.C. Super. Ct., 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litigation)* | W.D. Tenn., 99-2896 TU A |
| *Providian Credit Card Cases* | Cal. Super. Ct., J.C.C.P. 4085 |
| *Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 302774 |
| *Sanders v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 303549 |
| *Sims v. Allstate Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-393A |
| *Peterson v. State Farm Mutual Auto. Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-394A |
| *Microsoft I-V Cases (Antitrust Litigation Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litigation)* | Cal. Super. Ct., C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Ill. Cir. Ct., 97-L-20 |
| *Garrett v. Hurley State Bank (Credit Card Litigation)* | Miss. Cir. Ct., 99-0337 |
| *Ragoonanan v. Imperial Tobacco Ltd. (Firesafe Cigarette Litigation)* | Ont. Super. Ct., 00-CV-183165 CP |
| *Dietschi v. Am. Home Prods. Corp. (PPA Litigation)* | W.D. Wash., C01-0306L |
| *Dimitrios v. CVS, Inc. (PA Act 6 Litigation)* | Pa. C.P., 99-6209 |
| *Jones v. Hewlett-Packard Co. (Inkjet Cartridge Litigation)* | Cal. Super. Ct., 302887 |
| *In re Tobacco Cases II (California Tobacco Litigation)* | Cal. Super. Ct., J.C.C.P. 4042 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees Litigation)* | 136th Tex. Jud. Dist., D 162-535 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | Cal. Super. Ct., 986677 |
| *Ting v. AT&T (Mandatory Arbitration Litigation)* | N.D. Cal., C-01-2969-BZ |
| *In re W.R. Grace & Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-01139-JJF |

HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

19

| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion Litigation)* | N.J. Super. Ct.,, MID-L-8839-00 MT |
|---|---|
| *Kent v. Daimler Chrysler Corp. (Jeep Grand Cherokee Park-to-Reverse Litigation)* | N.D. Cal., C01-3293-JCS |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | Geneva, Switzerland |
| *Madsen v. Prudential Federal Savings & Loan (Homeowner's Loan Account Litigation)* | 3rd Jud. Dist. Ct. Utah, C79-8404 |
| *Bryant v. Wyndham Int'l., Inc. (Energy Surcharge Litigation)* | Cal. Super. Ct., GIC 765441, GIC 777547 |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-02094-RJN |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices Litigation)* | S.D.N.Y., 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch., CV-13007 |
| *Peters v. First Union Direct Bank (Credit Card Litigation)* | M.D. Fla., 8:01-CV-958-T-26 TBM |
| *National Socialist Era Compensation Fund* | Republic of Austria |
| *In re Baycol Litigation* | D. Minn., MDL No. 1431 |
| *Claims Conference–Jewish Slave Labour Outreach Program* | German Government Initiative |
| *Wells v. Chevy Chase Bank (Credit Card Litigation)* | Md. Cir. Ct., C-99-000202 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 01-2771 |
| *In re PA Diet Drugs Litigation* | C.P. Pa., 9709-3162 |
| *Harp v. Qwest Communications (Mandatory Arbitration Lit.)* | Or. Circ. Ct., 0110-10986 |
| *Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litigation)* | Ind. Cir. Ct., 49C01-0111-CP-002701 |
| *Allison v. AT&T Corp. (Mandatory Arbitration Litigation)* | 1st Jud. D.C. N.M., D-0101-CV-20020041 |
| *Kline v. The Progressive Corp.* | Ill. Cir. Ct., 01-L-6 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Ill. Cir. Ct., 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litigation)* | M.D. Tenn., MDL No. 1227 |
| *Foultz v. Erie Ins. Exchange (Auto Parts Litigation)* | C.P. Pa., 000203053 |
| *Soders v. General Motors Corp. (Marketing Initiative Litigation)* | C.P. Pa., CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. 4215 |
| *Curtis v. Hollywood Entm't Corp. (Additional Rental Charges)* | Wash. Super. Ct., 01-2-36007-8 SEA |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30F    PHILADELPHIA, PA 1910    T 215-721-2120

