IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380 |
| | No. 4:12-md-2380 |
| THIS DOCUMENT RELATES TO: | |
| | (Judge Kane) |
| ALL CASES | |

## MEMORANDUM

Before the Court is the parties' joint motion for preliminary approval of their proposed settlement agreement, preliminary certification of a nationwide settlement class, and approval of proposed form of notice. (Doc. No. 160.) For the reasons that follow, the Court will grant the motion and schedule a fairness hearing.

### I. BACKGROUND

Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation transferred multiple cases involving the marketing of Shop-Vac brand wet/dry vacuums to this Court for the coordination of pretrial proceedings. (Doc. Nos. 1, 9, 22.) Plaintiffs Andrew Harbut, Alan McMichael, and Kris Reid filed the first consolidated amended complaint in the above-captioned multidistrict litigation on February 19, 2013 (Doc. No. 62), and the second consolidated amended complaint ("SCAC") on September 12, 2013 (Doc. No. 97). In the SCAC, Plaintiffs Harbut, McMichael, and Reid allege, inter alia, that Defendants Shop-Vac Corporation, Lowe's Home Centers, Inc., and Lowe's HIW, Inc. made fraudulent and misleading representations

1

about the peak horsepower and tank capacity of Shop-Vac brand wet/dry vacuums.[1]  (Doc. No. 97; see Doc. No. 162-2 at 2.)

On October 25, 2013, Defendants Shop-Vac Corporation, Lowe's Home Centers, Inc., and Lowe's HIW, Inc. moved to dismiss the SCAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 102.)  This Court granted in part and denied in part Defendants' motion to dismiss.  (Doc. Nos. 115, 116.)  Thereafter, on August 13, 2015, the parties entered into mediation with the Honorable Edward A. Infante, retired Chief Magistrate Judge of the United States District Court for the Northern District of California.  (Doc. No. 140 ¶ 2.)  In September 2015, the parties reached an agreement in principle to settle, (Doc. Nos. 140 ¶ 3; 161 at 16; 162-1 at 11, 43), and continued negotiating until March 2016 with the assistance of Judge Infante (Doc. No. 156).

On April 1, 2016, Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino, and Scott Giannetti and Defendants Shop-Vac Corporation and Lowe's Home Centers, LLC jointly filed the present motion, requesting that the Court: (1) preliminarily approve their proposed settlement agreement; (2) "preliminarily" certify the proposed settlement class; (3) appoint representatives of the settlement class, liaison counsel, and class counsel for the settlement class; (4) approve the proposed form of notice; and (5) schedule a fairness

---

[1] Plaintiffs David Palomino and Scott Giannetti brought a parallel, class action lawsuit against Defendant Shop-Vac for breach of the New Jersey Consumer Fraud Act and for breach of warranty in the Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-1399-12 (the "New Jersey Action").  (Doc. No. 162-1 at 1-3; see Doc. No. 12-5 at 3-15.)  On February 6, 2015, the New Jersey "state court certified a class of consumers who are New Jersey citizens who purchased Shop-Vac brand wet/dry vacuums in New Jersey between February 1, 2006 and May 8, 2015."  (Doc. No. 161 at 13.)  The New Jersey Action is currently stayed pending the "completion of federal proceedings."  (Id.)  The proposed settlement agreement would release claims against Defendant Shop-Vac in the New Jersey Action.  (Doc No. 162-1 at 1.)

hearing.[2] (Doc. No. 160.) In support thereof, the parties submitted a supporting brief (Doc. No. 161), and attached a copy of the class action settlement agreement (Doc. No. 162-1). The Court addresses the parties' requests in turn.

## II. DISCUSSION

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions and the procedures that apply for review of a class settlement. Fed. R. Civ. P. 23(e); see In re Nat. Football League Players Concussion Injury Litig., 775 F.3d 570, 581 (3d Cir. 2014) (interior quotations omitted). The Court first undertakes a review of the proposed class settlement for preliminary approval.

### A. Preliminary approval of class settlement

The parties jointly move this Court to grant preliminary approval of their proposed settlement agreement. (Doc. No. 160.)

