**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380<br><br>Civil Action No. 4:12-md-02380-YK<br><br>(Chief Judge Yvette Kane) |
| THIS DOCUMENT RELATES TO: All Cases |  |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
FINAL APPROVAL OF CLASS SETTLEMENT AND
PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND
EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES**

Dated: July 25, 2016

**DILWORTH PAXSON LLP**
James J. Rodgers
Penn National Insurance Plaza
2 North 2nd Street, Suite 1101
Harrisburg, Pennsylvania 17101
Telephone:  (717) 236-4812
Facsimile:   (717) 236-7811
Email:  jrodgers@dilworthlaw.com

*Interim Liaison Counsel*

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    BACKGROUND ........................................................................3

    A.    Summary of the Litigation .................................................3

    B.    Summary of the Settlement Terms......................................5

    C.    Preliminary Approval of Class Settlement...........................7

    D.    The Notice Program .........................................................7

III.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE GRANTED FINAL APPROVAL...........................................8

    A.    The Law Favors Settlements and This Settlement is Entitled to a Presumption of Fairness ..................................................8

    B.    The *Girsh* Factors Favor Approval of The Settlement ........................9

        1.    Continued Litigation Would Likely Be Long, Complex and Expensive .........................................................10

        2.    The Reaction of the Class to the Settlement to Date Suggests the Settlement is Fair, Reasonable, and Adequate....................11

        3.    The Parties Have Completed Sufficient Investigation and Discovery to Responsibly Resolve the Case ...........................11

        4.    Plaintiffs Would Face Considerable Risks in Proceeding to Trial...........................................................................13

        5.    Defendants' Ability to Withstand Greater Judgment ...............15

        6.    The Settlement Is Within the Range of Reasonableness In Light of the Best Possible Recovery and All Attendant Risks of Litigation.............................................................16

IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.............20

    A.    The Settlement Class Satisfies Rule 23(a) ........................20

        1.    Numerosity...................................................................21

        2.    Commonality.................................................................21

        3.    Typicality ....................................................................22

        4.    Adequacy of Representation ............................................23

    B.    The Settlement Class Satisfies Rule 23(b)(3) .....................24

        1.    Common Questions of Law and Fact Predominate .................25

2. Class Adjudication is Superior to Other Methods ....................26

V. INTERIM CLASS COUNSEL AND LITE DEPALMA GREENBERG, LLC SHOULD BE APPOINTED AS CLASS COUNSEL .................................27

VI. THE REQUESTED ATTORNEYS' FEE AWARD PROVIDED UNDER THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE.......28

A. Negotiated Fee Agreements are Favored ............................................28

B. The Fee Request Should Be Evaluated Under the Percentage of Recovery Method ..................................................................................29

C. An Award of 2.4% of the Settlement Class's Recovery is Fair and Reasonable....................................................................................30

1. The Requested Fees Represent No More Than Approximately 2.4% of the Settlement Class's Recovery.................................31

2. Analysis of the Second Factor is Premature Because the Deadline for Objections Has Not Yet Passed...........................33

3. Plaintiffs' Counsel are Skilled and Efficient Litigators............33

4. This Litigation was Lengthy and Complicated.........................34

5. Plaintiffs' Counsel Faced a Substantial Risk of Nonpayment.........................................................................34

6. Plaintiffs' Counsel Devoted 8,043.35 Hours to Prosecuting This Action................................................................................35

7. Awards in Similar Cases Demonstrate that 2.4% is Reasonable............................................................................35

8. Plaintiffs' Counsel Prosecuted the Litigation Without Aid from Government or Other Public Agencies ...........................36

9. The Requested Fee is Less Than the Percentage Fee that Would Have Been Negotiated in a Private Contingent Fee Arrangement....................................................................36

10. Absence of Innovative Terms Does Not Detract from Fee Request..................................................................................37

D. A Lodestar Cross-check Confirms That The Requested Fee is Reasonable..........................................................................................37

1. Plaintiffs' Counsel's Hourly Rates are Reasonable.................39

2. The Number of Hours Expended is Reasonable.......................40

3.      The Negative Multiplier of 0.75 Militates in Favor of the Fee
        Request ........................................................................................ 41

VII.    COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
        OBTAINED ON BEHALF OF THE CLASS ................................................ 42

VIII.   REQUESTED SERVICE AWARDS ARE WARRANTED FOR NAMED
        PLAINTIFFS ........................................................................................ 43

IX.     CONCLUSION ............................................................................................ 45

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997)..............................................................24, 25, 26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
   133 S. Ct. 1184 (2013)......................................................................25

*In re AT&T Corp. Sec. Litig.,*
   455 F.3d 160 (3d Cir. 2006) ................................................36, 38,42

*Bair v. Purcell,*
   No. 04-cv-1357, 2010 U.S. Dist. LEXIS 84056
   (M.D. Pa. Aug. 17, 2010) ..................................................................42

*Barel v. Bank of Am.,*
   255 F.R.D. 393 (E.D. Pa. 2009)........................................................35

*Boone v. City of Phila.,*
   668 F. Supp. 2d 693 (E.D. Pa. 2009)..........................................12, 42

*Bredbenner v. Liberty Travel, Inc.,*
   No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663
   (D.N.J. Apr. 8, 2011) ..................................................................10, 43

*In re Budeprion XL Mktg. & Sales Litig.,*
   MDL No. 2107, 2012 U.S. Dist. LEXIS 91176
   (E.D. Pa. July 2, 2012)......................................................................19

*Calarco v. Healthcare Servs. Grp., Inc.,*
   No. 13-CV-688, 2015 U.S. Dist. LEXIS 46950
   (M.D. Pa. Apr. 7, 2015) ....................................................................44

*In re Cendant Corp.,*
   232 F. Supp. 2d 327 (D.N.J. 2002)....................................................44

*In re Cendant Corp. Litig.,*
   264 F.3d 201 (3d Cir. 2001) ..............................................................14

*In re Cendant Corp. PRIDES Litig.,*
   243 F.3d 733 (3d Cir. 2001) ..............................................................42

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
  269 F.R.D. 468 (E.D. Pa. 2010) ............................................................45

*In re Certainteed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) ............................................................31

*Chakejian v. Equifax Info. Servs.*,
  275 F.R.D. 201 (E.D. Pa. 2011) ............................................................36

*Cityside Archives, Ltd. v. New York City Health & Hosps. Corp.*,
  37 F. Supp. 2d 652 (D.N.J. 1999) .........................................................40

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
  795 F.3d 380 (3d Cir. 2015) .................................................................26

*In re Diet Drugs Prods. Liab. Litig.*,
  MDL No. 1203, Civ. No. 99-20593, 2000 U.S. Dist. LEXIS 12275
  (E.D. Pa. Aug. 28, 2000) ......................................................................16

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ...................................................................8

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013) ..............................................................34

*In re Flonase Antitrust Litig.*,
  951 F. Supp. 2d 739 (E.D. Pa. 2013) .....................................................43

*Gallucci v. Boiron, Inc.*,
  Civ. No. 11cv2039 JAH(NLS), 2012 U.S. Dist. LEXIS 157039,
  (S.D. Cal. Oct. 31, 2012) ......................................................................20

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ...................................................................9

*Glaberson v. Comcast Corp.*,
  No. 03-6604, 2014 U.S. Dist. LEXIS 172040
  (E.D. Pa. Dec. 12, 2014) .......................................................................27

*Glaberson v. Comcast Corp.*,
  No. 03-6604, 2015 U.S. Dist. LEXIS 127370
  (E.D. Pa. Sept. 22, 2015) ......................................................................44

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
 55 F.3d 768 (3d Cir. 1995) .......................................................................10, 35

*Gunter v. Ridgewood Energy Corp.*,
 223 F.3d 190 (3d Cir. 2000) .....................................................................30, 31

*Hall v. Best Buy Co.*,
 274 F.R.D. 154 (E.D. Pa. 2011)............................................................12, 13, 44

*Hegab v. Family Dollar Stores, Inc.*,
 No. 11-1206 (CCC), 2015 U.S. Dist. LEXIS 28570
 (D.N.J. Mar. 9, 2015)....................................................................................15

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983)......................................................................................29

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
 194 F.R.D. 166 (E.D. Pa. 2000).....................................................................37

*In re Imprelis Herbicide Mktg.*,
 296 F.R.D. 351 (E.D. Pa. 2013).....................................................................18

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
 426 F.3d 694 (3d Cir. 2005) ..........................................................................39

*Johnson v. Cmty. Bank, N.A.*,
 No. 12-CV-01405, 2013 U.S. Dist. LEXIS 167319
 (M.D. Pa Nov. 25, 2013) ...............................................................................44

*Johnson v. Triple Leaf Tea, Inc.*,
 No. 14-cv-01570-MMC, 2015 U.S. Dist. LEXIS 170800
 (N.D. Cal. Nov. 16, 2015)..............................................................................19

*Klee v. Nissan N. Am., Inc.*,
 No. CV 12-08238 AWT, 2015 U.S. Dist. LEXIS 88270
 (C.D. Cal. July 7, 2015) .................................................................................18

