**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2380 <br><br> Civil Action No. 4:12-md-02380-YK <br><br> (Chief Judge Yvette Kane) |
| THIS DOCUMENT RELATES TO: <br> All Cases | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
CLASS SETTLEMENT AND PLAINTIFFS' APPLICATION FOR
ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS
<u>TO CLASS REPRESENTATIVES</u>**

Dated: September 1, 2016

**DILWORTH PAXSON LLP**
James J. Rodgers
Penn National Insurance Plaza
2 North 2nd Street, Suite 1101
Harrisburg, Pennsylvania 17101
Telephone:   (717) 236-4812
Facsimile:    (717) 236-7811
Email:  jrodgers@dilworthlaw.com

*Interim Liaison Counsel*

**TABLE OF CONTENTS**

I. INTRODUCTION AND FACTS ......................................................1

II. THE REACTION OF THE CLASS TO THE SETTLEMENT......................1

III. THE OBJECTIONS TO THE SETTLEMENT ARE *DE MINIMIS* IN NUMBER AND UNPERSUASIVE ......................................................2

 A. Two Of The Three Objections Are From Serial "Professional Objectors"..............................................................................3

 B. Objection Of Michelle Vullings ............................................5

  1. Alleged Failure To Protect Against Future Misconduct.............6

  2. Alleged Failure To State The Class Size ...................................6

  3. The Supposedly Excessive Incentive Awards ...........................7

  4. The Alleged Inadequacy Of The Notice Program .....................8

  5. The Objection That The Notice Program Is Too Expensive ......9

 C. Objection Of Shirley Morales ...............................................9

  1. The Scope Of The Release.......................................................10

  2. The Warranty Relief.................................................................11

  3. The Objections That The Warranty Is A Coupon.....................12

 D. Vullings' And Morales's Objections To The General Structure Of The Settlement ...............................................................14

 E. Objections To The Negotiated Agreement For Attorneys' Fees ........15

IV. CONCLUSION...........................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Browning v. Yahoo!, Inc.*,
  Case No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266
  (N.D. Cal. Nov. 16, 2007)....................................................................................14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  281 F.R.D. 531 (N.D. Cal. 2012).........................................................................3

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ............................................................................8

*Evans v. Jeff D.*,
  475 U.S. 717 (1986)...........................................................................................18

*In re General Pub. Utils. Sec. Litig.*,
  Case No. 79-1420, 1983 U.S. Dist. LEXIS 11641
  (D.N.J. Nov. 16, 1983).........................................................................................1

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...........................................................................................18

*Isby v.Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ............................................................................15

*Khoday v. Symantec Corp.*,
  Case No. 11-cv-180, 2016 U.S. Dist. LEXIS 55543
  (D. Minn. April 4, 2016).................................................................................5, 6

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015)...........................................................................5

*Larsen v. Trader Joe's Co.*,
  Case No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538
  (N.D. Cal. July 11, 2014)...................................................................................18

*McDonough v. Toys "R" Us, Inc.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015).....................................................................5

*McGee v. Cont'l Tire N. Am., Inc.*,
  Civ. No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199
  (D.N.J. Mar. 4, 2009) ......................................................................................2

*In re Metro. Life Ins. Co. Sales Practices Litig.*,
  MDL No. 1091, 1999 U.S. Dist. LEXIS 22688
  (W.D. Pa. Dec. 28, 1999) ................................................................................17

*In re MI Windows & Doors Prods. Liab. Litig.*,
  Case No. 12-mn-00001-DCN, 2015 U.S. Dist. LEXIS 95889
  (D.S.C. July 23, 2015) .....................................................................................5

*Morales v. Stevco., Inc.*,
  Case No. 09-cv-00704 AWI JLT, 2012 U.S. Dist. LEXIS 68640
  (E.D. Cal. May 16, 2012) ................................................................................18

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. Of
  San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ..........................................................................15

*In re Prudential Ins. Co. of America Sales Practice Litig.*,
  962 F. Supp. 450 (D.N.J. 1997 ....................................................................4, 16

*In re Prudential Ins. Co. of America Sales Practices Litig.*,
  148 F.3d 283 (3d Cir. 1998) ...................................................................1, 12, 14

*In re Real Estate Title & Settlement Servs. Antitrust Litig.*,
  MDL No. 633, 1986 U.S. Dist. LEXIS 24435
  (E.D. Pa. June 10, 1986) .................................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ..........................................................................1, 2

