# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: SHOP-VAC MARKETING AND SALES PRACTICES LITIGATION | : : : | MDL No. 2380 |
| | : | No. 4:12-md-2380 |
| THIS DOCUMENT RELATES TO: | : : | (Judge Kane) |
| ALL CASES | : : | |

## ORDER

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Before the Court are motions filed by Class Plaintiffs to compel Objector-Appellants Michelle Vullings and Shirley Morales to post an appeal bond pursuant to Federal Rule of Appellate Procedure 7. (Doc. Nos. 214, 218.) Class Plaintiffs urge the Court to require Vullings and Morales to post a $32,000 appeal bond to cover taxable costs and administrative expenses. (Doc. No. 214-3 at 6; 218-3 at 5.)

Class Plaintiffs reason that requiring an appeal bond is necessary given: (1) the frivolousness of Vullings' and Morales' appeal (Doc. No. 214-3 at 5-6; 218-3 at 5); (2) Vullings' disregard for prior discovery requests (Doc. No. 214-3 at 5-6); (3) Morales' ghostwritten objection (Doc. No. 218-3 at 5); and (4) the delay to the settlement's implementation caused by Vullings' and Morales' appeal (Doc. Nos. 214-3 at 5; 218-3 at 7). Vullings responds that she cannot post a $32,000 appeal bond, the requested appeal bond is too high, and "the alleged taint of frivolity or threat of detriment to class members are not substantial reasons to discourage an objector's right to appeal." (Doc. No. 222 at 11-14.) Morales challenges whether an objector-appellant can be required to post a bond for administrative expenses and questions the purpose behind Class Plaintiff's request for compelling an appeal bond. (Doc. No. 224.)

1

Rule 7 of the Federal Rules of Appellate Procedure provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. "In assessing a Rule 7 motion, the relevant factors are: (1) whether there is a risk of non-payment in the event that the appellants lose their appeal, (2) any previous bad faith or vexatious conduct on part of the appellants, and (3) the likely merits of the appeal." Noatex Corp. v. King Const. of Houston, L.L.C., 732 F.3d 479, 489 (5th Cir. 2013); see NEWBERG ON CLASS ACTIONS § 14:15 (5th ed.). District courts in this Circuit have also considered "the appellant's financial ability to post the bond" and "whether the bond requirement will effectively preclude pursuit of the appeal." See, e.g., Rougvie v. Ascena Retail Grp., Inc., No. 15-724, 2016 WL 6069968, at *3 (E.D. Pa. Oct. 14, 2016). The Court will evaluate each of the five factors in turn.

A.   **Propriety of requiring an appeal bond**

First, as to the risk of non-payment, Class Plaintiffs argue that Vullings' unwillingness to comply with discovery requests and Morales' residence in Oregon increases risk of non-payment. (Doc. Nos. 214-3 at 8-9; 218-3 at 5.) However, Class Plaintiffs do not assert that either Vullings or Morales, both purported "serial objectors," neglected to pay appeal costs in prior cases. (See id.); cf. Heekin v. Anthem, Inc., No. 05-01908, 2013 WL 752637, at *2 (S.D. Ind. Feb. 27, 2013). The Court finds the risk of non-payment to be a neutral factor.

Second, as to the objectors' bad faith or vexatious conduct, Class Plaintiffs cite United States Magistrate Judge Leung's finding in Khoday v. Symantec Corp. that the tactics of Michelle Vullings' attorney, Brent Vullings, warrant "at least a modicum of skepticism." (Doc. No. 214-3 at 4); Khoday v. Symantec Corp., No. 11-180, 2016 WL 1637039, at *13 (D. Minn. Apr. 5, 2016) (gathering cases). Similarly, Class Plaintiffs contend that Michelle Vullings

disregard for this Court's preliminary approval order demonstrates bad faith. (Doc. No. 214-3 at 6.) On May 26, 2016, this Court issued an order that, inter alia, preliminarily approved the Settlement Agreement and discussed the procedure for filing written objections. (Doc. No. 165.) The May 26, 2016 order provided, in relevant part, as follows:

> The filing of an objection allows [then-interim class counsel or Defendants' counsel] to take the Objector's deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an Objector to make himself or herself available for a deposition or otherwise comply with expedited discovery requests may result in the Court striking the Objector's objection . . . .

(Doc. No. 165 at 4) (emphasis added). On August 26, 2016, Michelle Vullings was served with interrogatories and demand for documents. (Doc. No. 201 at 1.) The discovery requests inquired into Vullings' standing as a member of the class. (Id.) Vullings did not respond to the parties' discovery demands. (See Doc. No. 201 at 1; 210 at 18-19.) Rather, Attorney Brent Vullings filed a letter on September 14, 2016, reiterating the information Vullings did provide in her objection and lamenting the expedited discovery schedule for objections. (Doc. No. 204.)