20

| | |
|---|---|
| *Defrates v. Hollywood Entm't Corp.* | Ill. Cir. Ct., 02L707 |
| *Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.* | Me. Super. Ct., CV-00-015 |
| *West v. G&H Seed Co. (Crawfish Farmers Litigation)* | 27th Jud. D. Ct. La., 99-C-4984-A |
| *Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge)* | C.P. Ohio, CV-467403 |
| *McManus v. Fleetwood Enter., Inc. (RV Brake Litigation)* | D. Ct. Tex., SA-99-CA-464-FB |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., 809869-2 |
| *Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation)* | N.C. Super. Ct., 01-CVS-5268 |
| *Richison v. Am. Cemwood Corp. (Roofing Durability Settlement)* | Cal. Super. Ct., 005532 |
| *Cotten v. Ferman Mgmt. Servs. Corp.* | 13th Jud. Cir. Fla., 02-08115 |
| *In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)* | Bankr. W.D. Pa., 00-22876-JKF |
| *Mostajo v. Coast Nat'l Ins. Co.* | Cal. Super. Ct., 00 CC 15165 |
| *Friedman v. Microsoft Corp. (Antitrust Litigation)* | Ariz. Super. Ct., CV 2000-000722 |
| *Multinational Outreach - East Germany Property Claims* | Claims Conference |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)* | D. La., 94-11684 |
| *Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)* | N.J. Super. Ct., CV CPM-L-682-01 |
| *Munsey v. Cox Communications (Late Fee Litigation)* | Civ. D. La., Sec. 9, 97 19571 |
| *Gordon v. Microsoft Corp. (Antitrust Litigation)* | 4th Jud. D. Ct. Minn., 00-5994 |
| *Clark v. Tap Pharmaceutical Prods., Inc.* | 5th Dist. App. Ct. Ill., 5-02-0316 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., 3:02-CV-431 |
| *Mantzouris v. Scarritt Motor Group, Inc.* | M.D. Fla., 8:03-CV-0015-T-30-MSS |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | W. Va. Cir. Ct., 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Schlink v. Edina Realty Title* | 4th Jud. D. Ct. Minn., 02-018380 |
| *Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)* | W. Va. Cir. Ct., 03-C-10E |
| *White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)* | 4th Jud. D. Ct. Minn., CT 03-1282 |
| *Acacia Media Techs. Corp. v. Cybernet Ventures Inc., (Patent Infringement Litigation)* | C.D. Cal., SACV03-1803 GLT (Anx) |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans)* | Wash. Super. Ct., 32494 |

| | |
|---|---|
| *Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)* | Wash. Super. Ct., 00-2-17633-3SEA |
| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Ill. Cir. Ct., 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Mich. Cir. Ct., 04-8018-NP |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litigation* | E.D. La., MDL No. 1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., 79 D 01-9712-CT-59 |
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., 01-2-24553-8 SEA |
| *In re Serzone Prods. Liability Litigation* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., J.C.C.P. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D.N.Y., 03-17949-PCB |
| *In re Lupron Marketing & Sales Practices Litigation* | D. Mass., MDL No. 1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., CJ-03-714 |
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D. Ohio, C-1-91-256 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn., 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litigation* | D.N.Y., MDL No. 1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Or. Cir. Ct., 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacement)* | W. Va. Cir. Ct., 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., 2648 |

HILSOFT NOTIFICATIONS   PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30F   PHILADELPHIA, PA 1910   T 215-721-2120

22

| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., L-180-04 |
| *Singleton v. Hornell Brewing Co. Inc. (Arizona Ice Tea)* | Cal. Super. Ct., BC 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Ill. Cir. Ct., 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Fla. Cir. Ct., 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D.N.D., A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Ark. Cir. Ct., CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., 3:04-0783 |
| *Allen v. Monsanto Co.* | W. Va. Cir. Ct., 041465 |
| *Carter v. Monsanto Co.* | W. Va. Cir. Ct., 00-C-300 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., 98-C-2178 |
| *Daniel v. AON Corp.* | Ill. Cir. Ct., 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litigation* | D. Md., MDL No. 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation* | D. Mass., MDL No. 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., BC 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. 2:05-CV-04951-AB |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litigation* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litigation* | S.D.N.Y., 02-CIV-5571 RJH |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., SU-04-CV-3637 |
| *In re: Propulsid Products Liability Litigation* | E.D. La., MDL No. 1355 |
| *Baxter v. The Attorney General of Canada (In re Residential Schools Class Action Litigation)* | Ont. Super. Ct., 00-CV-192059 CPA |
| *McNall v. Mastercard Int'l, Inc. (Currency Conversion Fees)* | 13th Tenn. Jud. Dist. Ct., CT-002506-03 |

HILSOFT
NOTIFICATIONS

PORTLAND AREA OFFICE      10300 SW ALLEN BLVD      BEAVERTON, OR 97005      T 503-597-7697
PHILADELPHIA AREA OFFICE  1420 LOCUST ST 30F       PHILADELPHIA, PA 1910    T 215-721-2120