Preliminary approval of a proposed class action settlement "establishes an initial presumption of fairness," In re Gen. Motors Corp., 55 F.3d 768, 785 (3d Cir. 1995) (citing Newberg on Class Actions § 11.41 (3rd ed.)), and guides "whether notice of the proposed settlement should be sent to the class." Newberg on Class Actions § 13:13 (5th ed.). The purpose of this preliminary determination is "not to make a final determination of the settlement's fairness," id., or simply to issue a "judicial rubber stamp of the parties' agreement." In re Nat'l Football League Players' Concussion Injury Litig., 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014). As such, district courts examine whether the proposed agreement arose out of "serious, informed non-collusive negotiations," has any "obvious deficiencies," "improperly

---

[2] The Court will refer to Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino, and Scott Giannetti and Defendants Shop-Vac Corporation and Lowe's Home Centers, LLC collectively as "the parties."

3

grant[s] preferential treatment to class representatives or segments of the class," and "falls within the range of possible approval." E.g., In re Nasdaq Market–Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing Manual for Complex Litigation § 30.41 (3rd ed.)); see In re Gen. Motors Corp., 55 F.3d at 785.

Here, the Court is satisfied that the proposed settlement agreement arose out of "serious, informed, non-collusive negotiations." In re Nasdaq, 176 F.R.D. at 102. The parties engaged in three years of discovery (Doc. No. 161 at 22), pursued significant motion practice prior to agreeing to mediation (Doc. Nos. 68, 77, 102, 107), entered into settlement discussions with a third-party mediator, Judge Infante (Doc. No. 161 at 23), and spent seven months negotiating the terms of the settlement agreement (id. at 24). The parties also emphasize, in their supporting brief, the scope of the discovery conducted. (Doc. No. 161 at 22-23.) Plaintiffs' counsel describes having reviewed 22,000 pages of Defendants' documents, taking and defending multiple depositions, and consulting with several experts. (Id.) Thus, the Court is persuaded that the proposed settlement agreement arose out of "serious, informed, non-collusive negotiations." In re Nasdaq, 176 F.R.D. at 102; see In re Gen. Motors Corp., 55 F.3d at 785 (discussing the factors to consider at the preliminary approval stage).

Similarly, as to the terms of the agreement, the Court is satisfied that the agreement has no "obvious deficiencies" and "falls within the range of possible approval." In re Nasdaq, 176 F.R.D. at 102. "To determine whether a settlement falls within the range of possible approval, a court must consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Nat'l Football League Players' Concussion Injury Litig., 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (internal quotations and citations omitted). The proposed settlement amount does not have to be "dollar-for-dollar the equivalent of the claim," In re Ionosphere Clubs, Inc.,

4

156 B.R. 414, 427 (S.D.N.Y. 1993), and a "satisfactory settlement" may only "amount to a hundredth or even a thousandth part of a single percent of the potential recovery." City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d Cir. 1974).

The proposed settlement agreement provides, inter alia, for an extension of the manufacturer's warranty on the motors of the Shop-Vac brand wet/dry vacuums by twenty-four months, requires Shop-Vac to change how it refers to "peak horsepower" on its marketing materials, and "alters the existing tank gallon legend" of the vacuums. (Doc. No. 162-1 at 12-13.) Defendants agree not to oppose Faruqi & Faruqi, LLP, Lax LLP, Lite DePalma Greenberg, LLC, and Milberg LLP's request for $4,250,000 in attorneys' fees and expenses. (Doc. No. 162-1 at 5, 18.) In exchange thereof, the proposed class settlement would release, inter alia, all claims that any member of the settlement class has or may have in the future against Defendants:

> (a) has alleged in the Lawsuits or (b) could have been alleged in the Lawsuits or in another action and relates (i) to any of the alleged inadequacies, misstatements, or issues of with the Vacuums alleged in the Lawsuits or (ii) to any act, omission, matter, cause, or event whatsoever arising out of or related to the initiation, or settlement of the Lawsuits or the claims or defenses asserted or that could been asserted in the Lawsuits.

(Id. at 7-8, 19-20.) The settlement agreement also provides that counsel may submit to the Court an application "seeking awards to Plaintiffs not to exceed $5,000 each." (Id. at 18.)