*In re Linerboard Antitrust Litig.*,
 296 F. Supp. 2d 568 (E.D. Pa. 2003)................................................................8

*In re Linerboard Antitrust Litig.*,
 MDL No. 1261, 2004 U.S. Dist. LEXIS 10532
 (E.D. Pa. Jun. 2, 2004) ..............................................................................36, 44

*In Re LG/Zenith Rear Projection TV Class Action Litig.*,
    No. 06-5609 (JLL), 2009 U.S. Dist. Lexis 13568
    (D.N.J. Feb. 18, 2009) .................................................................17, 31, 35, 38

*In re LifeUSA Holding, Inc.*,
    242 F.3d 136 (3d. Cir. 2001) ...........................................................................15

*Maloney v. Microsoft Corp.*,
    Civ. No. 09-2407, 2011 U.S. Dist. LEXIS 134841
    (D.N.J. Nov. 21, 2011)......................................................................................14

*Martina v. L.A. Fitness Int'l, Inc.*,
    Civ. No. 12-cv-2063 (WHW), 2013 U.S. Dist. LEXIS 145285
    (D.N.J. Oct. 8, 2013).........................................................................................36

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y. 2006) ......................................................................29

*McCutcheon v. American's Servicing Co.*,
    560 F.3d 143 (3d Cir. 2009) ..............................................................................38

*McDonough v. Toys "R" Us, Inc.*,
    80 F. Supp. 3d 626, 658 (E.D. Pa. 2015)...........................................................43

*McLennan v LG Elecs. USA, Inc.*,
    Civ. No. 10-cv-03604 (WJM), 2012 U.S. Dist. LEXIS 27366
    (D.N.J. Feb. 29, 2012) .......................................................................................41

*McLennan v. LG Elecs. USA, Inc.*,
    Civ. No. 10-cv-03604 (WJM), 2012 U.S. Dist. LEXIS 27703
    (D.N.J. Mar. 2, 2012)..........................................................................................18

*In re Merck & Co Vytorin ERISA Litig.*,
    No. 08-CV-285 (DMC), 2010 U.S. Dist. LEXIS 12344
    (D.N.J. Feb. 9, 2010) .........................................................................................37

*Myers v. Medquist, Inc.*,
    No. 05-4608 (JBS), 2009 U.S. Dist. 27908 (D.N.J. Mar. 31, 2009) .................11

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ........................................................................22, 23

*In re NFL Players' Concussion Injury Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015) ................................................................14, 24

*In re NFL Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ...........................................................15, 22, 23

*O'Brien v. Brain Research Labs, LLC*,
No. 12-204, 2012 U.S. Dist. LEXIS 113809 (D.N.J. Aug. 8, 2012) ................30

*O'Keefe v. Mercedes-Benz United States, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003) .............................................................9, 18, 30

*In re Pet Food Prods. Liab. Litig.*,
MDL No. 1850, Civ. No. 07-2867 (NLH), 2008 U.S. Dist. LEXIS
94603 (D.N.J. Nov. 2008) ....................................................................33

*In re Philips/Magnavox TV Litig.*,
Civ. No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287
(D.N.J. May 14, 2012) .......................................................................12, 43

*In re Prudential Ins. Co. of Am. Sales Litig*,
148 F.3d 283 (3d Cir. 1998) ...........................................................29, 30, 31, 38

*In re Prudential Ins. Co. of Am. Sales Litig.*,
962 F. Supp. 450 (D.N.J. 1997) ............................................................13

*In re Remeron Direct Purchaser Antitrust Litig.*,
Civ. No. 03-0085 (FSH), 2005 U.S. Dist. LEXIS 27013
(D.N.J. Nov. 9, 2005) ......................................................................37, 41

*In re Residential Doors Antitrust Litig.*,
MDL No. 1036, No. 96-2125, 1998 U.S. Dist. LEXIS 4292
(E.D. Pa. Apr. 2, 1998) .....................................................................44

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ................................................................30, 37

*Rodriguez v. Nat'l City Bank*,
726 F.3d 372 (3d Cir. 2013) ...................................................................21

*Rossi v. P&G*,
No. 11-7238 (JLL), 2013 U.S. Dist. LEXIS 143180
(D.N.J. Oct. 3, 2013) .......................................................................22, 25

ix

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) .....................................................42

*In re Schering-Plough Corp.*,
   No. 08-397 (DMC) (JAD), 2013 U.S. Dist. LEXIS 147981
   (D.N.J. Aug. 27, 2013).....................................................................40

*In re Sinus Buster Prods. Consumer Litig.*,
   No. 12-CV-2429 (ADS)(AKT), 2014 U.S. Dist. LEXIS 158415
   (E.D.N.Y. Nov. 10, 2014)................................................................19

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices &
   Prods. Liab. Litig.*,
   No. 09-MD-2102 (RPP), 2010 U.S. Dist. LEXIS 87643
   (S.D.N.Y. Aug. 24, 2010) ................................................................18

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ............................................................21

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) ............................................................11

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ......................................................21, 25

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)..........................................................41

*In re Volkswagen & Audi Warranty Extension Litig.*,
   89 F. Supp. 3d 155, 169 (D. Mass. 2015)....................................19, 31

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .....................................................*passim*

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995) ..................9

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................*passim*

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,*
   108 F.R.D. 237 (3d Cir. 1985)...........................................................29

## I.    INTRODUCTION

On May 26, 2016, this Court granted preliminary approval to the proposed class action Settlement in this litigation.  *See* ECF No. 164, Memorandum and ECF No. 165, Order.  The Parties then disseminated notice to offer the members of the Settlement Class the opportunity to object or opt out of the settlement.  Now, Plaintiffs ask the Court to grant final approval of the proposed settlement.

The response to the Settlement to date has been favorable.  Although the Court-ordered deadline to request exclusion from the Settlement Class or to file objections to the Settlement is August 15, 2016, only 56 individuals have sought exclusion and 1 objection has been filed as of July 22, 2016.

This litigation has a long history.  Nationwide class actions were filed against Defendants in six federal district courts, and one parallel state action was filed against Defendant Shop-Vac in New Jersey.  After vigorous litigation in this Court and the New Jersey Superior Court, and through contentious negotiations, the Parties crafted a settlement under which Shop-Vac will extend the manufacturer's warranty on the motors of the vacuums at issue in this case (the "Vacuums") by at least twenty-four months to ensure that Settlement Class Members are protected against any potential premature motor failure—what Plaintiffs believe is the most significant usage ramification of an underpowered vacuum.  Moreover, Shop-Vac has agreed to alter the manner in which the

Vacuums' power and tank size ratings are marketed and labeled, completely eliminating the misrepresentations alleged in the case. Given the substantial risks, costs and complexity of continuing this litigation, the Settlement provides substantial benefits to the class as a whole and should be granted final approval.

Plaintiffs also request the Court approve an award of attorneys' fees, costs and service awards in the sum of $4,250,000, to be separately paid by Defendants over and above the benefits to the Settlement Class, and which Defendants have agreed not to oppose. Plaintiffs' counsel and Defendants negotiated the fees and expenses under the auspices of the Honorable Edward A. Infante (Ret.) only long after reaching agreement on the principal terms of the Settlement. Plaintiffs' counsel has litigated this matter on a contingent basis and have funded all of the litigation expenses, without payment or reimbursement since 2012. The total amount sought, inclusive of costs and service awards to named Plaintiffs, is no more than 2.4% of the value of the Settlement. The fee request, exclusive of costs and service awards, reflects a discount of approximately 0.75 on Plaintiffs' counsel's combined lodestar of $5,091,251.25. As demonstrated below, the record in this case and applicable standards in the Third Circuit fully support the fee request.

## II.   BACKGROUND

### A.   Summary of the Litigation

A detailed description of the procedural and factual history of the litigation, the efforts of Plaintiffs' counsel, and the terms of the Settlement appears in the accompanying Declaration of Robert I. Lax in Support of the Motion for Final Approval of the Proposed Settlement and Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Lax Decl.").   In the interest of brevity, Plaintiffs incorporate that declaration by reference.

Plaintiffs' Counsel were not aided by government investigations or media exposes, but brought this matter to light by their own efforts.   Lax Decl. ¶ 4. Before Plaintiffs filed their actions, Plaintiffs' experts conducted tests to determine the peak horsepower of the Vacuums in actual operation, using independent testing methods.   *Id*.   Plaintiffs' experts concluded that the Vacuums' power ratings were based upon a testing regimen that was not supported by generally accepted principles of engineering, led to overstatements of their Peak Horsepower, which in turn could lead to shorter than expected motor life.   *Id*.   Plaintiffs' experts also concluded that an automatic shutoff feature causes the Vacuums to stop working before the tanks reached their stated capacity. *Id*.

The Parties conducted extensive discovery, beginning with multiple rounds of paper discovery. *Id*. ¶ 55. In total, Shop-Vac produced more than 22,000 pages of documents, much of it containing complicated technical material and data. *Id*.