*Rougvie v. Ascena Retail Group*,
  Civ. Action No. 15-724, 2016 U.S. Dist. LEXIS 99235
  (E.D. Pa. July 29, 2016) ...................................................................................5

*Sabol v. Hydroxatone, LLC*,
  Civ. Action No. 11-cv-04586, 2013 U.S. Dist. LEXIS 166520
  (D.N.J. Nov. 22, 2013) ....................................................................................11

*Shaw v. Toshiba Am. Info. Sys.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ...............................................................3

*Snell v. Allianz Life Ins. Co. of N. Am.*,
Civ. No. 97-2784 (RLE), 2000 U.S. Dist. LEXIS 13611
(D. Minn. Sept. 8, 2000) ........................................................................4

*Sonny O. v. Dallas*,
Case No. 14-CV-1110, 2016 U.S. Dist. LEXIS 75092
(M.D. Pa. June 9, 2016) .........................................................................2

*Stoetzner v. U.S. Steel Corp.*,
897 F.2d 115 (3d Cir. 1990) ..................................................................2

*Turner v. NFL (In re NFL Players Concussion Litig.)*,
307 F.R.D. 351 (E.D. Pa. 2015).............................................................3

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005)...............................................................13

*Weiss v. Mercedes-Benz of N. Am.*,
899 F. Supp. 1298 (D.N.J. 1995).........................................................13

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ...........................................2

**Other Authorities**

Bruce D. Greenberg, Keeping the Flies Out of the Ointment:
Restricting Objectors to Class Action Settlements,
84 St. John's L. Rev. 949 (2010) ......................................................5, 6

John E. Lopatka and [Third District Judge] D. Brooks Smith,
Class Action Professional Objectors: What to Do About Them?,
39 Fla. St. U. L. Rev. 865 (2012) .........................................................3

## I.    INTRODUCTION AND FACTS

Under the Court's Preliminary Approval Order, ECF No. 165, objections to and requests for exclusion from the Settlement were to be received by August 15, 2016.  That date has now passed.  Of the millions of Class Members, only 70 have requested exclusion.  *See* accompanying Declaration of Adam R. Gonnelli ("Gonnelli Decl.") ¶ 3.  No government agency has objected to the Settlement, and only three people asserting membership in the Class have objected.  Two of those objections are from serial "professional" objectors to class action settlements, and the other is from a person who opposes the existence of the litigation generally.  As discussed below, the highly favorable reaction of the Class to the Settlement supports final approval, and the few and unfounded objections provide no basis to reject it.

## II.    THE REACTION OF THE CLASS TO THE SETTLEMENT

The reaction of the Class to the Settlement "attempts to gauge whether members of the class support the settlement."  *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  The fact that only three objections were received here is compelling evidence that the Settlement is fair, reasonable, and adequate.  *See, e.g., In re General Pub. Utils. Sec. Litig.*, Case No. 79-1420, 1983 U.S. Dist. LEXIS 11641, at *22 (D.N.J. Nov. 16, 1983) ("The lack

of objection from the members of the class is one of the most important reasons leading the court to the conclusion that the settlement should be approved."); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) ("only" 29 objections out of a 281 member class "strongly favors settlement."). Indeed, "such a low level of objection is a 'rare phenomenon.'" *Rite Aid*, 396 F.3d at 305 (noting that there were just two objections out of 300,000 class members there) (citation omitted).

The 70 Class Members requesting exclusion represent less than 0.01% of the Class. "Such a small number of Opt Outs in relation to the size of the Class also strongly favors approval of the Settlement." *McGee v. Cont'l Tire N. Am., Inc.*, Civ. No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199, at *13 (D.N.J. Mar. 4, 2009). This positive reaction by the Class reaffirms that final approval of the Settlement should be granted. *See*, *e.g*., *Sonny O. v. Dallas*, Case No. 14-CV-1110, 2016 U.S. Dist. LEXIS 75092, at *12 & n.3 (M.D. Pa. June 9, 2016) (stating that "tacit acceptance or active support of 99.99%" of the class, and the presence of only four objections, supported settlement approval).