As for Morales, Class Plaintiffs allege that her objection was surreptitiously ghostwritten by her attorney, Mardi Harrison. (Doc. No. 218-3 at 3.) On August 15, 2016, Morales submitted an ostensibly pro se objection that was mailed from Oregon and signed in her name. (Doc. No. 196.) Mardi Harrison entered a notice of appearance on August 24, 2016 on Morales' behalf. (Doc. No. 197.) During Morales' deposition, Morales discussed who wrote the August 15, 2016 objection. (Doc. No. 196 at 3; 218-5 at 16) The transcript of the objection provides, in relevant part, as follows:

> Q. Did you write this Objection yourself?
> A. No.
> Q. Now, I have to be careful about asking this the right way. Were you -- who were you assisted by in writing this objection?
> A. I'm not sure. I just gave basic information and I spoke with Mardi [Harrison].

3

>   …
>   Q. I just want to stop there for a minute. So this document was made after you had retained Ms. Harrison?
>   A. I believe so, yes.

(Doc. No. 218-5 at 16.)

The ethics of ghostwriting legal documents was recently discussed by Magistrate Judge Carlson and Judge Jones in <u>Ely v. Cabot Oil & Gas Corp.</u> In a Report and Recommendation on a motion for sanctions, Magistrate Judge Carlson found widespread condemnation of ghostwriting "based on the reasoning that ghostwriting violates the spirit of the Federal Rules of Civil Procedure, is unethical, constitutes an impermissible evasion of the responsibilities that are imposed upon attorneys, and otherwise is misleading to the Court and other parties." <u>Ely v. Cabot Oil & Gas Corp.</u>, No. 09-2284, 2014 WL 12489849, at *6 (M.D. Pa. May 22, 2014) (Carlson, M.J.). However, Magistrate Judge Carlson cautioned that bar associations and commentators have concluded that ghostwriting "may serve a legitimate purpose and may not warrant sanctions or outright prohibition." <u>Id.</u> at *7. Judge Jones adopted in part the Report and Recommendation and similarly noted that the rules of ethics on ghostwriting "are evolving as we speak [and declined] to hang an order of sanctions on the peg of ghostwritten submissions." <u>Ely v. Cabot Oil & Gas Corp.</u>, No. 09-2284, 2014 WL 12360947, at *3 (M.D. Pa. July 21, 2014) (Jones, J.).

This Court previously declined to strike the objections on the basis of Morales' ghostwriting or Vullings' refusal to respond to discovery demands. The Court found that striking Vullings' and Morales' objections would not further the Court's role in reviewing the settlement or safeguarding absent class members, considering that no objector attended the fairness hearing and only three objections were submitted. (Doc. No. 211 at 4 n.5.) Nonetheless,

Morales' ghostwriting and Vullings' refusal to respond to discovery demands weigh in favor of requiring an appeal bond.

Third, as to merits of the appeal, the Court finds Vullings' and Morales' appeal to be generic iterations of their objections. Vullings challenges the incentive awards, the attorneys' fees, the compensation provided to class members, the value of the extended warranty, the size of the class, the opt-out process, and the notice program. Concise Summary of the Case at 3-5, In Re: Shop-Vac Mktg. and Sales Practices Litig., No. 16-4370 (3d Cir. Jan. 2, 2017). Morales identified the following issues to be raised on appeal: the "unreasonable and inadequate injunctive relief, unfair and overinclusive release and unfair attorney's fees." Concise Summary of the Case at 2, In Re: Shop-Vac Mktg. and Sales Practices Litig., No. 16-4425 (3d Cir. Jan. 26, 2017). Vullings and Morales did not attend the fairness hearing, and Vullings did not respond to the argument that her appeal was meritless beyond stating that the matter of whether she "is pursuing frivolous arguments is a question best left to the Court of Appeals." (Doc. No. 222 at 13.) The Court finds that the third factor weighs in favor of requiring an appeal bond.

Finally, as to the appellant's ability to post the appeal bond and whether requiring a bond would preclude the appeal, Vullings and Morales both argue that they are unable to post a $32,000 bond. (See Doc. Nos. 220-1 at 1-2; 222 at 13; 224 at 7.) The Court finds that the fourth and final factors weigh against requiring an appeal bond in the amount of $32,000. However, on balance, the Court finds that a sufficient basis exists for compelling Objector-Appellants Michelle Vullings and Shirley Morales to post an appeal bond. Fed. R. App. P. 7.