23

| | |
|---|---|
| *Lee v. Allstate* | Ill. Cir. Ct., 03 LK 127 |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., SU-2006-CV-3764-6 |
| *Harper v. Equifax* | E.D. Pa., 2:04-CV-03584-TON |
| *Beasley v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2005-58-1 |
| *Springer v. Biomedical Tissue Services, LTD (Human Tissue Litigation)* | Ind. Cir. Ct., 1:06-CV-00332-SEB-VSS |
| *Spence v. Microsoft Corp. (Antitrust Litigation)* | Wis. Cir. Ct., 00-CV-003042 |
| *Pennington v. The Coca Cola Co. (Diet Coke)* | Mo. Cir. Ct., 04-CV-208580 |
| *Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litigation)* | S.D. Ohio, 1:06-CV-075-MHW |
| *Splater v. Thermal Ease Hydronic Systems, Inc.* | Wash. Super. Ct., 03-2-33553-3-SEA |
| *Peyroux v. The United States of America (New Orleans Levee Breech)* | E.D. La., 06-2317 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., 01:CVS-1555 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires)* | N.D. Cal., C-05-04289-BZ |
| *In re Bridgestone Securities Litigation* | M.D. Tenn., 3:01-CV-0017 |
| *In re Mutual Funds Investment Litigation (Market Timing)* | D. Md., MDL No. 1586 |
| *Accounting Outsourcing v. Verizon Wireless* | M.D. La., 03-CV-161 |
| *Hensley v. Computer Sciences Corp.* | Ark. Cir. Ct., CV-2005-59-3 |
| *Peek v. Microsoft Corporation* | Ark. Cir. Ct., CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Or., CV-01-1529 BR |
| *Schwab v. Philip Morris USA, Inc.* | E.D.N.Y., CV-04-1945 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2006-409-3 |
| *In re Parmalat Securities Litigation* | S.D.N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Ins. Co.* | Ark. Cir. Ct., CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Ark. Cir. Ct., 2007-154-3 |
| *Govt. Employees Hospital Assoc. v. Serono Int., S.A.* | D. Mass., 06-CA-10613-PBS |
| *Gunderson v. Focus Healthcare Management, Inc.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc., et al.* | 14th Jud. D. Ct. La., 2004-2417-D |

| | |
|---|---|
| *Perez v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-00574-E |
| *Pope v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-01451-B |
| *West v. Carfax, Inc.* | Ohio C.P., 04-CV-1898 (ADL) |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Ark. Cir. Ct., CV-2007-155-3 |
| *In re Conagra Peanut Butter Products Liability Litigation* | N.D. Ga., MDL No. 1845 (TWT) |
| *The People of the State of CA v. Universal Life Resources (Cal DOI v. CIGNA)* | Cal. Super. Ct., GIC838913 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., 05-05437-RBL |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | W. Va. Cir. Ct., 04-C-296-2 |
| *In re Alstom SA Securities Litigation* | S.D.N.Y., 03-CV-6595 VM |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., 05-CIV-21962 |
| *Hoorman v. SmithKline Beecham* | Ill. Cir. Ct., 04-L-715 |
| *Santos v. Government of Guam (Earned Income Tax Credit)* | D. Guam, 04-00049 |
| *Johnson v. Progressive* | Ark. Cir. Ct., CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *In re SCOR Holding (Switzerland) AG Litigation (Securities)* | S.D.N.Y., 04-cv-7897 |
| *Shoukry v. Fisher-Price, Inc. (Toy Safety)* | S.D.N.Y., 07-cv-7182 |
| *In re: Guidant Corp. Plantable Defibrillators Prod's Liab. Litigation* | D. Minn., MDL No. 1708 |
| *Clark v. Pfizer, Inc (Neurontin)* | C.P. Pa., 9709-3162 |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | W. Va. Cir. Ct., 06-C-855 |
| *In re TJX Companies Retail Security Breach Litigation* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Ark. Cir. Ct., CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Ins.)* | C.D. Cal., SACV06-2235-PSG |
| *Palace v. DaimlerChrysler (Defective Neon Head Gaskets)* | Ill. Cir. Ct., 01-CH-13168 |
| *Lockwood v. Certegy Check Services, Inc. (Stolen Financial Data)* | M.D. Fla., 8:07-cv-1434-T-23TGW |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., DV-03-220 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (AIG)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Jones v. Dominion Resources Services, Inc.* | S.D. W. Va., 2:06-cv-00671 |