In light of the risks faced by Plaintiffs in continuing litigation and the benefits provided under the proposed settlement agreement, the Court finds that the proposed settlement agreement falls within the range of possible approval for purposes of preliminary approval. The parties estimate the retail value of the extended warranties amount "well into the millions of dollars." (Doc. No. 161 at 26.) The proposed payment of $4,250,000 in attorneys' fees and expenses is "separate from and in addition to the relief afforded" to the settlement class. (Id. at 27.) Furthermore, proposed monetary awards to Plaintiffs represent incentive awards, which are

permissible in class action litigation and appear reasonable at this stage. Sullivan v. DB Inv., Inc., 667 F.3d 273, 333 n.65 (3d Cir. 2011). Accordingly, the Court will preliminarily approve the proposed settlement agreement.

### B. Preliminary certification of a nationwide settlement class

The parties also jointly move the Court to preliminarily certify a nationwide settlement class pursuant to Federal Rule of Civil Procedure 23(b)(3). (Doc. No. 161 at 7; see Doc. No. 162-1 at 10, 43.) In support thereof, the parties represent that the proposed settlement class satisfies the requirements under Federal Rules of Civil Procedure 23(a) and 23(b)(3). (Doc. No. 161 at 27.)

At the preliminary approval stage of a class action settlement, a court may preliminarily certify the class for purposes of providing "notice to absent class members." See In re NFL Players Litig., 775 F.3d at 584; In re: Amtrak Train Derailment in Phila., Pa., No. 15-2654, 2016 WL 1359725, at *4 (E.D. Pa. Apr. 6, 2016). In making this preliminary determination, district courts examine whether "the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." E.g., Smith v. Prof'l Billing & Mgmt. Servs., Inc., No. 06-4453, 2007 WL 4191749, at *2 (D.N.J. Nov. 21, 2007) (citing Manual for Complex Litigation § 21.632 (4th ed.)). This preliminary determination employs a "less rigorous analysis than that necessary for final certification" because courts conduct a "fairness hearing in order to issue a final class certification and approve the settlement." See In re: Amtrak Train Derailment, 2016 WL 1359725, at **2, 4 (E.D. Pa. Apr. 6, 2016).

The Court addresses, in turn, Federal Rules of Civil Procedure 23(a) and 23(b)(3)'s requirements for maintaining a class action. Fed. R. Civ. P. 23(a), (b)(3).

### 1. Proposed Settlement Class Definition

The proposed settlement class corresponds to "each person in the United States and its territories who, from January 1, 2006 to the date of entry of the Preliminary Approval Order, either (1) purchased a Vacuum[3], or (2) received a Vacuum as a gift, or (3) acquired possession of a Vacuum through other lawful means." (Doc. No. 162-1 at 9; see Doc. No. 161 at 17.) The proposed class definition excludes, inter alia, persons or entities who acquired a vacuum for the purpose of resale, Defendants' employees, and putative settlement class members who properly and timely opt-out of the proposed settlement. (Doc. No. 162-1 at 9.) The Court considers this proposed class definition sufficiently "precise, objective and presently ascertainable" for purposes of this preliminary determination. Manual for Complex Litigation § 21.222 (4th ed.)

2. **Numerosity**

Federal Rule of Civil Procedure 23(a) provides four prerequisites to maintaining a class action: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The numerosity requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, the parties claim that millions of Shop-Vac vacuums were sold during the class period (Doc. Nos. 161 at 28, 37; see Doc. No. 162-1 at 40), and submit testimony that "known Class Members will exceed 1 million" (Doc. No. 162-1 at 80).[4] Therefore, Rule 23(a)'s numerosity requirement is met.

---

[3] The proposed settlement agreement defines "Vacuums" as "Shop-Vac brand wet/dry vacuums sold in the United States and its territories during the Class Period." (Doc. No. 162-1 at 10.)

[4] In the proposed order, the parties also agree that "persons and entities throughout the nation purchased thousands of [Shop-Vac] Vacuums." (Doc. No. 162-1 at 40.)

7

### 3. Commonality

The second Rule 23(a) prerequisite requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A putative class satisfies Rule 23(a)'s commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013) (quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)). "Their claims must depend upon a common contention ... that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." In re Nat'l Football League Players Concussion Injury Litig., No. 15-2206, 2016 WL 1552205, at *7 (3d Cir. Apr. 18, 2016) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)).