Plaintiffs deposed Shop-Vac employees, including corporate representatives who testified regarding Shop-Vac's marketing and sales practices, product engineering specifications, and product testing protocols. *Id*. ¶ 56. Plaintiffs also deposed Defendants' expert, John Loud. *Id*. ¶ 39. Each of the named Plaintiffs was deposed, *id*. ¶¶ 25, 47, 56, as was Plaintiffs' principal expert on electrical engineering, Glen Stevick. *Id*. ¶ 39. As a result of this discovery, the Parties are fully informed about the strengths and weaknesses of their claims and defenses.

Although Plaintiffs were prepared to move for class certification in this Court and were preparing for trial in the parallel New Jersey Action in which certification had already been granted, the Parties agreed to mediate the matter before Judge Infante. *Id*. ¶¶ 40, 57, 60. Trial in the New Jersey Action was scheduled for the first week of September, but was adjourned until October 19, 2015, to allow the parties to mediate. *Id*. ¶¶ 43, 52. The Parties provided detailed mediation statements to Judge Infante, who conducted an all-day mediation on August 13, 2015. *Id*. ¶ 60. Although the Parties made progress on the substantive terms of the Settlement, no agreement was reached. *Id*.

Thereafter, with the continued involvement of Judge Infante, the Parties continued to negotiate, reaching a settlement in principle on material relief to the proposed Settlement Class on September 11, 2015. *Id.* Importantly, there was no agreement reached on attorneys' fees, other than a discussion of the parameters of a contested fee application. It was only months later that the Parties were ultimately presented with a mediator's proposal by Judge Infante to eliminate the fee dispute, which both sides accepted. *Id.* ¶ 62. This mediator's proposal was made part of the Settlement Agreement on April 1, 2016, *id.*, and which is now presented to the Court for approval.

### B.     Summary of the Settlement Terms

The Settlement Agreement provides that Shop-Vac will extend the manufacturer's warranty on the motors of the Vacuums for the longer of: (a) 24 months from the date a Vacuum's current manufacturer's warranty would expire by its own terms, or (b) for those whose current manufacturer's warranty has expired by its own terms prior to the Effective Date, 24 months after the Effective Date of the Settlement. *See* Section IV.A.1 of the Settlement Agreement. This relief addresses the most important practical result of the Vacuums possessing lower horsepower ratings than asserted—the potential for premature motor failure due to greater wear and temperature on brushes and other components. Lax Dec. at

¶ 58.   The extended warranty squarely addresses this issue, and shifts the costs of any risk from Class Members to the Defendants.

As part of the proposed Settlement, Shop-Vac has agreed to alter the manner in which the Vacuums are marketed and labeled to address the horsepower misrepresentation complained of.  Specifically, the Settlement requires that Shop-Vac refer to "Peak Horsepower" of the Vacuums or their motors in a manner materially consistent with the following:

> "Peak Horsepower" (PHP) is a term used in the wet-dry vacuum industry for consumer comparison purposes. It does not denote the operational horsepower of a wet-dry vacuum but rather the horsepower output of a motor, including the motor's inertial contribution, achieved in laboratory testing. In actual use, Shop-Vac's motors do not operate at the peak horsepower shown.

*See* Section IV.A.2 of the Settlement Agreement.

Shop-Vac further agreed to modify the existing tank gallon legend of the Vacuums to read: "Tank capacity refers to actual tank volume, and does not reflect capacity available during operation."  *See* Section IV.A.3 of the Settlement Agreement. Although these marketing changes will have positive external effects to all Shop-Vac purchasers, they will particularly aid the Settlement Class Members, who have demonstrated a proclivity to purchase Shop-Vac brand wet/dry vacuums, and are therefore likely to do so again.

6

### C.   Preliminary Approval of Class Settlement

On April 1, 2016, the Parties jointly sought preliminary approval of the proposed Settlement, and on May 26, 2016, this Court granted preliminary approval.  ECF No. 164 Memorandum and ECF No. 165 Order.  The Court also approved a form of Notice and a plan for its dissemination.  ECF No. 164 at 12.

### D.   The Notice Program

To date, the notice plan has been implemented as directed by this Court. Azari Decl.[1] ¶ 7.  Notice was published in *People Magazine*, *Family Handyman* online, on Facebook, and the Conversant Ad Network.  *Id.* ¶¶ 22-25.  The notice plan also sponsored search listings on Internet search engines, including Google, Yahoo! and Bing.  *Id.* ¶¶ 26-27.  In addition, potential Settlement Class Members identified in Defendants' records received direct notice either by postal or electronic mail.  *Id.* ¶¶ 13-21. Through July 22, 2016, a total of 1,165,149 notices were directly mailed to potential Settlement Class Members.  *Id.* ¶ 21.  As of the same date, the Settlement website received more than 96,567 unique visitors and more than 671 calls were placed to the toll-free Settlement telephone number, representing 1,912 minutes of use.  *Id.* ¶¶ 31-33.

Although the August 15, 2016 deadlines to request exclusion from the Settlement Class or to file objections to the Settlement have not arrived, as of July

---

[1] Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Settlement Notices and Notice Plan is defined as "Azari Decl."

22, 2016, only 56 Settlement Class Members have excluded themselves, and there

is just 1 objection. *Id*. ¶ 34.

## III. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE GRANTED FINAL APPROVAL

### A. The Law Favors Settlements and This Settlement is Entitled to a Presumption of Fairness

Courts favor settlement, particularly in class actions and other complex and

protracted cases. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir.

2010) ("Settlement agreements are to be encouraged because they promote the

amicable resolution of disputes and lighten the increasing load of litigation faced

by the federal courts."); *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535

(3d Cir. 2004) ("[T]here is an overriding public interest in settling class action

litigation and it should be encouraged.").

The Third Circuit applies "an initial presumption of fairness" if "(1) the

settlement negotiations occurred at arm's length; (2) there was sufficient

discovery; (3) the proponents of the settlement are experienced in similar litigation;

and (4) only a small fraction of the class objected." *Warfarin*, 391 F.3d at 535. As

discussed in Sections III.B.2 (a) and (c), this Settlement is the product of extensive,

arm's length bargaining conducted by experienced counsel after significant

discovery and trial preparation. *In re Linerboard Antitrust Litig*., 296 F. Supp. 2d

568, 578 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class

settlement reached in arms' length negotiations between experienced, capable counsel after meaningful discovery."). Further, the Class has tacitly endorsed the Settlement. *See Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995) ("A substantial silent consent weighs in favor of certification."). Therefore, the presumption of fairness applies.

### B.    The *Girsh* Factors Favor Approval of The Settlement

Final approval of the Settlement is appropriate because the Settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit articulated nine factors that district courts must consider when determining the fairness of a proposed settlement:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157 (internal quotation marks and alterations omitted). *See also O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003) ("These factors are a guide and the absence of one or more does not automatically render the settlement unfair.") The *Girsh* factors strongly favor final approval of this Settlement.

### 1. Continued Litigation Would Likely Be Long, Complex and Expensive

The first *Girsh* factor contemplates the "probable costs, in both time and money, of continued litigation." *Warfarin*, 391 F.3d at 535-36. "Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement." *Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663, at \*33 (D.N.J. Apr. 8, 2011).

This litigation has been pending for over four years, and involves complex legal and factual issues. Continued litigation would be time consuming and expensive. Lax Decl. ¶ 66. Plaintiffs' claims for a nationwide class arising under several state warranty laws and consumer statutes would undoubtedly further complicate the litigation process. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) ("*GM Trucks*") (finding complexity arising from a "web of state and federal warranty, [ ] and consumer protection claims").

Trial would involve extensive briefing, and presentation of a substantial evidentiary record. *See Warfarin*, 391 F.3d at 536 (agreeing with the district court that the first *Girsh* factor favors settlement because continued litigation "would have required additional discovery, extensive pretrial motions . . . and ultimately, a complicated lengthy trial."). Post-trial motions and appeal would further delay resolution and increase costs. *See id.* ("[I]t was inevitable that post-trial motions

10

and appeals would not only prolong the litigation but also reduce the value of any recovery to the class."). By contrast, this Settlement provides a reasonably prompt recovery to the Class. Under all of the circumstances, the first *Girsh* factor weighs in favor of approving the Settlement.

### 2. The Reaction of the Class to the Settlement to Date Suggests the Settlement is Fair, Reasonable, and Adequate

Class notices were provided to Settlement Class Members in accordance with Rule 23(c)(2)(B) and this Court's preliminary approval order. There have only been 56 opt-outs and 1 objection to date.[2] Azari Decl. ¶ 34. Absent further substantial opt-outs or objections, the reaction of Settlement Class Members favors final approval of this Settlement. *See e.g., Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990) (favorable class reaction where more than ten percent of class members objected to the proposed settlement); *Myers v. Medquist, Inc.*, No. 05-4608 (JBS), 2009 U.S. Dist. 27908, at *37 (D.N.J. Mar. 31, 2009) (holding, based on the low number of opt-outs and objections, that it was "justified in assuming that more than 98% of the Class Members" approved the settlement).