## III. THE OBJECTIONS TO THE SETTLEMENT ARE *DE MINIMIS* IN NUMBER AND UNPERSUASIVE

Notification of this Settlement was provided in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715 (requiring notice to relevant governmental agencies), and this Court's Preliminary Approval Order. No governmental entity

has objected.   Nor have any public interest groups done so, even though such groups regularly present objections in cases that affect their interests.   *E.g.*, *Turner v. NFL (In re NFL Players Concussion Litig.)*, 307 F.R.D. 351, 421 (E.D. Pa. 2015) (objections by Public Citizen Litigation Group.), *aff'd*, 821 F.3d 410 (3d Cir. 2016).   None of the three objections from consumers provide any grounds to reject the Settlement.

> **A.**   **Two Of The Three Objections Are From Serial "Professional Objectors"**

Two of the three[1] objectors, Michelle Vullings and Shirley Morales, are represented by serial "professional objector" counsel, who "seek out class actions to simply extract a fee by lodging generic, unhelpful protests."   *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000).   "[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors."   *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 n.3 (N.D. Cal. 2012); *see* John E. Lopatka and [Third Circuit Judge] D. Brooks Smith, <u>Class Action Professional Objectors:  What to Do About Them?</u>, 39 Fla. St. U. L. Rev. 865, 866-67 (2012) (describing professional objectors in similar terms).   These objector counsel and their repeat-

---

[1]   The third objector, Rod Miller, considers his Shop-Vac vacuum to be "a spectacularly great piece of equipment" and deems this suit "frivolous."   Two courts have disagreed that this case is frivolous, and Mr. Miller will be able to enjoy his vacuum still longer with the extended warranty that the Settlement provides.   *See* Ex. 1 to Gonnelli Decl.

player clients thus "maraud proposed settlements -- not to assess their merits on some principled basis -- but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process. *Snell v. Allianz Life Ins. Co. of N. Am.*, Civ. No. 97-2784 (RLE), 2000 U.S. Dist. LEXIS 13611, at *31-32 (D. Minn. Sept. 8, 2000).

Such bad faith efforts to obstruct a class settlement have not been countenanced by the courts; as the court aptly stated in *Snell*, 2000 U.S. Dist. LEXIS 13611, at *33:

> This is not a hastily contrived settlement.  Great expense, and careful thought, have led to its formulation by lawyers who have exceptional skill, and expertise, in such class action matters.  While observers, who peer from outside the settlement process, can second-guess one detail, or another, the objections advanced here, by the Movants in particular, do not rise above the querulous.  If, as the opponents fear, the Movants proceed, so as to euchre a tribute in exchange for a settlement, the Courts will not be powerless to act, and to act forcefully, so as to maintain the integrity of the judicial process, as well as the efficacy of the class action mechanism.

Instead of reasoned arguments supported by authority and by a proper reading of the Settlement and the filed papers, the professional objectors here fire off numerous baseless contentions, "as buckshot in the air, hoping to hit at least something." *In re Prudential Ins. Co. of America Sales Practice Litig.*, 962 F. Supp. 450, 507 n.39 (D.N.J. 1997) (rejecting objector arguments), *aff'd in relevant part*, 148 F.3d 283 (3d Cir. 1998).  Their arguments miss the mark.

### B.    Objection Of Michelle Vullings

Brent Vullings, who represents his wife, Michelle Vullings, is a well-known objector who has indiscriminately filed boilerplate objections to class action settlements and applications for attorneys' fees.   For example, Mr. Vullings represented objectors in *Rougvie v. Ascena Retail Group*, Civ. Action No. 15-724, 2016 U.S. Dist. LEXIS 99235 (E.D. Pa. July 29, 2016); *Khoday v. Symantec Corp.*, Case No. 11-cv-180 (JRT/TNL), 2016 U.S. Dist. LEXIS 55543 (D. Minn. April 4, 2016); *In re MI Windows & Doors Prods. Liab. Litig.*, Case No. 12-mn-00001-DCN, 2015 U.S. Dist. LEXIS 95889 (D.S.C. July 23, 2015); *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015); and *Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015).   In two of those cases, his client was again his wife, as here.   *Ascena*, 2016 U.S. Dist. LEXIS 99235, at *43; *MI Windows*, 2015 U.S. Dist. LEXIS 95889, at *11, n.2.[2]   *See* Bruce D. Greenberg, <u>Keeping the Flies Out of the Ointment: Restricting Objectors to Class Action Settlements</u>, 84 St. John's L. Rev. 949, 983 n.142 (2010) (noting that professional objector counsel often recruit as their client a family member who "shares a last name with objector counsel") (citing cases).   The Vullings' opposition to this Settlement thus is no

---

[2]   The Vullings' argument regarding the "unreasonably burdensome" opt-out process here, Docket No. 193, at 5, is essentially word for word identical to the objection that Mr. Vullings filed in the *Ascena* matter.   That court rejected this objection, 2016 U.S. Dist. LEXIS 99235, at *43, and it should fare no better here.

surprise, but this Court should view the Vulllings "with at least a modicum of skepticism," given Mr. Vullings' history of "suspicious" tactics, as *Khoday* recounts.  2016 U.S. Dist. LEXIS 55543, at *39-40.