     **B.    Amount of the appeal bond**

Class Plaintiffs urge this Court to impose an appeal bond in the amount of $32,000. (Doc. Nos. 214-3 at 12; 218-3 at 11.). The $32,000 sum entails $25,000 in costs taxable under

Federal Rule of Appellate Procedure 39(e) and $7,000 in administrative costs. (Doc. Nos. 214-3 at 12-14; Doc. No. 218-3 at 11-15.) Vullings challenges whether an appeal bond can account for administrative expenses and characterizes the appeal bond request as "astronomical and unsubstantiated." (Doc. No. 222 at 6-12.) Morales argues against being required to post "a bond for administrative expenses" and contends that Class Plaintiffs provide "no detail as to how they reach the $25,000 for 'Rule 39 costs.'" (Doc. No. 224 at 1.)

"[A]n appeal bond may include the costs of preparation of and transmission of the record, the costs of obtaining any necessary transcripts, printing costs and other copying costs, premiums or costs for supersedeas bonds or other bonds to secure rights pending appeal, and fees for filing the notice of appeal." In re Nutella Mktg. & Sales Practices Litig., 589 F. App'x 53, 60-61 (3d Cir. 2014). "Given that an appeal bond is meant to ensure the availability of funds for cost-shifting on appeal, the amount of the bond should have some relationship to the costs that a losing appellant would have to shoulder." NEWBERG ON CLASS ACTIONS § 14:16 (5th ed.).

Here, Class Plaintiffs do not address how they reached the requested $25,000 sum. Rather, Class Plaintiffs contend that: (1) district courts have previously imposed appeal bonds in the amount of $25,000; and (2) supporting affidavits or "a specific list showing the costs" are not required. (See Doc. Nos. 214-3 at 13; 218-3 at 13) (citing In re Ins. Brokerage Antitrust Litig., 2007 U.S. Dist. LEXIS 47659, **42-43 (D.N.J. June 29, 2007)). The Court declines to adopt the $25,000 sum absent any justification for Class Plaintiff's estimate. See, e.g., Tennille v. W. Union Co., 774 F.3d 1249, 1257 (10th Cir. 2014) (reducing the appeal bond to $5,000 where plaintiffs "made no effort to justify their $25,000 estimate") (gathering cases); In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig., No. 09-2023, 2013 WL 4735641, at *3 (E.D.N.Y. Sept. 3, 2013) (reducing a $25,000 appeal bond request to $5,000 where plaintiffs

"failed to justify that amount"). Upon consideration of the scope of the litigation and the size of the record, the Court finds that $5,000 is a reasonable amount to cover the Rule 39 costs of appeal. See In re Merck & Co., Inc., No. 05-1151, 2016 WL 4820620, at *2 (D.N.J. Sept. 14, 2016) (adopting class plaintiffs' $5,000 estimate for "copying and record-compilation costs"); In re Certainteed Fiber Cement Siding Litig., No. 2270, 2014 WL 2194513, at *2 (E.D. Pa. May 27, 2014) (finding an estimate of $5,000 in Rule 39 costs appropriate).

As to the administrative costs, Class Plaintiffs urge the Court to include administrative costs in the appeal bond and cite the Third Circuit's decision in In re Nutella Marketing & Sales Practices Litigation as having "expanded what costs could be included in a Rule 7 appeal bond." (Doc. Nos. 214-3 at 14; 218-3 at 13) (citing In re Nutella Mktg. & Sales Practices Litig., 589 F. App'x 53, 57, 61 (3d Cir. 2014)). In support thereof, Class Plaintiffs submitted the declaration of a senior project manager, associated with the Settlement Administrator, who estimated the administrative costs over the course of a year could reach $7,000. (Doc. No. 214-6 at 1-2.)

In In re Nutella, the Third Circuit affirmed a district court's decision that ordered appellant-objectors to post an appeal bond of $22,500, comprising of $2,500 for briefing expenses and $20,000 for administrative expenses. 589 F. App'x at 57, 61 (unpublished). The Third Circuit reasoned that the district court's "imposition of a bond of $22,500 was not an abuse of discretion." Id. at 61. However, the "vast majority of district courts within this Circuit" have declined "to account for the anticipated administrative costs in the Rule 7 bond." Schwartz v. Avis Rent a Car Sys., LLC, No. 11-4052, 2016 WL 4149975, at *4 (D.N.J. Aug. 3, 2016) (internal citations omitted). As such, in accordance with the district courts of this Circuit, the Court declines to account for administrative costs in the appeal bond.

**ACCORDINGLY**, on this 8th day of February 2017, **IT IS ORDERED THAT** Class Plaintiffs' motions to compel Michelle Vullings and Shirley Morales to post an appeal bond (Doc. Nos. 214, 218), are **GRANTED IN PART** as follows:

1. Objector-Appellant Michelle Vullings shall file a bond in the amount of $5,000 pursuant to Federal Rule of Appellate Procedure 7 within fourteen (14) days of this Order; and

2. Objector-Appellant Shirley Morales shall file a bond in the amount of $5,000 pursuant to Federal Rule of Appellate Procedure 7 within fourteen (14) days of this Order.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