THE SOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

25

| | |
|---|---|
| *Gunderson v. F.A. Richard & Assocs., Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *In re Trans Union Corp. Privacy Litigation* | N.D. Ill., MDL No. 350 |
| *Gudo v. The Administrator of the Tulane Ed. Fund* | La. D. Ct., 2007-C-1959 |
| *Guidry v. American Public Life Insurance Co.* | 14th Jud. D. Ct. La., 2008-3465 |
| *McGee v. Continental Tire North America* | D.N.J., 2:06-CV-06234 (GEB) |
| *Sims v. Rosedale Cemetery Co.* | W. Va. Cir. Ct., 03-C-506 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., 2004-002417 |
| *In re Katrina Canal Breaches Consolidated Litigation* | E.D. La., 05-4182 |
| *In re Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CD's)* | Ill. Cir. Ct., 01-L-454 and 01-L-493 |
| *Pavlov v. CNA (Long Term Care Insurance)* | N.D. Ohio, 5:07cv2580 |
| *Steele v. Pergo( Flooring Products)* | D. Or., 07-CV-01493-BR |
| *Opelousas Trust Authority v. Summit Consulting* | 27th Jud. D. Ct. La., 07-C-3737-B |
| *Little v. Kia Motors America, Inc. (Braking Systems)* | N.J. Super. Ct., UNN-L-0800-01 |
| *Boone v. City of Philadelphia (Prisoner Strip Search)* | E.D. Pa., 05-CV-1851 |
| *In re Countrywide Customer Data Breach Litigation* | W.D. Ky., MDL No.1998 |
| *Miller v. Basic Research (Weight-loss Supplement)* | D. Utah, 2:07-cv-00871-TS |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Cambridge)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Weiner v. Snapple Beverage Corporation* | S.D.N.Y., 07-CV-08742 |
| *Holk v. Snapple Beverage Corporation* | D.N.J., 3:07-CV-03018-MJC-JJH |
| *Coyle v. Hornell Brewing Co. (Arizona Iced Tea)* | D.N.J., 08-CV-2797-JBS-JS |
| *In re Heartland Data Security Breach Litigation* | S.D. Tex., MDL No. 2046 |
| *Satterfield v. Simon & Schuster, Inc. (Text Messaging)* | N.D. Cal., 06-CV-2893 CW |
| *Schulte v. Fifth Third Bank (Overdraft Fees)* | N.D. Ill., 1:09-CV-06655 |
| *Trombley v. National City Bank (Overdraft Fees)* | D.D.C., 1:10-CV-00232 |
| *Vereen v. Lowe's Home Centers (Defective Drywall)* | Ga. Super. Ct., SU10-CV-2267B |
| *Mathena v. Webster Bank, N.A. (Overdraft Fees)* | D. Conn, 3:10-cv-01448 |
| *Delandro v. County of Allegheny (Prisoner Strip Search)* | W.D. Pa., 2:06-cv-00927 |

HESOFT
NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

26

| | |
|---|---|
| *Gunderson v. F.A. Richard & Assocs., Inc. (First Health)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Williams v. Hammerman & Gainer, Inc. (Hammerman)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (Risk Management)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (SIF Consultants)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Gwiazdowski v. County of Chester (Prisoner Strip Search)* | E.D. Pa., 2:08cv4463 |
| *Williams v. S.I.F. Consultants (CorVel Corporation)* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Sachar v. Iberiabank Corporation (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *LaCour v. Whitney Bank (Overdraft Fees)* | M.D. Fla., 8:11cv1896 |
| *Lawson v. BancorpSouth (Overdraft Fees)* | W.D. Ark., 1:12cv1016 |
| *McKinley v. Great Western Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wolfgeher v. Commerce Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Case v. Bank of Oklahoma (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Nelson v. Rabobank, N.A. (Overdraft Fees)* | Cal. Super. Ct., RIC 1101391 |
| *Fontaine v. Attorney General of Canada (Stirland Lake and Cristal Lake Residential Schools)* | Ont. Super. Ct., 00-CV-192059 CP |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Marolda v. Symantec Corporation (Software Upgrades)* | N.D. Cal., 3:08-cv-05701 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement* | E.D. La., MDL No. 2179 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Medical Benefits Settlement* | E.D. La., MDL No. 2179 |
| *Vodanovich v. Boh Brothers Construction (Hurricane Katrina Levee Breaches)* | E.D. La., 05-cv-4191 |
| *Gessele et al. v. Jack in the Box, Inc.* | D. Or., No. 3:10-cv-960 |
| *Duval v. Citizens Financial Group, Inc. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Mosser v. TD Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Mastercard & Visa)* | E.D.N.Y., MDL No. 1720 |
| *Saltzman v. Pella Corporation (Building Products)* | N.D. Ill., 06-cv-4481 |
| *In re Zurn Pex Plumbing, Products Liability Litigation* | D. Minn., MDL No. 1958 |
| *Blahut v. Harris, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |

HILSOFT
NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503.597-7697
T 215.721-2120

27

| | |
|---|---|
| *Eno v. M & I Marshall & Ilsley Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Casayuran v. PNC Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Anderson v. Compass Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Evans, et al. v. TIN, Inc. (Environmental)* | E.D. La., 2:11-cv-02067 |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Williams v. SIF Consultants of Louisiana, Inc. et al.* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Miner v. Philip Morris Companies, Inc. et al.* | Ark. Cir. Ct., 60CV03-4661 |
| *Fontaine v. Attorney General of Canada (Mistassini Hostels Residential Schools)* | Qué. Super. Ct., 500-06-000293-056 & No. 550-06-000021-056 (Hull) |
| *Glube et al. v. Pella Corporation et al. (Building Products)* | Ont. Super. Ct., CV-11-4322294-00CP |
| *Yarger v. ING Bank* | D. Del., 11-154-LPS |
| *Price v. BP Products North America* | N.D. Ill, 12-cv-06799 |
| *National Trucking Financial Reclamation Services, LLC et al. v. Pilot Corporation et al.* | E.D. Ark., 4:13-cv-00250-JMM |
| *Johnson v. Community Bank, N.A. et al. (Overdraft Fees)* | M.D. Pa., 3:12-cv-01405-RDM |
| *Rose v. Bank of America Corporation, et al. (TCPA)* | N.D. Cal., 11-cv-02390-EJD |
| *McGann, et al., v. Schnuck Markets, Inc. (Data Breach)* | Mo. Cir. Ct., 1322-CC00800 |
| *Simmons v. Comerica Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., 09-C-5242-B |
| *Simpson v. Citizens Bank (Overdraft Fees)* | E.D. Mich, 2:12-cv-10267 |
| *In re Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill, 09-CV-7666 |
| *In re Dow Corning Corporation (Breast Implants)* | E.D. Mich., 00-X-0005 |
| *Mello et al v. Susquehanna Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wong  et al. v. Alacer Corp. (Emergen-C)* | Cal. Super. Ct., CGC-12-519221 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., 11-MD-2221 |
| *Costello v. NBT Bank (Overdraft Fees)* | Sup. Ct. Del Cnty., N.Y., 2011-1037 |
| *Gulbankian et al. v. MW Manufacturers, Inc.* | D. Mass., No. 10-CV-10392 |
| *Hawthorne v. Umpqua Bank (Overdraft Fees)* | N.D. Cal., 11-cv-06700-JST |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., 2005-05453 |