Here, the parties argue that a "common question that cuts across every claim of every Settlement Class Member is whether Defendants misrepresented the peak horsepower and tank capacity" of Shop-Vac vacuums. (Doc. No. 161 at 28.) The Court agrees. See Rodriguez v. Nat'l City Bank, 726 F.3d 372, 383 (3d Cir. 2013) ("[T]here may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant."). For purposes of preliminary certification, the commonality requirement is satisfied.

### 4. Typicality

Rule 23(a)(3)'s typicality requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Third Circuit has "set a 'low threshold' for typicality. Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of

legal theories' or where the claim arises from the same practice or course of conduct." In re NFL Players Litig., 2016 WL 1552205, at *8 (internal citations omitted).

Here, the parties contend in their supporting brief that named "Plaintiffs' claims and the claims of all other Settlement Class Members arise from the same conduct, Defendants' pattern of overstating the 'peak horsepower' and tank capacity of the Vacuums." (Doc. No. 161 at 30; see Doc. No. 12-5 at 5.) The Court finds that the typicality requirement is tentatively satisfied for purposes of providing "notice to absent class members." See In re NFL Players Litig., 775 F.3d at 584.

### 5. Adequacy of representation

The fourth Rule 23(a) prerequisite provides that "representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requires a determination of (1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 185 (3d Cir. 2001). Upon review of the record, the Court is persuaded that the competence and experience evidenced by Plaintiffs' interim counsel in this MDL satisfies Rule 23(a)'s adequacy requirement.

### 6. Rule 23(b)(3): Common questions of law and fact predominate

In addition to satisfying the four Rule 23(a) prerequisites, the parties must also demonstrate that the proposed class "satisf[ies] at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). Here, the parties rely on Rule 23(b)(3), which applies when (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) when "a class

9

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Dukes, 564 U.S. at 345.

The first inquiry – the "predominance inquiry" – tests "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." Sullivan v. DB Investments, Inc., 667 F.3d 273, 298 (3d Cir. 2011). The parties stress that "predominance is satisfied" for two reasons. First, the issues relevant to the settlement class center on Defendants' conduct, rather than Plaintiff's actions. (Doc. No. 161 at 33.) Second, questions such as whether the Shop-Vac vacuums "reach their advertised 'peak horsepower'" or tank capacity is an issue susceptible to generalized proof. (Id.) For purposes of preliminary certification, the Court is satisfied that common questions surrounding Defendants' alleged misrepresentation and fraud appear to predominate over individual questions of law or fact. See Sullivan, 667 F.3d at 297-98; In re Linerboard Antitrust Litig., 305 F.3d 145, 163 (3d Cir. 2002).

The second inquiry – the superiority inquiry – "asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." In re Cmty. Bank of N. Virginia Mortgage Lending Practices Litig., 795 F.3d 380, 409 (3d Cir. 2015) (interior citation omitted). The parties argue that class treatment is superior because the "size of each Settlement Class Member's alleged loss is too small to be economically litigated outside of a class action." (Doc. No. 161 at 34.) The Court agrees. Considering the amount of the alleged loss, settlement appears to be "a more desirable outcome for the class than individualized litigation." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 796 (3d Cir. 1995).

Thus, having found preliminarily that predominance and superiority are satisfied, the Court will preliminarily certify the proposed class for purposes of providing "notice to absent class members." See In re NFL Players Litig., 775 F.3d at 584.

**C. Proposed notice to class**

The parties also move the Court to approve the proposed means of notifying class members. (Doc. Nos. 161 at 36; 162-1 at 15). In doing so, the parties ask the Court to approve Epiq Systems Class Action and Claims Solutions ("Epiq Systems") as the settlement administrator. (Doc. No. 162-1 at 9, 13, 48.) The parties submitted a proposed settlement notice (id. at 10, 56), posted notice (id. at 7, 58-68), publication notice (id. at 8, 70), and a proposed plan for disseminating the notice (id. at 72).

Federal Rule of Civil Procedure 23(c)(2)(B) requires the "best notice that is practicable under the circumstances" to be given to potential members of a Rule 23(b)(3) class, "including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2).[5] Here, the parties seek to certify a settlement class pursuant to Federal Rule 23(b)(3). Therefore, under Rule 23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

---

[5] Similarly, Federal Rule of Civil Procedure 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members" of a proposed settlement agreement. Fed. R. Civ. P. 23(e)(1); see In re Prudential Ins., 148 F.3d at 326. "The Rule 23(e) notice is designed to summarize the litigation and the settlement and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'" In re Prudential Ins., 148 F.3d at 327 (quoting 2 Newberg on Class Actions § 8.32).