### 3. The Parties Have Completed Sufficient Investigation and Discovery to Responsibly Resolve the Case

This factor considers "the degree of case development that class counsel had accomplished prior to settlement" to ascertain if counsel had "an adequate

---

[2] Plaintiffs will update the Court with final numbers and respond to the substantive issues raised therein in their reply, due by September 1, 2016.

appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. The extensive discovery here, as well as the certification of the Class and imminent trial in New Jersey, confirms that counsel were sufficiently apprised of the facts, and the strengths and weaknesses of their respective cases. Lax Decl. ¶ 61. *See Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) ("Post-discovery settlements are more likely to reflect the true value of the claim.").

Plaintiffs' counsel conducted an extensive investigation as to the claims arising from Defendants' pattern of overstating the "peak horsepower" and tank capacity of the Vacuums. Lax Decl. ¶ 4. In this matter and the parallel New Jersey Action, the Parties engaged in more than three years of discovery related to the alleged misrepresentations, Plaintiffs' claims, and Defendants' defenses. *Id.* ¶¶ 18, 21, 25, 35, 39, 47, 54-57. *See Hall v. Best Buy Co.*, 274 F.R.D. 154, 169-70 (E.D. Pa. 2011) (finding that plaintiffs' counsel could "reasonably estimate the strength and value of the case at the time of settlement negotiations" when settlement was reached after "significant discovery" efforts); *In re Philips/Magnavox TV Litig.*, Civ. No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287, at *30-31 (D.N.J. May 14, 2012) (same). Accordingly, this factor also weighs in favor of final approval.

### 4.   Plaintiffs Would Face Considerable Risks in Proceeding to Trial

The fourth through sixth *Girsh* factors all relate to continued litigation risks that Plaintiffs would face in establishing liability and damages, and maintaining a class action through trial.  The Court must evaluate "what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them, to measure the expected value of litigating the action rather than settling it at the current time, and the difficulties likely to be encountered in certification."   *Hall*, 274 F.R.D. at 170 (internal quotations omitted).

Defendants continue to dispute Plaintiffs' allegations and deny any liability. Even if the Court certified a class and Plaintiffs defeated all dispositive motions, the risks of establishing liability with expert testimony at trial would be significant. *See In re Prudential Ins. Co. of Am. Sales Litig.*, 962 F. Supp. 450, 539 (D.N.J. 1997) ("[A] jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials. And, divergent expert testimony leads inevitably to a battle of the experts.").  If Plaintiffs prevailed on liability, there would be risks in establishing damages on a classwide basis. Defendants would likely argue that class members derived some benefit from the Vacuums even if they did not receive the entire value for which they paid, which would also require expert testimony.

*See* ECF No. 103 at 13 (arguing that Plaintiffs' damages are based on a speculative price inflation theory).

While reliable and convincing expert testimony can be offered on all issues, victory would by no means be assured.  A jury might find Defendants' expert more persuasive, or agree with Plaintiffs' expert but award no damages.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").  The Settlement, on the other hand, permits a prompt resolution of this litigation on terms that are amply fair, reasonable and adequate.

Although Plaintiffs' claims are well suited for class treatment, and the evidentiary record supports class certification, there would be no assurance of maintaining class certification through trial if this Court certified a litigation class. *See In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) ("*NFL Players I*") ("Because class certification is subject to review and modification at any time during the litigation, the uncertainty of maintaining class certification favors settlement.").  For example, differences in applicable state laws could preclude certification of a nationwide class.  *See Maloney v. Microsoft Corp.*, Civ. No. 09-2407, 2011 U.S. Dist. LEXIS 134841, at *31 (D.N.J. Nov. 21, 2011) (denying nationwide certification, finding lack of predominance because the

laws of all 50 states would apply to plaintiffs' Magnuson-Moss Warranty Act claims).  If the Court certified a class, Defendants would likely have challenged it with a Rule 23(f) petition and subsequently could have moved to decertify the class.  *See e.g., In re LifeUSA Holding, Inc.*, 242 F.3d 136, 146 (3d. Cir. 2001) (decertifying a nationwide litigation class).

By settling, Plaintiffs and the Settlement Class avoid these risks, as well as the delays of a lengthy trial and appellate process. The Settlement provides Settlement Class Members with benefits that are immediate, certain and substantial.  *See Hegab v. Family Dollar Stores, Inc.*, No. 11-1206 (CCC), 2015 U.S. Dist. LEXIS 28570, at *23 (D.N.J. Mar. 9, 2015) (concluding that a settlement was fair, reasonable and adequate in light of the substantial risks that plaintiff faced and the immediate benefits provided by the settlement).

### 5.   Defendants' Ability to Withstand Greater Judgment

The seventh *Girsh* factor is "most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement."  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016) ("*NFL Players II*"). Defendant Shop-Vac is a privately held business in Williamsport, Pennsylvania. Shop-Vac would be unable to pay any material amount of cash to each of the tens of millions of Settlement Class Members.  The wet/dry vacuum market is a virtual duopoly in the United States, and a judgment which might leave it a monopoly

15

would not be as helpful to consumers of these devices as the relief provided by the Settlement. Lax Decl. ¶ 67.   While Plaintiff's Counsel do not assert that the inability to pay formed the primary driver of the Settlement, this potential issue provides some measure of support to the Settlement.

However, even if Defendants could afford to pay more, this would not militate against approving the Settlement, as "this factor does not require that the defendant pay the maximum it is able to pay."   *See In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, Civ. No. 99-20593, 2000 U.S. Dist. LEXIS 12275, at *188 (E.D. Pa. Aug. 28, 2000) (citing *In re Prudential Ins. Co. of Am. Sales Litig*, 148 F.3d 283, 321-22 (3d Cir. 1998)).   At worst, this factor is neutral.

### 6.   The Settlement Is Within the Range of Reasonableness In Light of the Best Possible Recovery and All Attendant Risks of Litigation

The last two *Girsh* factors, often analyzed in combination, evaluate "whether the decision to settle represents a good value for a relatively weak case or a poor value of a strong case."   *Warfarin*, 391 F.3d at 538.   This Settlement provides significant benefits for the Settlement Class, all of whom are receiving an extended warranty to ensure that they are getting the use of the Vacuums they purchased for a commercially reasonable period. This relief addresses the most salient practical result to class members of using a vacuum closer to its motor's maximum power rating – the potential for premature failure.   Lax Decl. ¶¶ 58, 67.   The extended

16

warranty provided by the Settlement is designed to address this issue, by shifting the costs of any such risk from Class Members to the Defendants.  *Id*. ¶ 58.

The monetary and actuarial value of this warranty is enormous, but capable of approximating with reference to similar warranty products already sold by defendant Lowe's.  The retail price of a two-year extended warranty from Lowe's ranges in retail cost from $6.97 to $29.98, depending on the price of the product.[3] Lax Decl. ¶ 68.  Accordingly, a value of the extended manufacturer's warranty on the Vacuum motor to Settlement Class Members offered here could be, at least roughly compared to the retail value of the Lowe's extended warranty, this aspect of the Settlement could be said to have a value of no less than $174,250,000.00. *Id*. ¶ 70.  If it is worth even a small portion of this amount, it would still more than justify the approval of the Settlement.  *See In Re LG/Zenith Rear Projection TV Class Action Litig*., No. 06-5609 (JLL), 2009 U.S. Dist. Lexis 13568, at *24-25 (D.N.J. Feb. 18, 2009).

The warranties are also appropriate relief for the claims of the Settlement Class Members.  According to Plaintiff's expert, "lower horsepower motors will tend to fail more quickly and have a shorter service life than higher horsepower motors at a given level of work.  This premature failure stems from the fact that the

---

[3] While the warranty provided in the Settlement only covers motor failure, that component represents the most valuable wearable component of the entire machine.

lower powered motor must rotate faster, causing greater wear and temperature on brushes and other components." *Id.* ¶ 58. The warranties are thus an excellent solution to Plaintiffs' principal allegation that the Vacuums do not have the ascribed peak horsepower ratings, because the extended warranty will compensate Settlement Class Members for the potential shorter than expected service life of the Vacuums and shift any risk and expense of premature failures from consumers to Defendants. *Id. See O'Keefe*, 214 F.R.D. at 295 (explaining that the extended warranty coverage is "the core relief" because it "insulates the class from out of pocket expenses associated with the alleged FSS defect"); *In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices & Prods. Liab. Litig.*, No. 09-MD-2102 (RPP), 2010 U.S. Dist. LEXIS 87643, at *24 (S.D.N.Y. Aug. 24, 2010) (explaining a settlement involving extended warranty coverage for defective television sets offers benefits that "are meaningful and address the problems experienced by class members"); *Klee v. Nissan N. Am., Inc.*, No. CV 12-08238 AWT (PJWx), 2015 U.S. Dist. LEXIS 88270, at *24 (C.D. Cal. July 7, 2015) (finding extended warranty settlement "fair" because it was "directed at repairing the alleged harm"). *See also In re Imprelis Herbicide Mktg.*, 296 F.R.D. 351, 369 (E.D. Pa. 2013) (granting final approval to a settlement that included warranty coverage for class members); *McLennan v. LG Elecs. USA, Inc.*, Civ. No. 10-cv-03604 (WJM), 2012 U.S. Dist. LEXIS 27703, at *24 (D.N.J. Mar. 2, 2012) (granting final approval to a

settlement that included extended warranty coverage to the affected consumer product).