Many of the Vullings' objections to the Settlement simply make no sense, and are contradicted by the actual record facts.  The Vullings apparently did not review the papers filed by Plaintiffs before making their seemingly boilerplate arguments.  Keeping the Flies Out of the Ointment, 84 St. John's L. Rev. at 958 n.33, 966 n.68, 982 & n.137 (noting that professional objectors "often fail to read or understand the settlement to which they object," and citing cases).

### 1.    Alleged Failure To Protect Against Future Misconduct

The Vullings' first claim is that the Settlement affords no "injunctive relief that would prohibit Defendant or its agents from engaging in similar wrongful conduct."  ECF No. 193 at 2.  This argument overlooks that the Settlement Agreement requires Shop-Vac to correct the alleged misrepresentations pertaining to "peak horsepower" by including explanations on its boxes.  *See* Settlement Agreement at 12.  If the Settlement is finally approved, there is no risk of Shop-Vac engaging in similar conduct, though if the Vullings had their way and the Settlement were rejected, Shop-Vac could continue to do so.

### 2.    Alleged Failure To State The Class Size

The Vullings claim that the size of the Class is unknown, and that "because

Class Counsel neither indicates the Class size in the notice or in its fee motion" that "[t]he Class cannot determine settlement fairness without knowing how many people are valid Class Members."   ECF No. 193 at 2.   This assertion is inexplicable because the size of the Class, amounting to millions of persons, is quite clearly disclosed and discussed throughout Plaintiff's Memorandum of Law in Support of the Final Approval of Settlement, as well as the supporting Declaration of Robert I. Lax.  ECF Nos. 173, 174.  The Vullings would have seen that had they bothered to review the papers.  Besides, in a settlement where every Class member will get a warranty extension no matter how big or small the Class, class size is utterly irrelevant.

### 3.     The Supposedly Excessive Incentive Awards

The Vullings assert that the incentive awards are excessive because Plaintiffs have not "explain[ed] the work plaintiffs performed in advance the class' interests, or whether or not the named plaintiffs would receive class benefits on top of the incentive award."  ECF No. 193 at 3-4.  They then pose a series of rhetorical questions about the role of the Class representatives.  Again, had the Vullings read the filed papers, they would have learned that each Class representative submitted a Declaration that provided, in detail, the answers to the series of rhetorical questions about this subject that the Vullings posed.  ECF Nos. 176-180.  Those Declarations described the fact that each Class Representative was deposed at

length, produced documents, answered interrogatories, and otherwise made efforts on behalf of the Class.

In addition, Plaintiffs' papers in support of the Settlement cited ample authorities that the incentive awards sought here are comparable to, or below, the amounts routinely approved in other cases. The Vullings' argument cites just one case, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998), which approved a $25,000 award, far higher than what Plaintiffs seek here.

Lastly, the incentive awards, if approved, will be paid out of the attorneys' fees and will not reduce the value of the settlement to the Class.

### 4.     The Alleged Inadequacy Of The Notice Program

The Vullings assert that the notice program previously approved by the Court warrants the rejection of the settlement. *See* Docket No. 193, at 3. The Vullings apparently failed to review any of the three Declarations submitted by Cameron R. Azari, the Director of Legal Notice of Hilsoft Notifications. ECF Nos. 162, 166, 175. Had they read those documents, they would have found the answers to the rhetorical questions they pose, including the circulation of the publications utilized, the mailing procedures, number of notices sent, and the rest. A review of those documents would also have revealed that the Court previously allowed the parties to substitute Family Handyman Magazine with the Family Handyman Website, due to the abbreviated summer publication schedule of the

former.  *See* ECF No. 169.