HILSOFT NOTIFICATIONS   PORTLAND AREA OFFICE   PHILADELPHIA AREA OFFICE   10300 SW ALLEN BLVD   1420 LOCUST ST 30F   BEAVERTON, OR 97005   PHILADELPHIA, PA 1910   T 503-597-7697   T 215-721-2120

28

| | |
|---|---|
| *Adkins et al. v. Nestlé Purina PetCare Company et al.* | N.D. Ill., 1:12-cv-02871 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re MI Windows and Doors Products Liability Litigation (Building Products)* | D. S.C., MDL No. 2333 |
| *Childs et al. v. Synovus Bank, et al. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Steen v. Capital One, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., 2011-CA-008020NC |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement  (Claim Deadline Notice)* | E.D. La., MDL No. 2179 |
| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., 42-cv-2012-900001.00 |
| *In re: Energy Future Holdings Corp., et. al. (Asbestos Claims Bar Notice)* | Bankr. D. Del., 14-10979(CSS) |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., 14-civ-5731 (WHP) |
| *Kerry T. Thibodeaux, M.D. (A Professional Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., 13-C-3212 |
| *Ono v. Head Racquet Sports USA* | C.D.C.A., 2:13-cv-04222-FMO(AGRx) |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., 13-C-5380 |
| *Swift v. BancorpSouth Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Leland Small v. BOKF, N.A.* | D. Col., 13-cv-01125 |
| *Anamaria Chimeno-Buzzi & Lakedrick Reed v. Hollister Co. & Abercrombie & Fitch Co.* | S.D. Fla., 14-cv-23120-MGC |
| *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* | Sup. Ct. N.Y., No. 650562/11 |

Hilsoft-cv-134

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

29

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380<br><br>Civil Action No. 4:12-md-02380<br>(Judge Kane) |
| THIS DOCUMENT RELATES TO:<br>All Cases | |

### [PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND ENTRY OF FINAL JUDGMENT

Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino and Scott Giannetti ("Plaintiffs"), on behalf of themselves and the Settlement Class, and Defendants Shop-Vac Corporation ("Shop-Vac"), Lowe's Home Centers, Inc. ("HCI"), and Lowe's HIW, Inc. ("HIW") (Plaintiffs and Defendants are collectively "the Parties") have entered into a Settlement Agreement (the "Settlement Agreement"). The Parties previously submitted the Settlement Agreement to this Court for preliminary approval of the class action settlement provided for in the Settlement Agreement (the "Settlement"). On _____, 2016, this Court entered an Order Granting Preliminary Approval to Class Action Settlement ("Preliminary Approval Order"). On _____, 2016, the Parties filed a declaration confirming the timely distribution to the Settlement Class of the Settlement Notice and Publication Notice required by the Preliminary Approval Order. Now, the matter having come before the Court for hearing on _____, 2016, on the Parties' request for the entry of an order granting final approval to the proposed Settlement and for entry of final judgment in this matter, the Court finds and concludes that it has jurisdiction over the Parties and the subject matter and finds, concludes, and orders as follows:

## I.    JURISDICTION OF THE COURT

The Parties and the Settlement Class Members have submitted to the jurisdiction of the Court for purposes of the Settlement; the Court has personal jurisdiction over the Parties and the Settlement Class Members; the Court has subject matter jurisdiction to release all claims and causes of action released in the Settlement; and the Court has subject matter jurisdiction to approve the Settlement.

## II.   CLASS CERTIFICATION

In the Preliminary Approval Order, this Court granted conditional class certification to the following nationwide Settlement Class:

> Each person in the United States and its territories who, from January 1, 2006 to _____, 2016, either (1) purchased a Vacuum, or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means. Excluded from the Settlement Class is any person or entity who purchased or acquired a Vacuum for resale, all judges to whom the Lawsuits are assigned, and the officers, directors and counsel of record of Defendants, and all employees of Defendants.