11

Fed. R. Civ. P. 23(c)(2)(B). "In addition to the requirements of Rule 23, due process further requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" In re NFL Players Litig., 2016 WL 1552205, at *16 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

The parties propose, in relevant part, that Epiq Systems would disseminate a copy of the settlement notice (Doc. No. 162-1 at 56), within twenty-one days to every member of the settlement class who "reasonably can be identified in Defendants' records" by email address or mailing address (Doc. No. 162-1 at 15-17, 81-82). Defendants or Epiq Systems would further disseminate notices in People Magazine, Family Handyman, Facebook, and the Conversant Ad Network within twenty-one days. (See id.) The parties' proposed notice plan also includes sponsoring search listings on Internet search engines, including Google, Yahoo! and Bing, establishing an informational website, www.ShopVacPHPSettlement.com, and providing a toll-free number for additional information. (Doc. No. 162-1 at 82-84.) The parties submitted expert input that the proposed notice targets "adults 18 years and older who shop at Lowes" and would "reach at least 70.2% of Settlement Class Members an average of 2.5 times each." (Doc. No. 162-1 at 80.) Defendants propose to pay for the costs of preparing and disseminating the notices. (Doc. No. 162-1 at 17.)

Having reviewed the proposed notices and the proposed notice plan, the Court is satisfied that the parties' proposed notices and notice plan satisfy Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1) as well as due process. The proposed settlement notice is individualized in nature (Doc. No. 162-1 at 47, 77, 80), describes the nature of the action, defines the proposed settlement class, identifies the class claims, provides that class members may

appear through an attorney, permits members to opt-out of the settlement, and addresses the binding effect of the judgment. Fed. R. Civ. P. 23(c)(2)(B) (id. at 56). The proposed "posted notice" further apprises class members of the opportunity to inspect settlement documents and pleadings filed in the above-captioned MDL. (Doc. No. 162-1 at 60, 68.) The proposed notices are altogether informative and easy to read; the notice plan appears designed to reach the class efficiently.

Accordingly, the Court will approve the proposed settlement notice, publication notice, and proposed notice plan. The Court will also approve the proposed "posted notice," (Doc. No. 162-1 at 7, 58-68), excepting Section 13's discussion of class counsel (id. at 64) for reasons discussed below, [6] and approve "Epiq Systems" to serve as the settlement administrator.

**D. Appointment of class counsel and class representatives**

On January 17, 2013, this Court appointed Milberg LLP, Lax LLP and Faruqi & Faruqi LLP as Plaintiffs' interim class counsel, and Dilworth Paxson LLP as Plaintiffs' interim liaison counsel. (Doc. No. 56.) The parties move the Court to appoint class counsel for the settlement class and representatives of the settlement class.[7]

The application for class counsel "is generally submitted as part of the certification motion." Manual Complex Lit. § 21.273 (4th ed.). In fact, the Third Circuit has stated that "a district court's decision to certify a class must precede the appointment of class counsel." Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010) (emphasis added); see Newberg on Class Actions § 3:84 (5th ed.) ("[I]t is clear that a court must appoint class counsel at the same

---

[6] Section 13 of the proposed "posted notice," (Doc. No. 162-1 at 64) should be amended in accordance with the Court's decision declining to appoint class counsel at this preliminary stage. See Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010).

[7] The parties request the additional appointment of Lite DePalma Greenberg, LLC, which was appointed as class counsel along with Milberg LLP and Lax LLP in the New Jersey Action. (Doc. No. 161 at 35 n.8.)

time it certifies the class."). Here, only the parties' motion for preliminary certification is before the Court. (Doc. No. 160.) Therefore, the Court will decline to appoint class counsel, liaison counsel, or class representatives at this preliminary stage. See Sheinberg, 606 F.3d at 132.

## III. CONCLUSION

For the reasons stated above, the Court will grant the parties' joint motion for preliminary approval of class settlement and for preliminary certification of a nationwide settlement class. (Doc. No. 160.) The Court will also approve the proposed settlement notice, publication notice, proposed notice plan, and amended posted notice. An order consistent with this memorandum follows.