Of course, insurance has value even if no loss is ever suffered. Therefore even if a Settlement Class Member does not claim any repair during the period of coverage, s/he still derives an actuarial benefit from the extended warranty coverage. *See In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 169 (D. Mass. 2015) (explaining an extended warranty "has value" to a consumer because "[F]or a price, a consumer can purchase certainty as to what repairs will cost if they are needed."). Here, many consumers will be able to avoid the expense of purchasing a new Vacuum.

In addition to the warranty relief, Shop-Vac will alter the manner in which the Vacuums are marketed and labeled, to eliminate the potential for misrepresentation. *See e.g.*, *In re Budeprion XL Mktg. & Sales Litig.*, MDL No. 2107, 2012 U.S. Dist. LEXIS 91176, at *54-55 (E.D. Pa. July 2, 2012) (granting final approval of a non-monetary settlement, finding the injunctive relief requiring label changes is "neither meaningless nor illusory"); *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT), 2014 U.S. Dist. LEXIS 158415, at *28 (E.D.N.Y. Nov. 10, 2014) (granting final approval of settlement that included remedial measures to rectify the product advertising at issue); *Johnson v. Triple Leaf Tea, Inc*., No. 14-cv-01570-MMC, 2015 U.S. Dist. LEXIS 170800, at

*12-13 (N.D. Cal. Nov. 16, 2015) (granting final approval to class action settlement requiring revisions to labeling of affected products, stating "[t]he Settlement affords meaningful injunctive relief"); *Gallucci v. Boiron, Inc.*, Civ. No. 11cv2039 JAH(NLS), 2012 U.S. Dist. LEXIS 157039, at *16-17 (S.D. Cal. Oct. 31, 2012) (granting final approval of class settlement that included "meaningful injunctive relief" because agreed upon disclaimers were directed at the alleged harm).

The Settlement grants relief addressing the alleged deceptive and misleading practices asserted in this litigation, and remediates their effects upon consumers. Weighing the benefits of the Settlement against the risks of proceeding to trial, the Settlement is fair, reasonable, and adequate.

## IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

A class action may be maintained if the requirements under Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b) are met.  On May 26, 2016, the Court preliminarily certified a Settlement Class.  *See* ECF No. 165 ¶ 2.  The Court should grant final certification because the Settlement Class meets the all requirements of Rule 23(a) and Rule 23(b)(3).

### A.   The Settlement Class Satisfies Rule 23(a)

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims of defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (outlining 23(a) requirements) Plaintiffs and the proposed Settlement Class meet each of these requirements.

### 1.   Numerosity

Numerosity is satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Here, Plaintiffs believe the class consists of more than 25 million purchasers, Lax Decl. ¶ 69, and Defendants' records identified 1,165,149 potential Settlement Class Members.  Azari Decl. ¶ 21.  Thus, numerosity is met.

### 2.   Commonality

The second Rule 23(a) prerequisite is satisfied if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).  Commonality is present when classwide issues can "generate common answers 'apt to drive the resolution of the litigation.'"  *Sullivan*, 667 F.3d at 300 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Settlement Class Members share numerous issues capable of classwide resolution, including: (1) whether Defendants misrepresented the peak horsepower

and/or tank capacity of the Vacuums; (2) whether Defendants' representations violated applicable consumer protection statutes; (3) whether Defendants breached an express and/or implied warranty under applicable state laws, and (4) whether Defendants were unjustly enriched from the sale of the Vacuums.  The answers to any of these questions would meaningfully advance this litigation.  Accordingly, commonality is satisfied.

### 3.   Typicality

Rule 23(a)(3) seeks to ensure the class representatives "will work to benefit the entire class through the pursuit of their own goals."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 182-83 (3d Cir. 2001).  Typicality does not require all class members to share the same claims.  *Warfarin*, 391 F.3d at 531-32.  Instead, the prerequisite is met if "there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *NFL Players II*, 821 F.3d at 428 (internal quotes omitted).

Plaintiffs' claims are typical of those of other Settlement Class Members. Plaintiffs and every Settlement Class Member were exposed to identical misleading "peak horsepower" and tank capacity claims on the machines, on their packaging, and in marketing materials.  *See e.g., Rossi v. P&G*, No. 11-7238 (JLL), 2013 U.S. Dist. LEXIS 143180, at *6 (D.N.J. Oct. 3, 2013) (finding typicality satisfied where named plaintiff and class asserted claims based on same

statements in the advertising and marketing of product at issue).  Thus, Plaintiffs and Settlement Class Members have been injured in the same manner, and typicality is met.

### 4.    Adequacy of Representation

Rule 23(a)(4) "tests the qualifications of class counsel and the class representatives." *NFL Players II*, 821 F.3d at 428.  Adequacy is a two-prong inquiry: (1) whether the representatives' interests conflict with the interests of the class, and (2) whether the plaintiffs' attorneys are capable of representing the class. *See Newton*, 259 F.3d at 185-86 (stating that adequacy of representation requires determination of both prongs).

First, Plaintiffs have no interest antagonistic to Settlement Class Members. Plaintiffs, like each Settlement Class Member, had a strong interest in establishing the unlawfulness and impact of Defendants' common course of conduct and obtaining redress.  For four years, Plaintiffs have vigorously protected the interests of the Settlement Class.  They contributed to counsel's pre-suit investigations, reviewed and authorized the filing of complaints, responded to expansive discovery, sat for lengthy depositions, and prepared the New Jersey Action for trial.  Plaintiffs also stayed abreast of settlement negotiations, and reviewed and

approved the Settlement terms.[4]   *See e.g., NFL Players I*, 307 F.R.D. at 375 (concluding class representatives "ably discharged their duties" by assisting in preparation of the complaint and staying involved in the settlement process).

Second, this Court has already found that interim class counsel are qualified, experienced and able to conduct the litigation. *See* ECF No. 55 Order at 3-6 (appointing interim class counsel), ECF No. 165 Memorandum at 9 ("the Court is persuaded that the competence and experience evidenced by Plaintiffs' interim counsel in this MDL satisfies Rule 23(a)'s adequacy requirement").   Also, the New Jersey Superior Court found two of these same firms, and Lite DePalma Greenberg, LLC, adequate to represent the certified New Jersey class in that parallel case.   The firm resumes that this Court previously received demonstrate that all of the proposed Class Counsel have vast class action experience. Accordingly, the adequacy requirement is met.

## B.     The Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).   The rule authorizes class certification when "questions of law or fact common to class members predominate over any questions affecting only individual members," and class treatment "is superior to other available methods

---

[4] *See generally* Declarations of Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino, and Scott Giannetti.

for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Both are met here.

### 1.    Common Questions of Law and Fact Predominate

Predominance only requires "a showing that *questions* common to the class

predominate, not that those questions will be answered, on the merits, in favor of

the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191

(2013).  Thus, the focus is on "whether the defendant's conduct was common as to

all of the class members, not on whether each plaintiff has a 'colorable' claim."

*Sullivan*, 667 F.3d at 299-300.  In cases alleging consumer fraud, predominance is

"readily met." *Amchem*, 521 U.S. at 625.

Predominance is satisfied here for several reasons. First, every Settlement

Class Member's claim is based on the allegation that Defendants' representations

concerning the Vacuums are false and misleading.   Second, Settlement Class

Members' claims are susceptible to common proof of Defendants' allegedly

misleading advertising and marketing of the "peak horsepower" and tank capacity

of the Vacuums. *Rossi*, 2013 U.S. Dist. LEXIS 143180, at *9-10 (predominance

satisfied where "common legal and factual questions are at the core of the litigation

and are focused on the actions of [defendant], not Plaintiffs.").  Further, whether

the Vacuums can, as a matter of scientific fact, reach their advertised "peak

horsepower," is integral to each Settlement Class Member's case and can also be shown by generalized proof. Therefore, the predominance requirement is met.

### 2.    Class Adjudication is Superior to Other Methods

Rule 23(b)(3) considers if class treatment is "superior to other available methods of fairly and efficiently adjudicating the controversy" and provides a non-exhaustive list of factors for consideration.[5] *See* Fed. R. Civ. P. 23(b)(3). Courts are asked to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 408-09 (3d Cir. 2015). Class treatment is not merely superior, but is the only manner that ensures fair and efficient adjudication of this action.

Since each Settlement Class Member's claim pales in comparison to the costs of litigation, class treatment allows class members to bring together claims that would be economically infeasible to litigate separately. *See Warfarin*, 391 F.3d at 534 ("[I]ndividual consumer class members have little interest in 'individually controlling the prosecution or defense of separate actions,' because each consumer has a very small claim in relation to the cost of prosecuting a

---

[5] When certifying a settlement-only class, a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would pose intractable management problems, for the proposal is that there be no trial.") (internal citations omitted)).

lawsuit" (internal citations omitted)).  Indeed, other than this action and the parallel New Jersey Action, the Parties are unaware of any other pending case concerning the same subject matter.