The Vullings do nothing to rebut Mr. Anzari's stated expert opinion as a lawyer and Director of Legal Notice that "[t]he Notice Program provided the best notice practicable under the circumstances of this case, conformed to all aspects of Federal Rule of Civil Procedure 23, and comported with the guidance for effective notice articulated in the Manual for Complex Litigation 4th ed."  *See* ECF No. 175 ¶ 37.  In any case, there is no reason to doubt that the Court-ordered notice program complies with due process, as evidenced (among other things) by the fact that Ms. Vullings herself received notice.

### 5.     The Objection That The Notice Program Is Too Expensive

The Vullings claim that "[t]he Class Administrator's costs and fees appear to be grossly inflated, thereby causing even less monies to potentially be distributed to the Class."  ECF No. 193 at 5.  The Vullings offer no foundation for this statement, or the source of their alleged knowledge of the costs of the notice program or what it ***should*** cost.  There is none.  This boilerplate objection has no relevance to this matter, as Defendants, not the Class, are paying for all notice and administration costs in addition to the relief for the Class.  In no way do notice costs reduce the benefits to the Class.

### C.     Objection Of Shirley Morales

Ms. Morales, like the Vullings, is a serial objector.  In addition to this case,

Ms. Morales objected in *Duncan v. JPMorgan Chase Bank, N.A.*, 5:14 cv 00912 (N.D. Tex., 2014) and *Wong v. Alacer Corporation*, A142938 (Cal. Ct. of Appeals, First Dist. 2014). She admits that she has "objected in a couple of cases and received a small amount of money once, but I do not recall the details." ECF No. 196 at 3. Thus, having successfully extracted money by objecting in the past, she is seeking to do so again here. Her objections too are without merit.[3]

### 1.   The Scope Of The Release

Ms. Morales objects to the scope of the release, which she claims includes "all claims whether 'known or unknown' and claims that Class Members 'may in the future have.'" ECF No. 196 at 2. But this argument is based on cherry-picking and misreading the Settlement Agreement's definition of "Released Claims." *See* Settlement Agreement, ECF No. 162-1 at 8. That definition in fact includes only claims that relate to marketing misstatement allegations such as those asserted in the case.[4] The release thus does not go beyond the context of this case.

---

[3] Ms. Morales submitted her objection *pro se*, but thereafter Mardi Harrison entered an appearance on behalf of Ms. Morales. ECF No. 197. Ms. Harrison too is a "professional objector," having represented an objector in *Mehigian v. Ascena Retail Group, Inc.*, No. 2:15-cv-00724 (E.D. Pa.), a case related to one of those in which Mr. Vullings and his wife also objected.

[4] "Released Claims means any claim which "(a) has been alleged in the Lawsuits or (b) could have been alleged in the Lawsuits or in another court action and relates (i) to any of the alleged inadequacies, misstatements, or issues of or associated with the Vacuums alleged in the Lawsuits or (ii) to any act, omission, damage, matter, cause, or event whatsoever arising out of or related to the initiation,

Courts have repeatedly recognized that releases in class actions may be very broad and "may include all claims, including unpleaded claims that arise of the of the same conduct alleged in the case" and "may even bar later claims that were not, or could not have been presented in the first action." *Sabol v. Hydroxatone, LLC,* Civ. Action No. 11-cv-04586, 2013 U.S. Dist. LEXIS 166520, at *48-49 (D.N.J. Nov. 22, 2013) (citations omitted). The release is fair consideration for the benefits of the Settlement.

### 2.   The Warranty Relief

Ms. Morales objects to the provision of the two-year warranty extension based upon her assertion that the case does not allege that the Vacuums are defective. ECF No. 196 at 1-2. Had she reviewed Plaintiffs' papers in support of the Settlement, however, she would have seen the explanation by Plaintiffs' expert of the relationship between the marketing misrepresentation claims and the provision of the warranty. Plaintiffs' expert opined that "lower horsepower motors will tend to fail more quickly and have a shorter service life than higher horsepower motors at a given level of work" due to the fact that "a lower powered motor must rotate faster, causing greater wear and temperature on brushes and other components." ECF No. 174 ¶ 58. Plaintiff's Memorandum of Law in

---

defense, matter, cause, or event whatsoever arising out of or related to the initiation, defense, or settlement of the Lawsuits or the claims or defenses asserted or that could have been asserted in the lawsuits." Settlement Agreement at I.R.

Support of Settlement Approval.  ECF No. 173 at 17-18.