The Court found and concluded that the Settlement Class satisfied all the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable laws; appointed Andrew Harbut, Alan McMichael, Kris Reid, David Palomino, and Scott Giannetti as class representatives; and appointed the law firm Dilworth Paxson LLP as Liaison Counsel and the law firms Faruqi & Faruqi, LLP, Lax LLP, Lite DePalma Greenberg, LLC, and Milberg LLP as Class Counsel for the Settlement Class. Having considered all submissions timely filed with the Court pursuant to the Preliminary Approval Order, the Court now finds and concludes that the provisions of the Preliminary Approval Order conditionally certifying the Settlement Class, appointing Plaintiffs as representatives of the Settlement Class, appointing Epiq Systems Class Action and Claims

Solutions as the Settlement Administrator, and appointing Liaison and Class Counsel should be, and hereby are, confirmed in all respects as a final class certification order under Federal Rule of Civil Procedure 23 for the purposes of implementing the nationwide class settlement provided for in the Settlement Agreement and Settlement, and entering final judgment in this action.

## III.    NOTICE

The Preliminary Approval Order approved: (1) the form and content of the notice of Settlement to be provided to members of the Settlement Class by e-mail where an e-mail address is known and readily available to Defendants, and by mail where a mailing address is known and readily available to Defendants (the "Settlement Notice"); (2) the form and content of a posted notice (the "Posted Notice") to be posted on the Settlement Website, **www.shopvacphpsettlement.com**, and linked to the Support page of the Shop-Vac USA website; (3) the form and content of a publication notice (the "Publication Notice"); and (4) the plan specified in the Settlement Agreement and the Notice Plan for distributing the Settlement Notice and disseminating the Publication Notice.

The Settlement Notice fairly, accurately, and reasonably informed members of the Settlement Class of: (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreement; and (3) appropriate information about the right of Settlement Class Members to exclude themselves from the Settlement, object to the terms of the Settlement Agreement, or object to Class Counsel's application for an award of attorneys' fees and reimbursement of expenses ("Application"), and the procedures to do so.

The Settlement Notice fairly and adequately informed members of the Settlement Class that if they did not comply with the specified procedures and deadline for filing objections, they

would lose any opportunity to have any objection considered by this Court at the Fairness Hearing or otherwise to contest approval of the Settlement or to appeal from any order or judgment entered by this Court in connection with the Settlement.

The plan specified in the Preliminary Approval Order for distributing the Settlement Notice and Publication Notice has been implemented and has provided to the Settlement Class reasonable notice of the Settlement. There is no additional mode of distribution that would be reasonably likely to notify members of the Settlement Class who may not already have received notice pursuant to that distribution plan. The Preliminary Approval Order required the Settlement Administrator to e-mail or mail by first-class United States Mail a copy of the Settlement Notice to all members of the Settlement Class whose addresses reasonably can be identified in Defendants' records. The Preliminary Approval Order also required that before the Settlement Administrator mailed first-class United States Mail copies of the Settlement Notice, the Settlement Administrator had to obtain or cause to be obtained address updates using a National Change of Address database and use any updated addresses when mailing. The Preliminary Approval Order also required that the Posted Notice be posted on the Settlement Website, **www.shopvacphpsettlement.com**, and linked to the Support page of the Shop-Vac USA website.

The Preliminary Approval Order required Defendants to file or cause to be filed with the Court a declaration of compliance with the foregoing notice requirements. Pursuant to the Preliminary Approval Order, Defendants have filed the required declaration. Additionally, Defendants' Counsel has filed with the Court proof of compliance with the Class Action Fairness Act of 2005.

Based on the foregoing, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.

## IV.    PERSONS EXCLUDED FROM THE SETTLEMENT CLASS

The Settlement Administrator received requests for exclusion from the Settlement Class and has provided Class Counsel and Defendants' Counsel copies of those requests. Class Counsel and Defendants' Counsel have filed with the Court a list of all requests for exclusion received by the Settlement Administrator. All persons named in the list attached hereto as Exhibit 1 are hereby excluded from the Settlement Class and will not be bound by the terms of the Settlement.

## V.    FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

In the Preliminary Approval Order, the Court found that the Settlement Agreement appeared to be fair, reasonable, and adequate and fell within the appropriate range of possible approval. In essence, the Settlement provides for each member of the Settlement Class to receive the benefits described in Section IV.A of the Settlement Agreement. The Settlement Agreement provides these benefits to the Settlement Class even though Defendants have at all times disputed, and continue to dispute, Plaintiffs' allegations in the Lawsuits and to deny any liability for any of the claims that have been or could have been alleged by Plaintiffs or other members of the Settlement Class.