Class treatment in the settlement context is also superior to individual suits because it facilitates resolution of all Settlement Class Members' claims and conserves judicial resources. *See Glaberson v. Comcast Corp.*, No. 03-6604, 2014 U.S. Dist. LEXIS 172040, at *12-13 (E.D. Pa. Dec. 12, 2014) (class certification in the settlement context "eliminates the likelihood of inconsistent rulings" as well as "the expense, time and judicial resources needed for continued litigation").  Thus, this factor weighs in favor of certification.

## V.  INTERIM CLASS COUNSEL AND LITE DEPALMA GREENBERG, LLC SHOULD BE APPOINTED AS CLASS COUNSEL

This Court appointed Milberg LLP, Lax LLP, and Faruqi & Faruqi LLP as interim class counsel, and Dilworth Paxson LLP as interim liaison counsel, on January 17, 2013.  ECF No. 55.  Interim class counsel and Lite DePalma Greenberg, LLC now seek appointment as Class Counsel,[6] and Dilworth Paxson LLP seeks appointment as Liaison Counsel.  Rule 23(g), which governs the appointment of class counsel for a certified class, establishes four factors regarding

---

[6] In the New Jersey Action, the Milberg and Lax firms were appointed as Class Counsel along with Lite DePalma Greenberg, LLC.  Since the Settlement resolves both the present matter and the New Jersey Action, Plaintiffs request that the Court appoint Milberg, Lax, Faruqi, and Lite DePalma as Class Counsel here.

the adequacy of proposed counsel: (1) the work counsel has done in investigating and identifying the claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class, Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv), and allows the Court to consider any other matter pertinent to counsel's adequacy  as well, Fed. R. Civ. P. 23(g)(1)(B).

In appointing interim class counsel and liaison counsel, this Court already found that they meet all of these criteria.  *See* ECF No. 55; Case Management Order 5, ECF No. 56.  The work interim class counsel, interim liaison counsel, and Lite DePalma have done since that appointment buttresses the Court's prior findings and confirms that these firms qualify for appointment as Liaison Counsel and Class Counsel for the Settlement Class.

## VI.   THE REQUESTED ATTORNEYS' FEE AWARD PROVIDED UNDER THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE[7]

### A.   Negotiated Fee Agreements are Favored

The Parties negotiated the attorneys' fees only after agreement was reached

---

[7] The Settlement Agreement provides that "Defendants will not oppose or object to the application by Class Counsel for an award of not more than $4,250,000 in attorneys' fees and expenses, as this figure has been agreed to by the Parties as the result of a Mediator's Proposal, after extensive negotiation and with the assistance of Judge Infante (Ret.) as mediator."  Settlement Agreement, Section VIII(B).

on the substantive terms of the Settlement.  Defendants have agreed not oppose an application of up to $4,250,000 in fees and expenses.  Such negotiated fees are favored.  *McBean v. City of New York*, 233 F.R.D. 377, 386 (S.D.N.Y. 2006) (involvement of judicial mediator weighs strongly in favor of approval of negotiated fee).  *See also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

The oft-cited Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 269 (October 8, 1985) noted that "Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves."

Here, the fact that the parties were able to avoid a "second major litigation," *Hensley*, 461 U.S at 437, through extensive negotiations, militates in favor of the award.

## B.   The Fee Request Should Be Evaluated Under the Percentage of Recovery Method

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" in a certified class action.  Fed. R. Civ. P. 23(h). The Third Circuit established two methods for awarding attorneys' fees: (1) the percentage-of-recovery method and (2) the lodestar method. *See Prudential*, 148 F.3d at 333.  District courts have discretion to use either

methodology. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005) (reviewing fee award for abuse of discretion).

While this case does not involve a traditional common fund, application of the percentage-of-recovery method is appropriate because (1) the benefits to the Settlement Class can be valued, (2) the compensation to the Settlement Class and Plaintiffs' counsel derives from the same source, and (3) that source has agreed to pay Plaintiffs' counsel fees. *See O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 U.S. Dist. LEXIS 113809, at *68 (D.N.J. Aug. 8, 2012) (applying these factors in percentage-of-recovery analysis). Further, the percentage-of-recovery method ties the awarded attorneys' fees to counsel's success or failure in prosecuting the case. *Prudential*, 148 F.3d at 333 (explaining the method is designed to allow courts to award fees "in a manner that rewards counsel for success and penalizes it for failure"); *see also O'Keefe*, 214 F.R.D. at 305 ("By tying the counsel's fee to the class relief, we ensure that the counsel works for the benefit of the class.").

## C.   An Award of 2.4% of the Settlement Class's Recovery is Fair and Reasonable

*Gunter* and *Prudential* identify ten factors to be considered in a percentage-of-recovery analysis. They are: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3)

the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (outlining factors one through seven); *Prudential*, 148 F.3d at 336-40 (noting factors eight through ten may be relevant). These factors support Plaintiffs' counsel's fee request.

### 1. The Requested Fees Represent No More Than Approximately 2.4% of the Settlement Class's Recovery

"The value of the benefit obtained for the class is an important factor in determining whether the requested fee is reasonable." *In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 221 (E.D. Pa. 2014) (citing *Hensley*, 461 U.S. at 436).

Since the Settlement Agreement does not create a class fund, it is appropriate to utilize an approximation of the total recovery that will be provided to Settlement Class Members. *See Volkswagen*, 89 F. Supp. 3d at 169 (accepting proposed valuation of the extended warranties by reference to the price a class

31

member would have paid for such a service absent settlement); *LG/Zenith*, 2009 U.S. Dist. LEXIS 13568, at *24-25 (value of warranty establishes value of class action settlement for awarding attorneys' fees).   More than 25,000,000 Vacuums were sold during the class period.  Lax Decl. ¶ 69.  The retail price of a comparable aftermarket extended 2-year warranty sold by Defendant Lowe's is between $6.97 and $29.97, depending on the cost of the warranted appliance.  *Id*. ¶ 68.  While the Lowe's warranty and the motor warranty provided under the Settlement are not identical, the Lowe's warranty provides a valuation benchmark which allows the Court to assess the value of the relief and whether it provides support for the requested fee.  When multiplied by the sales volume, the aggregate value to the Settlement Class would be no less than $174,250,000.00 when benchmarked against the Lowe's warranty, and likely substantially more.  *Id*. ¶ 70.  Therefore, Plaintiffs' counsel fee request can be said to be no more than 2.4% of the value of the Settlement if the lowest retail value of the Lowe's warranty is used, which is modest by comparison to percentage fees approved by courts in this Circuit. Indeed, even if the Court were to determine that the warranty provided under the settlement was worth only half (or even less) of the Lowe's warranty, the fee would still be amply supported.  *See LG/Zenith*, 2009 U.S. Dist. LEXIS 13568, at *24-25 (even if value of warranties could be "overestimated . . .  by a factor of

three, the fee is reasonable as a percentage of the total award and is hereby approved.").[8]

### 2. Analysis of the Second Factor is Premature Because the Deadline for Objections Has Not Yet Passed

The Notice advised Settlement Class Members that Plaintiffs' counsel would apply for the fee award described herein and that Settlement Class Members could object to that.  To date, there has been 1 objection to the fee request.  Azari Decl. ¶ 34.

### 3. Plaintiffs' Counsel are Skilled and Efficient Litigators

Plaintiffs' counsel achieved a positive result in this case while facing well-resourced and experienced defense counsel.  *See e.g.*, *In re Pet Food Prods. Liab. Litig.*, MDL No. 1850, Civ. No. 07-2867 (NLH), 2008 U.S. Dist. LEXIS 94603, at *108 (D.N.J. Nov. 2008) (stating the "highly skilled defense counsel" opposing plaintiffs' efforts weighs in favor of finding plaintiffs' counsel skillful and efficient in reaching the settlement), *aff'd in part and vacated in part on other grounds*, 629 F.3d 333 (3d Cir. 2010).   Plaintiffs' counsel defeated Defendants' attempt to dismiss the Second Amended Complaint here.  Lax Decl. ¶ 10.  Plaintiffs' counsel also won class certification in the parallel state case and was preparing the case for trial at the time of the Settlement.  *Id.* ¶¶ 38, 40, 52.  The favorable result achieved

---

[8] This does not even take into account the value of the marketing changes undertaken by Defendants as part of the Settlement.

is a function of the high quality of counsel's work, which supports the requested fee award.

### 4. This Litigation was Lengthy and Complicated

Counsel have been working tenaciously on this litigation since its beginning in 2011, and the litigation involved complex legal and factual issues requiring coordination with engineering experts. Not only did Plaintiffs' Counsel prevail and secure a settlement of this matter, but it is very likely that without Plaintiffs' Counsel's investigation and analysis this case would never have even been filed.