Ms. Morales further complains that this issue was not discussed in the Notice.  Notices, however, are not required to convey all of the details of a multi-year litigation, but only to summarize the case and the settlement and to notify Class Members that they can review the settlement documents and court filings (many of which are on the settlement website for this case).  *Prudential*, 148 F.3d at 327-28.  The notice did that here.  The notice specifically refers Class Members to the Settlement website which contains detailed information about the rationale for the warranty extension, including the briefing submitted to this Court.

Lastly, Ms. Morales asserts that Plaintiffs have not valued the warranty relief.  Again, her unsupported charge is contradicted by Plaintiffs' extensive discussion (apparently unread by Ms. Morales) of the retail price of similar warranties available for purchase at retail from defendant Lowes, which provides an adequate benchmark.

### 3.    The Objections That The Warranty Is A Coupon

Again without any legal or factual support, Ms. Morales objects to the warranty extension as a "coupon" settlement that has "no value to class members unless they transact additional business with a defendant."  ECF No. 196 at 2. That is incorrect at multiple levels.

Firstly, Ms. Morales is incorrect that the warranty has no value.  Like

insurance, the warranty extension affords value regardless of whether it is ever actually needed. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) (free additional life insurance in class action settlement was not a coupon, but offered "real relief," with nothing that "necessitate[d] a future purchase" from defendant); *see also In re Real Estate Title & Settlement Servs. Antitrust Litig.*, MDL No. 633, 1986 U.S. Dist. LEXIS 24435, at *71-72 (E.D. Pa. June 10, 1986) (pre-CAFA case stating that additional title insurance was not a coupon).  Just as life or title insurance affords protection even if it is not invoked, and has at least the value that policyholders pay in premiums, an extended warranty has value regardless of whether the product fails during the extension period.  That is why defendant Lowes can sell extended warranties to willing buyers.

Secondly, it is incorrect that consumers must "transact additional business with [the] defendant" in order to benefit from the warranty extension.  ECF No. 196 at 2.  By definition, Class Members already have purchased a vacuum, and they need not purchase another one or spend even one more cent with Shop-Vac in order to utilize the warranty extension.  Ms. Morales's charge that the warranty is somehow a "marketing tool" for Defendants is thus, at best, strange.  Other courts have rejected that "marketing tool" argument in settlements not even as favorable to the class as this Settlement.  *E.g.*, *Weiss v. Mercedes-Benz of N. Am.,* 899 F.

Supp. 1298, 1304 (D.N.J. 1995), *aff'd o.b.*, 66 F.3d 314 (3d Cir. 1995). Given the value of the extended warranty, as well as the fact that no further purchase is required from Defendants, the extended warranty affords valuable consideration and meets no reasonable definition of "coupon." *See*, *e.g.*, *Browning v. Yahoo!, Inc.*, Case No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, at *16-17 (N.D. Cal. Nov. 16, 2007) ("in-kind relief" that has value to the class and "does not require class members to spend money in order to realize the settlement benefit" was not a coupon).

### D. Vullings' And Morales's Objections To The General Structure Of The Settlement

Vullings and Morales make various objections to the general structure of the settlement, demanding, for example, that cash payments be provided, that alternate relief be offered to those who no longer have their vacuums, or that the injunctive or warranty relief be different. But "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Prudential*, 148 F.3d at 317. The apparent wish of these two objectors for different forms of relief in no way shows that the Settlement is unfair, unreasonable, or inadequate.

Moreover, these objectors' idiosyncratic desires do not represent a reasonable compromise in light of the strength of the case or Defendants' defenses to it, or take into consideration the immediate benefits made available by the Settlement. *See Browning,* 2007 U.S. Dist. LEXIS 86266, at *25 (criticizing

objections that "paint an unreasonably rosy picture of the prospects of success for this class"). There is a succinct, dispositive response to such objections: "[a] settlement will not be rejected solely because it does not provide a complete victory to the plaintiffs." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). The mere fact that alternative or potentially more favorable settlement terms can be postulated in the abstract affords no basis to reject a fair and adequate settlement achieved through adversarial litigation and arduous, arm's-length negotiations. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. Of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). While the Settlement is, by definition, a compromise that may fall short of perfection, its essential fairness warrants final approval.

### E.   Objections To The Negotiated Agreement For Attorneys' Fees

The objectors each object on some level to Plaintiffs' fee and expense application, which is based on the parties' protracted and difficult negotiations on those subjects that culminated in their acceptance of a mediator's proposal to resolve those issues. That mediator's proposal resulted in a figure that represents a substantial discount off Plaintiffs' counsel's lodestar, after those attorneys worked on these cases since 2012 without any compensation.