Taking into account: (1) the value of the benefits to be provided by the Settlement to the Settlement Class; (2) the defenses asserted by Defendants, (3) the risks to the members of the Settlement Class that Defendants would successfully defend against claims arising out of the facts and legal theories pled and asserted in this case, whether litigated by members of the

Settlement Class themselves or on their behalf in a class action, and (4) the length of time that would be required for members of the Settlement Class, or any group of members of the Settlement Class, to obtain a final judgment through one or more trials and appeals, the Settlement is fair, reasonable, and adequate. Moreover, the Parties have reached the Settlement after vigorous litigation, significant investigation and discovery conducted by Plaintiffs, Class Counsel, and Defendants, and a protracted, arm's-length negotiation process facilitated by a mediator, and the Settlement is not in any way the product of collusion.

Accordingly, having considered the foregoing, the number of putative Settlement Class Members who have requested to be excluded from the Settlement, the level of opposition to the Settlement, the strength and weaknesses of the claims that have been and could be asserted by or on behalf of the members of the Settlement Class, the strengths and weaknesses of the defenses that have been and could be asserted by Defendants, the damages and other relief that have been and could be claimed on behalf of the members of the Settlement Class, the value of the Settlement, and the complexity, length, expense, and uncertain outcome of continued litigation, and there being no suggestion of improper collusion among the Parties, the Court finds that the Settlement is fair, reasonable, and adequate to members of the Settlement Class, and the Court hereby grants final approval of the Settlement and enters this Final Approval Order implementing its terms. The Court hereby adopts and incorporates the terms of the Settlement Agreement for the purposes of this Final Approval Order, including the definitions set forth in the Settlement Agreement.

## VI.    ADMINISTRATION OF THE SETTLEMENT

For the purposes of consummating the administration of the Settlement, the Court orders as follows:

1.       Defendants will provide benefits as outlined in Section IV of the Settlement Agreement.

2.       The Court hereby awards $_____ to Plaintiff Andrew Harbut, $_____ to Plaintiff Alan McMichael, $_____ to Plaintiff Kris Reid, $_____ to Plaintiff David Palomino, and $_____ to Plaintiff Scott Giannetti in compensation for the time, effort, and risk they undertook on behalf of the Settlement Class. These amounts shall be paid from the attorneys' fees awarded to Class Counsel by the Court.

3.       The Court hereby awards attorneys' fees and costs to compensate Class Counsel for their time incurred and expenses advanced. The Court has concluded that: (a) Plaintiffs' Counsel achieved a favorable result for the Class by obtaining Defendants' agreement to certain non-monetary relief and programmatic changes; (b) Class Counsel devoted substantial effort to pre-and post-filing investigation, legal analysis, and litigation; (c) Plaintiffs' Counsel prosecuted the Settlement Class's claims on a contingent fee basis, investing significant time and accumulating costs with no guarantee that they would receive compensation for their services or recover their expenses; (d) Plaintiffs' Counsel employed their knowledge of and experience with class action litigation in achieving a valuable settlement for the Settlement Class, in spite of Defendants' possible legal defenses and its experienced and capable counsel; (e) Plaintiffs' Counsel have contingent fee agreements with Plaintiffs, who have reviewed the Settlement Agreement and been informed of Class Counsel's Application and have approved the Settlement; and (f) the Notice informed the Settlement Class of

7

the amount and nature of Class Counsel's fee and cost request under the

Settlement Agreement, Class Counsel filed and posted their Application in time

for Settlement Class Members to make a meaningful decision whether to object to

the Class Counsel's Application, and [_____] Settlement Class Members

objected. For these reasons, the Court hereby approves Class Counsel's

Application and awards to Class Counsel attorneys' fees and expenses in the

amount of $_____.

4.      The Court hereby orders that this award of attorneys' fees and

expenses be paid in accordance with the terms of the Settlement Agreement.

## VII.   RELEASES AND EFFECT OF SETTLEMENT AGREEMENT

### A.   Releases

In consideration of the terms of the Settlement Agreement, all Settlement Class Members,

including Plaintiffs, are hereby found, deemed, and adjudged to have fully, finally, and forever

released and discharged all Released Claims against any and all Releasees.

"Released Claims" means any and all claims, actions, causes of action, administrative

claims, demands, debts, liens, offsets or liabilities, damages, costs, attorney's fees, obligations,

judgments, expenses, or liabilities, in law or in equity, whether now known or unknown,

contingent or absolute, other than claims for personal injury, that Plaintiffs or any member of the

Settlement Class now have or, absent the Settlement Agreement, may in the future have, against

Releasees, or any of them, by reason of any act, omission, harm, matter, cause, or event

whatsoever that has occurred at any time up to and including the entry of the Preliminary

Approval Order, that (a) has been alleged in the Lawsuits or (b) could have been alleged in the

Lawsuits or in another court action and relates (i) to any of the alleged inadequacies,

8

misstatements, or issues of or associated with the Vacuums alleged in the Lawsuits or (ii) to any act, omission, damage, matter, cause, or event whatsoever arising out of or related to the initiation, defense, or settlement of the Lawsuits or the claims or defenses asserted or that could have been asserted in the Lawsuits.