It cannot be gainsaid that this case was fought zealously by both sides, with Plaintiffs' Counsel facing well-funded Defendants, represented by a nationally known litigation team at a leading international law firm. The Parties completed merits and expert discovery in the MDL action, and had fully litigated class certification and dispositive motions, and were preparing for the imminent trial of parallel state action. Moreover, Settlement negotiations were protracted and complicated, as described above. This factor strongly supports Plaintiffs' Counsel's fee application.

### 5. Plaintiffs' Counsel Faced a Substantial Risk of Nonpayment

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis. *See e.g.*, *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) ("[A]s a contingent fee case, counsel faced a risk of nonpayment in

the event of an unsuccessful trial.  Throughout this lengthy litigation, class counsel have not received any payment.  This factor supports approval of the requested fee").  As discussed above, this case presented a substantial risk of non-payment for Plaintiffs' counsel.

### 6. Plaintiffs' Counsel Devoted 8,043.35 Hours to Prosecuting This Action

Since this litigation began in February 2012, Plaintiffs' counsel have devoted 8,043.35 hours to investigating, litigating and resolving this action, a huge effort.  Lax Decl. ¶ 72-3.[9]  Thus, this factor favors the fee request.

### 7. Awards in Similar Cases Demonstrate that 2.4% is Reasonable

In Third Circuit common fund cases, "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund."  *GM Trucks*, 55 F.3d at 822. Even taking the low end of the approximate value of the Settlement, an award of 2.4% of the recovery falls well below the acceptable range of percentage for consumer class actions with non-monetary recovery.  *See e.g.*, *LG/Zenith*, 2009 U.S. Dist. LEXIS 13568, at *25 (approving fee request for 5.7% of warranty settlement); *Barel v. Bank of Am.*, 255 F.R.D. 393, 404 (E.D. Pa. 2009) (finding fee request of 23% of settlement value of four months of credit monitoring

---

[9] *See also* accompanying attorney declarations of James J. Rodgers, Adam R. Gonnelli, Bruce D. Greenberg, Sanford P. Dumain, Robert I. Lax, Jon Herskowitz, William J. Pinilis, Michael R. Reese, and Bonner C. Walsh.

"reasonable in the context of class action litigation"); *Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201, 219 (E.D. Pa. 2011) (approving fee request representing 8.3% to 11% of class recovery of eighteen months of credit monitoring); *Martina v. L.A. Fitness Int'l, Inc.*, Civ. No. 12-cv-2063 (WHW), 2013 U.S. Dist. LEXIS 145285, at *23-25 (D.N.J. Oct. 8, 2013) (approving fee request for 5.2% of a non-cash settlement valued at $3.8 million).   Accordingly, this factor supports Plaintiffs' counsel's request.

### 8.   Plaintiffs' Counsel Prosecuted the Litigation Without Aid from Government or Other Public Agencies

This factor contemplates whether Plaintiffs' counsel benefited from "the efforts of other groups, such as government agencies conducting investigations." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 165 (3d Cir. 2006).  Plaintiffs' counsel was not aided by any government agencies, nor by media exposés.  The entire value of the benefits achieved here resulted from the efforts of counsel. Accordingly this factor favors the fee request.

### 9.   The Requested Fee is Less Than the Percentage Fee that Would Have Been Negotiated in a Private Contingent Fee Arrangement

This factor considers if the requested fee is consistent with a privately negotiated contingent fee in the marketplace.  *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *15 (E.D. Pa. Jun. 2, 2004). "Attorneys regularly contract for contingent fees between 30% and 40% with their

clients in non-class, commercial litigation." *In re Remeron Direct Purchaser Antitrust Litig.*, Civ. No. 03-0085 (FSH), 2005 U.S. Dist. LEXIS 27013, at *46 (D.N.J. Nov. 9, 2005); *see also In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases . . . plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). Accordingly, the fee request of 2.4% of the Settlement is reasonable.

### 10.    Absence of Innovative Terms Does Not Detract from Fee Request

Where, as here, a settlement features no innovative terms, this factor "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Merck & Co Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 U.S. Dist. LEXIS 12344, at *42 (D.N.J. Feb. 9, 2010).

In sum, nine of the ten factors support Plaintiffs' counsel's request for a fee award in the amount of 2.4% of the Settlement. None of the factors counsel against that request.

### D.    A Lodestar Cross-check Confirms That The Requested Fee is Reasonable

The Third Circuit recommends that district courts perform a "cross check" of the initial fee calculation. *Rite Aid*, 396 F.3d at 300 ("[I]t is sensible for a court to use a second method of fee approval to cross-check its initial fee calculation.").

The cross-check, however, is not designed to be a "full-blown lodestar inquiry." *Id.* at 306 n.16; *LG/Zenith*, 2009 U.S. Dist. LEXIS 13568, at *24-25 (even if value of warranties could be "overestimated . . . by a factor of three, the fee is reasonable as a percentage of the total award and is hereby approved.").   Although it is common for parties to negotiate multiples of Plaintiffs' Counsel's lodestars— which are commonly approved—here Plaintiffs' Counsel seek a negotiated fee which represents a substantial discount to their lodestar.

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *McCutcheon v. American's Servicing Co.*, 560 F.3d 143, 150 (3d Cir. 2009).  Courts may enhance the lodestar amount by a risk premium factor (or multiplier).   *See AT&T*, 455 F.3d at 164 n.4 (observing that "the multiplier is a device that attempts to account for the contingent nature of risk involved in a particular case and the quality of the attorneys' work."); *Prudential*, 148 F.3d at 340 (stating judicial approval of the multiplier is "discretionary and not susceptible to objective calculation").

Plaintiffs' counsel's total lodestar is $5,091,251.25.  *See* Lax Decl. ¶ 73. Plaintiffs' counsel also incurred unreimbursed expenses of $390,277.44.  *Id*. Plaintiffs' Counsel's fee application therefore represents a substantial discount of 0.75 of their lodestar. The requested fee and expense award, negotiated with the

assistance of Judge Infante only after all material terms of the Settlement were agreed to, is undeniably reasonable.

### 1.   Plaintiffs' Counsel's Hourly Rates are Reasonable

Under Third Circuit jurisprudence, courts look to the forum of the litigation to determine the prevailing rate except (1) "when the need for the special expertise of counsel from a distant district is shown," or (2) "when local counsel are unwilling to handle the case." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) (internal quotes omitted). Where counsel is excepted from the forum rate, the location for a prevailing market rate is the forum in which the attorneys are located. *Id.*

Plaintiffs' counsel, without whom this matter would likely never have been brought in the first instance, should be excepted from the forum rate rule. This consolidated action consists of numerous multidistrict cases centralized by the Judicial Panel on Multidistrict Litigation (the "Panel"). Lax Decl. ¶¶ 5-6. Plaintiffs opposed Defendants' motion for centralization in this District and instead sought centralization in the District of New Jersey, where three of the related cases were pending, including the first-filed action. *Id.* ¶ 6. However, the Panel ordered centralization in this District, where Shop-Vac's headquarters are located and two of the six actions were pending. ECF No. 13, Transfer Order at 2. This Court appointed Plaintiffs' counsel as Interim Class Counsel over counsel for the

plaintiffs who filed both actions in this District.  ECF Nos. 55, 56.  Accordingly, Plaintiffs did not choose this forum and should not have their customary rates reduced because of the transfer.[10]

As set forth in the attorney declarations, Plaintiffs' counsel's customary rates have been approved by numerous federal courts in this Circuit and elsewhere.  For example, in *In re Schering-Plough Corp.*, No. 08-397 (DMC) (JAD), 2013 U.S. Dist. LEXIS 147981, at *97-98 n.27 (D.N.J. Aug. 27, 2013), the court concluded that hourly rates of $775, $875, and $975 for partners practicing in New York were commensurate with market rates.

### 2.    The Number of Hours Expended is Reasonable

"Time expended is considered 'reasonable' if the work performed was 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'"  *Cityside Archives, Ltd. v. New York City Health & Hosps. Corp.*, 37 F. Supp. 2d 652, 658 (D.N.J. 1999).  The work Plaintiffs' counsel did was certainly reasonable and necessary. Plaintiffs' counsel: (1) investigated and filed the actions that were consolidated; (2) retained and worked extensively with experts; (3) opposed two motions to dismiss; (4) served extensive discovery and reviewed Defendants' productions; (5) crafted a settlement after extensive arm's-length negotiations, including mediation before Judge Infante; and (6) won

---

[10] It should be noted that Defendants have been represented by nationally known counsel of a leading international law firm, and are based in Los Angeles.

preliminary settlement approval.  The parallel New Jersey Action included opposing two motions for summary judgment as to all claims, completing fact and expert discovery, and successfully certifying a New Jersey class.