The four short paragraphs (again essentially devoid of any supporting legal

authority) that the Vullings and Ms. Morales devote to the fee issue are riddled with misperceptions and outright falsehoods.  The Vullings claim that Plaintiffs' counsel are getting "potentially more than 80% of the settlement."  Since, as discussed *supra*, the Vullings claimed not to have seen the true value of the Settlement in Plaintiffs' papers, their 80% figure is made up out of whole cloth.  In fact, as Plaintiffs showed, the value of the Settlement exceeds $174,250,000, and the true percentage that represents the fee is 2.4%.  ECF No. 173 at 32.  Since the Vullings concede that "an award in the 20-30% range is reasonable," ECF No. 193 at 4, the far lower percentage here is eminently reasonable.

Ms. Morales's similar objection — that Plaintiffs have not offered any evidence of "the number and value of warranties that will be called by Class Members," ECF No. 196 at 2 — fails for similar reasons and because, as discussed *supra*, the extended warranties need not be "called by Class Members."  The very existence of the warranty extension has value.

The Vullings also argue that the fee is improper because the cost to Defendants of the warranty extension "is surely minimal."  ECF No. 193 at 4.  That is a *non sequitur*.  What is relevant to the fee calculation is the value of the relief to Class Members, not how much that relief costs a defendant.  *E.g.*, *Prudential*, 962 F. Supp. at 557 ("The Court rejects also the argument that if the cost . . . to Prudential is low, then [relief to the class] is worthless to policyholders.

The cost of the relief to Prudential is not the measure of class member benefit. The value of the relief to the Class, which may be substantial, is what matters."); *see also In re Metro. Life Ins. Co. Sales Practices Litig.*, MDL No. 1091, 1999 U.S. Dist. LEXIS 22688, at *32 n.10 (W.D. Pa. Dec. 28, 1999) (citing *Prudential*, 962 F. Supp. at 557 for this idea). As discussed *supra*, the value of this settlement amply supports the fee.

Finally, Ms. Morales improperly labels the extended warranty a "coupon" and seeks to invoke the Class Action Fairness Act's restriction on attorneys' fees for coupon settlements. ECF No. 196 at 2. The discussion *supra* demonstrated that this is no coupon settlement. Ms. Morales's argument as to fees should be rejected.

No one disputes that fees were negotiated at arm's-length, over a long period of time, or that agreement was achieved only after the mediator, Judge Infante, advanced a compromise that all parties grudgingly accepted. No one disputes that the fee will not reduce or otherwise affect the benefits to Class Members. Finally, no one disputes that Plaintiffs' counsel worked for over three years, overcoming vigorous opposition by these Defendants and their counsel to achieve the result here, and that Plaintiffs' counsel worked on a wholly contingent basis, putting out hundreds of thousands of dollars in expenses as they did so.

The Supreme Court has long encouraged negotiated fees, and especially fees

that are (a) negotiated after settlement terms for the class are agreed to, and (b) paid in addition to the benefits to the class, so as not reduce those benefits. *See, e.g., Evans v. Jeff D.*, 475 U.S. 717, 734-38 n.30 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (negotiated fees are the "ideal" toward which parties should strive). The parties did that here.

The fee was negotiated under market conditions: Plaintiffs' counsel wished to maximize their fees, to compensate them, as courts encourage, for their risk, contingency, innovation, work, and creativity; Defendants had a direct interest in negotiating the lowest amount their clients would be required to pay. Because the agreement regarding fees was negotiated *after* all of the other aspects of the Settlement were resolved, there is no concern that the Class Members were prejudiced or their benefits diminished in exchange for Plaintiffs' counsel's compensation. The fact that the fee was negotiated at arm's-length and came about as the result of a mediator's proposal from a retired federal judge weighs strongly in favor of approval, and against the unsupported objections. *See*, *e.g*., *Larsen v. Trader Joe's Co*., Case No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, at *4 (N.D. Cal. July 11, 2014) (approving fees that were the subject of a mediator's proposal); *Morales v. Stevco.,* Inc., Case No. 09-cv-00704 AWI JLT, 2012 U.S. Dist. LEXIS 68640, at *34 (E.D. Cal. May 16, 2012) (the fact that a settlement was based on a mediator's proposal showed that there was no collusion).