"Releasees" means (a) Defendants, together with their respective predecessors and successors in interest, parents, subsidiaries, affiliates, and assigns; (b) each of their respective past, present, and future owners, shareholders, officers, directors, agents, representatives, employees, attorneys, and insurers; and (c) all suppliers, distributors, dealers, retailers, trade partners, licensors, licensees, franchisees, public relations firms, advertising and production agencies, and other entities, whether foreign or domestic, who were or are in the chain of, or played any role in, the design, testing, manufacture, assembly, distribution, marketing, sale, lease, installation, or servicing of the Vacuums or their component parts.

In consideration of the terms of the Settlement Agreement, Defendants and the other Releasees, are hereby found, deemed, and adjudged to have fully, finally, and forever released and discharged all actions, causes of action, claims, administrative claims, demands, debts, damages, costs, attorney's fees, obligations, judgments, expenses, compensation, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, that Defendants now have against Plaintiffs, Settlement Class Members, Class Counsel, or Plaintiffs' Counsel by reason of any act, omission, harm, matter, cause, or event whatsoever arising out of the initiation, prosecution, or settlement of the Lawsuits or the claims and defenses asserted in the Lawsuits (the "Released Defendants' Claims"). The Released Defendants' Claims do not include claims to enforce the Settlement.

With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon both the entry of this Final Approval Order, and the passing of the Effective Date, Plaintiffs and Defendants shall expressly waive, and each of the Settlement Class Members and the Releasees shall be deemed to have waived, and by operation of the Final Approval Order shall have waived, relinquished and released any and all provisions, rights and benefits conferred by or under Cal. Civ. Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law that governs or limits a person's release of unknown claims, including any law or principle of common law that is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties acknowledge that they understand the significance and consequence of this release and specific waiver. It is the intention of Plaintiffs and Defendants, and by operation of law, the Settlement Class Members and the Releasees, to completely, fully, finally and forever extinguish any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, and without regard to the subsequent discovery of additional or different facts. The Parties acknowledge, and the Settlement Class Members and the Releasees by operation of law shall be deemed to have acknowledged, that the inclusion of this waiver was separately bargained for and was a material element of the Settlement and was relied upon by each and all of the Parties in entering into the Settlement Agreement.

**B.     Settlement Agreement as Exclusive Remedy for Released Claims**

Upon the entry of this Final Approval Order: (1) enforcement of the Settlement Agreement shall be the exclusive remedy for Settlement Class Members with respect to all Released Claims of Settlement Class Members; and (2) the Releasees shall not be subject to liability or expense of any kind to any of the Settlement Class Members, all of whom are hereby permanently barred and enjoined from initiating, asserting, or prosecuting against any of the Releasees, in any federal or state court or tribunal, any Released Claim. Settlement Class Members who are prosecuting or asserting any of the Released Claims are ordered to take whatever measures are necessary to effectuate the dismissal of their claims.

**C.     Effect of a Final Judicial Determination of Invalidity or Unenforceability**

If, after the entry by this Court of this Final Approval Order, a notice of appeal of this Final Approval Order is timely filed by any party, objector, claimant, or other person or entity, and if an appellate court makes a final determination that this Final Approval Order is in any respect invalid, contrary to law, or unenforceable, Defendants' stipulation to certification of the Settlement Class shall be null and void, and the Parties shall return to their respective positions in the Lawsuits as those positions existed on September 3, 2015, when the Parties reached an agreement-in-principle to settle.

The final Court-ordered amount of any award of attorneys' fees and expenses to Class Counsel or case contribution awards to Plaintiffs is a matter separate and apart from the Settlement Agreement and this Final Approval Order. Neither the decision by the Court concerning the award of attorneys' fees and expenses to Class Counsel or case contribution awards to Plaintiffs nor any appeal of the Court's order concerning an award of attorneys' fees

and expenses to Class Counsel or case contribution awards to Plaintiffs shall affect the validity or finality of the Settlement.

## VIII.   NO ADMISSION OF LIABILITY

The Parties entered into the Settlement Agreement for the purpose of compromising and settling disputed claims. Nothing in the Settlement Agreement or in the documents relating to the Settlement Agreement shall be construed, deemed, or offered as an admission by any of the Parties, or by any member of the Settlement Class, for any purpose in any judicial or administrative action or proceeding, whether in law or in equity, regardless of whether the Settlement Agreement ultimately becomes effective.

## IX.   ENTRY OF FINAL JUDGMENT

The Complaint, which the Court finds was filed on a good faith basis in accordance with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information, is hereby dismissed with prejudice and without costs, except as provided in the Stipulation, as against the Defendants. The Court finds that all Parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein. The Court further orders the entry of, and hereby enters, this Final Approval Order. The Court expressly retains jurisdiction over all matters relating to the adjudication of claims and the provision of benefits as provided by the Preliminary Approval Order and by this Final Approval Order, as well as all other matters relating to the administration and consummation of the Settlement.

IT IS SO ORDERED.

Dated: _____, 2016

_____
YVETTE KANE, District Judge
Middle District of Pennsylvania