The number of hours worked by each of Plaintiffs' counsel is set forth in detail in the accompanying declarations. Counsel's responsibilities, however, are not finished.  Counsel remain available to answer inquiries from Settlement Class Members, oversee settlement administration, and work with Defendants' counsel to remedy any issue that may arise, for which Plaintiffs' counsel will not receive any additional payment.  Lax Decl. ¶ 75.  *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 253 (D.N.J. 2005) (finding that fee award would be the sole compensation for counsel "despite the continuing responsibilities" that counsel would have); *Remeron*, 2005 U.S. Dist. LEXIS 27013, at *42 ("Class Counsel will likely incur hundreds of additional hours in connection with administering the settlement, without prospect for further fees.").

### 3.      The Negative Multiplier of 0.75 Militates in Favor of the Fee Request

The Settlement Agreement provides for an application of no more than $4.25 million in attorneys' fees, expenses, and service awards to named Plaintiffs. After reimbursement for $390,277.44 in litigation costs and expenses, *see* Lax Decl. ¶ 73, and $25,000 in service awards, the remainder for attorneys' fees is $3,834,722.56.  Therefore, the requested fee award reflects a negative multiplier –

41

in other words, a discount – of 0.75, a figure well below the accepted range in this Circuit. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 733, 742 (3d Cir. 2001) (labeling a multiplier of 3 as the "appropriate ceiling for a fee award"); *McLennan v LG Elecs. USA, Inc.*, Civ. No. 10-cv-03604 (WJM), 2012 U.S. Dist. LEXIS 27366, at *27 (D.N.J. Feb. 29, 2012) (approving a multiplier of 2.93 in a consumer class action); *Boone*, 668 F. Supp. 2d at 714 (approving a multiplier of 2.3); *AT&T*, 455 F.3d at 173 (affirming an award with a cross-check multiplier of 1.28 where there was "significant time and effort devoted to the case by class counsel").

## VII. COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

Class counsel may seek reimbursement of "adequately documented" expenses that are "reasonably and appropriately incurred in the prosecution of the case." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). Any expense reimbursement awarded here will be paid from the total $4.25 million fee and expense request. These expenses, totaling $390,277.44, Lax Decl. ¶ 73, are summarized in exhibits to each of the attorney declarations.

All of the expenses, including court fees, legal research charges, deposition costs, expert fees, mediation costs, and travel costs, were necessary to the litigation and are recoverable. *See e.g.*, *Bair v. Purcell*, No. 04-cv-1357, 2010 U.S. Dist. LEXIS 84056, at *24-25 (M.D. Pa. Aug. 17, 2010) (noting that Pennsylvania

courts have awarded expenses for "postage, telephone, expert fees, travel, deposition transcripts, shipping, parking, lodging and food"); *Philips/Magnavox*, 2012 U.S. Dist. LEXIS 67287, at *55-56 (approving reimbursement for "court fees, consultations with expert witnesses, computer research, long distance telephone calls, photocopies, postage, courier service, and travel expenses").

Much of the expenses are attributable to expert witness costs, all of which were essential in supporting Plaintiffs' allegations. *See e.g., McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 658 (E.D. Pa. 2015) (reasoning that high expert witness costs are expected due to the "economic complexity" of the case); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 751 (E.D. Pa. 2013) (finding request of approximately $2 million for expenses "reasonable and proper" where two-thirds of the expenses reflected fees paid to experts, "all of whom were integral to the Plaintiffs' prosecution of the case.").

## VIII. REQUESTED SERVICE AWARDS ARE WARRANTED FOR NAMED PLAINTIFFS

Plaintiffs' counsel request that the Court award $5,000 to each named Plaintiff for the time and effort expended in representing the Class. Service awards are common in class actions, to "compensate named plaintiffs for the 'services they provided and the risks they incurred during the course of class action litigation.'" *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *22. A service award need not be subject to "intensive scrutiny" where, as here, the awards .will be paid entirely

from the payment allocated for attorneys' fees.  *See In re Cendant Corp.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002).

The efforts of each representative Plaintiff on behalf of the Class underscore the propriety of the requested service awards.[11]  As stated above in connection with adequacy, Plaintiffs reviewed and approved pleadings, and responded to interrogatories and document requests.  Each Plaintiff was deposed for a full day.  Plaintiffs also remained involved at the Settlement stage.  Plaintiffs' efforts were instrumental in obtaining the Settlement and justify the service awards requested.

The service awards do not reduce the recovery of Settlement Class Members and are not opposed by Defendants.  The requested amount also falls within the range of service awards approved in this Circuit.  *See e.g., Linerboard*, 2004 U.S. Dist. LEXIS 10532 at *55 (approving incentive fees of $25,000 for each class representative); *In re Residential Doors Antitrust Litig.*, MDL No. 1036, No. 96-2125, 1998 U.S. Dist. LEXIS 4292, at *32 (E.D. Pa. Apr. 2, 1998) (approving $10,000 award to each representative); *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 U.S. Dist. LEXIS 127370, at *56 (E.D. Pa. Sept. 22, 2015) (same); *Calarco v. Healthcare Servs. Grp., Inc.*, No. 13-CV-688, 2015 U.S. Dist. LEXIS 46950, at *6 (M.D. Pa. Apr. 7, 2015) (approving award of $7,500); *Hall*, 274 F.R.D. at 173-174 (approving awards of $5,000 per named plaintiff); *Johnson v. Cmty. Bank,*

---

[11] See declarations of Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino, and Scott Giannetti.

44

*N.A.*, No. 12-CV-01405, 2013 U.S. Dist. LEXIS 167319, at *15-16 (M.D. Pa Nov. 25, 2013) (same); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) (same).

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:  (1) grant final approval of the Settlement; (2) certify the Settlement Class for purposes of settlement only; (3) appoint Plaintiffs Andrew Harbut, Alan McMichael, Kris Reid, David Palomino, and Scott Giannetti as representatives of the Settlement Class, Dilworth Paxson as Liaison Counsel, and Faruqi & Faruqi, LLP, Lax LLP, Lite DePalma Greenberg, LLC, and Milberg LLP as Class Counsel; (4) enter the Final Approval Order; and (5) award attorneys' fees, costs and service awards in the sum of $4,250,000.

Dated: July 25, 2016          Respectfully Submitted,

**DILWORTH PAXSON LLP**

By: */s/ James J. Rodgers*
     James J. Rodgers
     jrodgers@dilworthlaw.com
Penn National Insurance Plaza
2 North 2nd Street
Suite 1101
Harrisburg, PA 17101
Telephone: (717) 236-4812
Facsimile: (717) 236-7811

*Interim Liaison Counsel*

**FARUQI & FARUQI LLP**

By: */s/ Adam R. Gonnelli*
     Adam R. Gonnelli
     agonnelli@faruqilaw.com
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

*Interim Class Counsel*

**LAX LLP**

By:  /s/ Robert I. Lax
      Robert I. Lax
      rlax@lax-law.com
380 Lexington Avenue, 31st Floor
New York, NY 10168
Telephone: (212) 818-9150
Facsimile: (212) 208-4309

*Interim Class Counsel*

**MILBERG LLP**

By:  /s/ Sanford P. Dumain
      Sanford P. Dumain
      sdumain@milberg.com
      Andrei Rado
      arado@milberg.com
      Jennifer Czeisler
      jczeisler@milberg.com
One Penn Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Interim Class Counsel*

**LITE DePALMA GREENBERG LLC**

By: */s/ Bruce D. Greenberg*
     Bruce D. Greenberg
     bgreenberg@litedepalma.com
570 Broad Street, 12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0211

*Interim Class Counsel*


**BARON & HERSKOWITZ**
Jon Herskowitz
jon@bhfloridalaw.com
9100 South Dadeland Boulevard
One Datran Center, Suite 1704
Miami, FL 33156
Telephone: (305) 670-0101
Facsimile: (305) 670-2393

*Executive Committee Member*

**PINILISHALPERN LLP**
William J. Pinilis
wpinilis@consumerfraudlawyer.com
160 Morris Street
Morristown, NJ 07962
Telephone: (973) 401-1111
Facsimile: (973) 401-1114

*Executive Committee Member*

**REESE LLP**
Michael R. Reese
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Executive Committee Member*

**WALSH PLLC**
Bonner C. Walsh
bonner@walshpllc.com
3100 SCR 406
PO BOX 1343
Sonora, TX 76950
Telephone: (903) 200-6069
Facsimile: (866) 503-8206

*Executive Committee Member*

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)

Pursuant to Local Rule 7.8(b)(2), and the Court's July 20, 2016 Order (ECF No. 171), it is hereby certified that Plaintiffs' Memorandum of Law in Support of Final Approval of Class Settlement and Plaintiffs' Application for Attorneys' Fees and Expenses, and Service Awards to Class Representatives contains less than 10,000 words (exclusive of the tables of contents and citations, and this certificate), according to Microsoft© Word 2010 word processing system used to prepare it, and that the Memorandum of Law, therefore, complies with the Court's July 20, 2016 Order.

By: */s/ Adam R. Gonnelli*
Adam R. Gonnelli

## CERTIFICATE OF SERVICE

The undersigned certifies that, on July 25, 2016, he caused this document to be electronically filed with the clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated:  July 25, 2016

By:  */s/ Adam R. Gonnelli*
Adam R. Gonnelli