The requested fee is less than Plaintiffs' counsel's lodestar.  It should be approved.

## IV.   CONCLUSION

The few objections, by professional objectors who are here in order to extort money for themselves rather than to benefit the Class, reflect a profound misunderstanding of the contentious character of this litigation, the significant risk of non-recovery faced by Plaintiffs, and the intensity of the settlement negotiations. Plaintiffs' counsel developed this case, and then simultaneously prosecuted two actions, one of them to the verge of trial.  To date, this effort represents more than 8,043.35 hours of attorney and professional time, plus the advancement of hundreds of thousands of dollars in out-of-pocket expenses.

In short, the objections fail to appreciate the realities of the work necessary to litigate a complex nationwide class action of this magnitude, while trivializing the very real and substantial benefits realized by the Class, all at no cost to the Class.  The objections are, to say the least, not well taken.  In fact, the objectors could have (and should have) opted out of the Class if they believed that they could have obtained a greater recovery.

For the reasons set forth above, and in Plaintiffs' moving papers, the Settlement should be granted final approval, and the application for an award of attorneys' fees and reimbursement of expenses should be granted in full.

Dated: September 1, 2016                  Respectfully Submitted,


**DILWORTH PAXSON LLP**


By:  */s/ James J. Rodgers*
        James J. Rodgers
        jrodgers@dilworthlaw.com
Penn National Insurance Plaza
2 North 2nd Street
Suite 1101
Harrisburg, PA 17101
Telephone: (717) 236-4812
Facsimile: (717) 236-7811

*Interim Liaison Counsel*


**FARUQI & FARUQI LLP**


By:  */s/ Adam R. Gonnelli*
        Adam R. Gonnelli
        agonnelli@faruqilaw.com
        Nadeem Faruqi
        nfaruqi@faruqilaw.com
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

*Interim Class Counsel*

**LAX LLP**

By:   _/s/ Robert I. Lax_
      Robert I. Lax
      rlax@lax-law.com
380 Lexington Avenue, 31st Floor
New York, NY 10168
Telephone: (212) 818-9150
Facsimile: (212) 208-4309

*Interim Class Counsel*


**MILBERG LLP**

By:   _/s/ Sanford P. Dumain_
      Sanford P. Dumain
      sdumain@milberg.com
      Andrei Rado
      arado@milberg.com
      Jennifer Czeisler
      jczeisler@milberg.com
One Penn Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Interim Class Counsel*

**LITE DePALMA GREENBERG LLC**

By: _/s/ Bruce D. Greenberg_
      Bruce D. Greenberg
      bgreenberg@litedepalma.com
570 Broad Street, 12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0211

*Interim Class Counsel*


**BARON & HERSKOWITZ**
Jon Herskowitz
jon@bhfloridalaw.com
9100 South Dadeland Boulevard
One Datran Center, Suite 1704
Miami, FL 33156
Telephone: (305) 670-0101
Facsimile: (305) 670-2393

*Executive Committee Member*

**PINILISHALPERN LLP**
William J. Pinilis
wpinilis@consumerfraudlawyer.com
160 Morris Street
Morristown, NJ 07962
Telephone: (973) 401-1111
Facsimile: (973) 401-1114

*Executive Committee Member*

**REESE LLP**
Michael R. Reese
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Executive Committee Member*

**WALSH PLLC**
Bonner C. Walsh
bonner@walshpllc.com
3100 SCR 406
PO BOX 1343
Sonora, TX 76950
Telephone: (903) 200-6069
Facsimile: (866) 503-8206

*Executive Committee Member*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)**

Pursuant to Local Rule 7.8(b)(2), it is hereby certified that Plaintiffs' Reply in Further Support of Class Settlement and Plaintiffs' Application for Attorneys' Fees and Expenses, and Service Awards to Class Representatives contains less than 5,000 words (exclusive of the tables of contents and citations, and this certificate), according to Microsoft© Word 2010 word processing system used to prepare it.

Dated:  September 1, 2016                By:  */s/ Adam R. Gonnelli*_____
                                                     Adam R. Gonnelli

## CERTIFICATE OF SERVICE

The undersigned certifies that, on September 1, 2016, he caused this document to be electronically filed with the clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated:  September 1, 2016

By: */s/ Adam R. Gonnelli*
Adam R. Gonnelli